Peter A. Lynch (SBN 123603)
Mark A. Vasallo (SBN 228037)
COZEN O'CONNOR
501 West Broadway, Suite 1610
San Diego, California 92101
Telephone: 619.234.1700
Facsimile: 619.234.7831

Attorneys for Plaintiff,
AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

FILED
SEP 3 0 2005
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT

OF FEDERAL CLAIMS

| | |
|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, Plaintiff, vs. UNITES STATES OF AMERICA, Defendants. | Case No.: AMENDED COMPLAINT PURSUANT TO RULE 3.1(a)(2) |

Plaintiff American International Specialty Lines Insurance Company, by and through their undersigned attorneys and for its Amended Complaint against the United States of America ("Defendant"), pursuant to Rule 3.1(a)(2) of the Rules of the United States Court of Federal Claims, state upon information and belief as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this claim for costs incurred in response to the release of hazardous substances from prior misapplication of organochlorine pesticides at the Property formerly comprising the Fleet and Industrial Center, Alameda Facility/Annex ("Property"), and properties transferred as described in Exhibit "1" for damages resulting from Defendants' breach of their contractual/statutory obligations to timely assess, inspect, investigate, study, and remove and/or remediate and the release of hazardous substances located at the Property and for indemnity

pursuant to Section 330 "Indemnification of Transferees of Closing Defense Property," Public Law 102-484 (Oct. 23, 1992) 106 Stat. 2371, 2372.

## THE PARTIES

**A. Plaintiff:**

2. The American International Specialty Lines Insurance Company (Plaintiff) is a surplus line insurer for the City of Alameda/Alameda Reuse and Redevelopment Agency for this Property with a right of subrogation. It is a corporation domiciled in Alaska. Plaintiff is the subrogee of the City of Alameda and Alameda Reuse and Redevelopment Agency because of its paying benefits on behalf of its insureds for damages caused by Defendant arising from acts or omissions forming the subject matter of this Complaint. Plaintiff has a direct pecuniary interest in this action. The City of Alameda is not pursuing a claim against the defendant.

**B. Defendant:**

3. Defendant, the United States of America, is a sovereign entity subject to the terms of its validly executed contracts and covenants.

**C. Other Entities:**

4. The United States Department of the Navy ("Navy"), is an agency, department, and instrumentality of the United States Government, with its principal office located in Arlington, Virginia.

5. The City of Alameda is a municipal corporation organized and existing under the Constitution and laws of California.

6. The Alameda Reuse and Redevelopment Authority is a local redevelopment authority as defined in Section 2903, Public Law 103-160 organized and existing under the Constitution and laws of California.

7. The Community Improvement Commission of the City of Alameda is a public body corporate and political organized and existing under the Constitution and laws of California.

## JURISDICTION

8. Jurisdiction in this case exists under the Tucker Act, which grants the Court jurisdiction to render judgment upon any claim against the United States founded upon any express

or implied contract with the United States. 28 U.S.C. §1491(a)(i), and other applicable federal statutes, as well as Section 330 "Indemnification of Transferrees of Closing Defense Property", Public Law 102-484 (Oct. 23, 1992), 106 Stat. 2371, 2372.

**VENUE**

9. Venue lies in the United States Court of Federal Claims because the Tucker Act serves as a waiver of sovereign immunity as to such claims, giving this court jurisdiction over contract disputes between the government and private parties. *United States v. Mitchell*, (1983) 463 U.S. 206, 212.

**ALLEGATIONS**

10. Under the authority of the Defense Base Closure and Realignment Act of 1990, Public Law 101-510, and 10 U.S.C. 2687 (1994), the 1995 Defense Base Closure and Realignment Commission recommended the closure of Fleet and Industrial Supply Center ("FISC") Oakland. The Alameda Annex and Facility were part of the Navy supply complex at FISC Oakland. This recommendation was approved by President Clinton and accepted by the One Hundred Fourth Congress in 1995. The Alameda Annex ("Property") closed on September 30, 1998.

11. The Property is located adjacent to and east of the former Naval Air Station Alameda and is situated within the boundaries of the City of Alameda. The Property is bounded on the north by the Oakland Inner Harbor; on the east and south by the City of Alameda; and on the south by the former Naval Air Station Alameda. This Property covers about 147 acres, of which six acres are submerged.

12. The entire 147 acres of the Property were available for disposal by the Navy under the authority of Section 2834(b) of Public Law 102-484, as amended by Section 2833 of Public Law 103-160.

13. In April 1994, the City and County of Alameda signed a Joint Powers Agreement ("JPA"), and established the Alameda Reuse and Redevelopment Authority ("ARRA"). The ARRA was recognized by the Department of Defense as the responsible entity for submitting and completing the Community Reuse Plan for the Subject Property. The end result of the reuse effort was a Reuse Plan specifying a mix-use community.

14. Under the authority of Section 334 of the Fiscal Year 1997 Defense Authorization Act the Department of Defense initiated an early transfer of contaminated Property to the City of Alameda. Under Section 334 of the Fiscal Year 1997 Defense Authorization Act the Department of Defense was permitted to defer the CERCLA requirement that all remediation actions have been taken before the date of Property transfer. Section 334 did not however, relieve the Department of Defense from full compliance with CERCLA.

15. On February 18, 2000, the Navy issued a Finding of Suitability for Early Transfer ("FOSET") of the Property to the City of Alameda.

16. Pursuant to the Reuse Plan developed by the ARRA the Property was conveyed to the City of Alameda in July 2000, twenty months earlier than planned. The Navy conveyed approximately 147 acres to the City of Alameda by way of a *Quitclaim Deed and Environmental Restrictions pursuant to California Civil Code Section 1471 for FISC Alameda*, dated July 17, 2000 ("the Deed") (Exhibit 1).

17. In accordance with the requirements of Section 120(h) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 as amended ("CERCLA"), 42 U.S.C. § 9620(h), the Deed contains various conditions, restrictions, covenants and agreements between the Navy, as Grantor, and the City of Alameda, as Grantee.

18. As Owner and Grantee of Subject Property, the City of Alameda has the right to enforce certain contractual/statutory covenants and warranties provided by the Navy in the Deed.

19. Pursuant to the requirements for "covenant deferral" of CERCLA 42 U.S.C. Section 9620(h)(3)(C), as amended by 334 of the National Defense Authorization Act for Fiscal Year 1997 (Public Law 104-201; 42 U.S.C. 9620(h)(3)(C)), the following notices, assurances, covenants and declarations are contained in the Deed and apply to the Subject Property.

20. The Grantor had not completed remedial actions on the Property that were necessary to provide the covenants required by CERCLA 42 U.S.C. 9620(h)(3)(A)(ii)(I).

21. Similarly, Paragraph II (F)(4)(c) provides an express covenant regarding the Navy's obligation to complete all response actions necessary under CERCLA 42 U.S.C. Section 9620(h)(3)(C)(ii)(III), and specifically provides:

> (c) Response Action Assurance and Schedules for Investigation and Completion of all Necessary Response Action [CERCLA 42 U.S.C. Section 9620(h)(3)(C)(ii)(III)]. The Grantor hereby provides assurance that it will take all necessary response action at the Property as provided by CERCLA 42 U.S.C. Section 9620(h)(3)(C)(ii)(III). Schedules for investigation and completion of all necessary response action are identified and included as Exhibit "G" to the memorandum of Agreement for Conveyance of the Property (FISCA MOA).

(Exhibit 1 at pg. 8).

**ENVIRONMENTAL CONTAMINATION AT THE SUBJECT PROPERTY**

22. Paragraph II (F)(1) of the Deed contains the following admission regarding the Navy's storage, disposal, and/or release of hazardous substances on the Property conveyed to the City of Alameda:

> Notice is hereby provided that the information set out in Exhibit "B", attached hereto and made a part hereof, identifies hazardous substances that were stored for one year or more, known to have been released, or disposed of on this Property. The GRANTOR has made a complete search of its files and records concerning the Property and found that Exhibit "B" provides: (1) notice of the type and quantity of such hazardous substances; (2) notice of the time the storage, release, or disposal took place; and (3) a description of the remedial action taken, if any.

23. Exhibit "B" of the Deed lists dozens of hazardous substances that were stored, released, and/or disposed of on the Property. This list includes the following information regarding pesticides located at the Property to include but not limited to:

| **Parcel:** | **Basewide** |
|---|---|
| Facility Number/Name: | Basewide Storm Drain System |
| Hazardous Substances Stored: | Polychlorinated biphenyl/Pesticides |
| Quantity: | Unknown |
| Stored (S), Released (R), or Disposed (D): | R |
| Storage Term/Date of-Release: | VSI (Visual Site Inspection) |

(Exhibit 1, Deed Exhibit B, Table 8, pgs. 5,7 and 8).

24. In April 2001, soil analysis was conducted at the Property. The soil analysis resulted in a finding of Organochlorine Pesticides ("OCPs") on the Property.[1] This is the area where remediation later occurred.

25. The chlordane concentrations measured in soils at the former Alameda Naval Air Station's East Housing Area ("EHA") are considerably higher than expected from proper application to control subterranean termites. If the chlordane were applied prior to construction, more than the manufacturer-recommended application rate would have had to have been used. Alternatively, the considerable difference in measured chlordane soil concentrations under and around buildings of the same age and foundation type, indicates that improper post-construction application, more likely than not, occurred. The recommended post-construction treatment of buildings is trenching or rodding along the exterior and interior of building foundations. However, the distribution of measured chlordane concentrations suggests that post-construction application more likely than not was performed by spraying the pesticide into the crawlspaces and through the vents. There is considerable evidence of negligent handling of pesticides and other hazardous materials in other parts of the Alameda Naval Air Station, suggesting that poor chemical housekeeping practices more likely than not was common. Further routine applications of chlordane during annual inspections have been reported in the literature, contrary to manufacturer recommendations. Finally, in 1980, the Department of Defense (DOD") issued an order prohibiting application of chlordane in buildings where heating and ventilation ducts are exposed to areas where chlordane has been applied. Buildings at EHA more likely than not had heating/ventilation ducts routed underneath the flooring in the crawlspace. These facts together, substantiate considerable indications that the measured chlordane concentrations at EHA do not result from proper applications consistent with manufacturer recommendations. Plaintiff has been precluded from conducting discovery about chlordane use at the Property. Said discovery is necessary because Defendants possess the relevant documents, and witnesses about the improper

---

1 OCPs is a group of pesticides that are toxic to humans and resistant to degradation. They also bio-accumulate in the food chain. Cyclodienes also known as the diene-organochlorine insecticides, were developed after World War II and are of more recent origin than DDT (1939) and HCH (1940). The eight compounds were first described in the scientific literature or patented in the years: Chlordane, 1945; aldrin and dieldrin, 1948; heptachlor, 1949; endrin, 1951; mirex, 1954; endosulfin, 1956; and chlorclecone (keponecr), 1958.

chlordane usage at the Property. The Environmental Protection Agency cancelled use of chlordane in 1988, twelve years (12) before the initial transfer of the Property to the City of Alameda as described in Exhibit 1.

26. Upon the discovery of OCPs and the release and/or threatened release the Department of Toxic Substance Control ("DTSC") required the other entities and Plaintiff to assess and remediate the contamination at the Property.

27. To remediate the hazard of the OCPs, the other entities were required to excavate 29,270 tons of impacted soil and disposed of off-site between April and August of 2002. The remediation work was performed according to the *Demolition and Organochlorine Pesticide Removal Workplan*, April 23, 2002.

28. From the date of its initial discovery, Plaintiff and the other entities exercised due care with respect to the subject hazardous substances and took reasonable steps to stop any continuing release, prevent any threatened future release, and prevent or limit any human, environmental, or natural resource exposure to any previously release hazardous substance. These actions included use of reasonable precautions against foreseeable acts or omissions of third parties and the consequences that could foreseeably result therefrom. Defendants were made aware of all activities being conducted by the other entities and Plaintiff at the Property.

29. Demands were made on the Defendant through the Department of the Navy for indemnification pursuant to Section 330 of the fiscal year 1993 Defense Reauthorization Act, as amended (Public Law 102-484, 106 Stat. 2371 (1992) on October 31, 2002 and November 24, 2003. See Exhibit "2." Defendant and the Department of the Navy failed to respond to said indemnity claims. Further, Defendant denied responsibility in its answer to plaintiff's Complaint in Case No. 3:04-CV-0091 CRB, the Northern District of California, which court subsequently transferred this matter to the United State Court of Federal Claims.

30. As of the date of this Amended Complaint, the Plaintiff has incurred substantial costs in connection with its necessary response to the release or threatened release of hazardous substances discovered at the Property.

**FIRST CLAIM FOR RELIEF**

**Express Indemnification**

31. Plaintiff incorporates by reference paragraphs 1-30 as though fully set forth herein.

32. The City of Alameda is an "entity" as provided under Section 330(a)(2) of the National Defense Authorization Act of 1993, as amended.

33. The Alameda Reuse Redevelopment Agency is an "entity" as provided under Section 330(a)(2) of the National Defense Authorization Act.

34. The City of Alameda/The Alameda Reuse Redevelopment Agency and Plaintiff in accordance with Section 330(b) of the National Defense Authorization Act of 1993, as amended made a claim for indemnification to the Navy. The City of Alameda/ The Alameda Reuse Redevelopment Agency and Plaintiff provided the first claim for indemnification to the Navy in a letter dated October 31, 2002. See Exhibit "2." The City of Alameda and Plaintiff submitted a second claim for indemnification to the Navy in a letter dated December 18, 2003 (Exhibit 2).

35. Paragraph II(G) of the Deed contains an express covenant for indemnification:

> G. INDEMNIFICATION REGARDING TRANSFEREES
>
> The GRANTOR hereby recognizes its obligations under Section 330 of the National Defense Authorization Act of 1993 (Pub. L. 102-484), as amended, regarding indemnification of transferees of closing Department of Defense Property.

(Exhibit 1 at pg. 8)

36. Section 330 of the National Defense Authorization Act of 1993, as amended provides:

> In general . . . the Secretary of Defense shall hold harmless, defend, and indemnify in full persons and entities . . .from and against any suit claim, demand or action, liability, judgment, costs or other fee arising out of any claim for personal injury or property damages (including death, illness, or loss of or damage to property or economic loss) that results from, or is any manner predicated upon, the release or threatened release of any hazardous substance, pollutant or contaminant, or petroleum or petroleum derivative, as a result of Department of Defense activities at any military installation (or portion thereof) that is closed pursuant to a base closure law.

37. As a result of the release and/or threatened release of OCPs at the Property the DTSC made a demand, action and or claim against the City of Alameda/The Alameda Reuse Redevelopment Agency and Plaintiff.

38. Pursuant to the claim by DTSC, the City of Alameda/The Alameda Reuse Redevelopment Agency and its insurer Plaintiff was required to assess and remediate the Property, incurring substantial costs as a result thereof.

39. The United States of America through the Department of the United States Navy is solely responsible for said contamination and is required under Public Law 102-484, 106 Stat. 2371, section 330, to indemnify Plaintiff.

WHEREFORE, Plaintiff respectfully prays this Court to enter a judgment pursuant to Public Law 102-484, 106 Stat. 2371, section 330, holding Defendant liable for indemnification to Plaintiff for response costs, damages, and attorneys' fees and interest incurred or to be incurred by Plaintiff with respect to the contamination at the Property.

**SECOND CLAIM FOR RELIEF**

**Breach of Contract**

40. Plaintiff incorporates by reference paragraphs 1-39 as though fully set forth herein.

41. The City of Alameda and the Navy entered into a valid Deed for the transfer of the Property.

42. Pursuant to the covenants of the Deed, Defendants are liable to the City of Alameda and subrogee Plaintiff for express indemnification and for costs of remediation and investigation of the environmental contaminant at the Property, including reasonable attorneys' fees associated with the enforcement of the City of Alameda's rights by subrogee under the Deed.

43. By reason of Defendants' failure to investigate, remediate and indemnify the City of Alameda for environmental contamination existing on the Property, due to the former operations of and occupancy by the Defendants, they have breached the terms of the Deed agreement.

44. As a result of this breach, Plaintiff has been damaged in an amount not less than $3,589,084.94. Current estimates for additional damages of $221,000.00 (amount to be proven at trial).

## THIRD CLAIM FOR RELIEF

### Declaratory Relief

45. Plaintiff incorporates by reference paragraphs 1-44 as though fully set forth herein.

46. An actual controversy now exists between Plaintiff and Defendant in that Plaintiff contends that Defendant is liable to Plaintiff for express indemnification under Section 330(b) of the National Defense Authorization Act of 1993 and for Breach of Contract of the Deed provisions for any response or other costs or damages which Plaintiff has incurred or may incur or be found liable for in connection with the environmental OCP contamination of the Property. Plaintiff believes that Defendant contends in all respects to the contrary.

47. A declaration of rights and obligations of the parties pursuant to title 28 section 2201 of the United States Code, binding in any subsequent action or actions to recover all further costs and damages incurred by Plaintiff, is appropriate and in the interest of justice in that an early determination of this controversy will avoid a multiplicity of litigation.

## PRAYER

WHEREFORE, Plaintiff prays for judgment against Defendant and each of them as follows:

1. Complete indemnification by Defendant, to include indemnity for remediation costs, contamination costs, response costs, expert costs, cost of litigation, attorney fees permitted by law, other related costs, and all other related damages;

2. For a judicial declaration that Defendant is liable under title 238 Section 2201 of the United States Code for all past, present and future costs and damages which may be incurred by Plaintiff in connection with OCP contamination of the Property, including without limitation, reasonable attorney fees permitted by law, and expert witness fees permitted by law.

3. All damages for breach of the Deed to include reasonable attorneys' fees permitted by law;

/////

/////

/////

4. For post-judgment interest, costs; and

5. For any other relief as the Court deems just and fair under all the circumstances.

DATED: May 12, 2005

COZEN O'CONNOR

By: ______________________________

Peter A. Lynch (SBN 123603)
Mark A. Vasallo (SBN 228037)
501 West Broadway, Suite 1610
San Diego, California 92101
Telephone: 619.234.1700
Facsimile: 619.234.7831

Attorneys for Plaintiff,
AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

SDIEGO1\263694\1 128791.000