38. Thence North 87°12'43" West, 185.65 feet;

39. Thence North 2°47'17" East, 319.31 feet a point on the northerly line of the parcel described in that certain Condemnation Suite No. 30735 recorded on December 21, 1951 in Book 6618 of Official Records at page 339, Alameda County Records;

40. Thence along said northerly line of the parcel described in that certain Judgment on Declaration of Taking entered in Civil Action No. 30735 recorded on December 21, 1951 in Book 6618 of Official Records at page 339, Alameda County Records, North 87°12'43" West, 83.75 feet to the TRUE POINT OF BEGINNING;

Containing an area of 57.81722 acres, more or less.

Basis of Bearings:
Bearings are based on the California Coordinate System of 1927 Zone III using the bearing of South 87°45'20" East between USC & GS Station "MAIN ATL" and USC & GS Station "ALT FIFTH". All distances in this description are ground distances. Multiply by 0.9999295 to obtain grid distances.

This description was prepared by me or under my direction in conformance with the requirements of the Land Surveyor's Act.

Prepared By:

LICENSED LAND SURVEYOR BILLY MARTIN EXP. 6/30/2004 No. 5797 STATE OF CALIFORNIA

Dated: 6-30-00

Billy Martin, P.L.S. 5797
Expires: 6/30/2004

Approved By:

LICENSED LAND SURVEYOR MICHAEL S. MAHONEY NO. 5577 Exp. 12/31/01 SURVEYOR STATE OF CALIFORNIA

Dated: July 5, 2000

Mike Mahoney, P.L.S. 5577
Expires: 12/31/2001

K:\MAIN\1998\980221\LEGALS\980221-50\AREA1.doc

1" = 400'

| LINE TABLE | | |
|---|---|---|
| LINE | BEARING | LENGTH |
| L1 | N 00°30'14" W | 746.23' |
| L2 | S 58°35'14" E | 153.54' |
| L3 | S 15°28'16" W | 100.37' |
| L4 | S 31°40'14" E | 82.16' |
| L5 | S 81°24'14" E | 285.99' |
| L6 | S 88°00'44" E | 87.24' |
| L7 | N 86°38'46" E | 16.02' |

| CURVE TABLE | | | |
|---|---|---|---|
| CURVE | DELTA | RADIUS | LENGTH |
| C1 | 00°12'27" | 30050.01' | 108.83' |
| C2 | 01°33'38" | 741.84' | 20.21' |
| C3 | 01°47'59" | 980.54' | 30.80' |
| C4 | 01°12'01" | 1457.97' | 30.54' |
| C5 | 00°36'00" | 2890.33' | 30.27' |




DETAIL "A"




LICENSED LAND SURVEYOR
BILLY MARTIN
EXP 6/30/2004
No. 5797
STATE OF CALIFORNIA

Brian Kangas Foulk
Engineers • Surveyors • Planners

540 Price Avenue
Redwood City, CA 94063
650/482-6300
650/482-6399 (FAX)

Subject EXHIBIT "A"
AREA 2 - PARCEL "A"
Job No. 980221-50
By RCS Date 05/12/00 Chkd. MP
SHEET 15 OF 18

PATH: J:\Sur98\980221\DWG\Plots\980221-50\ DATE: 5/12/2000 TIME: 9:08 a.m.

MBM - DAH 7/5/00




Curve Table

| No. | Radius | Delta | Length |
|---|---|---|---|
| C1 | 955.37' | 01°14'55" | 20.82' |
| C2 | 557.56' | 15°51'00" | 154.24' |
| C3 | 2867.82' | 00°36'00" | 30.03' |
| C4 | 1435.47' | 01°12'01" | 30.07' |
| C5 | 958.04' | 01°47'59" | 30.09' |
| C6 | 719.34' | 01°12'56" | 15.26' |
| C7 | 30050.01' | 00°56'00" | 489.48' |
| C8 | 60.00' | 63°17'05" | 66.28' |
| C9 | 1222.09' | 31°53'47" | 680.33' |
| C10 | 1434.10' | 07°09'19" | 179.09' |

Bearing Table

| No. | Bearing | Distance |
|---|---|---|
| L1 | S 76°59'47" W | 30.74' |
| L2 | N 00°30'07" W | 15.37' |
| L3 | S 76°59'47" W | 51.25' |
| L4 | N 00°30'13" W | 28.00' |
| L5 | N 89°29'47" E | 183.18' |
| L6 | N 00°42'53" W | 10.00' |
| L7 | N 87°10'47" E | 238.51' |
| L8 | N 02°04'31" E | 24.13' |
| L9 | S 75°18'52" W | 211.73' |
| L10 | N 87°12'43" W | 185.65' |
| L11 | N 02°47'17" E | 319.31' |
| L12 | N 87°12'43" W | 83.75' |
| L13 | S 87°12'43" E | 351.25' |

Subject EXHIBIT "A"
AREA 2 - PARCEL "B"

**Brian Kangas Foulk**
Engineers • Surveyors • Planners

540 Price Avenue
Redwood City, CA 94063
650/482-6300
650/482-6399 (FAX)

Job No. 980221-50
By RCS Date 5/12/00 Chkd. MP
SHEET 16 OF 18

...\980221\DWG\Plots\980221-50\ DATE: 5/12/2000 TIME: 7:46 a.m.

mem-004 7/5/00

## AREA 3

A parcel of land lying in the City and County of Alameda, State of California, and being a portion of Parcel No. 1 described in that certain deed recorded on December 18, 1944 in Book 4663 of Official Records at page 35, Alameda County Records, more particularly described as follows:

BEGINNING at the most southeasterly corner of said Parcel 1:

Thence along the easterly line of said parcel, North 15°28'16" East, 103.74 feet to the TRUE POINT OF BEGINNING;

1. Thence leaving said line North 89°40'23" West, 147.30 feet;
2. Thence North 0°19'37" East, 204.21 feet;
3. Thence South 77°04'25" East, 195.73 feet to a point on said easterly line;
4. Thence along said easterly line, South 15°28'16" West, 167.32 feet to the TRUE POINT OF BEGINNING;

Containing an area of 31,398 square feet, more or less.

Basis of Bearings:
Bearings are based on the California Coordinate System of 1927 Zone III using the bearing of South 87°45'20" East between USC & GS Station "MAIN ATL" and USC & GS Station "ALT FIFTH". All distances in this description are ground distances. Multiply by 0.9999295 to obtain grid distances.

This description was prepared by me or under my direction in conformance with the requirements of the Land Surveyor's Act.

Prepared By:

[signature]
Billy Martin, P.L.S. 5797
Expires: 6/30/2004

LICENSED LAND SURVEYOR — BILLY MARTIN — EXP. 6/30/2004 — No. 5797 — STATE OF CALIFORNIA

Dated: 6-30-00

Approved By:

Mike Mahoney
Mike Mahoney, P.L.S. 5577
Expires: 12/31/2001
K:\MAIN\1998\980221\LEGALS\AREA3.DOC

LICENSED LAND SURVEYOR — MICHAEL S. MAHONEY — NO. 5577 — Exp. 12/31/01 — SURVEYOR — STATE OF CALIFORNIA

Dated: July 5, 2000




**Brian Kangas Foulk**
Engineers • Surveyors • Planners

540 Price Avenue
Redwood City, CA 94063
650/482-6300
650/482-6399 (FAX)

Subject EXHIBIT "A"
AREA 3
Job No. 980221-50
By RCS Date 05/12/00 Chkd. MP
SHEET 18 OF 18

...\980221\DWG\Plots\980221-50\ DATE: 5/12/2000 MBM - DON 7/5/00

Recording Requested by:

City of Alameda or Alameda Reuse and Redevelopment Authority
Economic Development Division
950 West Mall Square, #215
Alameda, CA 94501
Attn: Jeffrey T. Bond

TRUE COPY of Document Recorded on July 20, 2000 as No. 2000 215936
FIRST AMERICAN TITLE COMPANY

When Recorded, Mail to:

Department of Toxic Substances Control
10151 Croydon Way, Suite 3
Sacramento, CA 95827-2106
Attention: A. J. Landis, P.E., Chief
Office of Military Facilities

# COVENANT
# TO RESTRICT USE OF PROPERTY
# (ENVIRONMENTAL RESTRICTIONS)

Fleet and Industrial Supply Center, Oakland
Alameda Facility and Alameda Annex
and
Alameda Naval Air Station East Housing
Alameda, California

This Covenant To Restrict Use of Property ("Covenant") is made on the 17 day of July, 2000 by the City of Alameda or Alameda Reuse and Redevelopment Authority ("City" or "ARRA" or "Covenantor"), which is the current owner of the property restricted by this Covenant, and the California Environmental Protection Agency - Department of Toxic Substances Control (the "Department" or "Covenantee").

## RECITALS/STATEMENT OF FACTS

A. Covenantor is the owner of record of that certain real property consisting of approximately 210 acres (the "Property") situated in the City of Alameda, County of Alameda, State of California. The Property formerly was part of the United States Navy installation commonly known as the Fleet and Industrial Supply Center, Oakland, Alameda Facility and Alameda Annex and the adjacent part of the former Alameda Naval Air Station commonly

known as East Housing. A legal description of the Property is set forth in Exhibit A and is incorporated herein by this reference. A figure depicting the location of the Property is set forth in Exhibit B and is incorporated herein by this reference.

B. The Property was formerly owned by the United States Navy.

C. The Navy has caused to be completed environmental response actions on and in connection with the Property. Such actions include, but are not limited to, preparation of a Removal Action Workplan for Marsh Crust at East Housing Area, Alameda Point ("RAW") that has been approved by the Department, and the implementation of response actions pursuant to the RAW that allow the Property to be used without significant risk to human health and without significant potential for future environmental damage.

D. Pursuant to California Civil Code section 1471(c), the Department has determined that this Covenant is reasonably necessary to protect present or future human health and safety or the environment as a result of the potential presence of hazardous materials, as defined in California Health and Safety Code section 25260, in the marsh crust and the shallowest groundwater zone, as defined below, under the surface of land at the Property. The Department has also determined that such protection is part of the remedy contemplated in the RAW. The Covenantor and the Department therefore intend that the use of the Property be restricted as set forth in this Covenant to protect human health, safety and the environment.

E. The Property is planned for mixed uses including residential use. Before 1920, the Property and surrounding areas were undeveloped tidal marsh along Alameda Island's San Francisco Bay shoreline. Between approximately 1900 and 1940, the Property and surrounding areas were filled with sand and clay material from unknown sources.

F. "Marsh crust" means the underground layer that is the remnant of the tidal marsh that existed along the shoreline of Alameda Island before filling to create additional dry land. In many places, this layer contains hazardous materials from former industrial discharges that were retained in the historic marsh before filling. These hazardous materials include petroleum hydrocarbons (TPH) and polynuclear aromatic hydrocarbons (PAHs). The marsh crust is a continuous underground layer, at depths of 5 to 20 feet from the surface, that extends bayward of

the original mean higher high tide line of Alameda Island, before filling, throughout the area that was filled.

G. The "shallowest groundwater zone" is in the fill at the Property, is first encountered at depths from 4 to 8 feet below ground surface (bgs) and extends to a maximum depth of approximately 20 feet bgs. The shallowest groundwater zone does not include any deeper groundwater zone that is hydraulically separated from the fill. In particular, the shallowest groundwater zone does not include the "Merritt Sand" zone, which is first encountered at approximately 10 to 105 feet bgs and is hydraulically separated from the fill by Bay Mud, the thickness of which ranges from 5 to 95 feet at the Property. The shallowest groundwater zone is currently not usable for drinking water because of the presence of naturally occurring inorganic constituents (total dissolved solids and some metals). Because of this intrinsic use limitation of the groundwater, the contamination of organic constituents (volatile organic compounds, TPH, and PAHs) related to former activities at or in the vicinity the Property, may, at this time, remain in place provided there are sufficient controls and restrictions to protect the public health, safety, and the environment.

## ARTICLE I
## ADDITIONAL DEFINITIONS

1.1 Occupant(s). "Occupant(s)" means any person or entity entitled by ownership, leasehold, or other legal relationship to occupy any portion of the Property.

1.2 Owner(s). "Owner(s)" means the Covenantor, its successors in interest and their successors in interest, including heirs and assigns, who at any time hold fee title to all or any portion of the Property.

1.3 Excavation ordinance. "Excavation ordinance" means City of Alameda Ordinance No. 2824, a copy of the current version of which is attached as Exhibit C and incorporated herein by this reference.

1.4 Threshold depth. "Threshold depth" is the elevation above which there is little likelihood that hazardous materials from the marsh crust would have mixed during filling. The threshold depth for any location at the Property is shown on an exhibit to the Excavation

ordinance and ~~will~~ be derived from the RAW or other applicable remedial decision document.

1.5 Permitted excavation. "Permitted excavation" means (i) excavation performed in accordance with a City permit approved and issued pursuant to the excavation ordinance when such permit is required under the terms of the excavation ordinance; or (ii) if the excavation ordinance has been repealed or the Department has made a written determination pursuant to subsection 3.2 that the excavation ordinance does not comport with the intent of this Covenant, excavation performed in accordance with a written approval issued by the Department.

1.6 Department. "Department" means the California Environmental Protection Agency, Department of Toxic Substances Control and its successor agencies, if any.

## ARTICLE II.
## GENERAL PROVISIONS

2.1 Restrictions to Run with the Land. This Covenant sets forth protective provisions, covenants, restrictions, and conditions (collectively referred to as "Restrictions"), subject to which the Property and every portion of the Property shall be improved, held, used, occupied, leased, sold, hypothecated, encumbered and/or conveyed. Each and every Restriction: (a) runs with the land pursuant to California Health & Safety Code section 25355.5(a)(1)(C) and California Civil Code section 1471; (b) inures to the benefit of and passes with each and every portion of the Property; (c) is for the benefit of, and is enforceable by the Department; and (d) is imposed upon the entire Property unless expressly stated as applicable only to a specific portion of the Property.

2.2 Binding Upon Owners/Occupants. Pursuant to California Health & Safety Code section 25355.5(a)(1)(C), this Covenant binds all Owners and Occupants of the Property, and their heirs, successors and assignees, and their agents, employees, and lessees. Pursuant to California Civil Code section 1471(b), all Owners of the Property are expressly bound by this Covenant for the benefit of Covenantee.

2.3 Incorporation into Deeds and Leases. The Restrictions set forth in this Covenant shall be incorporated by reference in each and all deeds, leases and subleases of any portion of the Property.

made a written determination with thirty (30) days prior written notice to the City that the excavation ordinance does not comport with the intent of this Covenant, then a permitted excavation may be conducted only in accordance with a written approval issued by the Department. Covenantor's application for such an approval shall be submitted to the Department and shall otherwise comply with the permit application requirements of the last version of the excavation ordinance or such other requirements as the Department may specify.

3.3 Access For Department. The Department shall have a reasonable right of entry and access to the outdoor areas of the property for inspection, monitoring, and other activities consistent with the purposes of this Covenant as deemed necessary by the Department to protect the public health or safety, or the environment.

3.4 Enforcement. Failure of the Covenantor, or Owner(s)/Occupant(s) to comply with any of the Restrictions specifically applicable to it shall be grounds for the Department to require that the Covenantor or Owner(s)/Occupant(s) remove any wells constructed or to close or otherwise remedy any excavation conducted in violation of the prohibited activities stated in subsection 3.2 of this Covenant. Violations of this Covenant shall be grounds for the Department to file civil or criminal actions as provided by law.

ARTICLE IV.
VARIANCE AND TERMINATION

4.1 Variance. Covenantor or any other aggrieved person may apply to the Department for a written variance from the provisions of this Covenant. Such application shall be made in accordance with California Health & Safety Code section 25233.

4.2 Termination. Covenantor or any other aggrieved person may apply to the Department for a termination of some or all of the Restrictions as they apply to all or any portion of the Property. Such application shall be made in accordance with California Health & Safety Code section 25234.

4.3 Term. Unless terminated in accordance with subsection 4.2 above, by law or by the Department in the exercise of its discretion, this Covenant shall continue in effect in

perpetuity.

ARTICLE V.
MISCELLANEOUS

5.1 No Dedication Intended. Nothing set forth in this Covenant shall be construed to be a gift or dedication, or offer of a gift or dedication, of the Property or any portion of the Property to the general public or anyone else for any purpose whatsoever.

5.2 Department References. All references to the Department include successor agencies/departments or other successor entity.

5.2 Notices. Whenever any person gives or serves any notice, demand, or other communication with respect to this Covenant, each such notice, demand, or other communication shall be in writing and shall be deemed effective (i) when delivered, if personally delivered to the person being served or to an officer of a corporate party being served or official of a government agency being served, or, (ii) three (3) business days after deposit in the mail if mailed by United States mail, postage paid and certified, return receipt requested:

To: "Covenantor":
City of Alameda or Alameda Reuse and Redevelopment Authority
Economic Development Division
950 West Mall Square, #215
Alameda, CA 94501
Attention: Jeffrey T. Bond

To: "Department":
Department of Toxic Substances Control
10151 Croydon Way, Suite 3
Sacramento, CA 95827-2106
Attention: A. J. Landis, P.E., Chief
Office of Military Facilities

Any party may change its address or the individual to whose attention a notice is to be sent by giving notice in compliance with this paragraph.

5.3 Partial Invalidity. If any portion of the Restrictions or terms set forth in this Covenant is determined by a court of competent jurisdiction to be invalid for any reason, the remaining portion shall remain in full force and effect as if such portion found invalid had not been included in this Covenant.

5.4 Article Headings. Headings at the beginning of each numbered article of this Covenant are solely for the convenience of the parties and are not a part of the Covenant.

5.5 Recordation. This instrument shall be executed by the Covenantor and by the Northern California Coastal Cleanup Operations Branch Chief, California Department of Toxic Substances Control. This instrument, with all referenced Exhibits, shall be recorded by the Covenantor in the County of Alameda within fifteen (15) days of the date of execution by both parties.

5.6 Statutory References. All statutory references include successor provisions.

5.7 Representative Authority. The undersigned representative of each party to this Covenant certifies that he or she is fully authorized to enter into this Covenant and to execute and legally bind that party to this Covenant.

IN WITNESS WHEREOF, the parties execute this Covenant as of the date set forth above.

OWNER: City of Alameda

By: ____________________
James M. Flint
Title: City Manager

Date: 7-14-2000

Approved as to Form
CITY ATTORNEY

By: ____________________

DEPARTMENT OF TOXIC SUBSTANCES CONTROL

By: ____________________
Anthony J. Landis, P.E.
Title: Chief, Office of Military Facilities

Date: ____________________

Covenant are solely for the convenience of the parties and are not a part of the Covenant.

5.5 Recordation. This instrument shall be executed by the Covenantor and by the Northern California Coastal Cleanup Operations Branch Chief, California Department of Toxic Substances Control. This instrument, with all referenced Exhibits, shall be recorded by the Covenantor in the County of Alameda within fifteen (15) days of the date of execution by both parties.

5.6 Statutory References. All statutory references include successor provisions.

5.7 Representative Authority. The undersigned representative of each party to this Covenant certifies that he or she is fully authorized to enter into this Covenant and to execute and legally bind that party to this Covenant.

IN WITNESS WHEREOF, the parties execute this Covenant as of the date set forth above.

OWNER: City of Alameda

By: ____________________
James M. Flint
Title: City Manager

Date: ____________________

Approved as to Form
CITY ATTORNEY

By: ____________________
DEPARTMENT OF TOXIC SUBSTANCES CONTROL

By: Anthony J. Landis
Anthony J. Landis, P.E.

Title: Chief, Office of Military Facilities

Date: 7-13-00

OWNER: Alameda Reuse and Redevelopment Authority

By: [signature]
James M. Flint

Title: Executive Director

Date: 7-14-2000

Approved as to Form
GENERAL COUNSEL

By: [signature]

STATE OF CALIFORNIA )
COUNTY OF Sacramento )

On July 13, 2000 before me, a Notary Public in and for State of California, personally appeared Anthony J. Landis, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument, the Department of Toxic Substances Control executed the instrument.

WITNESS my hand and official seal.

Toni Ione Malik

Notary's Signature

P:\ALAMEDA\FISC\DTSCMC2.WPD

TONI IONE MALIK
COMM. #1121781
Notary Public-California
SACRAMENTO COUNTY
My Comm. Exp. Jan. 9, 2001

STATE OF CALIFORNIA )
)
COUNTY OF Alameda )

On July 14, 2000 before me, a Notary Public in and for State of California, personally appeared James M. Flint, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he executed the same in his authorized capacity, and that by her/his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Lara Weisiger
Notary's Signature

LARA WEISIGER
Commission # 1151643
Notary Public - California
Alameda County
My Comm. Expires Aug 16, 2001

STATE OF CALIFORNIA )
)
COUNTY OF Alameda )

On July 14, 2000 before me, a Notary Public in and for State of California, personally appeared James M. Flint, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he executed the same in his authorized capacity, and that by her/his signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

Lara Weisiger

Notary's Signature

C:\OFFICE\WPWIN\WPDOCS\ARRA\DTSCMC2.COV

LARA WEISIGER
Commission # 1151643
Notary Public - California
Alameda County
My Comm. Expires Aug 16, 2001

# Exhibit A

**Alameda Naval Air Station**
**East Housing**

A parcel of land being a portion of the Alameda Naval Air Station, Alameda, California, lying in the city and county of Alameda, State of California, and being all of the parcel described in that certain deed recorded June 18, 1963 in Reel 924 of Official Records at Image 879, Alameda County Records, and being all of the parcel described in that certain deed recorded April 29, 1963 in Reel 871 of Official Records at Image 596, Alameda County Records, and being a portion of the parcel described in that certain deed recorded March 28, 1941 in Book 4023 of Official Records at page 499, Alameda County Records, more particularly described as follows:

BEGINNING at the intersection of the northerly line of Atlantic Avenue, being 51 feet wide, and the easterly line of Main Street as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Records of Survey at page 16 through 22, inclusive, in the Office of the Recorder of Alameda County:

1. Thence along said easterly line of Main Street and the westerly boundary line of the parcel described in that certain deed recorded March 28, 1941 in Book 4023 of Official Records at page 499, Alameda County Records, North 00°34'11" East, 1240.19 feet to the northerly line of the parcel described in that certain deed recorded on June 18, 1963 in Reel 924 of Official Records at Image 879, Alameda County Records;

2. Thence leaving said easterly line of Main Street along said northerly line of the parcel described that certain deed recorded on June 18, 1963 in Reel 924 of Official Records at Image 879, Alameda County Records, South 87°51'51" East, 1798.27 feet to the northwesterly corner of the parcel described in that certain deed recorded on April 29, 1963 in Reel 871 of Official Records at Image 596, Alameda County Records;

3. Thence along the northerly line of the parcel described in that certain deed recorded on April 29, 1963 in Reel 871 of Official Records at Image 596, Alameda County Records, South 87°51'51" East, 777.49 feet to the northeasterly corner of said parcel;

4. Thence leaving said line and along the easterly line of the parcel described in that certain deed recorded on April 29, 1963 in Reel 871 of Official Records at Image 596, Alameda County Records, and its southerly prolongation, South 02°08'09" West, 1241.94 feet to the northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Records of Survey at page 16 through 22, inclusive, Alameda County Records;

5. Thence westerly along said northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Records of Survey at page 16 through 22, inclusive, North 85°25'42" West, 729.54 feet;

6. Thence continuing westerly along said northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Records of Survey at page 16 through 22, inclusive, South 89°49'20" West, 884.20 feet;

7. Thence continuing westerly along said northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Maps at page 16 through 22, inclusive, North 87°26'18" West, 929.55 feet to the POINT OF BEGINNING.

Containing an area of 72.45396 acres, more or less.

Basis of Bearings:
Bearings are based on the California Coordinate System of 1927 Zone III using the bearing of South 87°45'20" East between USC & GS Station "MAIN ATL" and USC & GS station "ALT FIFTH".All distances in this description are ground distances. Multiply by 0.9999295 to obtain grid distances.

A plat showing the above description is attached herein and made a part hereof as Exhibit "B".

This description was prepared by me or under my direction in conformance with the requirements of the Land Surveyor's Act.

Prepared By:

LICENSED LAND SURVEYOR
BILLY MARTIN
EXP. 6/30/2004
No. 5797
STATE OF CALIFORNIA

Billy Martin, P.L.S. 5797
Expires: 6/30/2004

Dated: JULY 17, 2000

K:\MAIN\1998\980221\LEGALS\EHOUSE071700.DOC

**FISC North**

A parcel of land lying in the City and County of Alameda, State of California, and being a portion of Parcel 1 and Parcel 2 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records and a portion of Parcel No. 1 and Parcel No. 2 described in that certain deed recorded on December 18, 1944 in Book 4663 of Official Records at page 35, Alameda County Records and a portion of the parcel described in that certain deed recorded on December 18, 1944 in Book 4652 of Official Records at page 172, Alameda County Records and a portion of Parcel No. 1 and Parcel No. 2 described in that certain deed recorded on December 18, 1944 in Book 4652 of Official Records at page 168, Alameda County Records more particularly described as follows:

BEGINNING at the most northwesterly corner of the parcel described in that certain deed recorded on December 18, 1944 in Book 4652 of Official Records at page 172, Alameda County Records:

1. Thence along said northerly line of the parcel described in that certain deed recorded on December 18, 1944 in Book 4652 of Official Records at page 172, Alameda County Records, North 86°38'46" East, 16.02 feet to a point of intersection with the easterly line of Parcel 10 described in that certain deed recorded on April 8, 1984 as Document Number 84-064504, Official Records Alameda County, being the TRUE POINT OF BEGINNING;

2. Thence continuing along the northerly line of said parcel described in that certain deed recorded on December 18, 1944 in Book 4652 of Official Records at page 172, Alameda County Records, North 86°38'46" East, 402.97 feet;

3. Thence continuing along said northerly line of the parcel described in that certain deed recorded on December 18, 1944 in Book 4652 of Official Records at page 172, Alameda County Records, South 84°06'14" East, 567.60 feet;

4. Thence continuing along said northerly line of the parcel described in that certain deed recorded on December 18, 1944 in Book 4652 of Official Records at page 172, Alameda County Records, North 87°53'46" East, 726.00 feet;

5. Thence continuing along said northerly line of the parcel described in that certain deed recorded on December 18, 1944 in Book 4652 of Official Records at page 172, Alameda County Records, South 87°21'14" East, 858.00 feet;

6. Thence continuing along said northerly line of the parcel described in that certain deed recorded on December 18, 1944 in Book 4652 of Official Records at page 172, Alameda County Records, South 58°36'14" East, 153.54 feet to the most

northwesterly corner of the parcel described in that certain deed recorded on September 24, 1941 in Book 4142 of Official Records at page 18, Alameda County Records;

7. Thence leaving said northerly line and along the westerly line of the parcel described in that certain deed recorded on September 24, 1941 in Book 4142 of Official Records at page 18, Alameda County Records, South 15°28'16" West, 579.96 feet to the most northwesterly corner of Parcel No. 2 described in that certain deed recorded on December 18, 1944 in Book 4663 of Official Records at page 35;

8. Thence leaving said westerly line and along the northerly line of Parcel No. 2 described in that certain deed recorded on December 18, 1944 in Book 4663 of Official Records at page 35, Alameda County Records, South 31°40'14" East, 82.16 feet;

9. Thence continuing along said northerly line of Parcel No. 2 described in that certain deed recorded on December 18, 1944 in Book 4663 of Official Records at page 35, Alameda County Records, South 81°24'14" East, 285.99 feet;

10. Thence continuing along said northerly line of Parcel No. 2 described in that certain deed recorded on December 18, 1944 in Book 4663 of Official Records at page 35, Alameda County Records, South 88°00'44" East, 87.24 feet to the most northwesterly corner of Parcel B described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 701, Alameda County Records, being a point on a non-tangent curve to the left from which point a radial line bears South 65°48'44" East;

11. Thence leaving said northerly line and along the westerly line of Parcel B described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 701, Alameda County Records, along said curve having a radius of 30050.01 feet, through a central angle of 0°12'27", for an arc length of 108.83 feet to a point on the southerly line of Parcel 2 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records, being a point on a non-tangent curve to the left from which point a radial line bears South 13°02'54" West;

12. Thence leaving said westerly line along said southerly line of Parcel 2 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records, along said curve having a radius of 741.84 feet, through a central angle of 1°33'38", for an arc length of 20.21 feet to a point of compound curvature;

13. Thence continuing along said southerly line of Parcel 2 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records, along said curve having a radius of 980.54 feet, through a central angle of 1°47'59", for an arc length of 30.80 feet to a point of compound curvature;

14. Thence continuing along said southerly line of Parcel 2 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records, along said curve having a radius of 1457.97 feet, through a central angle of 1°12'01", for an arc length of 30.54 feet to the beginning of a non-tangent curve to the left from which point a radial line bears South 08°27'44" West;

15. Thence continuing along said southerly line of Parcel 2 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records, along said curve having a radius of 2890.33 feet, through a central angle of 0°36'00", for an arc length of 30.27 feet;

16. Thence continuing along said southerly line of Parcel 2 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County, North 82°06'43" West, 848.13 feet to a point on the southerly line of Parcel No. 1 described in that certain deed recorded on December 18, 1944 in Book 4652 of Official Records at page 168, Alameda County Records;

17. Thence leaving said southerly line of Parcel 2 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County, and along said southerly line of Parcel No. 1 described in that certain deed recorded on December 18, 1944 in Book 4652 of Official Records at page 168, Alameda County Records, North 88°07'13" West, 422.49 feet to the most southeasterly corner of Parcel 1 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records;

18. Thence along said southerly of Parcel 1 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records, North 89°46'04" West, 1515.46 feet to a point of intersection with the easterly line of Parcel 10 described in that certain deed recorded on April 8, 1984 as Document Number 84-064504 Official Records Alameda County;

19. Thence along said easterly line of Parcel 10 described in that certain deed recorded on April 8, 1984 as Document Number 84-064504 Official Records Alameda County, North 0°30'14" West, 746.23 feet to the <u>TRUE POINT OF BEGINNING;</u>

Containing an area of 45.45148 acres, more or less.

Basis of Bearings:
Bearings are based on the California Coordinate System of 1927 Zone III using the bearing of South 87°45'20" East between USC & GS Station "MAIN ATL" and USC & GS Station "ALT FIFTH". All distances in this description are ground distances. Multiply by 0.9999295 to obtain grid distances.

A plat showing the above description is attached herein and made a part hereof as Exhibit "B".

This description was prepared by me or under my direction in conformance with the requirements of the Land Surveyor's Act.

Prepared By:

Billy Martin, P.L.S. 5797
Expires: 6/30/2004

LICENSED LAND SURVEYOR
BILLY MARTIN
EXP. 6/30/2004
No. 5797
STATE OF CALIFORNIA

Dated: July 17, 2000

K:\MAIN\1998\980221\LEGALS\FISCNORTH071700.DOC

**FISC South**

A parcel of land lying in the City and County of Alameda, State of California, and being a portion of the parcel described in that certain Judgment on Declaration of Taking entered in Civil Action No. 30735 recorded on December 21, 1951 in Book 6618 of Official Records at page 339, Alameda County Records, and being all of Parcel 2 described in that certain deed recorded on September 2, 1948 in Book 5597 of Official Records at page 433 and being a portion of Parcel 1 described in that certain deed recorded on July 22, 1948 in Book 5582 of Official Records at page 597, Alameda County Records, and being a portion of the parcel described in that certain deed recorded on July 21, 1944 in Book 4499 of Official Records at page 401, Alameda County Records, and being a portion of the parcel described in that certain deed recorded on June 29, 1944 in Book 4499 of Official Records at page 384, Alameda County Records, and being a portion of the parcel described in that certain deed recorded on June 29, 1944 in Book 4499 of Official Records at page 316, Alameda County Records, and being a portion of Parcel 1 described in that certain deed recorded on February 14, 1955 in Book 7567 of Official Records at page 117, Alameda County Records, and being a portion of Parcel 3 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records, and all of Parcel 2 described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 712, Alameda County Records, and all of the parcel described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 707, Alameda County Records, and all of the parcel described in that certain deed recorded on September 16, 1959 in Book 9152 of Official Records at page 57, Alameda County Records, more particularly described as follows:

BEGINNING at the intersection of the northerly line of Atlantic Avenue, being 51 feet wide, and the easterly line of Main Street as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Records of Survey at page 16 through 22, inclusive, in the Office of the Recorder of Alameda County:

1. Thence along said easterly line of Main Street and the westerly boundary line of the parcel described in that certain deed recorded on March 28, 1941 in Book 4023 of Official Records at page 499, Alameda County Records, North 00°34'11" East, 1240.19 feet to the southerly line of the parcel described in that certain deed recorded on December 21, 1951 in Book 6618 of Official Records at page 339, Alameda County Records, and the TRUE POINT OF BEGINNING;

2. Thence continuing along said easterly line of Main Street, North 00°34'11" East, 596.74 feet;

3. Thence leaving said easterly line of Main Street, South 87°57'28" East, 1923.89 feet;

4. Thence North 02°47'17" East, 364.75 feet to a point on the southerly line of Parcel 1 described in that certain deed recorded on February 14, 1955 in Book 7567 of Official Records at page 117, Alameda County Records;

5. Thence along said southerly line of Parcel 1 as described in that certain deed recorded on February 14, 1955 in Book 7567 of Official Records at page 117, Alameda County Records, South 87°12'43" East, 351.25 feet;

6. Thence leaving said southerly line of Parcel 1 as described in that certain deed recorded on February 14, 1955 in Book 7567 of Official Records at page 117, Alameda County Records, North 2°47'17" East, 1161.09 feet;

7. Thence North 87°21'26" West, 426.49 feet to a point on the easterly line of the parcel described in that certain deed recorded on August 10, 1966 in Reel 1821 of Official Records at Image 494, Alameda County Records;

8. Thence along said easterly line of the parcel described in that certain deed recorded on August 10, 1966 in Reel 1821 of Official Records at Image 494, Alameda County Records, North 2°47'17" East, 293.60 feet to the northeasterly corner of said parcel;

9. Thence along the northerly line of said parcel described in that certain deed recorded on August 10, 1966 in Reel 1821 of Official Records at Image 494, Alameda County Records, North 89°46'04" West, 1180.27 feet;

10. Thence continuing along the northerly line of said parcel described in that certain deed recorded August 10, 1966 in Reel 1821 of Official Records at Image 494, Alameda County Records, South 76°59'47" West, 30.74 feet;

11. Thence continuing along the northerly line of said parcel described in that certain deed recorded on August 10, 1966 in Reel 1821 of Official Records at Image 494, Alameda County Records, North 00°30'07" West, 15.37 feet;

12. Thence continuing along the northerly line of said parcel described in that certain deed recorded August 10, 1966 in Reel 1821 of Official Records at Image 494, Alameda County Records, South 76°59'47" West, 51.25 feet to a point on the easterly line of Parcel 9 described in that certain document recorded on April 8, 1984 as Document Number 84-064504 of Official Records, Alameda County;

13. Thence along said easterly line of Parcel 9 described in that certain document recorded on April 8, 1984 as Document Number 84-064504 of Official Records, Alameda County, North 00°30'13" West, 28.00 to the most northwesterly corner of Parcel 2 described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 712, Alameda County Records, being a point on a non-tangent curve to the right from which point a radial line bears South 17°36'08" East;

14. Thence leaving said easterly line of Parcel 9 described in that certain document recorded on April 8, 1984 as Document Number 84-064504 of Official Records, Alameda County, and along the northerly line of Parcel 2 described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 712, Alameda County Records, along said curve having a radius of 955.37 feet, through a central angle of 1°14'55", for an arc length of 20.82 feet to a point of compound curvature;

15. Thence continuing along said northerly line of Parcel 2 described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 712, Alameda County Records, along said curve having a radius of 557.56 feet, through a central angle of 15°51'00", for an arc length of 154.24 feet;

16. Thence continuing along said northerly line of Parcel 2 described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 712, Alameda County Records, North 89°29'47" East, 183.18 feet to a point on the westerly line of the parcel described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 707, Alameda County Records;

17. Thence along said westerly line of the parcel described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 707, Alameda County Records, North 00°42'53" West, 10.00 feet to the northwesterly corner of said parcel;

18. Thence along the northerly line of the parcel described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 707, Alameda County Records, North 87°10'47" East, 238.51 feet to the beginning of a tangent curve to the right;

19. Thence continuing along said northerly line of the parcel described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 707, Alameda County Records, along said curve having a radius of 1136.01 feet, through a central angle of 3°03'09", for an arc length of 60.52 feet;

20. Thence continuing along said northerly line of the parcel described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 707, Alameda County Records, South 89°46'04" East, 1216.24 feet;

21. Thence continuing along said northerly line of the parcel described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 707, Alameda County Records, South 88°07'13" East, 367.67 feet to the beginning of a tangent of curve to the right;

22. Thence continuing along said northerly line of the parcel described in that certain deed recorded December 1, 1967 in Reel 2084 of Official Records at Image 707, Alameda County Records, along said curve having a radius of 563.14 feet, through a central angle of 6°00'30", for an arc length of 59.05 feet;

23. Thence continuing along said northerly line of the parcel described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 707, Alameda County Records, South 82°06'43" East, 335.29 feet to a point on the northerly line of Parcel 3 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records;

24. Thence along said northerly line of Parcel 3 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records, South 82°06'43" East, 505.98 feet to the beginning of a tangent curve to the right;

25. Thence continuing along said northerly line of Parcel 3 described in that certain deed recorded on August 9, 1945 in Book 4757 of Official Records at page 138, Alameda County Records, along said curve having a radius of 2867.82 feet, through a central angle of 00°36'00", for an arc length of 30.03 feet to a point of compound curvature;

26. Thence continuing along said northerly line of Parcel 3 described in that certain deed recorded on June 20, 1956 in Book 4757 of Official Records at page 138, Alameda County Records, along said curve having a radius of 1435.47 feet, through a central angle of 1°12'01", for an arc length of 30.07 feet to a point of compound curvature;

27. Thence continuing along said northerly line of Parcel 3 described in that certain deed recorded on June 20, 1956 in Book 4757 of Official Records at page 138, Alameda County Records, along said curve having a radius of 958.04 feet, through a central angle of 01°47'59", for an arc length of 30.09 feet to a point of compound curvature;

28. Thence continuing along said northerly line of Parcel 3 described in that certain deed recorded on June 20, 1956 in Book 4757 of Official Records at page 138, Alameda County Records, along said curve having a radius of 719.34 feet, through a central angle of 1°12'56", for an arc length of 15.26 feet to the most northerly corner of Parcel A described in that certain deed recorded on December 1, 1967 in Book 2084 of Official Records at page 701, Alameda County Records, being a point on a non-tangent curve to the left from which point a radial line bears South 66°03'48" East;

29. Thence along the westerly line of Parcel A described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 701, Alameda County Records, along said curve having a radius of 30,050.01 feet, through a central angle of 00°56'00", for an arc length of 489.48 feet to the beginning of a non-tangent curve to the left, from which point a radial line bears South 2°09'25" East;

30. Thence continuing along said westerly line of Parcel A described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image

701, Alameda County Records, along said curve having a radius of 60.00 feet, through a central angle of 63°17'05", for an arc length of 66.28 feet to a point of compound curvature;

31. Thence continuing along said westerly line of Parcel A described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 701, Alameda County Records, along said curve having a radius of 1222.09 feet, through a central angle of 31°53'47", for an arc length of 680.33 feet to a point of compound curvature;

32. Thence continuing along said westerly line of Parcel A described in that certain deed recorded on December 1, 1967 in Reel 2084 of Official Records at Image 701, Alameda County Records, along said curve having a radius of 1434.10 feet, through a central angle of 07°09'19", for an arc length of 179.09 feet to a point on the southerly line of that certain deed recorded on July 22, 1948 in Book 5582 of Official Records at page 597, Alameda County Records;

33. Thence along said southerly line of the parcel described in that certain deed recorded on July 22, 1948 in Book 5582 of Official Records at page 597, Alameda County Records, North 87°12'43" West, 332.59 feet to the northwesterly corner of that certain Parcel Map recorded on October 2, 1981 in Book 131 of Maps at page 1 through 2, inclusively, Alameda County Records;

34. Thence along the westerly line of that certain Parcel Map recorded on October 2, 1981 in Book 131 of Maps at page 1 through 2, inclusively, Alameda County Records, South 02°04'31" West, 464.06 feet to a point on the northerly line of the parcel described in that certain deed recorded on February 11, 1960 in Reel 25 of Official Records at Image 976, Alameda County Records;

35. Thence along said northerly line of the parcel described in that certain deed recorded February 11, 1960 in Reel 25 of Official Records at Image 976, Alameda County Records, North 87°55'29" West, 499.91 feet to the northwesterly corner of said parcel;

36. Thence leaving said northerly line and along the westerly line of the parcel described in that certain deed recorded on February 11, 1960 in Reel 25 of Official Records at Image 976, Alameda County Records, South 2°08'09" West, 624.82 feet to a point on the southerly line of the parcel described in that certain Judgment on Declaration of Taking entered in Civil Action No. 30735 recorded on December 21, 1951 in Book 6618 of Official Records at page 339;

37. Thence along said southerly line of the parcel described in that certain Judgment on Declaration of Taking entered in Civil Action No. 30735 recorded on December 21, 1951 in Book 6618 of Official Records at page 339, Alameda County Records, North 87°51'51" West, 2730.99 feet to the TRUE POINT OF BEGINNING.

Containing an area of 100.14102 acres, more or less.

Basis of Bearings:
Bearings are based on the California Coordinate System of 1927 Zone III using the bearing of South 87°45'20" East between USC & GS Station "MAIN ATL" and USC & GS station "ALT FIFTH". All distances in this description are ground distances. Multiply by 0.9999295 to obtain grid distances.

A plat showing the above description is attached herein and made a part hereof as Exhibit "B".

This description was prepared by me or under my direction in conformance with the requirements of the Land Surveyor's Act.

Prepared By:

LICENSED LAND SURVEYOR
BILLY MARTIN
EXP. 6/30/2004
No. 5797
STATE OF CALIFORNIA

Billy Martin, P.L.S. 5797
Expires: 6/30/2004

Dated: July 17, 2000

K:\MAIN\1998\980221\LEGALS\FISCSOUTH071700.DOC

# Exhibit B




**Brian Kangas Foulk**
Engineers • Surveyors • Planners

540 Price Avenue
Redwood City, CA 94063
650/482-6300
650/482-6399 (FAX)

Subject EXHIBIT "B"
EAST HOUSING
Job No. 980221-10
By SPM Date 5-11-00 Chkd. MP
SHEET 1 OF 1

DATE: 5/11/2000

B 1 of 3

1" = 400'

| LINE TABLE | | |
|---|---|---|
| LINE | BEARING | LENGTH |
| L1 | N 00°30'14" W | 746.23' |
| L2 | S 58°36'14" E | 153.54' |
| L3 | S 15°28'16" W | 100.37' |
| L4 | S 31°40'14" E | 82.16' |
| L5 | S 81°24'14" E | 285.99' |
| L6 | S 88°00'44" E | 87.24' |
| L7 | N 86°38'46" E | 16.02' |

| CURVE TABLE | | | |
|---|---|---|---|
| CURVE | DELTA | RADIUS | LENGTH |
| C1 | 00°12'27" | 30050.01' | 108.83' |
| C2 | 01°33'38" | 741.84' | 20.21' |
| C3 | 01°47'59" | 980.54' | 30.80' |
| C4 | 01°12'01" | 1457.97' | 30.54' |
| C5 | 00°36'00" | 2890.33' | 30.27' |




## DETAIL "A"




LICENSED LAND SURVEYOR
BILLY MARTIN
EXP. 6/30/2004
No. 5797
STATE OF CALIFORNIA

**Brian Kangas Foulk**
Engineers • Surveyors • Planners

540 Price Avenue
Redwood City, CA 94063
650/482-6300
650/482-6399 (FAX)

Subject EXHIBIT "B"
FISC NORTH
Job No. 980221-10
By RCS Date 05/15/00 Chkd. MP
SHEET 1 OF 1

PATH: J:\Sur98\980221\DWG\Plots\ DATE: 5/15/2000




Curve Table

| No. | Radius | Delta | Length |
|---|---|---|---|
| C1 | 955.37' | 01°14'55" | 20.82' |
| C2 | 557.56' | 15°51'00" | 154.24' |
| C3 | 2867.82' | 00°36'00" | 30.03' |
| C4 | 1435.47' | 01°12'01" | 30.07' |
| C5 | 958.04' | 01°47'59" | 30.09' |
| C6 | 719.34' | 01°12'56" | 15.26' |
| C7 | 30050.01' | 00°56'00" | 489.48' |
| C8 | 60.00' | 63°17'05" | 66.28' |
| C9 | 1222.09' | 31°53'47" | 680.33' |
| C10 | 1434.10' | 07°09'19" | 179.09' |

Bearing Table

| No. | Bearing | Distance |
|---|---|---|
| L1 | S 76°59'47" W | 30.74' |
| L2 | N 00°30'07" W | 15.37' |
| L3 | S 76°59'47" W | 51.25' |
| L4 | N 00°30'13" W | 28.00' |
| L5 | N 89°29'47" E | 183.18' |
| L6 | N 00°42'53" W | 10.00' |
| L7 | N 87°10'47" E | 238.51' |

**Brian Kangas Foulk**
Engineers • Surveyors • Planners

540 Price Avenue
Redwood City, CA 94063
650/482-6300
650/482-6399 (FAX)

Subject EXHIBIT "B"
FISC SOUTH
Job No. 980221-10
By RCS Date 5/12/00 Chkd. MP
SHEET 1 OF 1

PATH J:\SUR98\980221\DWG\Plots\ DATE: 5/12/2000

# Exhibit C

RECEIVED
FEB 1 7 2000
CITY ... ALAMEDA
ALAMEDA POINT

CITY OF ALAMEDA ORDINANCE NO. 2824
New Series

AMENDING THE ALAMEDA MUNICIPAL CODE BY AMENDING CHAPTER XIII (BUILDING AND HOUSING) BY ADDING A NEW SECTION 13-56 (EXCAVATION INTO THE MARSH CRUST/SUBTIDAL ZONE AT THE FORMER NAVAL AIR STATION ALAMEDA AND FLEET INDUSTRIAL SUPPLY CENTER, ALAMEDA ANNEX AND FACILITY) TO ARTICLE XVII (PITS, WELLS AND EXCAVATIONS)

WHEREAS, the marshlands and near shore areas once located adjacent to the island of Alameda were filled with dredge material between approximately 1900 and 1940; and

WHEREAS, the marsh crust, and the subtidal zone extending from it, is a horizon that is identifiable in the subsurface (the interface at the bottom of the fill material) which contains remnants of grasses and other intertidal and subtidal features; and

WHEREAS, the marsh crust/subtidal zone also contains, at least locally, elevated levels of petroleum-related substances, such as semi-volatile organic compounds, which substances may pose an unacceptable risk to human health and the environment if excavated in marsh crust/subtidal zone materials, brought to the ground surface and handled in an uncontrolled manner; and

WHEREAS, proper handling, storage and disposal of materials excavated from the marsh crust/subtidal zone, pursuant to state and federal hazardous materials laws, will help eliminate unacceptable exposures and risks to human health and the environment; and

WHEREAS, the Draft Base-wide Focused Feasibility Study for the Former Subtidal Area and Marsh Crust and Ground Water (U.S. Navy, February 20, 1999) recommends implementation by the City of an institutional control, such as an excavation ordinance, as a remedial action related to the cleanup by the United States Navy of Naval Air Station Alameda and the Fleet Industrial Supply Center, Alameda Annex and Facility, which closed military installations are anticipated to be transferred to the City; and

WHEREAS, it can be seen with a certainty that adoption of a permitting program by the City that requires proper handling, storage and disposal, pursuant to existing state and federal hazardous materials laws, of materials excavated from the marsh crust/subtidal zone will not involve or require any physical activities other than optional testing of excavated materials and, therefore, is exempt from the California Environmental Quality Act pursuant to California Code of Regulations, title 14, section 15061(b)(3) because there is no possibility that the enactment of the ordinance may have a significant effect on the environment.

CITY ATTORNEY

NOW, THEREFORE, BE IT ORDAINED by the Council of the City of Alameda that:

Section 1. The Alameda Municipal Code is hereby amended by adding a new Section 13-56 (Excavation Into the Marsh Crust/Subtidal Zone at the Former Naval Air Station Alameda and Fleet Industrial Supply Center) to Article XVII (Pits, Wells and Excavations) of Chapter XIII (Building and Housing) thereof to read:

**13-56 EXCAVATION INTO THE MARSH CRUST/SUBTIDAL ZONE AT THE FORMER NAVAL AIR STATION ALAMEDA AND FLEET INDUSTRIAL SUPPLY CENTER, ALAMEDA ANNEX AND FACILITY.**

**13-56.1 DEFINITIONS.**

For purposes of this Section 13-56 the following definitions shall apply:

*Bay* shall mean San Francisco Bay, including the Oakland Estuary and the Oakland Inner Harbor.

*DTSC* shall mean the California Environmental Protection Agency, Department of Toxic Substances Control.

*Earth material* shall mean any rock, natural soil or fill or any combination thereof.

*Excavation* shall mean the mechanical removal of earth material.

*Hazardous materials*, as defined in California Health and Safety Code sections 25260(d) and 25501(k), shall mean any material that, because of its quantity, concentration, or physical or chemical characteristics, poses a significant or potential hazard to human health and safety, or to the environment. Hazardous materials include, but are not limited to, hazardous substances, hazardous waste and any material which a handler or the administering agency has reasonable basis for believing would be injurious to the health and safety of persons or harmful to the environment if released into the workplace or the environment.

*Marsh crust* shall mean the underground layer that is the remnant of the tidal marsh that existed along the shoreline of Alameda Island before filling to create additional dry land. In many places, this layer contains substances from former industrial discharges that were retained in the historic marsh before filling.

*Subtidal zone* shall mean the underground layer that is the pre-filling Bay floor extension of the historic marsh. Together, the marsh crust and the subtidal zone constitute a single, continuous, underground layer that extends Bayward of the original mean higher high tide line of Alameda Island, before filling, throughout the area that was filled.

*Threshold depth* shall mean the depth below which a permit is required by this Section 13-56. The threshold depth is conservatively identified with the elevation above which there is little likelihood that substances from the historic marsh or Bay floor would have mixed during filling, including a margin of safety above the elevation of the historic marsh surface or subtidal zone. In no event will the threshold depth be above mean higher high water.

**13-56.2 Permit Required.**

a. It shall be unlawful for any person, including utility companies and their employees and contractors, to excavate below a threshold depth above the marsh crust/subtidal zone within the area of the former Naval Air Station Alameda and Fleet and Industrial Supply Center, Alameda Annex and Facility, as depicted in Exhibit A, hereto, without first obtaining a permit in writing from the Chief Building Official.

b. All excavation below the threshold depth in the area subject to this Section 13-56 shall be performed solely in accordance with the permit as approved and issued by the City.

**13-56.3 Depth of Excavation Subject to Permit Requirement.**

The Chief Building Official shall establish a threshold depth, consistent with DTSC's remedial decision documents pertaining to the marsh crust/subtidal zone, below which a permit shall be required for excavation pursuant to this Section 13-56. The threshold depth may vary by location. The Chief Building Official shall publish a map depicting the parcels and threshold depths for which a permit is required under this Section 13-56. The Chief Building Official may update the map, consistent with DTSC's remedial decision documents pertaining to the marsh crust/subtidal zone, as necessary to incorporate any new information concerning the depth of the marsh crust/subtidal zone received by the City since the preparation of the initial map or last update.

**13-56.4 Exception to Permit Requirement.**

a. No permit shall be required under this Section 13-56 for pile driving or other penetration of the marsh crust/subtidal zone that involves neither (i) bringing materials from below the threshold depth to above the threshold depth; nor (ii) exposure of construction workers to soil excavated from below the threshold depth.

b. No permit shall be required under this Section 13-56 for excavation associated with emergency repair of public infrastructure facilities; provided, however, that soil excavated from below the threshold depth in the area of the marsh crust/subtidal zone, as depicted on Exhibit A, must be managed as though it were hazardous in accordance with Subsection 13-56.8b.

**13-56.5 Permit Application.**

Application for a permit shall be made in writing on forms available in or from the Building Services Office and shall be filed in the Building Services Office. Subsection 13-1.2 of Article I of Chapter XXIII regarding Appeals (Section 105.1), Appeal Fee (Section 105.2), Expiration (Section 106.4.4), Permit Fees (Section 107.2) and Plan Review Fees (Section 107.3) shall apply to all permits issued pursuant to this Section 13-56. The information required to be provided on the application shall be determined by the Chief Building Official and shall include at a minimum:

a. A description and map of the property that is to be excavated sufficient to locate the area of proposed excavation on Exhibit A.

b Detailed plans, prepared by a registered civil engineer licensed in the State of California, of the excavation work to be done, including a drawing with dimensions to scale of all proposed excavation activity.

c. A statement of the maximum depth of excavation.

d. All elevations in plans and application materials submitted to the City shall be referenced to City Datum and shall show depth below ground surface.

e. A cost estimate for purposes of determining the amount of the bond required to be obtained pursuant to Subsection 13-56.11.

**13-56.6 Certifications and Acknowledgments.**

a. The following certifications shall be required as part of the permit application:

1. The applicant shall sign a certification prepared by the Chief Building Official acknowledging receipt of notice that the property to be excavated may be in the area of the marsh crust/subtidal zone, and that hazardous materials may be encountered during excavation.

2. The applicant shall sign a certification prepared by the Chief Building Official acknowledging that federal and state hazardous materials laws and regulations will apply to storage, transportation and disposal of any materials excavated from the marsh crust/subtidal zone that are hazardous materials.

3. The applicant shall sign a certification prepared by the Chief Building Official acknowledging liability for disturbing and removing all materials from the marsh crust/subtidal zone in accordance with this Section 13-56 and the permit.

b. All building and excavation permits issued for construction or excavation within the area subject to this SubSection 13-56 shall contain the following written warning:

"Pursuant to Section 13-56 of Article XVII of Chapter XIII of the Alameda Municipal Code, excavation work in the area of the marsh crust/subtidal zone within the area of the former Naval Air Station Alameda and Fleet and Industrial Supply Center, Alameda Annex and Facility, as depicted in Exhibit A to Section 13-56 of Article XVII of Chapter XIII of the Alameda Municipal Code, may be subject to special materials handling requirements. The permittee acknowledges that he or she has been informed of the special materials handling requirements of Section 13-56 of Article XVII of Chapter XIII of the Alameda Municipal Code and that hazardous materials may be encountered during excavation."

**13-56.7 Notification Prior to Start of Excavation.**

a. After receipt of a permit and no less than two (2) business days (forty-eight (48) hours minimum) before commencement of any excavation activity in the area subject to this Section 13-56, the permittee shall notify the Chief Building Official of the planned start of excavation. Said notification shall include a schedule for any excavation work that will last for more than one day.

b. The permittee shall give adequate notice to Underground Service Alert prior to commencing any excavation activity subject to this Section 13-56.

**13-56.8 Materials Handling.**

The permittee shall elect to follow one or more of the courses of action set forth below before beginning any excavation activities in the area subject to this Section 13-56. Unless otherwise demonstrated by the permittee by means of reconnaissance investigation pursuant to Subsection 13-56.8a, or unless the permittee prepares site management plans pursuant to Subsection 13-56.8c, soil below the threshold depth in the area of the marsh crust/subtidal zone, as depicted on Exhibit A, must be managed as though it were hazardous pursuant to Subsection 13-56.8b. The permittee may elect to follow Subsection 13-56.8a, but must comply with Subsection 13-56.8b or 13-56.8c if testing demonstrates that the materials below the threshold depth are hazardous materials. Copies of all reconnaissance testing results and/or existing information used to satisfy the reconnaissance investigation requirements of Subsection 13-56.8a shall be reported to and filed with the City. All observations or encounters with the marsh crust/subtidal zone during excavation shall be reported to the City.

a. **Reconnaissance Investigation to Rule Out the Presence of Hazardous Materials Below the Threshold Depth.**

The permittee may elect to use reconnaissance borings, pursuant to a plan prepared by a qualified registered engineer or registered geologist, licensed in the State of California, to rule out, to the satisfaction of the Chief Building Official, the presence of hazardous materials below the threshold depth in the area to be excavated. As part or all of the reconnaissance plan, the permittee may make use of existing information, where appropriate, if the existing information is directly relevant to the location and depth to be excavated and contains observations or results of analyses that assist in concluding whether hazardous materials are present. The reconnaissance report shall include a description of all observations from below the threshold depth evidencing the presence or absence of the marsh crust/subtidal zone.

1. If hazardous materials are found below the threshold depth within the area to be excavated at any time (during reconnaissance or during excavation), the permittee shall comply with either Subsection 13-56.8b or Subsection 13-56.8c, at his or her election.

2. If hazardous materials are not found below the threshold depth within the area to be excavated, no additional materials controls, except as otherwise may be required under applicable federal, state or local law, are required under this Section 13-56.

b. **Handling Materials Excavated From Below the Threshold Depth as Hazardous Materials.**

If the permittee has not ruled out the presence of hazardous materials pursuant to Subsection 13-56.8a, or elects not to prepare a site management plan and materials testing program pursuant to Subsection 13-56.8c, the permittee shall presume that materials excavated from below the threshold depth must be disposed at an appropriately permitted disposal facility. In addition, no excavated materials from below the threshold depth may be stockpiled prior to disposal or returned to the excavation.

c. **Preparation of Construction Site Management Plan for Handling Materials Excavated From Below the Threshold Depth.**

1. In lieu of handling materials excavated from below the threshold depth pursuant to the restrictions in Subsection 13-56.8b, the permittee may elect to hire a qualified registered engineer or registered geologist, licensed in the State of California, to develop a site-specific construction site management plan, including a materials testing program, to the satisfaction of the Chief Building Official. The construction site management plan shall include, at a minimum, provisions governing control of precipitation run on and run off from stockpiled soils, soil segregation, securing of stockpiled soils, duration of stockpiling, and contingency plans for handling materials excavated from below the threshold depth that prove to be hazardous materials.

2. The permittee shall hire a qualified registered engineer or registered geologist, licensed in the State of California, to oversee compliance with the approved construction site management plan, and shall transmit to the Chief Building Official upon completion of the project written certification of compliance with the construction site management plan. The certification report shall include a description of all observations from below the threshold depth evidencing the presence or absence of the marsh crust/subtidal zone.

**13-56.9 Health and Safety Plan.**

The applicant shall cause to be prepared by a certified industrial hygienist, and keep on the construction site at all times, a health and safety plan to protect workers at the excavation site and the general public to the satisfaction of the Chief Building Official. The Chief Building Official may prepare and provide to applicants a model health and safety plan which, if used by the applicant, shall be modified by the applicant's certified industrial hygienist to suit the specific requirements of the applicant's project.

**13-56.10 Excavation Site Best Management Practices.**

All excavation and materials handling activities permitted under this Section 13-56 shall be conducted in accordance with applicable Alameda Countywide Clean Water Program Best Management Practices and City of Alameda Storm Water Management and Discharge Control Program Ordinance requirements.

**13-56.11 Bonds.**

Upon a finding by the Chief Building Official that a permit should issue for excavation pursuant to this Section 13-56, a surety or performance bond conditioned upon the faithful performance and completion of the permitted excavation activity shall be filed with the City. Such bond shall be executed in favor of the City and shall be maintained in such form and amounts prescribed by the Risk Manager sufficient to ensure that the work, if not completed in accordance with the approved plans and specifications, will be corrected to eliminate hazardous conditions.

**13-56.12 Nonassumption of Liability.**

In undertaking to require applicants for certain excavation permits to comply with the requirements of this Section 13-56, the City of Alameda is assuming an undertaking only to promote the general welfare. The City is not assuming, nor is it imposing on itself or on its officers and employees, an obligation for breach of which it is liable in money damages to any person who claims that such breach proximately caused injury.

**13-56.13 Construction on City Property.**

a. The Chief Building Official shall prepare standard work procedures that comply with all the requirements of this Section 13-56 for all City

construction or improvement activities involving excavation below the threshold depth in the area subject to this Section 13-56. All departments, boards, commissions, bureaus and agencies of the City of Alameda that conduct construction or improvements on land under their jurisdiction involving excavation below the threshold depth in the area subject to this Section 13-56 shall follow such standard work procedures.

b. The City shall include in all contracts involving excavation below the threshold depth in the area subject to this Section 13-56 a provision requiring City contractors to comply with all the requirements of this Section 13-56. All contracts entered into by departments, boards, commissions, bureaus and agencies of the City of Alameda that authorize construction or improvements on land under their jurisdiction involving excavation below the threshold depth in the area subject to this Section 13-56 also shall contain such standard contract provision.

**13-56.14 Severability.**

If any section, subsection, subdivision, paragraph, sentence, clause or phrase of this Section 13-56 or any part thereof is for any reason held to be unconstitutional or invalid or ineffective by any court of competent jurisdiction, such decision shall not affect the validity or effectiveness of the remaining portions of this Section 13-56 or any part thereof. The City Council hereby declares that it would have passed each section, subsection, subdivision, paragraph, sentence, clause or phrase of this Section 13-56 irrespective of the fact that one or more sections, subsections, subdivisions, paragraphs, sentences, clauses or phrases be declared unconstitutional or invalid or effective.

**13-56.15 Permit Fee.**

No permits for excavation in the marsh crust/subtidal zone shall be issued unless a fee has been paid. The fee shall be set by City Council resolution.

**13-56.16 Penalties.**

a. Any person, including utility companies and their employees and contractors, violating any of the provisions of this Section 13-56 shall be deemed guilty of a misdemeanor, and each person shall be deemed guilty of a separate offense for each and every day or portion thereof during which any violation of any of the provisions of this Section 13-56 is committed, continued or permitted, and such violation may be prosecuted and punished as an infraction or misdemeanor pursuant to the provisions of Section 1-5.1 of the Alameda Municipal Code .

b. Any person, including utility companies and their employees and contractors, that commences any excavation without first obtaining the necessary permits therefor shall, if subsequently allowed to obtain a permit, pay an amount, in

addition to the ordinary permit fee required, quadruple the permit fee otherwise required.

**13-56.17 Retention and Availability of Permit Files**

The City shall maintain files pertaining to all permits issued under this Section 13-56, and shall make such files available to DTSC for inspection upon request during normal business hours.

**13-56.18 Amendment of Section 13-56**

This Section 13-56 shall not be repealed or amended without thirty (30) days prior written notice to the DTSC Deputy Director for Site Mitigation.

Section 2. This Ordinance shall be in full force and effect from and after the expiration of thirty (30) days from the date of its final passage.

Presiding Officer of the City Council

Attest:

City Clerk

* * * * * *


OAKLAND INNER HARBOR
SEAPLANE LAGOON
SAN FRANCISCO BAY
N
0 350 700
LEGEND
Ordinance Area Boundary
Deeper than 15 Feet
Deeper than 10 Feet
Deeper than 5 Feet
Applies to excavation deeper than mean higher high tide
Note:
In no event will a permit be required for excavations above mean higher high tide. Permittee should provide excavation depths referenced to the Alameda Datum (3.41 feet above mean sea level (NGVD)).
Source:
Map based on "Final Feasibility Study for the Marsh Crust and Groundwater at the Fleet Industrial Supply Center Oakland Alameda Facility/Alameda Annex and Feasibility Study for the Marsh Crust and Former Subtidal Area at Alameda Point" March 31, 2000. Prepared for the Department of the Navy by Tetra Tech Environmental Management, Inc.
City of Alameda
Ordinance No. 2824
Alameda Municipal Code
Chapter XIII, Section 13-56
Threshold Depth (below ground surface)
Below Which an Excavation Permit is Required

I, the undersigned, hereby certify that the foregoing Ordinance was duly and regularly adopted and passed by the Council of the City of Alameda in regular meeting assembled on the 15th day of February, 2000, by the following vote to wit:

| | |
|---|---|
| AYES: | Councilmembers Daysog, DeWitt, Johnson, Kerr and Mayor Appezzato - 5. |
| NOES: | None. |
| ABSENT: | None. |
| ABSTENTIONS: | None. |

IN WITNESS, WHEREOF, I have hereunto set my hand and affixed the official seal of said City this 16th day of February, 2000.

Diane B. Felsch

Diane Felsch, City Clerk
City of Alameda