No. 05-1020C
(Judge Hodges)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS THE TRANSFER COMPLAINT FOR LACK OF RIPENESS OR, IN THE ALTERNATIVE, TO DISMISS COUNTS 1 AND 2 FOR FAILURE TO STATE A CLAIM AND TO DISMISS COUNT 3 FOR LACK OF JURISDICTION

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202)305-7562
Fax: (202)305-7644

Attorneys for Defendant

OF COUNSEL:

MARY RAIVEL
Attorney
Naval Litigation Office
Washington, D.C.

November 29, 2005

TABLE OF CONTENTS

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . 2

BACKGROUND AND SUMMARY OF PLAINTIFF'S ALLEGATIONS . . . . . . . . 3

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . 6

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

I. Legal Standards . . . . . . . . . . . . . . . . . . . . . . 9

II. The March 2005 District Court Order Requires Dismissal Of The Transfer Complaint As Unripe . . . . 11

III. Alternatively, AISLIC Is Claiming Costs For The Wrong Parcel . . . . . . . . . . . . . . . . . . . . . 13

IV. Alternatively, AISLIC Cannot Recover Under Section 330 For Costs Associated With The East Housing Area . . . . . . . . . . . . . . . . . . . . . 15

A. Section 330 Does Not Provide For Indemnification Of The City's Cleanup Costs . 16

1. There Was No "Claim" . . . . . . . . . . . 18

2. There Was No Claimed "Property Damage" . 20

B. In Any Event, There Was No "Release Or Threatened Release" Of The Properly Applied Pesticide . . . . . . . . . . . . . . . . . . . 23

C. Assuming There Was A Threatened Release, The Government Was Not Responsible . . . . . . . . . 25

V. If Relevant, The United States Has Not Breached The East Housing Deed Covenants . . . . . . . . . . . 27

VI. The Court Cannot Grant Purely Declaratory Relief . 29

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

## TABLE OF AUTHORITIES

### CASES

A&W Smelter and Refs., Inc. v. Clinton,
146 F.3d 1107 (9th Cir. 1998) . . . . . . . . . . . . . . . 29

Ambassador Div. of Florsheim Shoe Co. v. United States,
748 F.2d 1560 (Fed. Cir. 1984) . . . . . . . . . . . . 10, 21

American Intl. Specialty Lines Ins. Co. v. United States,
No. C 04-01591 CRB,(N.D. Cal. March 24, 2005) . . . . . . . 5

Barnes v. Independent Auto. Dealers Assoc. of Cal. Health & Welfare Ben. Plan,
64 F.3d 1389 (9th Cir. 1995) . . . . . . . . . . . . . . . . . 5

Briscoe v. LaHue,
663 F.2d 713 (7th Cir. 1981) . . . . . . . . . . . . . . . 10

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . 9

Continental Ins. Co. v. Northeastern Pharm. & Chem. Co.,
842 F.2d 977 (8th Cir. 1988) . . . . . . . . . . . . . 21, 23

Ford Motor Co. v. United States,
378 F.3d 1314 (Fed. Cir. 2004) . . . . . . . . . . . . . . 21

Hanson v. United States,
13 Cl. Ct. 519(1987) . . . . . . . . . . . . . . . . . . . 10

Hol-Gar Mfg. Corp.United States,
169 Ct. Cl. 351 F.2d 972 (1965) . . . . . . . . . . . . . . . 11

King v. United States,
395 U.S. 1 (1969) . . . . . . . . . . . . . . . . . . .29

Kitty Hawk Aircargo, Inc. v. Chao,
418 F.3d 453 (5th Cir. 2005) . . . . . . . . . . . . . . . . 6

Lamie v. United States Trustee,
540 U.S. 520 (2004) . . . . . . . . . . . . . . . . . . . 10

Lindsay v. United States,
295 F.3d 1252 (Fed. Cir. 2002) . . . . . . . . . . . . . . . 9

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . 6

Maryland Cas. Co. v. Armco, Inc.,
643 F. Supp. 430 (D. Md.) . . . . . . . . . . . . . . . . . . 23

McNutt v. General Motors Acceptance Corp.,
298 U.S. 178 (1936) . . . . . . . . . . . . . . . . . . . . 9

Morris v. United States,
33 Fed. Cl. 733 (1995) . . . . . . . . . . . . . . . . . . . 9

Munsey Trust Co. v. United States,
330 U.S. 234 (1947) . . . . . . . . . . . . . . . . . . . 15

Mraz v. Canadian Univ. Ins. Co.,
804 F.2d 1325 (4th Cir. 1986) . . . . . . . . . . . . . . . 23

National Air Traffic Controllers Ass'n v. United States,
160 F.3d 714 (Fed. Cir. 1998) . . . . . . . . . . . . . . . 30

National Surety Corp. v. United States,
118 F.3d 1542 (Fed. Cir. 1997) . . . . . . . . . . . . 12, 15

New Castle County v. Hartford Accid. & Ins. Co.,
933 F.2d 1162 (3d Cir. 1991) . . . . . . . . . . . . . . . 23

Prairie Nat. Bank v. United States,
164 U.S. 227 (1896) . . . . . . . . . . . . . . . . . . . . 12

Redwing Carriers, Inc. v. Saraland Apts.,
94 F.3d 1489 (11th Cir. 1996) . . . . . . . . . . . . . 24, 25

Southern Cal. Edison Inc. v. United States,
58 Fed. Cl. 313 (2003) . . . . . . . . . . . . . . . . . . 10

Splane v. West,
216 F.3d 1058 (Fed. Cir. 2000) . . . . . . . . . . . . 10, 22

Steckman v. Hart Brewing, Inc.,
143 F.3d 1293 (9th Cir. 1998) . . . . . . . . . . . . . 10, 25

United States Fidelity & Guar. Co. v. United States,
201 Ct. Cl. 475 F.2d 1377 (1973) . . . . . . . . . . . . . 5, 12

Venture Assocs. Corp. v. Zenith Data Sys. Corp.,
987 F.2d 429 (7th Cir. 1993) . . . . . . . . . . . . . . 9, 27

STATUTES

10 U.S.C. § 2687 . . . . . . . . . . . . . . . . . . . . . . 2, 17

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 1492(a) . . . . . . . . . . . . . . . . . . . . . . 30

28 U.S.C. § 1631 . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . 3, 29

41 U.S.C. § 605 . . . . . . . . . . . . . . . . . . . . . . . . 30

42 U.S.C. § 9601 (14, 22), (33) . . . . . . . . . . 20, 24, 26, 28

42 U.S.C. §§ 9604, 9606 . . . . . . . . . . . . . . . . . . . . 21

42 U.S.C. §§ 9606, 9607(a)(1) . . . . . . . . . . . . . . . . . 23

42 U.S.C. §§ 9607(a)(1)-(3), 9613(f) . . . . . . . . . . . . . 21

42 U.S.C. § 9607(a)(4) . . . . . . . . . . . . . . . . . . 21, 23

42 U.S.C. § 9620(h)(3)(A)(ii)(I) . . . . . . . . . . . . . . . 27

42 U.S.C. § 9620(h)(3)(A)(ii)(II) . . . . . . . . . . . . . . . 28

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | No. 05-1020C (Judge Hodges) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS THE TRANSFER COMPLAINT FOR LACK OF RIPENESS OR, IN THE ALTERNATIVE, TO DISMISS COUNTS 1 AND 2 FOR FAILURE TO STATE A CLAIM AND TO DISMISS COUNT 3 FOR LACK OF JURISDICTION

Pursuant to Rules 12(b)(1) and (b)(6) of the Court's Rules ("RCFC"), defendant, the United States, respectfully requests the Court to dismiss each of the three counts of the amended complaint as unripe, based upon a ruling by the United States District Court for the Northern District of California in this matter before it was transferred to this Court; or, in the alternative, to dismiss counts 1 and 2 for failure to state a claim upon which the Court could grant relief and dismiss count 3 for lack of jurisdiction, as the Court lacks authority to grant plaintiff declaratory relief.

In support of this motion, which is submitted in lieu of an answer, see RCFC 12(a)(2), we rely upon the allegations of, and the attachments to, the amended complaint; the accompanying appendix (which contains a quitclaim deed that arguably should be attached to the amended complaint); and the following brief.

STATEMENT OF THE ISSUES

1. Whether the district court's March 24, 2005 order in this transferred matter, dismissing, as unripe, a claim brought by plaintiff, American International Specialty Lines Insurance Company ("AISLIC"), as an equitable subrogee of two of its insureds, requires dismissal of AISLIC's amended complaint without prejudice upon the same ripeness grounds.

2. If the Court does not dismiss the amended complaint as unripe, whether it should dismiss counts 1 and 2 for failure to state a claim upon which the Court could grant relief, in that the attachments to the complaint establish that the costs that AISLIC seeks to recover were not related to the parcel of real property alleged in the complaint, but arose in relation to an adjacent but distinct parcel, which was conveyed by the United States in a separate quitclaim deed.

3. Alternatively, if the Court does not dismiss count 1 for either reason above, whether it should dismiss count 1 for failure to state a claim for relief pursuant to section 330 of the National Defense Authorization Act of 1993, as amended, 10 U.S.C. § 2687 note ("Section 330"), in that (i) the costs allegedly incurred by AISLIC's insureds to remove pesticide-treated soil when demolishing buildings at the former Naval Air Station Alameda, did not arise from a "claim for personal injury or property damage"; (ii) assuming there was such a claim, it was

not predicated upon a "release or threatened release of any hazardous substance"; and (iii) assuming there was a claim premised upon a "release or threatened release," the latter was caused by the insureds, and not by the Department of Defense.

4. If the Court does not dismiss count 2 for either of the reasons above, whether it should dismiss count 2 for failure to state a claim for breach of a quitclaim deed, as the costs allegedly incurred to remove a pesticide from the soil after demolishing buildings on the subject property did not arise from a release or threatened release of a hazardous substance attributable activities of the United States.

5. If the Court does not dismiss the amended complaint as unripe, whether it should dismiss count 3, which seeks relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, for lack of jurisdiction.

BACKGROUND AND SUMMARY OF PLAINTIFF'S ALLEGATIONS

The Government respectfully presumes the Court's basic familiarity with the allegations of the amended complaint, which we presume true for purposes of this motion, to the extent the allegations are consistent with the exhibits appended to the amended complaint.[1] See, e.g., RCFC 10(c).

[1] The complaint before the Court is technically the second amended complaint, in that AISLIC filed an amended complaint in the district court in December 2004; but for simplicity, we adopt the designation on the face of the transfer complaint.

AISLIC seeks indemnification by the Government for remediation, litigation, and other costs allegedly incurred by the City of Alameda and the Alameda Reuse and Development Authority (collectively, "the City"), which are alleged to be holders of AISLIC insurance policies, in connection with the removal of pesticide-treated soil from the former site of the United States Navy's Fleet and Industrial Center ("FISC") Alameda, in California. Am. Compl. ¶¶ 1-2. However, as the attachments to the amended complaint confirm, and as detailed below, the costs that AISLIC seeks to recover were incurred at a separate, neighboring parcel, known as the "East Housing" area of the former Naval Air Station Alameda.

California environmental regulators informed the City and its environmental consultant in 2002 that a chlordane-based termiticide had been "properly applied" by the Navy near structures at the East Housing area and would not constitute a hazardous substance requiring remediation – unless and until the City (or a successor) demolished the buildings. Am. Compl. Exh. 2, Tab 7. The documentation attached to the amended complaint establishes that it was only the City's demolition of the buildings in the East Housing area that created the need to remove the treated soil.

AISLIC filed suit against the United States in the District Court for the Northern District of California in 2004, seeking to

recover, as an equitable subrogee of its insureds, pursuant to (i) the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), (ii) "Section 330," cited above, and (iii) deed covenants. AISLIC sought declaratory relief upon the same grounds. See American Intl. Specialty Lines Ins. Co. v. United States, No. C 04-01591 CRB, slip. op. at 2-3 (N.D. Cal. March 24, 2005) ("AISLIC") (copy appended).

In its March 2005 order, the district court dismissed AISLIC's CERCLA claims for lack of jurisdiction, as unripe. The court relied upon "the general equitable principle of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." Barnes v. Independent Auto. Dealers Assoc. of Cal. Health & Welfare Ben. Plan, 64 F.3d 1389, 1394 (9th Cir. 1995), quoted in AISLIC, slip op. at 7; cf. United States Fidelity & Guar. Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377, 1385 (1973) ("[W]e would be powerless . . . to require that the Government make a payment . . . to the surety when it is clear that the surety has not paid these subcontractors in full" (emphasis added).). The district court also transferred AISLIC's express indemnification claims to this Court, pursuant to 28 U.S.C. § 1631, upon the grounds that the Tucker Act, 28 U.S.C.

§ 1491, provides the sole waiver of sovereign immunity for the latter two claims. Slip. op. at 4-8.

AISLIC filed its amended transfer complaint in this Court, pursuant to RCFC 3.1(a)(2), on September 30, 2005. The amended complaint, like its predecessors, does not allege that AISLIC has fully reimbursed its insureds for the costs at issue. See Am. Compl. ¶¶ 30, 39, 44.[2] It contains three counts. Count 1 seeks indemnification for the City's cleanup costs pursuant to Section 330. Am. Compl. ¶¶ 31-39. Count 2 alleges breach of contract, i.e., breach of covenants in the quitclaim deed. Id. ¶¶ 40-44. The third count (which mirrors count 5 of AISLIC's first amended district court complaint) seeks relief pursuant to the Declaratory Judgment Act, which, as discussed below, does not apply to the Court of Federal Claims. Id. ¶¶ 45-47.

SUMMARY OF THE ARGUMENT

The amended complaint is deficient upon multiple grounds. First, AISLIC's claims still suffer from the lack of ripeness that caused the district court to dismiss AISLIC's CERCLA count.

---

[2] Counsel for AISLIC advised undersigned counsel on November 22, 2005 that AISLIC has paid the City's insurance claim in its entirety. We have seen no evidence of this. In any event, the lack of ripeness cannot be cured at this stage of the pleadings, since "all questions of subject matter jurisdiction except mootness," such as standing and ripeness, are "determined as of the date of the filing of the complaint" and without reference to "events that unfolded after the filing of the complaint . . . ." Kitty Hawk Aircargo, Inc. v. Chao, 418 F.3d 453, 460 (5th Cir. 2005); accord Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 n.4 (1992).

As AISLIC has not claimed, in any of its complaints in this matter, to have fully reimbursed the City, AISLIC cannot pursue, as an equitable subrogee, any of the City's claims – including the claims the district court transferred to this Court. This lawsuit is, therefore, unripe in its entirety.

In addition to advancing unripe claims, the amended complaint and its attachments are at cross-purposes inasmuch as the amended complaint alleges that the costs at issue arose at the FISC Alameda Annex, but the exhibits demonstrate without question that the costs at issue arose at a different parcel: the East Housing area of the former Naval Air Station Alameda, which lies to the south of the FISC. Because the documents attached to the amended complaint unambiguously refute AISLIC's fundamental allegation that this action relates to the FISC Alameda Annex, if the Court does not dismiss upon ripeness grounds, it should dismiss counts 1 and 2, which seek statutory and contractual indemnification, without prejudice, pursuant to RCFC 12(b)(6).

Should the Court decide, instead, to construe the amended complaint so liberally as to find that AISLIC seeks recovery of costs incurred by the City in connection with the East Housing area – which the text of the amended complaint does not mention – counts 1 and 2 nonetheless fail to state valid claims for relief. As to count 1, the amended complaint and its exhibits establish that AISLIC's insureds are not entitled to indemnification

pursuant to Section 330 because each of the following required elements is missing: (i) a claim against the insureds (ii) for property damage (iii) in connection with a release or threatened release of toxic material, (iv) resulting from activities of the military, rather from than the City's activities.

Rather, AISLIC's pleadings show that California regulators determined that the Navy properly applied the pesticide for its intended purpose in soil near buildings and other structures at the Naval Air Station. The pesticide could have been deemed hazardous only if actionable amounts of the pesticide had remained in the soil after the City demolished the structures. Had the City left the structures in place, no remediation would have been required. AISLIC alleges that the City safely removed the treated soil. Accordingly, there was no claim; no property damage; and either, as we believe, not even a threatened release of pesticide or, at worst, a threatened release resulting solely from the City's actions after the transfer of ownership.

Assuming AISLIC's claim for breach of covenants contained in a quitclaim deed transferring the subject property (which is alleged by AISLIC to be the FISC property, but which actually is the East Housing property) to the City is not dismissed as unripe, or simply as incoherent, the breach count fails for similar reasons. The United States promised, in the deed covenants, to remediate any CERCLA-defined hazardous substances,

contaminants, or pollutants that remained on the property at the time of transfer. As noted, the pleadings establish that no such condition existed. Accordingly, there has been no breach.

Finally, the Court lacks jurisdiction to grant relief pursuant to the Declaratory Judgment Act as requested in count 3, even assuming that count would be otherwise ripe.

## ARGUMENT

### I. Legal Standards

Defendant is entitled to dismissal pursuant to RCFC 12(b)(6) "when the facts asserted by the claimant do not entitle [it] to a legal remedy . . . accept[ing] all well-pleaded factual allegations as true and draw[ing] all reasonable inferences in the claimant's favor." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002); accord Conley v. Gibson, 355 U.S. 41, 45-46 (1957). Plaintiff, however, bears the ultimate burden to establish jurisdiction if defendant challenges it. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).

Attachments to the amended complaint are part of that pleading, RCFC 10(c), and may be considered on a motion to dismiss. See, e.g., Morris v. United States, 33 Fed. Cl. 733, 745 n.11 (1995). Additionally, "defendant may introduce [with a motion to dismiss] certain pertinent documents if the plaintiff failed to do so." Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993). AISLIC's "conclusory

allegations without any supporting facts" regarding the deed that transferred the property where the costs at issue arose (which is not the deed attached to the amended complaint) "are insufficient to withstand a motion to dismiss." Hanson v. United States, 13 Cl. Ct. 519, 530 (1987) (citing Briscoe v. LaHue, 663 F.2d 713 (7th Cir. 1981)); see Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (noting "conclusory allegations which are contradicted by documents referred to in the complaint" are not presumed true (emphasis added)).

Statutory construction begins with the text, which should be read as a whole and given its plain and ordinary meaning, to the extent the result is not absurd, in light of the evident legislative purposes. Lamie v. United States Trustee, 540 U.S. 520, 530 (2004); Splane v. West, 216 F.3d 1058, 1068-69 (Fed. Cir. 2000). The Court should presume that Congress intends for closely related statutes - which we demonstrate below Section 330 and CERCLA are - to "work harmoniously together, and for neither to frustrate the other, or partially repeal it . . . ." Ambassador Div. of Florsheim Shoe Co. v. United States, 748 F.2d 1560, 1565 (Fed. Cir. 1984).

Interpretation of a contract may also form a proper basis for a motion to dismiss. See Southern Cal. Edison Inc. v. United States, 58 Fed. Cl. 313, 321 (2003). Contract terms, like statutes, are interpreted as far as possible in accordance with

their ordinary, plain meaning, without rendering any part superfluous or producing an absurd result. Hol-Gar Mfg. Corp. v. United States, 169 Ct. Cl. 384, 351 F.2d 972, 975 (1965).

## II. The March 2005 District Court Order Requires Dismissal Of The Transfer Complaint As Unripe

The district court's March 2005 holding that AISLIC cannot presently assert claims as an equitable subrogee, because AISLIC has not alleged it has fully compensated its alleged subrogors/insureds, requires dismissal of the three counts of AISLIC's transfer complaint upon the same grounds, notwithstanding that the district court might not have recognized the full effect of its ripeness ruling.

As noted, the district court held that the "make-whole doctrine" of common insurance law bars AISLIC from asserting equitable subrogation rights in litigation before it has fully compensated the insureds in whose stead it seeks to sue, here, the City of Alameda and the Alameda Reuse and Development Authority. AISLIC, slip op. at 7. Not only does that order remain the controlling law of the transferred case at this juncture; it is correct and consistent with the law of this Circuit. Although we are unaware of any claims previously brought by an insurer in this Court that were identical to the claims asserted here by AISLIC, it is well-established a surety may litigate as an equitable subrogee only after it has "fulfilled the obligation" of its insured, e.g., by completing

the insured's Government contract and paying all subcontractors. See National Sur. Corp. v. United States, 118 F.3d 1542, 1545 (Fed. Cir. 1997) (quoting Prairie Nat. Bank v. United States, 164 U.S. 227, 232-33 (1896)); U.S. Fidelity, 475 F.2d at 1385.

This doctrine serves to guarantee that the Government need defend against only one suit, by one party, upon a given claim for damages. The make-whole rule means that AISLIC's equitable subrogation claims under Section 330 and the quitclaim deed are unripe - to the identical degree as the district court properly held AISLIC's CERCLA claims unripe. See AISLIC, slip op. at 7. AISLIC's present inability to file suit as an equitable subrogee of the City, because it has not alleged it has fully reimbursed its subrogors, clearly applies to all of the allegedly subrogated claims against the Government.

At an absolute minimum, the district court's ruling that equitable subrogation is unavailable to AISLIC at this time is binding in this transferred matter unless AISLIC requests, and this Court grants, relief from the district court's March 2005 order, pursuant to RCFC 59 or 60. AISLIC has not filed any such motion in conjunction with its transfer complaint. Accordingly, this Court should simply apply the logic of the district court's March 2005 ripeness ruling to AISLIC's remaining claims and dismiss the amended complaint entirely, as unripe.

## III. Alternatively, AISLIC Is Claiming Costs For The Wrong Parcel

The amended complaint alleges that the City incurred the soil removal and other costs at issue in connection with developing the former FISC Annex site, conveyed to the City "by way of a Quitclaim Deed and Environmental Restrictions pursuant to California Civil Code Section 1471 for FISC Alameda, dated July 17, 2000 ('the Deed') (Exhibit 1)." Am. Compl. ¶ 16. However, all of the attachments to the complaint relating to the incurred costs refer to the East Housing area. See Am. Compl. Exh. 2 (October 2002 letter from City to Navy requesting indemnification) & Exh. 2 Tab 2 (sampling report), Tab 6 ("Demolition and Organochloride Pesticide Removal Workplan"), Tab 7 (letter dated May 3, 2002 from California Department of Toxic Substance Control ("DTSC")).

Attachments to the amended complaint further establish that the FISC Annex and East Housing parcels are separate properties. "Exhibit C" attached to the FISC Alameda quitclaim deed (Am. Compl. Exh. 1) is an unexecuted form covenant, imposing environmental restrictions running with transferred land. That covenant states upon its face that it covers two properties: "Fleet and Industrial Supply Center, Oakland[,] Alameda Facility and Alameda Annex[,] and Alameda Naval Air Station East Housing[,] Alameda, California." That is why recital A, on page 1 of the covenant, contains a blank space for the applicable

number of acres, depending upon whether the covenant is used for the FISC parcel or the separate East Housing parcel.

"Exhibit D" of that form covenant, moreover, is a drawing that plainly depicts the FISC Annex sites as adjacent to, but separate from, the East Housing area. Further, comparing the latter drawing with the survey drawings in "Exhibit B" of the FISC Annex quitclaim deed (Am. Compl. Exh. 1) establishes that the East Housing area shown in the drawing attached to the form covenant is not within the bounds of the property that was conveyed by the FISC Annex deed. Consistent with all of this, AISLIC's amended complaint alleges that the subject property - the FISC Alameda Annex - lies to the north of the former Naval Air Station, Am. Compl. ¶ 11; whereas the caption of the form covenant (among other evidence) establishes that the East Housing area was within the Naval Air Station.

As a final confirmation that AISLIC has confused the two parcels, we have appended to this motion a true copy of the quitclaim deed, dated July 17, 2000, by which the United States conveyed the distinct "East Housing Area of NAS Alameda" to the City of Alameda. Because it is indisputable that the costs allegedly documented in the attachments to the amended complaint were not incurred in connection with the property alleged in the amended complaint, assuming the Court does not dismiss this action as unripe, it should dismiss counts 1 and 2, without

prejudice, for failure to state either statutory or contract claims for damages. (As demonstrated below, the Court lacks subject matter jurisdiction to address count 3.)

## IV. Alternatively, AISLIC Cannot Recover Under Section 330 For Costs Associated With The East Housing Area

AISLIC may attempt to salvage the transfer complaint by arguing that the claims should be liberally construed, contrary to AISLIC's express allegations, as seeking damages associated with the East Housing parcel. While we submit the better course is to dismiss counts 1 and 2 without prejudice for the reasons given above, even if those counts are deemed ripe, it is also the case that neither of those two counts states a viable claim even if we assume they actually relate to the East Housing area.

Assuming further, for purposes of argument, that AISLIC may pursue this lawsuit as an equitable subrogee of the City,[3] it is a commonplace that AISLIC "cannot acquire by subrogation" any rights that its alleged subrogors/insureds "did not have." Munsey Trust Co. v. United States, 330 U.S. 234, 242 (1947); accord National Sur., 118 F.3d at 1545-46. If the Court does not dismiss the amended complaint as unripe, it should dismiss counts 1 and 2 for failure to state a claim. The amended complaint and the attachments establish that, if the City and its Reuse and

[3] AISLIC has never expressly alleged that its insureds' policy or policies pertain to the East Housing area.

Development Authority were the plaintiffs, they would have no right to recover. We begin with count 1.

A. Section 330 Does Not Provide For Indemnification Of The City's Cleanup Costs

Section 330 of the 1993 defense authorization act, entitled "Indemnification of Transferees of Closing Defense Property," provides in part:

> a) IN GENERAL.- (1) Except as provided in paragraph (3) and subject to subsection (b), the Secretary of Defense shall hold harmless, defend, and indemnify in full the persons and entities described in paragraph (2) from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss) that results from, or is in any manner predicated upon, the release or threatened release of any hazardous substance or pollutant or contaminant as a result of Department of Defense activities at any military installation (or portion thereof) that is closed pursuant to a base closure law.
>
> (2) The persons and entities described in this paragraph are the following:
>
> (A) Any State (including any officer, agent, or employee of the State) that acquires ownership or control of any facility at a military installation (or any portion thereof) described in paragraph (1).
>
> (B) Any political subdivision of a State (including any officer, agent, or employee of the State) that acquires such ownership or control.
>
> (C) Any other person or entity that acquires such ownership or control.

> (D) Any successor, assignee, transferee, lender, or lessee of a person or entity described in subparagraphs (A) through (C).
>
> (3) To the extent the persons and entities described in paragraph (2) contributed to any such release or threatened release, paragraph (1) shall not apply. . . .

10 U.S.C. § 2687 note (copy appended).

The legislation thus establishes several prerequisites to indemnification. Although these requirements arguably could be analyzed in various orders and combinations, a Section 330 claimant must allege and establish, at a minimum, that:

(i) It is a "person or entity" described in subsection (a)(2) (here, we assume the truth of the amended complaint's allegations concerning the alleged insureds/subrogors);

(ii) It has encountered a "suit, claim, demand or action, liability, judgment, cost or other fee" (we assume for this motion that "costs" were incurred);

(iii) The latter circumstance or expense "aris[es] out of [a] claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss)";

(iv) The latter claim "results from, or is in any manner predicated upon, the release or threatened release of any hazardous substance or pollutant or contaminant" at a covered property;

(v) The release or threatened release occurred "as a result of Department of Defense activities"; and

(vi) The party seeking indemnification did not "contribut[e] to any such release or threatened release" (subsection (a)(3)).

1. There Was No "Claim"

Requirements (iii) through (vi) above are absent here, based upon the allegations of the amended complaint. To begin, the City is not alleged to have faced any "claim for personal injury or property damage," as required by Section 330(a)(1). It is clear from this language of Section 330 alone that a legal "claim" for personal injury or property damage would need to have been brought against the City, in order for Section 330 to apply.

In addition to the latter plain language, Section 330(d) provides that a claim for indemnification accrues on the date the "plaintiff knew (or reasonably should have known) that the personal injury or property damage referred to in Section (a) was caused or contributed to by" a covered release or threatened release (emphasis added). The term "plaintiff" here must refer to someone other than the transferee/indemnitee - which is identified elsewhere in the act as "the person or entity making a clam for indemnification" (in Section 330(b)) and "that person" (in Section (c)(1)). Reference to a "plaintiff" confirms that Congress envisioned that the party seeking indemnification would

be facing a damages claim or lawsuit brought by a third party. No such legal action occurred here.

AISLIC alleges that "the [California] Department of Toxic Substance Control ('DTSC') required the [City] entities and Plaintiff [sic] to assess and remediate the [chlordane insecticide] contamination [discovered] at the Property." Am. Compl. ¶ 26. This allegation in support of count 1 fails, however, to state a claim for Section 330 indemnification, as it establishes that the California agency did not pursue a "claim" of any kind against AISLIC's insureds.

The attachments to the amended complaint confirm the absence of any claim against the City. Most important, attachment 7 to AISLIC's exhibit 2 is a letter dated May 3, 2002 from the California DTSC to the Alameda Reuse and Redevelopment Authority and its environmental consultant, approving the City's "workplan" for the demolition. See Am. Compl. Exh. 2, Tab 6. The State regulators advised:

> The building foundations at EHA [East Housing area] appear to have been properly treated with organochloride pesticides (OCP) for termite control, and as such, are currently being used in the manner intended. Upon removal [by the City] of the buildings and foundations that are treated with OCP, any OCP remaining in soils and exceeding the [State-prescribed] concentrations . . . would be a hazardous substance released to the environment, and would require remedial action . . . .

> . . . [E]nsuring that soils and structures impacted with OCP [are] removed concurrent with structure demolition . . . would lead to DTSC concurrence that no release of OCP to the environment remains that requires action.

(Emphasis added.) The City allegedly complied. Am. Compl. ¶¶ 27-28. Consequently, the DTSC never (i) found that a hazardous substance was present at the East Housing area or (ii) had occasion to pursue any sort of "claim," either legal or equitable, against the City of Alameda. See id. Absent such a claim, there is no basis for a Section 330 indemnification claim.

2. There Was No Claimed "Property Damage"

Even assuming, moreover, that the May 2002 advisory from the DTSC could somehow be deemed a "claim" by the DTSC, it was not a claim "for personal injury or property damage," as required by Section 330(a)(1). The DTSC obviously did not bring a personal injury claim. Assuming there was a "claim," therefore, the only question is whether it could be called a claim for "property damage," within the meaning of Section 330(a)(1). A fair reading of the legislation establishes that the answer is no.

Congress, in Section 330(f), expressly incorporated the definitions set forth in CERCLA, 42 U.S.C. § 9601, of "[t]he terms 'facility,' 'hazardous substance,' 'release,' and 'pollutant or contaminant' . . . ." Although "property damage" is not defined either statute, Section 330 and CERCLA should be construed as consistent, as they are substantially in pari

materia. Cf. Ambassador Div. of Florsheim, 748 F.2d at 1565. CERCLA contains only one provision authorizing an action based upon "damage." Pursuant to CERCLA section 107, parties associated with a site (or "facility") at which a hazardous substance has been released may be held "liable [to the Government] for . . . damages for injury to, destruction of, or loss of natural resources, including the reasonable costs of assessing such injury, destruction, or loss resulting from such a release[.]" 42 U.S.C. § 9607(a)(4) (emphasis added).

Other CERCLA provisions, by contrast, rather than creating monetary liability for damage, authorize suits in equity against potentially responsible parties for incurred cleanup costs, id. §§ 9607(a)(1)-(3), 9613(f) (contribution claims by potentially responsible parties), and empower courts and the Executive Branch to order the removal or remediation of environmental contamination. Id. §§ 9604, 9606. "Under CERCLA," therefore, "cleanup costs are not substantially equivalent to compensatory damages for injury to or destruction of the environment." Continental Ins. Co. v. Northeastern Pharm. & Chem. Co., 842 F.2d 977, 986 (8th Cir. 1988) (en banc) (emphasis added).[4]

[4] In Ford Motor Co. v. United States, 378 F.3d 1314 (Fed. Cir. 2004), which involved a World War II contract, it was agreed that Ford had faced a "property damage" claim; the Government argued unsuccessfully that the contractual indemnity did not extend to a CERCLA damage claim. See id. at 1319. Whether a cleanup order, standing alone, would be a damage claim was not at issue. Here, in any event, there was no cleanup order.

It should be presumed, given these features of CERCLA, that, had Congress intended, when drafting Section 330 "in the shadow" of CERCLA, to indemnify transferees of closed military properties for environmental cleanup costs, such as the costs allegedly incurred by the City of Alameda, Congress would have said so, in so many words. Instead of including those costs, however, Congress extended the statutory indemnity only to transferees facing "claim[s] for personal injury or property damage." The cleanup costs incurred by the City of Alameda are omitted.

All of the language of Section 330 is consistent with defining a "claim" for "property damage" as excluding situations in which a transferee is simply obligated to incur some environmental costs without facing legal action. Cf. Splane, 216 F.3d at 1068 (statute must be read as a whole). In particular, Section 330(c)(1) provides that, if the Secretary of Defense determines that indemnification may be available, the Secretary may "settle or defend, on behalf of [the indemnitee], the claim for personal injury or property damage." This language, requiring "tender" of the underlying claim, makes no sense if there exists no pending damages action to settle or defend.

To be sure, courts interpreting private insurance policies have divided as to whether policy coverage for "property damage" should be construed as including environmental cleanup costs that are not incurred as legal damages. Compare Maryland Cas. Co.

v. Armco, Inc., 643 F. Supp. 430, 432-33 (D. Md.) (holding toxic waste release caused "property damage" within meaning of policy, even though "claims for equitable [cleanup] relief are not claims for 'damages'"), aff'd, 822 F.2d 1348 (4th Cir. 1987) with Mraz v. Canadian Univ. Ins. Co., 804 F.2d 1325, 1328-29 (4th Cir. 1986) (holding court-ordered cleanup costs do not pertain to "property damage"); see also New Castle County v. Hartford Accid. & Ins. Co., 933 F.2d 1162, 1190 n.57 (3d Cir. 1991) (disagreeing with Mraz). This split of contractual authority is immaterial, however, to interpreting the term "property damage" in Section 330(a), against the backdrop of CERCLA.

As noted, in this specific legislative context, a claim for damage ("injury," "destruction," or "loss" of natural resources) is distinct and apart from an action to compel, or to recover the costs of, remediation. See 42 U.S.C. §§ 9606, 9607(a)(1)-(4); Continental Ins., 842 F.2d at 986. Even assuming the action of the California DTSC in Alameda constituted a "claim" (which it did not), it was a "claim" of the latter type, and not a claim based upon damage. Accordingly, Section 330 is not triggered, and neither AISLIC nor its insureds are entitled to relief.

B. In Any Event, There Was No "Release Or Threatened Release" Of The Properly Applied Pesticide

Even assuming the Court discerns a claim for property damage against the City, there is a further fatal deficiency in AISLIC's statutory claim. Section 330(a)(1) provides that, in order to

qualify for indemnification, a claim against a transferee must be "predicated upon[] the release or threatened release of any hazardous substance or pollutant or contaminant . . . ." Section 330(f)(1), meanwhile, incorporates the CERCLA definitions of "release," "hazardous substance," and "pollutant or contaminant" in 42 U.S.C. § 9601(14), (22), and (33). Pursuant to CERCLA, proper application of a pesticide that is registered pursuant to the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") – which includes the chlordane-based termiticide at issue here, at the time it was used at the East Housing area – does not create liability. Id. § 9607(i); see Redwing Carriers, Inc. v. Saraland Apts., 94 F.3d 1489, 1511 n.31 (11th Cir. 1996) (holding this exclusion covers chlordane and dieldrin, although both chemicals later lost FIFRA registration).

As described above, the California DTSC never identified a release or threatened release of any hazardous substance, pollutant, or contaminant at the East Housing area. The State agency expressly advised the City, instead, that the termiticide had been "properly applied" for the "purpose for which it was intended," and that "no release into the environment" would occur unless and until the buildings were demolished and treated soils exceeding an action level were left in place. Am. Compl. Exh. 2, Tab 7. The DTSC determined there was no threat of a release,

provided the City followed its approved environmental workplan. Id.; see id. Tab 6 (workplan).

AISLIC's amended complaint recites conclusory allegations concerning the use of pesticides by the Navy at the Alameda facility. Am. Compl. ¶ 25. At bottom, that speculative paragraph indicates only that AISLIC would hope to prove that the Navy applied more termiticide in the East Housing area than the manufacturers recommended. AISLIC's speculation in the amended complaint is directly contrary, however, to the express factual basis for the DTSC's advisory letter attached to the amended complaint and, therefore, carries no weight for purposes of our RCFC 12(b)(6) motion. See Steckman, 143 F.3d at 1295-96. The documentation attached to the amended complaint proves that there was no "release or threatened release" of the pesticide, which was used by the Navy for its intended purpose before being safely removed by the City. Am. Compl. Exh. 2, Tab 7.

C. Assuming There Was A Threatened Release, The Government Was Not Responsible

Even assuming the Court disagrees with our analysis above, recovery by AISLIC or its alleged insureds is barred by the further requirement in Section 330(a)(1) that the release or threatened release arise from activities of the Department of Defense; and by Section 330(a)(3), which withdraws indemnity when an eligible transferee of military property "contributed to any such release or threatened release." "The term 'release' means

any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment . . . ." 42 U.S.C. § 9601(22).

The facts recited in the attachments to AISLIC's amended complaint establish that, to the extent any remote possibility of an actionable release existed, it arose solely in connection with demolition at the East Housing area after the July 2000 transfer of ownership. The May 2002 DTSC letter confirms that, had the City left the structures in place at the site, no actionable "release" of the "properly applied" termiticide could have occurred. Am. Compl. Exh. 2, Tab 7. Thus, even assuming, contrary to the plain meaning of Section 330(a)(1) and CERCLA, that the need to remove the pesticide-treated soil could be construed as arising from a "threatened release" of pesticide, that condition resulted from the City's activities - not from the Navy's previous use of the Naval Air Station.

To be clear, we do not question the general wisdom or desirability of demolishing the structures in order to develop the site after transfer. Further, we accept, for purposes of this motion, AISLIC's allegation that the treated soil was removed in accordance with the workplan. Am. Compl. ¶¶ 27-28. We note only that, even assuming, for purposes of argument, that all other prerequisites of Section 330 are satisfied, count 1 fails to state a claim for indemnification because the pleadings

establish that the City proximately caused, and solely "contributed to," the soil condition complained of. Accordingly, if the Court does not dismiss the amended complaint upon other grounds, it should dismiss count 1 pursuant to RCFC 12(b)(6).

V. If Relevant, The United States Has Not Breached The East Housing Deed Covenants

Should it be necessary to address the merits of count 2 (although we do not believe it is), the copy of the East Housing quitclaim deed appended to this motion should be considered part of the pleadings, as the relevant contract, for purposes of this motion. See, e.g., Venture Assocs., 987 F.2d at 431. Unlike the FISC Annex deed, which is quoted at paragraphs 22 and 23 of the amended complaint, the East Housing deed does not indicate that pesticides were ever stored or disposed of at that site. See Def. App. 14. There is, therefore, no basis upon which to question the findings of the California DTSC, described above, or to credit AISLIC's conclusory speculation that the chlordane-based pesticide found in the soil at the East Housing area was leaked, spilled, or improperly applied. See Am. Compl. ¶ 25.

Section F of the East Housing deed contains the environmental covenants required by CERCLA. The pertinent language is:

> 2. Grant of Covenant [CERCLA 42 U.S.C. Section 9620(h)(3)(A)(ii)(I)]. The GRANTOR [United States] covenants that all remedial action necessary to protect human health and the environment with respect to any hazardous

> substance remaining on the Property has been taken before the date of transfer.
>
> 3. Additional Remediation Obligation [CERCLA 42 U.S.C. Section 9620 (h)(3)(A)(ii)(II)]. The GRANTOR covenants and warrants that the GRANTOR shall conduct any additional remedial action necessary after the date of transfer of any hazardous substance existing on the Property prior to the date of this Deed. This covenant shall not apply to the extent that the GRANTEE caused or contributed to any release or threatened release of any hazardous substance, pollutant, contaminant, petroleum, or petroleum derivative.

Def. App. 5 (emphasis added). (The deed also "recognizes" the United States' obligations under Section 330, Def. App. 7; but that provision adds nothing to the Section 330 analysis above.)

AISLIC alleges that the Federal Government breached the covenants with the City by "fail[ing] to investigate, remediate and indemnify [sic] the City of Alameda for environmental contamination existing on the Property, due to the former operations of and occupancy by" the Navy. Am. Compl. ¶ 43. For essentially the same reasons discussed above in connection with Section 330, the information in the attachments to the amended complaint refutes AISLIC's conclusory allegations of breach.

As explained above, the pleadings reveal that the pesticide about which AISLIC complains was not a "hazardous substance" at any time "prior to the date" of transfer. See Def. App. 5. The CERCLA definition of "hazardous substance," 42 U.S.C. § 9601(22), applicable to the CERCLA covenants, does not include a "useful

product," i.e., one that serves a legitimate purpose in its existing state. See A&W Smelter and Refs., Inc. v. Clinton, 146 F.3d 1107, 1112 (9th Cir. 1998). The determination by the California DTSC, contained in the pleadings, confirms that the termiticide found in the soil at the East Housing area had been "properly applied" and was serving its function "in the manner intended," even after the East Housing property was transferred to the City. Am. Compl. Exh. 2, Tab 7.

The pleadings further establish that the activities that gave rise to cleanup were the demolition activities by AISLIC's insureds, not the prior activities of the United States. Id. That is, assuming (contrary to fact) that a hazardous condition ever arose at the East Housing area, "the GRANTEE [City] caused or contributed to" the soil condition in its entirety, see Def. App. 5 (¶ F.3); the United States was not, therefore, obligated under the deed covenants to perform any remediation; and AISLIC's count 2, if ripe, fails to state a claim for breach damages.

VI. The Court Cannot Grant Purely Declaratory Relief

Finally, independent of all of the above, count 3, seeking relief under the Declaratory Judgment Act, 28 U.S.C. § 2201, plainly must be dismissed as beyond the Court's subject matter jurisdiction. See King v. United States, 395 U.S. 1, 3 (1969) ("There is not a single indication in the Declaratory Judgment Act that Congress . . . intended to give the Court of Claims an

expanded jurisdiction that had been denied to it for nearly a century."); National Air Traffic Controllers Ass'n v. United States, 160 F.3d 714, 717 (Fed. Cir. 1998).

As amended in 1992, the Tucker Act authorizes this Court to address certain "nonmonetary disputes on which a decision of the contracting officer has been issued under section 6 of the [Contract Disputes Act ('CDA'), 41 U.S.C. § 605]." 28 U.S.C. § 1491(a). This is not a CDA case, however; and, in any event, there has been no contracting officer's final decision. Accordingly, the Court should dismiss count 3 pursuant to RCFC 12(b)(1), even assuming that count would be ripe.

CONCLUSION

For the reasons given above, we respectfully request the Court to dismiss AISLIC's amended complaint without prejudice upon ripeness grounds; or, in the alternative, to dismiss counts 1 and 2 for failure to state a claim, dismiss count 3 for lack of jurisdiction, and dismiss the complaint.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/
DAVID M. COHEN
Director

OF COUNSEL:

MARY RAIVEL
Attorney
Naval Litigation Office
Washington, D.C.

s/Kyle Chadwick
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

November 29, 2005

CERTIFICATE OF FILING

I certify that on November 29, 2005, the foregoing motion was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Kyle Chadwick