## Alameda Naval Air Station
## East Housing

A parcel of land being a portion of the Alameda Naval Air Station, Alameda, California, lying in the city and county of Alameda, State of California, and being all of the parcel described in that certain deed recorded June 18, 1963 in Reel 924 of Official Records at Image 879, Alameda County Records, and being all of the parcel described in that certain deed recorded April 29, 1963 in Reel 871 of Official Records at Image 596, Alameda County Records, and being a portion of the parcel described in that certain deed recorded March 28, 1941 in Book 4023 of Official Records at page 499, Alameda County Records, more particularly described as follows:

BEGINNING at the intersection of the northerly line of Atlantic Avenue, being 51 feet wide, and the easterly line of Main Street as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Records of Survey at page 16 through 22, inclusive, in the Office of the Recorder of Alameda County:

1. Thence along said easterly line of Main Street and the westerly boundary line of the parcel described in that certain deed recorded March 28, 1941 in Book 4023 of Official Records at page 499, Alameda County Records, North 00°34'11" East, 1240.19 feet to the northerly line of the parcel described in that certain deed recorded on June 18, 1963 in Reel 924 of Official Records at Image 879, Alameda County Records;

2. Thence leaving said easterly line of Main Street along said northerly line of the parcel described that certain deed recorded on June 18, 1963 in Reel 924 of Official Records at Image 879, Alameda County Records, South 87°51'51" East, 1798.27 feet to the northwesterly corner of the parcel described in that certain deed recorded on April 29, 1963 in Reel 871 of Official Records at Image 596, Alameda County Records;

3. Thence along the northerly line of the parcel described in that certain deed recorded on April 29, 1963 in Reel 871 of Official Records at Image 596, Alameda County Records, South 87°51'51" East, 777.49 feet to the northeasterly corner of said parcel;

4. Thence leaving said line and along the easterly line of the parcel described in that certain deed recorded on April 29, 1963 in Reel 871 of Official Records at Image 596, Alameda County Records, and its southerly prolongation, South 02°08'09" West, 1241.94 feet to the northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Records of Survey at page 16 through 22, inclusive, Alameda County Records;

5. Thence westerly along said northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Records of Survey at page 16 through 22, inclusive, North 85°25'42" West, 729.54 feet;

6. Thence continuing westerly along said northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Records of Survey at page 16 through 22, inclusive, South 89°49'20" West, 884.20 feet;

7. Thence continuing westerly along said northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Maps at page 16 through 22, inclusive, North 87°26'18" West, 929.55 feet to the POINT OF BEGINNING.

Containing an area of 72.45396 acres, more or less.

Basis of Bearings:
Bearings are based on the California Coordinate System of 1927 Zone III using the bearing of South 87°45'20" East between USC & GS Station "MAIN ATL" and USC & GS station "ALT FIFTH". All distances in this description are ground distances. Multiply by 0.9999295 to obtain grid distances.

A plat showing the above description is attached herein and made a part hereof as Exhibit "B".

This description was prepared by me or under my direction in conformance with the requirements of the Land Surveyor's Act.

Prepared By:

[signature]
Billy Martin, P.L.S. 5797
Expires: 6/30/2004

LICENSED LAND SURVEYOR
BILLY MARTIN
EXP. 6/30/2004
No. 5797
STATE OF CALIFORNIA

Dated: JULY 17, 2000

K:\MAIN\99X\99023\LEGALS\EHOUSE071700.DOC

NOV 01 2005 13:36 FR NAVY LIT OFC 2026856793 TO 992023057644 P.13
JUN 14 2004 09:56 FR 6195320940 TO 9912026857036 P.13/26




Brian Kangas Foulk
Engineers • Surveyors • Planners

540 Price Avenue
Redwood City, CA 94063
650/482-6300
650/482-6399 (FAX)

Subject EXHIBIT "B"
EAST HOUSING
Job No. 980221-10
By SPM Date 5-11-00 Chkd. MP
SHEET 1 OF 1

PATH: J:\Sur98\980221\DWG\Plots\
DWG NAME: HHouse

DATE: 5/11/2000
TIME: 1158 a.m.

.LE 3

**Notice of Hazardous Substance Stored, Released, or Disposed of at Parcels 170 and 171**

(Page 1 of 1)

Notice is hereby given that the information provided below contains a notice of hazardous substances that are known to have been stored for more than 1 year or known to have been released or disposed of on certain portions of the FOST area and the dates that such storage, release, or disposal took place. 40 CFR Section 373.3(b) requires that the afore-mentioned statement be prominently displayed in this notice. The information contained in this notice is required under the authority of regulations promulgated under section 120(h) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA, also known as "Superfund") 42 USC section 9620(h). Chemicals specifically excluded from consideration were incidental quantities of household-type cleaning chemicals and consumer office products. It should be noted that only minimal information regarding hazardous materials was available, therefore, the periods that these materials were stored is uncertain, unless specifically stated.

| Parcel Number | Building or Lot Number | Facility Name | Hazardous Substance(s) | CAS Number | Regulatory Synonym | RCRA Waste Number | Quantity | Date(s) of Storage, Release, or Disposal (If known) | Stored (S), Released (R), or Disposed of (D) | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|
| 170 | N/A | Family Housing | Durban 2E | None | None | - | 2 gallons | 10/92-10/93 | S | Weekly application |
| | | | Ficam W | 22781-23-3 | Bendiocarb; Fuam; FICAM D; Ficam Plus | - | 3 boxes | 10/92-10/93 | S | |
| | | | Drione | None | None | - | 1 pound | 10/92-10/93 | S | |
| | | | Talon G | None | None | - | 30 pounds | 10/92-10/93 | S | |
| | | | PT 515 | None | None | - | 24 cans | 10/91-10/93 | S | |
| | No release or disposal identified. | | | | | | | | | |
| 171 | | Family Housing | Durban 2E | None | None | - | 2 gallons | 10/92-10/93 | S | Weekly application |
| | | | Ficam W | 22781-23-3 | Bendiocarb; Fuam; FICAM D; Ficam Plus | - | 3 boxes | 10/92-10/93 | S | |
| | | | Drione | None | None | - | 1 pound | 10/92-10/93 | S | |
| | | | Talon G | None | None | - | 30 pounds | 10/92-10/93 | S | |
| | | | PT 515 | None | None | - | 24 cans | 10/92-10/93 | S | |
| | No release or disposal identified. | | | | | | | | | |

Notes:

- -= The substance is not a waste, therefore the RCRA waste number does not apply
- CAS= Chemical abstract service
- NA= Not applicable. The substance given is either a class of compounds, a mixture of substances, or not a chemical. Therefore, regulatory synonyms and CAS numbers are not available.
- None= No RCRA Waste number found, or no regulatory synonyms identified for this substance
- RCRA= Resource Conservation and Recovery Act

Exhibit B
East Housing Unit Claim Head

DRAFT STATE COVENANT
EXHIBIT "C"

Recording Requested by:

City of Alameda
Economic Development Division
950 West Mall Square, #215
Alameda, CA 94501
Attn: Jeffrey T. Bond

When Recorded, Mail to:

Department of Toxic Substances Control
10151 Croydon Way, Suite 3
Sacramento, CA 95827-2106
Attention: A. J. Landis, P.E., Chief
Office of Military Facilities

COVENANT

TO RESTRICT USE OF PROPERTY

(ENVIRONMENTAL RESTRICTIONS)

Fleet and Industrial Supply Center, Oakland
Alameda Facility and Alameda Annex
and
Alameda Naval Air Station East Housing
Alameda, California

This Covenant To Restrict Use of Property ("Covenant") is made on the ____ day of ____________, 2000 by the City of Alameda ("City" or "Covenantor"), which is the current owner of the property restricted by this Covenant, and the California Environmental Protection Agency - Department of Toxic Substances Control (the "Department" or "Covenantee").

RECITALS/STATEMENT OF FACTS

A. Covenantor is the owner of record of that certain real property consisting of approximately _____ acres (the "Property") situated in the City of Alameda, County of Alameda, State of California. The Property formerly was part of the United States Navy installation commonly known as the Fleet and Industrial Supply Center, Oakland, Alameda Facility and

Alameda Annex and the adjacent part of the former Alameda Naval Air Station commonly known as East Housing. A legal description of the Property is set forth in Exhibit A and is incorporated herein by this reference. A figure depicting the location of the Property is set forth in Exhibit B and is incorporated herein by this reference.

B. The Property was formerly owned by the United States Navy.

C. The Navy has caused to be completed environmental response actions on and in connection with the Property. Such actions include, but are not limited to, preparation of a **[insert date and name of final remedial action document]** ("RAP/ROD") that has been approved by the Department, and the implementation of response actions pursuant to the RAP/ROD that allow the Property to be used without significant risk to human health and without significant potential for future environmental damage.

D. Pursuant to California Civil Code section 1471(c), the Department has determined that this Covenant is reasonably necessary to protect present or future human health and safety or the environment as a result of the potential presence of hazardous materials, as defined in California Health and Safety Code section 25260, in the marsh crust and the shallowest groundwater zone, as defined below, under the surface of land at the Property. The Department has also determined that such protection is part of the remedy contemplated in the RAP/ROD. The Covenantor and the Department therefore intend that the use of the Property be restricted as set forth in this Covenant to protect human health, safety and the environment.

E. The Property is planned for mixed uses including residential use. Before 1920, the Property and surrounding areas were undeveloped tidal marsh along Alameda Island's San Francisco Bay shoreline. Between approximately 1900 and 1940, the Property and surrounding areas were filled with sand and clay material from unknown sources.

F. "Marsh crust" means the underground layer that is the remnant of the tidal marsh that existed along the shoreline of Alameda Island before filling to create additional dry land. In many places, this layer contains hazardous materials from former industrial discharges that were

retained in the historic marsh before filling. These hazardous materials include petroleum hydrocarbons (TPH) and polynuclear aromatic hydrocarbons (PAHs). The marsh crust is a continuous underground layer, at depths of ___ to ___ feet from the surface, that extends bayward of the original mean higher high tide line of Alameda Island, before filling, throughout the area that was filled.

G. The "shallowest groundwater zone" is in the fill at the Property, is first encountered at depths from 4 to 8 feet below ground surface (bgs) and extends to a maximum depth of approximately 20 feet bgs. The shallowest groundwater zone does not include any deeper groundwater zone that is hydraulically separated from the fill. In particular, the shallowest groundwater zone does not include the "Merritt Sand" zone, which is first encountered at approximately 10 to 105 feet bgs and is hydraulically separated from the fill by Bay Mud, the thickness of which ranges from 5 to 95 feet at the Property. The shallowest groundwater zone is currently not usable for drinking water because of the presence of naturally occurring inorganic constituents (total dissolved solids and some metals). Because of this intrinsic use limitation of the groundwater, the contamination of organic constituents (volatile organic compounds, TPH, and PAHs) related to former activities at or in the vicinity the Property, may, at this time, remain in place provided there are sufficient controls and restrictions to protect the public health, safety, and the environment.

## ARTICLE I.
## ADDITIONAL DEFINITIONS

1.1 Occupant(s). "Occupant(s)" means any person or entity entitled by ownership, leasehold, or other legal relationship to occupy any portion of the Property.

1.2 Owner(s). "Owner(s)" means the Covenantor, its successors in interest and their successors in interest, including heirs and assigns, who at any time hold fee title to all or any portion of the Property.

1.3 Excavation ordinance. "Excavation ordinance" means City of Alameda Ordinance No. _______, a copy of the current version of which is attached as Exhibit C and incorporated

herein by this reference.

1.4 Threshold depth. "Threshold depth"is the elevation above which there is little likelihood that hazardous materials from the marsh crust would have mixed during filling. The threshold depth for any location at the Property is shown on Exhibit __ to the RAP/ROD.

1.5 Permitted excavation. "Permitted excavation" means (i) excavation performed in accordance with a City permit approved and issued pursuant to the excavation ordinance when such permit is required under the terms of the excavation ordinance; or (ii) if the excavation ordinance has been repealed or the Department has made a written determination pursuant to subsection 3.2 that the excavation ordinance does not comport with the intent of this Covenant, excavation performed in accordance with a written approval issued by the Department.

1.6 Department. "Department" means the California Environmental Protection Agency, Department of Toxic Substances Control and its successor agencies, if any.

ARTICLE II.
GENERAL PROVISIONS

2.1 Restrictions to Run with the Land. This Covenant sets forth protective provisions, covenants, restrictions, and conditions (collectively referred to as "Restrictions"), subject to which the Property and every portion of the Property shall be improved, held, used, occupied, leased, sold, hypothecated, encumbered and/or conveyed. Each and every Restriction: (a) runs with the land pursuant to California Health & Safety Code section 25355.5(a)(1)(C) and California Civil Code section 1471; (b) inures to the benefit of and passes with each and every portion of the Property; (c) is for the benefit of, and is enforceable by the Department; and (d) is imposed upon the entire Property unless expressly stated as applicable only to a specific portion of the Property.

2.2 Binding Upon Owners/Occupants. Pursuant to California Health & Safety Code section 25355.5(a)(1)(C), this Covenant binds all Owners and Occupants of the Property, and their heirs, successors and assignees, and their agents, employees, and lessees. Pursuant to California Civil Code section 1471(b), all Owners of the Property are expressly bound by this