**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 05-1020C<br>Judge Margaret M. Sweeney<br><br>**FIRST AMENDED COMPLAINT** |

Plaintiff American International Specialty Lines Insurance Company ("Plaintiff" or "AISLIC"), by and through its undersigned attorneys, brings this First Amended Complaint[1] against Defendant United States of America ("Defendant" or "Government"), and states the following:

**NATURE OF THE ACTION**

1. Plaintiff brings this claim for costs incurred to remediate a hazardous substance, organochlorine pesticides ("OCPs"), namely chlordane, at the property formerly comprising the East Housing Area of the Naval Air Station Alameda (the "Property"), which was transferred to the Alameda Reuse and Redevelopment Authority pursuant to the Defense Base Closure and Realignment Act of 1990, Public Law 101-510, 10 U.S.C. § 2687 note, as amended. Plaintiff's claim for damages arises from the Government's breaches of contractual obligations to notify the Alameda Reuse and Redevelopment Authority of the presence of hazardous substances and insecticides on the Property, to conduct remedial action necessary to protect human health and the environment with respect to hazardous substances on the Property before the date of transfer, to

[1] This pleading is Plaintiff's first amendment to its complaint in this Court. Plaintiff's initial complaint, filed on September 30, 2005, was titled as an amended complaint pursuant to RCFC 3.1(a)(2). AISLIC is filing this amended complaint as of right as Defendant's Motion to Dismiss does not constitute a responsive pleading within the meaning of RCFC 15(a). *See Devon Energy Corp. v. United States*, 45 Fed. Cl. 519 (1999).

conduct remedial action necessary after the date of transfer, and for violation of statutory and breach of contractual obligations to indemnify Plaintiff for incurring remediation costs.

## THE PARTIES

### A. Plaintiff

2. Plaintiff American International Specialty Lines Insurance Company is a surplus line insurer for the Alameda Reuse and Redevelopment Authority and the City of Alameda for the Property with a right of subrogation. AISLIC is a corporation domiciled in Alaska. Plaintiff is the subrogee of the Alameda Reuse and Redevelopment Authority and the City of Alameda by virtue of the benefits it paid on behalf of its insureds for damages caused by Defendant arising from the acts or omissions forming the subject matter of this Complaint. Plaintiff has fully compensated its insureds and has a direct pecuniary interest in this action. The Alameda Reuse and Redevelopment Authority and the City of Alameda are not pursuing a claim against Defendant.

### B. Defendant

3. Defendant, the United States of America, is a sovereign entity subject to Acts of Congress and the terms of its validly executed contracts and covenants.

### C. Other Entities

4. The United States Department of the Navy ("Navy") is an agency, department, and instrumentality of the United States Government, with its principal office in Arlington, Virginia.

5. The Alameda Reuse and Redevelopment Authority is a local redevelopment authority as defined in Section 2903, Public Law 103-160, organized and existing under the Constitution and laws of California.

6. The City of Alameda is a municipal corporation organized and existing under the Constitution and laws of California.

7. The Community Improvement Commission of the City of Alameda is a public body corporate and political organized under the Constitution and laws of California.

## JURISDICTION

8. Jurisdiction in this case exists under the Tucker Act, 28 U.S.C. § 1491(a)(i), which grants the Court jurisdiction to render judgment upon any claim against the United States founded upon, *inter alia*, any express or implied contract with the United States and any Act of Congress, including Section 330 of National Defense Authorization Act of 1993, Indemnification of Transferees of Closing Defense Property, Public Law 102-484, 10 U.S.C. § 2687 note, as amended. *See, e.g., United States v. Mitchell*, 463 U.S. 206, 212 (1983).

## FACTUAL ALLEGATIONS

### A. Closure of the Naval Air Station Alameda and the Community Reuse Plan

9. Under the authority of the Defense Base Closure and Realignment Act of 1990, Public Law 101-510, 10 U.S.C. § 2687 note, as amended, the 1993 Defense Base Closure and Realignment Commission recommended the closure of the Naval Air Station Alameda, which is located in Alameda, California. The East Housing Area – the contaminated Property that is the subject of this action – was part of the Naval Air Station Alameda. This recommendation for base closure was approved by President Clinton and accepted by the One Hundred Third Congress in 1993. The Naval Air Station Alameda closed on April 30, 1997.

10. On April 5, 1994, the City and County of Alameda signed a Joint Powers Agreement and established the Alameda Reuse and Redevelopment Authority. The Alameda Reuse and Redevelopment Authority was recognized by the Department of Defense as the responsible entity for submitting and completing the Community Reuse Plan for the Naval Air Station Alameda.

11. The Navy analyzed the impact of the disposal and reuse of the Naval Air Station Alameda in an Environmental Impact Statement ("EIS"), as required by the National

Environmental Policy Act ("NEPA"). The EIS analyzed four reuse alternatives and identified the Community Reuse Plan as the preferred alternative. The Community Reuse Plan proposed to use the Naval Air Station Alameda, including the East Housing Area and an adjacent property (the Fleet and Industrial Supply Center, Alameda Facility/Annex), for residential, educational, industrial and commercial activities and to develop parks and recreational areas. The Alameda Reuse and Redevelopment Authority adopted the EIS' preferred Community Reuse Plan on September 3, 1997.

**B. <u>The Parties' Memorandum of Agreement</u>**

12. On June 6, 2000, the Government, acting by and through the Navy, entered into a Memorandum of Agreement to convey of portions of the Naval Air Station Alameda to the Alameda Reuse and Redevelopment Authority ("Memorandum of Agreement"). The Memorandum of Agreement is attached hereto as Exhibit 1.[2]

13. The Memorandum of Agreement concerns the Property that is the subject of this claim, the East Housing Area.

14. Pursuant to the terms and conditions of the Memorandum of Agreement, the Government agreed that the Alameda Reuse and Redevelopment Authority did not assume any liability or responsibility for environmental impacts and damage caused by the Government's use of toxic or hazardous wastes, substances or materials, or petroleum derivatives, on any portion of the Property. *See* Memorandum of Agreement, Art. 21.

15. The Government also agreed that the Alameda Reuse and Redevelopment Authority had "no obligation under this Agreement to undertake the defense of any claim or action, whether in existence now or brought in the future, or to conduct any cleanup or remediation action

---

[2] Plaintiff has incorporated cover sheets for exhibits and their enclosures to facilitate the Court's review of the exhibits.

solely arising out of the use or release of any toxic or hazardous wastes, substances or materials . . . on or from any part of the Property due to activity on the Property by the Government." *Id.*

16. The Government represented in the Memorandum of Agreement that the information contained therein and the exhibits attached thereto "do not omit any material information required to make the submission thereof fair and complete." Memorandum of Agreement, Art. 7(b).

17. The exhibits attached to the Memorandum of Agreement included the form East Housing Deed and FOST for the East Housing Area (these terms are defined below).

18. Exhibit B to the form East Housing Deed, included as an exhibit to the Memorandum of Agreement, listed the hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property. *See* Memorandum of Agreement, Exhibit B-1.

19. The Government's form East Housing Deed, and Exhibit B thereto, failed to identify chlordane or OCPs among the hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property.

**C. <u>The Government's Conveyance of the East Housing Area</u>**

20. Following the Government's review and approval of the Community Reuse Plan, the Government, acting by and through the Navy, conveyed the Property to the Alameda Reuse and Redevelopment Authority on July 17, 2000.

21. To effect the transfer of the Property, the Government and the Alameda Reuse and Redevelopment Authority entered into a Quitclaim Deed and Environmental Restrictions Pursuant to California Civil Code Section 1472 for East Housing Portion of NAS Alameda (the "East Housing Deed"). The East Housing Deed is attached hereto as Exhibit 2.

22. The Alameda Reuse and Redevelopment Authority agreed to accept conveyance of the Property, subject to the representations made by the Government concerning the condition of the Property and the environmental remediation required to be undertaken by the Government. East Housing Deed, II.B.

23. When it entered into the East Housing Deed, the Government made numerous representations to the Alameda Reuse and Redevelopment Authority concerning the condition of the Property and the presence of pesticides and other hazardous substances on the Property. East Housing Deed, II.F.1.a., II.F.1.b., II.F.2, and East Housing Deed, Exhibit B.

24. The Government incorporated the notifications contained in its Final Finding of Suitability to Transfer ("FOST"), including references to the environmental conditions on the Property, into the East Housing Deed. East Housing Deed, II.F.1.a.

25. The Government, acting by and through the Navy, issued the FOST on April 7, 2000, to transfer the Property to the Alameda Reuse and Redevelopment Authority. The FOST is attached hereto as Exhibit 3. For purposes of the FOST, the former Naval Air Station Alameda was divided into individual parcels. The Property that is the subject of this action, the East Housing Area, consisted of parcels 170 and 171, equaling approximately 72.5 acres, and was intended for residential use.

26. The FOST included a list of pesticides that may have been used at the former Naval Air Station Alameda. *See* FOST, Section 6.8.

27. The FOST fails to identify chlordane or OCPs among the pesticides that may have been used on the Property.

28. In the East Housing Deed, the Government provided notice of hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property. East Housing Deed, II.F.1.b and East Housing Deed, Exhibit B. The Government

also represented that it had made a complete search of its files and records concerning the Property and found that the FOST provides notice of the type and quantity of such hazardous substances on the Property and of the time the storage, release, or disposal took place. East Housing Deed, II.F.1.b. These representations by the Government are collectively referred to as the "Hazardous Substance Notification."

29. The Government represented in the East Housing Deed that it was providing the Hazardous Substance Notification pursuant to the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9620(h).

30. The Government's Hazardous Substance Notification failed to identify chlordane or OCPs among the hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property.

31. The Alameda Reuse and Redevelopment Authority relied on the Government's representations, including its representations concerning hazardous substances and pesticides on the Property and its complete search of its files and records concerning the Property, when the Alameda Reuse and Redevelopment Authority agreed to enter into the East Housing Deed and accept conveyance of the Property.

32. In addition to providing notice concerning the condition of the Property and pesticides and other hazardous substances on the Property, the Government also made specific covenants to the Alameda Reuse and Redevelopment Authority concerning the environmental remediation the Government had undertaken and would continue to undertake on the Property.

33. The Government covenanted that before the date of transfer of the Property to the Alameda Reuse and Redevelopment Authority, the Government had taken "all remedial action necessary to protect human health and the environment with respect to any hazardous substance remaining on the Property." East Housing Deed, II.F.2.

34. The Government covenanted and warranted that it "shall conduct any additional remedial action necessary after the date of transfer for any hazardous substance existing on the Property prior to the date of this Deed." East Housing Deed, II.F.3.

35. In the East Housing Deed, the Government explicitly recognized its obligations to indemnify the Alameda Reuse and Redevelopment Authority under Section 330 of the National Defense Authorization Act of 1993. East Housing Deed, II.G.

36. Section II.G of the East Housing Deed states:

> INDEMNIFICATION REGARDING TRANSFEREES
>
> The [Government] hereby recognizes its obligations under Section 330 of the National Defense Authorization Act of 1993 (Pub. L. 102-484), as amended, regarding indemnification of transferees of closing Department of Defense property.

37. Section 330 of the National Defense Authorization Act of 1993, as amended, provides, in part:

> In general . . . the Secretary of Defense shall hold harmless, defend, and indemnify in full the persons and entities . . . from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss) that results from, or is in any manner predicated upon, the release or threatened release of any hazardous substance, pollutant or contaminant, or petroleum or petroleum derivative as a result of Department of Defense activities at any military installation (or portion thereof) that is closed pursuant to a base closure law.

38. The conditions, restrictions, reservations, and covenants set forth in the East Housing Deed are a binding servitude on the Property and inure to the benefit of the Government, the Alameda Reuse and Redevelopment Authority, and their successors and assigns, and are deemed to run with the land in perpetuity. East Housing Deed, III.

39. On August 1, 2001, the Alameda Reuse and Redevelopment Authority transferred the Property to the Community Improvement Commission of the City of Alameda (the "City of

Alameda"). The City of Alameda is a successor to the Alameda Reuse and Redevelopment Authority under the East Housing Deed.

**D. <u>Discovery and Remediation of Organochlorine Pesticides in the East Housing Area</u>**

40. In the early Spring and Summer of 2001, consulting engineers, Winzler & Kelly, documented a series of soil sample events in the East Housing Area, finding that a number of OCPs, namely chlordane, were present on the Property.

41. OCPs, including chlordane, are pesticides.

42. OCPs, including chlordane, are hazardous substances.

43. Based on the soil samples, Winzler & Kelly determined that the OCPs, namely chlordane, exceeded potentially applicable regulatory standards. The findings were included in a report entitled "Sampling Report: Organochlorine Pesticides," dated October 20, 2001. Accordingly, abatement and/or reduction of OCP levels was necessary in order to render the Property suitable for future unrestricted residential use – the use which the Government approved as part of the Community Reuse Plan.

44. The presence of OCPs, including chlordane, on the East Housing Area is due to the storage, release, or disposal of such substances on the Property prior to the date of the Government's transfer of the Property to the Alameda Reuse and Redevelopment Authority. In fact, the Environmental Protection Agency cancelled use of chlordane in 1988, twelve years before the Government's transfer of the Property to the Alameda Reuse and Redevelopment Authority.

45. Upon the discovery of OCPs on the Property, the Department of Toxic Substance Control ("DTSC") required the Alameda Reuse and Redevelopment Authority and the City of Alameda to assess and remediate the contamination at the East Housing Area in order to implement the Community Reuse Plan approved by the Government. The DTSC reiterated this requirement to the Alameda Reuse and Redevelopment Authority in a letter dated May 3, 2002.

46. To remediate the hazard of the OCPs, the Alameda Reuse and Redevelopment Authority and the City of Alameda were required to excavate 29,270 tons of impacted soil and dispose of it off-site between April and August of 2002. The remediation work was performed according to the Demolition and Organochlorine Pesticide Removal Workplan, dated April 23, 2002, which DTSC had approved.

47. On October 31, 2002, and December 18, 2003, the Alameda Reuse and Redevelopment Authority, the City of Alameda, and Plaintiff, as the insurer of the Property with a right of subrogation, delivered to the Government written claims for indemnification pursuant to the East Housing Deed's indemnification provisions and Section 330(b) of the National Defense Authorization Act. The indemnification claims are attached hereto as Exhibits 4 and 5, respectively. At the Navy's request, the City of Alameda sent a duplicate copy of the October 31, 2002 claim for indemnification on January 22, 2003, attached hereto as Exhibit 6. The Government failed to respond to these claims for indemnification. Further, Defendant denied responsibility in its Answer to Plaintiff's Complaint in Case No. 3:04-CV-0091, in the Northern District of California, which court subsequently transferred this matter to the United States Court of Federal Claims.

**E. <u>Plaintiff's Subrogation Rights</u>**

48. Prior to the Government's transfer of the Property pursuant to the East Housing Deed, the Alameda Reuse and Redevelopment Authority and the City of Alameda purchased a pollution legal liability insurance policy from AISLIC pertaining to the Naval Air Station Alameda, including the East Housing Area and an adjacent property (the Fleet and Industrial Supply Center, Alameda Facility/Annex), for the period of July 17, 2000, through July 17, 2010 (the "Insurance Policy").

49. The Government was not an insured party under the Insurance Policy.

50. The Insurance Policy provides, in relevant part: "In the event of any payment under the Policy, [AISLIC] shall be subrogated to all the Insured's rights of recovery therefore against any person or organization…."

51. Pursuant to the Insurance Policy, Plaintiff has fully compensated the Alameda Reuse and Redevelopment Authority and the City of Alameda for all costs incurred to remediate the OCPs and chlordane on the Property.

52. Plaintiff AISLIC completed payment in full settlement of all claims and demands relating to the remedial action that is the subject of this suit on November 20, 2005, and the total amount paid was $3,763,328. As confirmation of payment, the City of Alameda/Alameda Reuse and Redevelopment Authority signed a subrogation receipt, attached hereto as Exhibit 7.

## FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT (EAST HOUSING DEED)

53. Plaintiff incorporates by reference paragraphs 1 through 52 as though fully set forth herein.

54. The East Housing Deed is a valid and binding contract between the Government and the Alameda Reuse and Redevelopment Authority.

55. Pursuant to the terms and conditions of the East Housing Deed, the Government covenanted and warranted that before the date of its transfer of the Property to the Alameda Reuse and Redevelopment Authority, the Government had taken "all remedial action necessary to protect human health and the environment with respect to any hazardous substance remaining on the Property." East Housing Deed, II.F.2.

56. Chlordane and/or OCPs were present and existed on the Property prior to the date of the Government's transfer of the Property to the Alameda Reuse and Redevelopment Authority.

57. Chlordane and/or OCPs were present and remained on the Property after the date of the Government's transfer of the Property to the Alameda Reuse and Redevelopment Authority.

58. Chlordane and/or OCPs are hazardous substances.

59. Remedial action was necessary to protect human health and the environment with respect to the chlordane and/or OCPs present and remaining on the Property.

60. The Government breached the East Housing Deed by failing to take all remedial action necessary to protect human health and the environment with respect to the hazardous substances chlordane and/or OCPs remaining on the Property before the date of the Government's transfer of the Property to the Alameda Reuse and Redevelopment Authority.

61. As a result of the Government's breach of the East Housing Deed, Plaintiff has been damaged in an amount to be proven at trial.

## SECOND CLAIM FOR RELIEF – BREACH OF CONTRACT (EAST HOUSING DEED)

62. Plaintiff incorporates by reference paragraphs 1 through 61 as though fully set forth herein.

63. The East Housing Deed is a valid and binding contract between the Government and the Alameda Reuse and Redevelopment Authority.

64. Pursuant to the terms and conditions of the East Housing Deed, the Government covenanted and warranted that it "shall conduct any additional remedial action necessary after the date of transfer for any hazardous substance existing on the Property prior to the date of this Deed." East Housing Deed, II.F.3.

65. Chlordane and/or OCPs were present and existed on the Property prior to July 17, 2000, the date of the East Housing Deed.

66. Chlordane and/or OCPs were present and remained on the Property after the date of the Government's transfer of the Property to the Alameda Reuse and Redevelopment Authority.

67. Chlordane and/or OCPs are hazardous substances.

68. Remedial action was necessary after the date of the Government's transfer of the Property to the Alameda Reuse and Redevelopment Authority for the chlordane and/or OCPs existing on the Property prior to the date of the East Housing Deed.

69. The Alameda Reuse and Redevelopment Authority did not cause or contribute to any release or threatened release of any hazardous substance, pollutant, contaminant, petroleum or petroleum derivative on the Property.

70. On information and belief, the chlordane and/or OCPs were stored, released, or disposed of on the Property before the Environmental Protection Agency cancelled use of chlordane in 1988.

71. The Government breached the East Housing Deed by failing to conduct remedial action necessary after the date of the Government's transfer of the Property to the Alameda Reuse and Redevelopment Authority for the hazardous substances chlordane and/or OCPs existing on the Property prior to the date of the East Housing Deed.

72. As a result of the Government's breach of the East Housing Deed, Plaintiff has been damaged in an amount to be proven at trial.

## THIRD CLAIM FOR RELIEF – BREACH OF CONTRACT BY MISREPRESENTATION (EAST HOUSING DEED)

73. Plaintiff incorporates by reference paragraphs 1 through 72 as though fully set forth herein.

74. The East Housing Deed is a valid and binding contract between the Government and the Alameda Reuse and Redevelopment Authority.

75. Pursuant to the terms and conditions of the East Housing Deed, the Government represented that the FOST listed the pesticides that may have been used on the Property. *See* East Housing Deed, II.F.1.a and FOST, Section 6.8.

76. The FOST fails to identify chlordane or OCPs among the pesticides that may have been used on the Property.

77. Chlordane and/or OCPs are pesticides.

78. Chlordane and/or OCPs were used on the Property.

79. By failing to identify chlordane or OCPs among the pesticides that may have been used on the Property, the Government misrepresented the list of pesticides that may have been used on the Property.

80. The Government's list of pesticides that may have been used on the Property was an untrue representation of fact because it failed to identify chlordane or OCPs among the pesticides that may have been used on the Property.

81. The Government's failure to identify chlordane or OCPs among the pesticides that may have been used on the Property was a negligently untrue representation of fact.

82. The Government had a duty to disclose all pesticides that may have been used on the Property.

83. The Government's misrepresentation of the list of pesticides that may have been used on the Property was either fraudulent or material.

84. The Government's misrepresentation of the list of pesticides that may have been used on the Property misled the Alameda Reuse and Redevelopment Authority to believe that Chlordane and/or OCPs were not used on the Property.

85. The Government's misrepresentation of the list of pesticides that may have been used on the Property operated as an inducement for the Alameda Reuse and Redevelopment Authority to enter into the East Housing Deed.

86. The Alameda Reuse and Redevelopment Authority was justified in relying on the Government's misrepresentation of the list of pesticides that may have been used on the Property.

87. The Alameda Reuse and Redevelopment Authority reasonably inferred from the Government's affirmative representation of the list of pesticides that may have been used on the Property that Chlordane and/or OCPs were not used on the Property.

88. As a result of the Government's misrepresentation of the list of pesticides that may have been used on the Property, Plaintiff has been damaged in an amount to be proven at trial.

**FOURTH CLAIM FOR RELIEF – BREACH OF CONTRACT BY MISREPRESENTATION (EAST HOUSING DEED)**

89. Plaintiff incorporates by reference paragraphs 1 through 88 as though fully set forth herein.

90. The East Housing Deed is a valid and binding contract between the Government and the Alameda Reuse and Redevelopment Authority.

91. Pursuant to the terms and conditions of the East Housing Deed, the Government represented that Exhibit B to the East Housing Deed listed the hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property. *See* East Housing Deed, II.F.1.b and East Housing Deed, Exhibit B. The Government also represented that it had made a complete search of its files and records concerning the Property and found that the FOST provides notice of the type and quantity of such hazardous substances on the Property and of the time the storage, release, or disposal took place. East Housing Deed, II.F.1.b. These representations by the Government are collectively referred to as the "Hazardous Substance Notification."

92. The Government's Hazardous Substance Notification failed to identify chlordane or OCPs among the hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property.

93. Chlordane and/or OCPs are hazardous substances.

94. Chlordane and/or OCPs were stored for one year or more, released, and/or disposed of on the Property.

95. The Government knew or should have known that Chlordane and/or OCPs were released on the Property.

96. By failing to identify chlordane or OCPs in its Hazardous Substance Notification, the Government misrepresented the list of hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property.

97. The Government's Hazardous Substance Notification was an untrue representation of fact because it failed to identify chlordane or OCPs among the hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property.

98. The Government's failure to identify chlordane or OCPs among the hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property was a negligently untrue representation of fact.

99. The Government had a duty to disclose all hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property.

100. The Government's misrepresentation of the list of hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property was either fraudulent or material.

101. The Government's misrepresentation of hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property misled the Alameda Reuse and Redevelopment Authority to believe that Chlordane and/or OCPs were not stored for one year or more, known to have been released, or disposed of on the Property.

102. The Government's misrepresentation of hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property operated as an

inducement for the Alameda Reuse and Redevelopment Authority to enter into the East Housing Deed.

103. The Alameda Reuse and Redevelopment Authority was justified in relying on the Government's misrepresentation of hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property.

104. The Alameda Reuse and Redevelopment Authority reasonably inferred from the Government's affirmative representation of hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property that Chlordane and/or OCPs were not stored for one year or more, known to have been released, or disposed of on the Property.

105. As a result of the Government's misrepresentation of hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property, Plaintiff has been damaged in an amount to be proven at trial.

**FIFTH CLAIM FOR RELIEF – EXPRESS INDEMNIFICATION PURSUANT TO SECTION 330 OF THE NATIONAL DEFENSE AUTHORIZATION ACT**

106. Plaintiff incorporates by reference paragraphs 1 through 105 as though fully set forth herein.

107. Pursuant to Section 330 of the National Defense Authorization Act of 1993, the Government was required to hold harmless, defend, and indemnify the Alameda Reuse and Redevelopment Authority and its successors and assigns, including the City of Alameda and Plaintiff, as subrogee, from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss) that results from, or is in any manner predicated upon, the release or threatened release of any hazardous substance, pollutant or contaminant, or petroleum or petroleum derivative as a result of Department of Defense activities at the Property.

108. The Government released or threatened to release chlordane and/or OCPs as a result of Department of Defense activities at the Naval Air Station Alameda, including on the Property.

109. Chlordane and/or OCPs are hazardous substances, pollutants or contaminants.

110. The Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff, as subrogee, incurred liability, cost or other fee arising out of a claim for property damage (including loss of or damage to the Property or economic loss) that results from, or is predicated upon, the Government's release or threatened release of chlordane and/or OCPs on the Property.

111. As a result of, or predicated upon, the Government's release or threatened release of chlordane and/or OCPs on the Property, the DTSC asserted a claim, demand, and/or action against the Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff, as subrogee, requiring the Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff to conduct remedial action.

112. The Alameda Reuse and Redevelopment Authority and the City of Alameda are "persons" or "entities" as provided under Section 330(a)(2) of the National Defense Authorization Act.

113. The Alameda Reuse and Redevelopment Authority and the City of Alameda did not contribute to any release or threatened release of chlordane and/or OCPs on the Property.

114. On information and belief, the chlordane and/or OCPs were stored, released, or disposed of on the Property before the Environmental Protection Agency cancelled use of chlordane in 1988.

115. The Naval Air Station Alameda, including the Property, was closed pursuant to a base closure law.

116. The Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff, as subrogee, made a claim for indemnification to the Government pursuant to the East Housing Deed's indemnification provisions and Section 330(b) of the National Defense Authorization Act. The Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff, as subrogee, delivered to the Government written claims for indemnification on October 31, 2002, and December 18, 2003, including furnishing copies of pertinent papers and evidence and proof of the claim, loss, or damage. *See* Exhibits 4 and 5, respectively.

117. The Government failed to indemnify the Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff, as subrogee. The Government failed to even respond to these claims for indemnification. Further, Defendant denied responsibility in its Answer to Plaintiff's Complaint in Case No. 3:04-CV-0091, in the Northern District of California, which court subsequently transferred this matter to the United States Court of Federal Claims.

118. Defendant violated its obligations under Section 330 of the National Defense Authorization Act of 1993 to indemnify the Alameda Reuse and Redevelopment Authority, its successors and assigns.

119. As a result of the Government's failure to indemnify the Alameda Reuse and Redevelopment Authority, its successors and assigns pursuant to Section 330 of the National Defense Authorization Act of 1993, Plaintiff has been damaged in an amount to be proven at trial.

**SIXTH CLAIM FOR RELIEF – BREACH OF CONTRACT (EAST HOUSING DEED)**

120. Plaintiff incorporates by reference paragraphs 1 through 119 as though fully set forth herein.

121. The East Housing Deed is a valid and binding contract between the Government and the Alameda Reuse and Redevelopment Authority.

122. Pursuant to the terms and conditions of the East Housing Deed, the Government explicitly recognized its obligations to indemnify the Alameda Reuse and Redevelopment Authority and its successors and assigns, including the City of Alameda and Plaintiff, as subrogee, under Section 330 of the National Defense Authorization Act of 1993. East Housing Deed, II.G and III.

123. Pursuant to the Government's contractual recognition in the East Housing Deed of its obligations under Section 330 of the National Defense Authorization Act of 1993, the Government was required to hold harmless, defend, and indemnify the Alameda Reuse and Redevelopment Authority and its successors and assigns, including the City of Alameda and Plaintiff, as subrogee, from and against any suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss) that results from, or is in any manner predicated upon, the release or threatened release of any hazardous substance, pollutant or contaminant, or petroleum or petroleum derivative as a result of Department of Defense activities at the Property.

124. The Government released or threatened to release chlordane and/or OCPs as a result of Department of Defense activities at the Naval Air Station Alameda, including on the Property.

125. Chlordane and/or OCPs are hazardous substances, pollutants or contaminants.

126. The Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff, as subrogee, incurred liability, cost or other fee arising out of a claim for property damage (including loss of or damage to the Property or economic loss) that results from, or is predicated upon, the Government's release or threatened release of chlordane and/or OCPs on the Property.

127. As a result of, or predicated upon, the Government's release or threatened release of chlordane and/or OCPs on the Property, the DTSC asserted a claim, demand, and/or action against the Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff, as subrogee,

requiring the Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff to conduct remedial action.

128. The Alameda Reuse and Redevelopment Authority and the City of Alameda are "persons" or "entities" as provided under Section 330(a)(2) of the National Defense Authorization Act.

129. The Alameda Reuse and Redevelopment Authority and the City of Alameda did not contribute to any release or threatened release of chlordane and/or OCPs on the Property.

130. On information and belief, the chlordane and/or OCPs were stored, released, or disposed of on the Property before the Environmental Protection Agency cancelled use of chlordane in 1988.

131. The Naval Air Station Alameda, including the Property, was closed pursuant to a base closure law.

132. The Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff, as subrogee, made a claim for indemnification to the Government pursuant to the East Housing Deed's indemnification provisions and Section 330(b) of the National Defense Authorization Act. The Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff, as subrogee, delivered to the Government written claims for indemnification on October 31, 2002, and December 18, 2003, including furnishing copies of pertinent papers and evidence and proof of the claim, loss, or damage. *See* Exhibits 4 and 5, respectively.

133. The Government failed to indemnify the Alameda Reuse and Redevelopment Authority, the City of Alameda and Plaintiff, as subrogee. The Government failed to even respond to these claims for indemnification. Further, Defendant denied responsibility in its Answer to Plaintiff's Complaint in Case No. 3:04-CV-0091, in the Northern District of California, which court subsequently transferred this matter to the United States Court of Federal Claims.

134. Defendant breached the East Housing Deed by failing to indemnify the Alameda Reuse and Redevelopment Authority pursuant to the East Housing Deed's indemnification provisions.

135. As a result of the Government's breach of the East Housing Deed, Plaintiff has been damaged in an amount to be proven at trial.

**SEVENTH CLAIM FOR RELIEF – BREACH OF CONTRACT BY MISREPRESENTATION (MEMORANDUM OF AGREEMENT)**

136. Plaintiff incorporates by reference paragraphs 1 through 135 as though fully set forth herein.

137. The Memorandum of Agreement is a valid and binding contract between the Government and the Alameda Reuse and Redevelopment Authority.

138. Pursuant to the terms and conditions of the Memorandum of Agreement, the Government represented that the information contained in the Memorandum of Agreement and exhibits attached thereto, including the form East Housing Deed and FOST for the East Housing Area, were complete and did not omit any material information required to make the submission fair and complete. Exhibit B to the form East Housing Deed, included as an exhibit to the Memorandum of Agreement, listed the hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property. *See* Memorandum of Agreement, Exhibit B-1.

139. Despite the Government's representation that the Memorandum of Agreement and exhibits attached thereto did not omit any material information required to make the submission thereof fair and complete, the Government failed to identify chlordane or OCPs among the hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property.

140. Chlordane and/or OCPs are hazardous substances.

141. Chlordane and/or OCPs were stored for one year or more, released, and/or disposed of on the Property.

142. The Government knew or should have known that Chlordane and/or OCPs were released on the Property.

143. By failing to identify chlordane or OCPs in the Memorandum of Agreement and exhibits attached thereto, including the form East Housing Deed and FOST for the East Housing Area, the Government misrepresented both the list of hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property, and that the Memorandum of Agreement and exhibits attached thereto did not omit any material information required to make the submission thereof fair and complete.

144. The Government's representation that the Memorandum of Agreement and exhibits attached thereto did not omit material information required to make the submission fair and complete was an untrue representation of fact because it failed to identify chlordane or OCPs among the hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property.

145. The Government's failure to identify chlordane or OCPs among the hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property was a negligently untrue representation of fact.

146. The Government had a duty to disclose all hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property.

147. The Government's misrepresentation that the Memorandum of Agreement and exhibits attached thereto did not omit material information required to make the submission fair and complete was either fraudulent or material

148. The Government's misrepresentation that the Memorandum of Agreement and exhibits attached thereto did not omit material information required to make the submission fair and complete misled the Alameda Reuse and Redevelopment Authority to believe that chlordane and/or OCPs were not stored for one year or more, known to have been released, or disposed of on the Property.

149. The Government's misrepresentation that the Memorandum of Agreement and exhibits attached thereto did not omit material information required to make the submission fair and complete operated as an inducement for the Alameda Reuse and Redevelopment Authority to enter into the Memorandum of Agreement.

150. The Alameda Reuse and Redevelopment Authority was justified in relying on the Government's misrepresentation that the Memorandum of Agreement and exhibits attached thereto did not omit material information required to make the submission fair and complete.

151. The Alameda Reuse and Redevelopment Authority was justified in relying on the Government's misrepresentation of hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property.

152. The Alameda Reuse and Redevelopment Authority reasonably inferred that chlordane and/or OCPs were not stored for one year or more, known to have been released, or disposed of on the Property from the Government's affirmative representations identifying hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property, and that the Memorandum of Agreement and exhibits attached thereto did not omit any material information required to make the submission thereof fair and complete.

153. As a result of the Government's misrepresentations of hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property, and that the Memorandum of Agreement and exhibits attached thereto did not omit any material

information required to make the submission thereof fair and complete, Plaintiff has been damaged in an amount to be proven at trial.

**EIGHTH CLAIM FOR RELIEF – BREACH OF CONTRACT (MEMORANDUM OF AGREEMENT)**

154. Plaintiff incorporates by reference paragraphs 1 through 153 as though fully set forth herein.

155. The Memorandum of Agreement is a valid and binding contract between the Government and the Alameda Reuse and Redevelopment Authority.

156. Pursuant to the terms and conditions of the Memorandum of Agreement, the Government agreed that the Alameda Reuse and Redevelopment Authority did not assume any liability or responsibility for environmental impacts and damage caused by the Government's use of toxic or hazardous wastes, substances or materials, or petroleum derivatives, on any portion of the Property. *See* Memorandum of Agreement, Art. 21.

157. The Government also agreed that the Alameda Reuse and Redevelopment Authority had "no obligation under this Agreement to undertake the defense of any claim or action, whether in existence now or brought in the future, or to conduct any cleanup or remediation action solely arising out of the use or release of any toxic or hazardous wastes, substances or materials . . . on or from any part of the Property due to activity on the Property by the Government." *Id.*

158. Chlordane and/or OCPs are toxic or hazardous wastes, substances or materials.

159. Chlordane and/or OCPs were used or released on the Property due to activity on the Property by the Government.

160. The Government breached the Memorandum of Agreement by failing to conduct cleanup or remedial action arising out of the Government's use or release of chlordane and/or OCPs on the Property.

161. The Government also breached the Memorandum of Agreement by failing to indemnify the Alameda Reuse and Redevelopment Authority for costs incurred to conduct such cleanup or remedial action on behalf of the Government.

162. As a result of the Government's breach of the Memorandum of Agreement, Plaintiff has been damaged in an amount to be proven at trial.

**PRAYER**

WHEREFORE, Plaintiff prays for judgment against Defendant, awarding Plaintiff as follows:

1. Actual and compensatory damages in an amount to be proven at trial, but no less than $3,763,328;

2. Complete indemnification in the amount of all remediation costs, contamination costs, response costs, expert costs, cost of litigation, attorney fees permitted by law, other related costs, and all other related damages;

3. Post-judgment interest and costs, and

4. Any other relief as the Court deems just, proper or appropriate under all the circumstances.

Respectfully submitted,

s/T. Michael Guiffré
T. Michael Guiffré
J. Gordon Arbuckle
Daniel R. Addison (pending admission *pro hac vice*)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Plaintiff American International
Specialty Lines Insurance Company

January 27, 2006

**CERTIFICATE OF FILING**

I certify that on January 27, 2006, the foregoing First Amended Complaint was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/T. Michael Guiffré
T. Michael Guiffré