# Exhibit 1

# MEMORANDUM OF AGREEMENT

BETWEEN

THE UNITED STATES OF AMERICA
ACTING BY AND THROUGH
THE SECRETARY OF THE NAVY
UNITED STATES DEPARTMENT OF THE NAVY

AND

THE ALAMEDA REUSE AND REDEVELOPMENT AUTHORITY

FOR THE CONVEYANCE OF

PORTIONS OF THE NAVAL AIR STATION ALAMEDA

FROM

THE UNITED STATES OF AMERICA

TO

THE ALAMEDA REUSE AND REDEVELOPMENT AUTHORITY

# AGREEMENT
# FOR THE CONVEYANCE OF
# PORTIONS OF THE NAVAL AIR STATION ALAMEDA
# FROM
# THE UNITED STATES OF AMERICA
# TO
# THE ALAMEDA REUSE AND REDEVELOPMENT AUTHORITY

## TABLE OF CONTENTS


| | | Page |
|---|---|---|
| ARTICLE 1. | No Cost EDC. | 2 |
| ARTICLE 2. | Property Description. | 3 |
| ARTICLE 3. | Transfer and Conveyance. | 3 |
| ARTICLE 4. | Closing and Settlement. | 4 |
| ARTICLE 5. | Environmental Reports. | 6 |
| ARTICLE 6. | Use of Proceeds From Sale or Lease. | 6 |
| ARTICLE 7. | Government's Representations. | 7 |
| ARTICLE 8. | Authority's Representations. | 8 |
| ARTICLE 9. | Response Assurances and Covenant Deferral Request Under Section 120(h)(3)(C) of CERCLA To Facilitate Early Transfer. | 8 |
| ARTICLE 10. | Environmental Services Cooperative Agreement(s). | 9 |
| ARTICLE 11. | Completion of Remediation and Deed Covenants. | 9 |
| ARTICLE 12. | Escrow; Title. | 10 |
| ARTICLE 13. | Officials Not To Benefit. | 10 |
| ARTICLE 14. | Covenant Against Contingent Fees. | 10 |
| ARTICLE 15. | Notices. | 10 |
| ARTICLE 16. | Effects of Deeds. | 11 |
| ARTICLE 17. | Prior Claims. | 11 |
| ARTICLE 18. | Government's Covenants. | 12 |
| ARTICLE 19. | No Right of Rescission. | 12 |
| ARTICLE 20. | Master Lease Termination and Residual Obligations. | 12 |
| ARTICLE 21. | Liability for Environmental Contamination. | 13 |
| ARTICLE 22. | Sharing of Roads. | 13 |

ARTICLE 23. Right of Entry.......... 13
ARTICLE 24. Modification; Waivers. .......... 14
ARTICLE 25. Further Assurances.......... 15
ARTICLE 26. Dispute Resolution Procedures. .......... 15
ARTICLE 27. Survival and Benefit.......... 16
ARTICLE 28. Interpretation. .......... 16
ARTICLE 29. Non-Discrimination. .......... 17
ARTICLE 30. Further Assurances.......... 17
ARTICLE 31. Counterparts. .......... 17

## EXHIBITS

A. DESCRIPTION OF LAND AND BUILDINGS

B-1. QUITCLAIM DEED FOR THE CONVEYANCE OF PARCEL EDC-4 (EAST HOUSING)

B-2. FORM OF QUITCLAIM DEED FOR THE CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF A FOSET

B-3. FORM OF QUITCLAIM DEED FOR THE CONVEYANCE OF PROPERTY OTHER THAN EDC-4 (EAST HOUSING) FOLLOWING EXECUTION OF A FOST

C. COMPLETED FOST FOR EDC-4

D. RECORD OF DECISION

E. MEMORANDUM OF AGREEMENT REGARDING HISTORIC PRESERVATION

F. BILL OF SALE

G. GOVERNMENT'S REPRESENTATIONS

H. AUTHORITY'S REPRESENTATIONS

I. LIST OF ENVIRONMENTAL REPORTS

J. LEASE IN FURTHERANCE OF CONVEYANCE

# AGREEMENT
# FOR THE CONVEYANCE OF
# PORTIONS OF THE NAVAL AIR STATION ALAMEDA
# FROM
# THE UNITED STATES OF AMERICA
# TO
# THE ALAMEDA REUSE AND REDEVELOPMENT AUTHORITY

This Agreement for the Conveyance of Real Property (hereinafter referred to as "Agreement") is entered into this 6TH day of June 2000 ("Effective Date"), between the **UNITED STATES OF AMERICA**, acting by and through the Department of the Navy ("Government"), and the **ALAMEDA REUSE AND REDEVELOPMENT AUTHORITY** ("Authority"), recognized as the local redevelopment authority by the Office of Economic Adjustment on behalf of the Secretary of Defense. Government and Authority are each sometimes referred to herein individually as a "Party" and collectively as the "Parties."

## RECITALS

**WHEREAS:**

1. In 1993, the Defense Base Closure and Realignment Commission (the "DBCR Commission") recommended the closure of the former Naval Air Station Alameda ("NAS Alameda"), which encompasses the Naval facilities and grounds comprising the western end of the City of Alameda and consists of approximately 2,693 acres of real property, together with the buildings, improvements and related and other tangible personal property located thereon and all rights, easements and appurtenances thereto.

2. In accordance with the Defense Base Closure and Realignment Act of 1990, as amended, the authority of the Administrator of General Services under the Federal Property and Administrative Services Act of 1949, as amended, with respect to the disposal of surplus real property at installations closing thereunder has been delegated to the Secretary of Defense and further delegated to the Secretary of the Navy.

3. (a) Pursuant to the power and authority provided by Section 2905(b)4 of the Defense Base Closure and Realignment Act of 1990, as amended, and the implementing regulations of the Department of Defense (32 CFR Part 175), the Secretary of the Navy may convey surplus property at a closing installation to the local redevelopment authority at no cost for economic development purposes. By application dated October 1997 and amendments to that application dated December 1998, the Authority applied for a "No-Cost" Economic Development Conveyance ("EDC") for portions of NAS Alameda (the "EDC Application"), to be used and

developed in accordance with the "NAS Alameda Community Reuse Plan" (the "Reuse Plan") dated January 1996 as amended in September 1997 prepared by Authority and approved by the Department of Housing and Urban Development on April 23, 1996

(b) The Government has approved the Authority's EDC application covering those portions of NAS Alameda generally described and delineated as EDC Parcels on the map contained in Exhibit "A" hereto. The Government intends to convey those parcels to the Authority by quitclaim deeds substantially in the form of Exhibits "B-1," "B-2" and "B-3" hereto.

4. In accordance with the provisions of the Community Environmental Response Facilitation Act, the Government has performed Environmental Baseline Surveys ("EBS(s)") for the Property, copies of which have been provided to the Authority. The Government has prepared or will prepare Findings of Suitability to Transfer ("FOSTs") and Findings of Suitability for Early Transfer ("FOSETs) for the various parcels that comprise NAS Alameda, as applicable. A copy of the completed FOST for parcel EDC 4 is attached hereto as Exhibit "C" and made a part hereof as if set out at length.

5. In accordance with the provisions of the National Environmental Policy Act ("NEPA"), the Government has prepared an Environmental Impact Statement ("EIS") for the disposal of the Property. A Record of Decision ("NEPA ROD") regarding the disposal of the Property, which is attached hereto as Exhibit "D" and made a part hereof as if set out at length, was issued on February 29, 2000.

6. In accordance with the provisions of the National Historic Preservation Act, the Government has determined that the disposal of the Property will have an effect upon those portions of the Property that are eligible for listing in the National Register of Historic Places. A Memorandum of Agreement ("MOA") among the Department of the Navy, the California State Historic Preservation Officer ("SHPO") and the Advisory Council on Historic Preservation, which is attached hereto as Exhibit "E" and made a part hereof as if set out at length, was executed on October 5, 1999, and sets forth in full the Authority's obligations under the National Historic Preservation Act and implementing regulations.

## AGREEMENTS

**NOW, THEREFORE**, in consideration of the foregoing premises and the respective representations, agreements, covenants and conditions herein contained, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Government and the Authority agree as follows:

**ARTICLE 1. No Cost EDC.** Pursuant to Section 2905(b)(4) of the Defense Base Closure and Realignment Act of 1990 (part A of title XXIX of Public Law 101-510; 10 U.S.C. § 2687 note), as amended by Section 2821 of the National Defense Authorization Act for Fiscal Year 2000 (Pub. L. No. 106-65), the Government agrees to transfer and convey to the Authority as a "no cost EDC", all of the certain land and buildings comprising the former NAS Alameda, as

specifically defined in Article 2, in consideration of the covenants, conditions and restrictions contained herein and other good and valuable consideration, subject to the terms, conditions and general provisions set forth in this Agreement.

**ARTICLE 2. Property Description.** The land and buildings at NAS Alameda to be conveyed to the Authority are generally described and delineated as EDC Parcels on the map contained in Exhibit "A" (collectively, the "Property"). Tangible personal property to be transferred under this Agreement is listed in the Bill of Sale attached hereto and made a part hereof as Exhibit "F" ("Personal Property"). Legal descriptions and plats of the individual conveyance parcels will be prepared by the Parties prior to the delivery of the Quitclaim Deed(s) ("Quitclaim Deeds"). The Parties shall cooperate in executing and delivering corrective deeds necessary to convey omitted land intended to be included in the Property and to correct any erroneous description of the Property.

**ARTICLE 3. Transfer and Conveyance.**

(a) The Government agrees to convey the Property to the Authority in multiple parcels, by separate conveyance and closings. The initial parcel to be conveyed will be the East Housing parcel (Parcel EDC-4) subject to the due execution of a FOST ("Initial Closing"). The Government will convey the remainder of the Property subject to the due execution of a FOST or a FOSET ("Subsequent Closings"). Should the Authority, after due consideration, decide not to accept the conveyance of a parcel tendered following the execution of a FOSET, such parcel will be conveyed, at a later date, following the due execution of a FOST. In no event, may the Authority refuse to accept the conveyance of any parcel tendered by the Government following the due execution of a FOST for such parcel if the Authority has accepted title to any other parcel of the Property.

(b) The Property shall be conveyed in fee simple by one or more good and sufficient Quitclaim Deeds.

(c) Attached hereto as Exhibit "B-1" is the Quitclaim Deed for the conveyance of Parcel EDC-4 (the East Housing portion of the Property). Attached hereto as Exhibit "B-2" is the form of Quitclaim Deed for a conveyance of any portion of the Property to be conveyed following the due execution of a FOSET. Attached hereto as Exhibit "B-3" is the form of Quitclaim Deed for a conveyance of any portions of the Property other than the EDC 4, the East Housing portion, to be conveyed following the due execution of a FOST.

(d) The Authority shall have the right to specify that one or more of the parcels shall be conveyed in a reasonable number of subparcels provided, however, the parcelization shall not otherwise delay the conveyance of the larger parcel. Should the Authority exercise such right to divide a parcel into two or more subparcels, all costs associated with the parcelization shall be borne by the Authority and all subparcels within such parcel shall be conveyed simultaneously.

(e) The Parties acknowledge that it is in their mutual best interest to coordinate and cooperate in the preparation of the Quitclaim Deeds. Accordingly, the Parties shall, to the maximum extent practicable, exchange information, coordinate the drafting of the Quitclaim Deeds, and conclude the review of documents as rapidly as possible.

(f) The Government's right, title and interest in the personal property to be transferred hereunder shall be transferred to the Authority concurrently with the conveyance of Parcel EDC-4 in accordance with the terms and conditions of the Bill of Sale attached hereto as Exhibit "F."

**ARTICLE 4. Closing and Settlement.**

(a) If an escrow is established by the Parties, the Government and the Authority shall deliver the following documents to the Escrow Agent (with copies to the other Party) at least one business day before an agreed upon Closing Date. If no escrow is established, the deliveries shall be made by each Party to the other at a mutually agreed upon time and location. The Parties will use their best efforts to consummate the Initial Closing and Subsequent Closings no later than two (2) months after the later of the signing of this Agreement or the completion of a FOST or FOSET by the Government for such Parcels of the Property as the Parties agree will be conveyed at that Closing, or such other mutually agreeable date. In the event that the Authority fails to accept any available EDC Parcel subsequent to Government offer by FOST within 120 days of such notification, this will be considered a breach of this MOA.

(b) The Government shall deliver to the Initial and Subsequent Closings the following documents ("Government Closing Documents") reasonably satisfactory to the Authority and in a form previously reviewed and approved by the Authority:

1. Executed Quitclaim Deeds conveying fee ownership to the Authority to such Parcels of the Property as the Parties agree will be conveyed at that Closing for which a FOSET or FOST, as appropriate, has been executed, in the form set forth in Exhibit "B-1", "B-2", or Exhibit "B-3", as appropriate.

2. A duly executed FOST or FOSET, as appropriate, for each Parcel.

3. An Executed Bill of Sale for the related Personal Property Conveyed to the Authority at the initial closing of Parcel EDC-4 in substantially the form set forth in Exhibit "F."

4. Any permits transferred or assigned relating to each Parcel.

5. Such additional documents as may be required by California law, the Title Insurer, or the Authority.

6. Certificate confirming that the representations and warranties of the Government set forth in this Agreement are true and correct as of the date of the Closing in substantially the form set forth in Exhibit "G."

(c) The Authority shall deliver to the Initial and Subsequent Closings the following Closing Documents reasonably satisfactory to the Government and in a form previously reviewed and approved by the Government:

1. Copies of official documents authorizing the Authority to consummate the transaction.

2. Such additional documents as may be required by California law, the Title Insurer, or the Government.

3. Certificate confirming that the representations and warranties of the Authority set forth in this Agreement are true and correct as of the date of the Closing in substantially the form set forth in Exhibit "H."

4. Environmental Restrictions relating to "Marsh Crust" and groundwater recorded in Alameda County Recorder's office on or before closing.

(d) If the portion of the Property to be conveyed is to be conveyed as an "early transfer with deferred covenants" pursuant to CERCLA Section 120(h)(3) following the due execution of a FOSET, the Government shall deliver to the Escrow Agent a copy of the Covenant Deferral Request approval letter signed and/or endorsed by the Governor of the State of California and the Administrator of the United States Environmental Protection Agency, as appropriate.

(e) If the portion of the Property to be conveyed is to be conveyed as an "early transfer with deferred covenants" pursuant to CERCLA Section 120(h)(3) following the due execution of a FOSET, and the Authority agrees to take responsibility for the remediation of the Property, the Government shall deliver to the Escrow Agent a copy of the Covenant Deferral Request approval letter signed and/or endorsed by the Governor of the State of California and the Administrator of the United States Environmental Protection Agency, as appropriate, and the Parties shall deliver to the Escrow Agent an Environmental Services Cooperative Agreement executed by the Parties and, if required by the appropriate environmental regulatory agencies, an executed consent agreement between the Authority and appropriate environmental regulatory agencies.

**ARTICLE 5. Environmental Reports.** To the best of Government's knowledge and belief, a complete list of all environmental reports prepared by or for Government with respect to the Property, including the lead-based paint and asbestos surveys relating to the improvements on the Property ("Environmental Reports") is attached hereto as Exhibit "I." To the best of Government's knowledge and belief, the information contained in the documents listed on Exhibit

"I" is accurate and complete. The Authority acknowledges that it has received copies of all documents listed on Exhibit "I." The Government agrees to promptly provide the Authority with copies of any and all documents or information with respect to the environmental condition of the Property prepared by or for Government after the date of this Agreement. The Environmental Reports reflect a systematic process in which available information in the possession or control of the Government was analyzed and conclusions drawn about the environmental condition of the property. Further, the Environmental Reports have been prepared, under the direction of the Government, in accordance with all material requirements of all applicable directives, guidance documents, and other policies, and are based on the administrative record created to provide for the conveyance of the Property subject to a FOSET/EROA.

**ARTICLE 6. Use of Proceeds From Sale or Lease.**

(a) Any proceeds from a sale, lease, or equivalent use of the Property (i.e., any mechanism that serves to accomplish the same purposes of a sale or lease such as licenses, permits, concession agreements, etc.) received by the Authority for the Property or the personal property transferred by the bill of sale, during the first seven years after the recordation of the first Deed for a part of the Property, must be used to support long-term job creation and the economic redevelopment of, or related to, the Property. For purposes of this paragraph, the definition of "Property" shall include the personal property transferred pursuant to the bill of sale.

(b) Allowable uses of proceeds pursuant to subparagraph (a) include payment for, or offsetting the costs of public investment, for the following purposes:

* Road construction
* Transportation management facilities
* Storm and sanitary sewer construction
* Police and fire protection facilities and other public facilities
* Utility construction
* Building rehabilitation
* Historic property preservation
* Pollution prevention equipment or facilities
* Demolition
* Disposal of hazardous materials generated by demolition
* Landscaping, grading, and other site or public improvements
* Planning for or the marketing of the redevelopment and reuse of the Property

Other activities on the Property that are related to those listed above (for example, new construction related to job creation and economic redevelopment, capital improvements, and operation and maintenance of the Property needed to market its redevelopment and reuse) would also be considered an appropriate, allowable use of proceeds. In order for investments made off of the Property to be considered allowable uses of proceeds, the Authority shall submit appropriate documentation to the Government for its approval which demonstrates that such investments are related to those listed above and directly benefit the Authority's economic

redevelopment and long term job generation efforts on the Property.

(c) Consistent with standard accounting practices for tax purposes, Authority shall maintain adequate records and books of account for income and expenses related to the redevelopment of the Property detailing transactions described in subparagraphs (1) and (2). Authority shall provide Government with access to such records and books of account and proper facilities for inspection thereof at all reasonable times.

(d) Authority shall submit to the Government an annual financial statement certified by an independent certified public accountant. The statement shall cover the Authority's use of proceeds it receives from the sale, lease, or equivalent use of the Property. The first such statement shall cover the 12 month period beginning on the date of recordation of the first Deed and shall be delivered to Government within 60 days of the end of that period and annually thereafter. The seven year period will commence with the recordation of each deed; however the financial statements shall cover all parcels of property that have been conveyed during that period. In the event Congress enacts legislation regarding the reporting period after the date of this Agreement, the Government will in good faith exercise the authority granted to modify the terms of this Agreement consistent with the legislation.

(e) Recoupment of Proceeds. Government may recoup all proceeds described in paragraph 6 (a) which have not been reinvested in allowable uses described in paragraph 6 (b). If recoupment is desired, Government shall notify Authority in writing that it intends to recoup proceeds in a specific amount, describing why it believes that those proceeds have not been reinvested as required by Article 6. Within 30 days of receipt of such notification, Authority shall submit its response to Government. Within 30 days of receipt of Authority's response or within 30 days of the date Authority's response was due under this paragraph, Government shall issue its decision on the matter which shall be final and binding on the Authority. The amount of the recoupment described in the decision shall be paid by the Authority within 60 days of the decision.

**ARTICLE 7. Government's Representations.** The Government hereby represents to the Authority on and as of the Effective Date of this Agreement and as of the Closing as follows:

(a) Execution of Agreement. The Government has full capacity, right, power and authority to execute, deliver and perform this Agreement and all documents to be executed by the Government pursuant hereto, and all required action and approvals therefor have been duly taken and obtained. This Agreement and all documents to be executed pursuant hereto by the Government are and shall be binding upon and enforceable against the Government in accordance with their respective terms.

(b) Complete Information. To the best of the Government's knowledge, information and belief, the information included in this Agreement, and the Exhibits hereto and the documents to be delivered to the Authority pursuant to this Agreement or previously delivered to the Authority are true, correct and complete in all material respects, and the same do not omit any material information required to make the submission thereof fair and complete.

(c) Possession. To the best of the Government's knowledge, information and belief, the information included in this Agreement, and the Exhibits hereto and the documents to be delivered to the Authority pursuant to this Agreement or previously delivered to the Authority acknowledge any contracts, leases or licenses in existence or persons who have possessory rights or any claims in respect to the Property that will survive Closing.

(d) Claims. To the best of the Government's knowledge, information and belief, there are no claims, causes of action or other litigation or proceedings pending or threatened with respect to the ownership or operation of the Property or any part thereof (including disputes with mortgagees, governmental authorities, utilities, contractors or adjoining land owners).

(e) Notice. To the best of the Government's knowledge, information and belief, the Government has not received any notice of (and is not otherwise aware of) any violations of any legal requirements with respect to the Property which has not been disclosed to the Authority.

**ARTICLE 8. Authority's Representations.** The Authority hereby represents to the Government on and as of the Effective Date and on and as of the Closing, the Authority has full capacity, right, power and authority to execute, deliver and perform this Agreement and all documents to be executed by the Authority pursuant hereto, and all required action and approvals therefor have been duly taken and obtained. The individuals signing this Agreement and all other documents executed or to be executed pursuant hereto on behalf of the Authority shall be duly authorized to sign the same on the Authority's behalf and to bind the Authority thereto. This Agreement and all documents to be executed pursuant hereto by the Authority are and shall be binding upon and enforceable against the Authority in accordance with their respective terms.

**ARTICLE 9. Response Assurances and Covenant Deferral Request Under CERCLA 42 U.S.C. Section 9620(h)(3)(C) To Facilitate Early Transfer.** CERCLA requires a covenant warranting that all remedial actions necessary to protect human health and the environment have been taken prior to transfer of the Property to the Authority with respect to any hazardous substances remaining on the Property. Some portions of the Property do not meet this requirement; however, the covenant may be deferred and said Property may be conveyed prior to completion of required remedial response actions if the requirements of CERCLA 42 U.S.C. § 9620(h)(3)(C), have been met. As required under CERCLA, a Covenant Deferral Request package with all required documentation, including a draft FOSET, will be submitted by the Government to the Administrator of the United States Environmental Protection Agency and the Governor of the State of California for endorsement and final approval. Early conveyance of the Property pursuant to a FOSET is conditioned upon the Administrator's and the Governor's approval of the Covenant Deferral Request. A copy of the Covenant Deferral Request will be provided to the Authority for their review and approval prior to its submission to the Administrator and the Governor.

**ARTICLE 10. Environmental Services Cooperative Agreement(s).**

(a) The Authority and the Government are considering whether to enter into one or more Environmental Services Cooperative Agreement(s) whereby the Authority, its contractors and successors and assigns, will assume responsibility for completing environmental remediation actions on the Property on behalf of the Government.

(b) Authority Proposal(s). The Authority will submit to the Government a proposal(s) (the "Proposal(s)") consisting of a draft Environmental Services Cooperative Agreement whereby the Authority, its contractors and successors and assigns, will agree to remediate certain selected environmental conditions on selected portions of the Property ("Environmental Remediation Work"). If the Parties negotiate and enter into an Environmental Services Cooperative Agreement, the Authority, its contractors and successors and assigns, will perform the Environmental Remediation Work in consideration for the agreed upon sum in accordance with the terms and conditions of the Environmental Services Cooperative Agreement. If the Government rejects the Proposal after discussions, the Government will retain responsibility for the environmental remediation of the Property at its own cost, expense and risk.

**ARTICLE 11. Completion of Remediation and Deed Covenants.** For Property that has transferred early, pursuant to the requirements of CERCLA 42 U.S.C. § 9620(h)(3)(C) for which the remediation of the Property is completed, by either the Government or by the Authority pursuant to an Environmental Services Cooperative Agreement, the Party responsible for remediating the Property shall provide documentation evidencing regulatory closure as required by CERCLA 42U.S.C.§9620(h)(3)(B) whereupon an appropriate instrument, in recordable form, containing a warranty that all necessary remedial action has been taken as provided by CERLCA 42 U.S.C. § 9620(h)(3)(B)(iii) shall be prepared by the Government and delivered to the Authority. The Authority may then record the warranty as an addendum or amendment to the Deed.

**ARTICLE 12. Escrow; Title.** If deemed necessary by the Authority, the Authority shall establish an escrow at its own cost and expense with an accredited title insurance company (the "Escrow Agent"). Any title insurance that may be desired by the Authority shall be procured at its sole cost and expense. However, the Government shall cooperate with the Authority or its authorized agent and shall permit examination and inspection of any documents relating to the title of the Property as it may have available. It is understood that the Government shall not be obligated to pay for any expense incurred in connection with title matters for the Property. The Authority may, at its sole cost and expense, on or before the Closing Date, order such searches as it deems appropriate confirming the absence of additional title exceptions that may arise after execution of this Agreement.

**ARTICLE 13. Officials Not To Benefit.** No member of or delegate to Congress shall be admitted to any share or part of the Agreement or to any benefit to arise therefrom, but this provision shall not be construed to extend to this Agreement if made with a corporation for its general benefit.

**ARTICLE 14. Covenant Against Contingent Fees.** Authority warrants that no person or agency has been employed or retained to solicit or secure this Agreement upon an agreement or understanding for a commission, percentage, brokerage, or contingent fee, excepting bona fide employees or bona fide established commercial agencies maintained by Authority for the purpose of securing the successful purchase of the Property by the Authority. "Bona fide established commercial agencies" has been construed to include licensed real estate brokers engaged in the business generally. For breach or violation of the warranty, Government has the right to annul this Agreement without liability or in its discretion to require Authority to pay, in addition to the consideration, the full amount of such commission, percentage, brokerage, or contingent fee.

**ARTICLE 15. Notices.** Notices shall be deemed sufficient under this Agreement if made in writing and submitted to the following addresses (or to any new or substitute address hereinafter specified, in a writing theretofore delivered in accordance with the notice procedure set forth herein by the intended recipient of such notice):

If to Authority:

James M. Flint, Executive Director
Alameda Reuse and Redevelopment Authority
Alameda City Hall
2263 Santa Clara Avenue
Alameda, CA 94501-4456
(Facsimile: 510-748-4504)

with a copy to:

Carol Korade, General Counsel
Alameda Reuse and Redevelopment Authority
Alameda City Hall; Room 280
2263 Santa Clara Avenue
Alameda, California 94501-4456
(Facsimile: 510-748-4691)

and to:

George R. Schlossberg, Esq.
Kutak Rock
1101 Connecticut Avenue, N.W.
10th Floor
Washington, D.C. 20036
(Facsimile: 202-828-2488)

If to Government:

Commanding Officer
Southwest Division
Engineering Field Division
Naval Facilities Engineering Command
1220 Pacific Highway
San Diego, CA 92132-5189
(Facsimile: 619-532-3830)

**ARTICLE 16. Effects of Deeds.** The delivery of the executed Deeds pursuant to this Agreement from the Government to the Authority shall be deemed full performance by the Government of its obligations hereunder with regard to the portions of the Property conveyed by each Deed other than any obligations of the Government which are required by this Agreement or by law (including, *inter alia*, any obligations under CERCLA Section 120(h) and under Section 330 of the Department of Defense Authorization Act of 1993) to be performed after the delivery of each such Deed. Except as otherwise provided for in this Agreement, the Government agrees not to grant, after the effective date of this Agreement, any encumbrances, covenants, conditions, restrictions, limitations on use or notices concerning the Property without first conferring with the Authority. Except as provided herein and except for the Grantor's environmental remediation responsibilities under CERCLA, all of the Property conveyed or leased hereunder will be in an "as-is, where-is" condition and without any representation or warranty whatsoever and without any obligation on the part of the United States of America except as expressly provided for by law or in this Agreement.

**ARTICLE 17. Prior Claims.** The Government shall remain responsible for all liabilities, claims, demands, judgments, suits, litigation, amounts payable (collectively, "Pre-Closing Obligations") against the Government or the Property attributable to the period prior to the conveyance or lease of the Property to the City as otherwise provided by the law. The City shall notify the Government of the existence or occurrence of any such Pre-Closing Obligations of which it has knowledge and shall cooperate with the Government in the disposition thereof.

**ARTICLE 18. Government's Covenants.** From the Effective Date of this Agreement to the Closing, the Government shall not do, permit, or agree to do, any of the following:

(a) Sell, encumber or grant any interest in the Property or any part thereof in any form or manner whatsoever or otherwise perform or permit any act which will diminish or otherwise affect the Authority's interest under this Agreement or in or to the Property or which will prevent the Government's full performance of its obligations hereunder, without the written consent of he Authority, except as may be required for environmental restrictive covenants or use restrictions serving as a component of remediation of any parcel; or

(b) Remove or alter any fixtures or personal property from the Property listed on Exhibit "F," without the written consent of the Authority,. except when such removals or alterations are in association with the Government's continuing obligations under CERCLA.

**ARTICLE 19. No Right of Rescission.** There shall be no right of rescission in the Government as to the Property, or any portion thereof, once conveyed to the Authority. The foregoing shall not be interpreted to limit any future exercise of the power of eminent domain by the Government.

**ARTICLE 20. Master Lease Termination and Residual Obligations.**

(a) It is acknowledged that the Authority currently leases the Property from the Government under a 15-year lease agreement, as amended, designated Government Contract N6247497RP00P68, originally commencing on March 24, 1996 (the "Master Lease"). Simultaneous with the execution of this Agreement, (i) the Authority's leasehold interest in the Property shall extinguish in accordance with the terms of said Master Lease, and all obligations and responsibilities of the parties to the Master Lease shall cease and (ii) the parties agree to execute a Lease in Furtherance of Conveyance for the Property ("LIFOC"). Attached as Exhibit "J" is the form of LIFOC for the Property to be leased by the Government to the Authority.

(b) The Authority agrees to indemnify and hold harmless the Government, its employees and agents for activities conducted by the Authority, its tenants, agents, employees or contractors under the Master Lease or any rights-of-entry's authorized and granted pursuant to this Agreement or any other pre-existing lease between the Authority and any third party or any rights-of-entry authorized by the Government prior to this Agreement. The Authority assumes no liability for damages for personal injury, illness, disability, death or property damage arising from (i) any actions or activities prior to the time the Authority took possession of the Property under the Master Lease, or any other pre-existing lease or right of way between the Authority and the Government, (ii) any exposure or failure to comply with any legal requirements applicable to lead based paint or asbestos on any portion of the Property arising prior to the Government's conveyance of such portion of the Property to the Authority pursuant to this Agreement, or (iii) any lead based paint, asbestos or asbestos containing materials that were located on the Property at any time prior to the date of the Government's transfer of the applicable portion of the Property but are no longer located thereon at the time of such transfer, or (iv) any disposal, prior to the Government's transfer of the applicable portion of the Property, of any lead based paint, asbestos or asbestos containing materials. Nothing contained herein shall affect any liability of the Authority for claims arising under the Master Lease or any sublease of any portion of the Property by the Authority prior to Closing.

**ARTICLE 21. Liability for Environmental Contamination.** Notwithstanding any other provision of this Agreement, and except as set forth in the Deed described herein, the Authority and its assigns do not hereby assume any liability or responsibility for environmental impacts and damage caused by the Government's use of toxic or hazardous wastes, substances or materials, or petroleum derivatives, on any portion of the Property. The Authority and its assigns have no obligation under this Agreement to undertake the defense of any claim or action, whether in existence now or brought in the future, or to conduct any cleanup or remediation action solely arising out of the use or release of any toxic or hazardous wastes, substances or materials, or petroleum or petroleum derivatives, on or from any part of the Property due to activity on the Property by the Government.

**ARTICLE 22. Sharing of Roads.** The Government and the Authority shall grant to the other at no cost such easements or licenses as may be required for (a) the use of roads, utilities and other services necessary or desirable for the enjoyment and benefit of those portions of the

Property as to which possession has been given, and (b) for ingress and egress as may be necessary to perform services.

**ARTICLE 23. Right of Entry.** From the Effective Date of this Agreement to the Final Closing, the Government agrees to issue a license, lease, or other appropriate document to the Authority for its representatives, agents, employees, lenders, contractors, appraisers, architects and engineers designated by the Authority access to and entry upon the Property and the improvements thereon to examine, inspect, measure, conduct infrastructure improvements, demolish infrastructure, improvements, hazardous and other material disposal and removal, construction of infrastructure and test the Property. In exercising the right of entry granted by this section, the Authority shall: 1) provide reasonable notice to the Government of the date, time, and purpose of the entry; 2) obtain the Government's prior written consent to any infrastructure demolition, land-disturbing testing, including the taking of core samples, and hazardous and other material disposal; 3) ensure that any activities on the Property do not interfere with Government operations or activities; and 4) comply with terms and conditions specified by the Government (including reasonable insurance requirements), which the Government agrees it shall not unreasonably impose.

(a) Any work and improvements by the Authority shall be subject to terms, conditions, and restrictions deemed necessary by the Government and set forth in the license, lease or Rights of Entry as appropriate. The cost of said improvements shall be borne entirely by the Authority, and shall remain the property of the Government if the transfers anticipated herein do not occur. The Authority shall indemnify and hold the Government harmless from all claims, liability, loss, cost, environmental contamination, or damage that may occur as a result of the undertaking by the Authority of said improvements or site preparation, except where such claims, liability, loss, cost, environmental contamination, or damage is the result of the gross negligence or willful misconduct of the Government or its employees, agents, or contractors. It shall be the responsibility of the Authority at its expense to obtain all governmental permits and clearances and complete any environmental analysis or documentation required for the undertaking of said improvements or site preparation, including but not limited to:

1. permits and clearances from the Government, EPA, and the California Department of Toxic Substance Control, related to the ongoing environmental cleanup at FISC and as may be required by applicable law;

2. air quality analysis and documentation; and

3. any permits, analysis, and/or documentation required by the National Environmental Policy Act of 1969 (NEPA), the National Historic Preservation Act of 1966 (NHPA), the Endangered Species Act, and the Coastal Zone Management Act,

(b) The Government shall cooperate with the Authority as necessary to obtain said permits, provided that the Authority shall satisfy any expense or liability of the Government in connection therewith.

**ARTICLE 24. Modification; Waivers.** This Agreement contains the entire agreement and understanding of the parties in respect to the purchase and sale of the Property, and may not be amended, modified or discharged nor may any of its terms be waived except by an instrument in writing signed by the parties. A waiver of a specific provision shall not be deemed a waiver of any subsequent provision. The parties hereto shall not be bound by any terms, conditions, statements, warranties or representations, oral or written, not contained herein.

**ARTICLE 25. Further Assurances.** The Parties acknowledge that it is their mutual intent to effectuate an orderly, amicable, and expeditious transfer of the Property from Government to Authority and that, toward that end, (i) any or all ambiguities herein shall, to the extent practicable, be construed in the way most liberally conducive to the aforesaid conveyance, (ii) the Parties both agree to take such additional acts and/or to permit such additional actions (including but not limited to any actions required in the event it shall become necessary, before or after the conveyances contemplated herein, to effect a formal subdivision or subdivisions of the Property) and (iii) the Parties agree to execute, deliver and perform under the terms of such other documents as their respective legal counsel may deem necessary or appropriate to effect the purposes of this Agreement.

**ARTICLE 26. Dispute Resolution Procedures.**

(a) If a dispute arises under this Agreement, these procedures shall apply. Either Party may invoke this dispute resolution procedure. The Parties shall make reasonable efforts to informally resolve disputes at the lowest level prior to the issuance of a formal written statement of dispute under the procedures set forth below.

(b) Within thirty (30) days after any action which leads to or generates a dispute or after efforts to informally resolve a dispute have failed, either Party may submit a written statement of dispute to the other Party setting forth the nature of the dispute, the work affected by the dispute, the disputing Party's technical and legal position regarding the dispute, and the relief requested. The Commanding Officer, Southwest Division, Naval Facilities Engineering Command and the City Manager, City of Alameda, shall serve as Dispute Resolution Managers for their respective organizations. The written statement of dispute shall be mailed by the Dispute Resolution Manager for the disputing Party to the Dispute Resolution Manager for the other Party.

(c) The Dispute Resolution Managers shall have twenty-one working days to resolve the dispute from the date of receipt of the written statement of dispute. The resolution of the dispute shall be memorialized in writing. Both Parties shall abide by the terms and conditions of any final resolution of the dispute.

(d) The Parties shall diligently perform under this Agreement pending the completion of these dispute resolution procedures.

(e) If the Dispute Resolution Managers are unable to resolve the dispute within twenty-one working days of receipt of the written statement of dispute, the Parties may pursue whatever remedies they may have at law or equity.

(f) The timeframes set forth above for reporting and resolution of disputes may be extended by mutual agreement of the Parties and such agreement shall be memorialized in writing.

**ARTICLE 27. Survival and Benefit.** The Authority may not transfer or assign its rights and interests under this Agreement, without the written consent of the Government. All representations, warranties, agreements, obligations and indemnities of the parties shall, notwithstanding any investigation made by any party hereto, survive Closing and the same shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement otherwise shall be construed as creating any rights of enforcement by any person or entity that is not a party hereto, nor any rights, interest, or third party beneficiary status for any entity or person other than the parties hereto.

**ARTICLE 28. Interpretation.** The headings and captions herein are inserted for convenient reference only and the same shall not limit or construe the paragraphs or sections to which they apply or otherwise affect the interpretation hereof.

(a) The terms "hereby," "hereof," "hereto," "herein," "hereunder" and any similar terms shall refer to this Agreement, and the term "hereafter" shall mean after, and the term "heretofore" shall mean before, the date of this Agreement.

(b) Words of the masculine, feminine or neuter gender shall mean and include the correlative words of other genders, and words importing the singular number shall mean and include the plural number and vice versa.

(c) Words importing persons shall include firms, associations, partnerships (including limited partnerships), trusts, corporations and other legal entities, including public bodies, as well as natural persons.

(d) The terms "include," "including" and similar terms shall be construed as if followed by the phrase "without being limited to."

(e) This Agreement shall be governed by and construed in accordance with Federal law and the laws of the State of California, provided, that in the event of a conflict between Federal law and the laws of the State of California, the Federal law shall govern.

(f) Whenever under the terms of this Agreement the time for performance of a covenant or condition falls upon a Saturday, Sunday or holiday observed by the performing party, such time for performance shall be extended to the next business day. Otherwise all references herein to "days" shall mean calendar days.

(g) If any term or provision of this Agreement or the application thereof to any person or circumstance shall, to any extent, be invalid or unenforceable, the remainder of this Agreement, or the application of such term or provision to persons or circumstances other than those as to which it is held invalid or unenforceable, shall not be affected thereby, and each such term and provision of this Agreement shall be valid and be enforced to the fullest extent permitted by law.

(h) Time is of the essence for this Agreement.

**ARTICLE 29. Non-Discrimination.** The Authority covenants for itself, its successors and assigns and every successor in interest to the Property hereby conveyed, or any part thereof, that the said Authority and such successors and assigns shall not discriminate upon the basis of race, color, sex, religion, or national origin in the use, occupancy, sale or lease of the Property, or in their employment practices conducted thereon. This covenant shall not apply, however, to the lease or rental of a room or rooms within a family dwelling unit; nor shall it apply with respect to premises used primarily for religious purposes. The United States of America shall be deemed a beneficiary of this covenant without regard to whether it remains the owner of any land or interest therein in the locality of the Property hereby conveyed and shall have the sole right to enforce this covenant in any court of competent jurisdiction.

**ARTICLE 30. Further Assurances.** The Government shall, upon the reasonable request of the Authority, execute, cause to be executed, acknowledged or delivered any and all such further instruments and documents as may be necessary or proper, in order to carry out the intent and purpose of this Agreement.

**ARTICLE 31. Counterparts.** This Agreement may be executed in multiple counterparts and/or with the signatures of the Parties set forth on different signature sheets and all such counterparts, when taken together, shall be deemed one original.

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the Parties, intending to be legally bound hereby, have caused their duly appointed representatives to execute this Agreement as of the Effective Date set forth above.

WITNESS/ATTEST:

By:____________________
Name:
Title:

**THE UNITED STATES OF AMERICA**

By:____________________
**WILLIAM R. CARSILLO**
Real Estate Contracting Officer

ATTEST:

By:____________________
Name:
Title:

**ALAMEDA REUSE AND REDEVELOPMENT AUTHORITY**

By:____________________
**JAMES M. FLINT**
Executive Director

Approved as to Form.

Asst. GENERAL COUNSEL

# ALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Alameda

On June 6, 2000 before me, Lara Weisiger, Notary Public,
Date Name and Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared William R. Carsillo,
Name(s) of Signer(s)

☐ personally known to me – OR – ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

LARA WEISIGER
Commission # 1151643
Notary Public - California
Alameda County
My Comm. Expires Aug 16, 2001

WITNESS my hand and official seal.

Lara Weisiger
Signature of Notary Public

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: ______

Document Date: ______ Number of Pages: ______

Signer(s) Other Than Named Above: ______

### Capacity(ies) Claimed by Signer(s)

Signer's Name: ______

☐ Individual
☐ Corporate Officer
Title(s): ______
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: ______

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: ______

Signer's Name: ______

☐ Individual
☐ Corporate Officer
Title(s): ______
☐ Partner — ☐ Limited ☐ General
☐ Attorney-in-Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: ______

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: ______

Exhibit 1 page 22

© 1995 National Notary Association • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91309-7184 Prod. No. 5907 Reorder: Call Toll-Free 1-800-876-6827

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of California

County of Alameda

On June 6, 2000 (Date) before me, Lara Weisiger, Notary Public, (Name and Title of Officer (e.g., "Jane Doe, Notary Public"))

personally appeared James M. Flint, (Name(s) of Signer(s))

☒ personally known to me – OR – ☐ proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

LARA WEISIGER
Commission # 1151643
Notary Public - California
Alameda County
My Comm. Expires Aug 16, 2001

WITNESS my hand and official seal.

Lara Weisiger
Signature of Notary Public

## OPTIONAL

*Though the information below is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

### Description of Attached Document

Title or Type of Document: ______

Document Date: ______ Number of Pages: ______

Signer(s) Other Than Named Above: ______

### Capacity(ies) Claimed by Signer(s)

Signer's Name: ______

- ☐ Individual
- ☐ Corporate Officer
  Title(s): ______
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney-in-Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: ______

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: ______

Signer's Name: ______

- ☐ Individual
- ☐ Corporate Officer
  Title(s): ______
- ☐ Partner — ☐ Limited ☐ General
- ☐ Attorney-in-Fact
- ☐ Trustee
- ☐ Guardian or Conservator
- ☐ Other: ______

RIGHT THUMBPRINT OF SIGNER
Top of thumb here

Signer Is Representing: ______

Exhibit 1 page 23

© 1995 National Notary Association • 8236 Remmet Ave., P.O. Box 7184 • Canoga Park, CA 91309-7184 Prod. No. 5907 Reorder: Call Toll-Free 1-800-876-6827

# Exhibit 1

## Attachment A
*(Tab 1 of 2)*

**Alameda Naval Air Station**
**East Housing**

A parcel of land being a portion of the Alameda Naval Air Station, Alameda, California, lying in the city and county of Alameda, State of California, and being all of the parcel described in that certain deed recorded June 18, 1963 in Book 924 of Official Records at page 879, Alameda County Records, and being all of the parcel described in that certain deed recorded April 29, 1963 in Book 871 of Official Records at page 596, Alameda County Records, and being a portion of the parcel described in that certain deed recorded March 28, 1941 in Book 4023 of Official Records at page 499, Alameda County Records, more particularly described as follows:

BEGINNING at the intersection of the northerly line of Atlantic Avenue, being 51 feet wide, and the easterly line of Main Street as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Maps at page 16 through 22, inclusive, in the Office of the Recorder of Alameda County:

1. Thence along said easterly line of Main Street and the westerly boundary line of the parcel described in that certain deed recorded March 28, 1941 in Book 4023 of Official Records at page 499, Alameda County Records, North 00°34'11" East, 1240.19 feet to the northerly line of the parcel described in that certain deed recorded on June 18, 1963 in Book 924 of Official Records at page 879, Alameda County Records;

2. Thence leaving said easterly line of Main Street along said northerly line of the parcel described that certain deed recorded on June18, 1963 in Book 924 of Official Records at page 879, Alameda County Records, South 87°51'51" East, 1798.27 feet to the northwesterly corner of the parcel described in that certain deed recorded on April 29, 1963 in Book 871 of Official Records at Page 596, Alameda County Records;

3. Thence along the northerly line of the parcel described in that certain deed recorded on April 29, 1963 in Book 871 of Official Records at Page 596, Alameda County Records, South 87°51'51" East, 777.49 feet to the northeasterly corner of said parcel;

4. Thence leaving said line and along the easterly line of the parcel described in that certain deed recorded on April 29, 1963 in Book 871 of Official Records at page 596, Alameda County Records, and its southerly prolongation, South 02°08'09" West, 1241.94 feet to the northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Maps at page 16 through 22, inclusive, Alameda County Records;

5. Thence westerly along said northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Maps at page 16 through 22, inclusive, North 85°25'42" West, 729.54 feet;

6. Thence continuing westerly along said northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Maps at page 16 through 22, inclusive, South 89°49'20" West, 884.20 feet;

6. Thence continuing westerly along said northerly line of Atlantic Avenue, being 51 feet wide, as shown on that certain map entitled "OFFICIAL RESURVEY OF PORTION OF SEGREGATION LINE AND VICINITY", filed for record on August 13, 1951 in Book 3 of Maps at page 16 through 22, inclusive, North 87°26'18" West, 929.55 feet to the <u>POINT OF BEGINNING.</u>

Containing an area of 72.45396 acres, more or less.

Basis of Bearings:
Bearings are based on the California Coordinate System of 1927 Zone III using the bearing of South 87°45'20" East between USC & GS Station "MAIN ATL" and USC & GS station "ALT FIFTH".All distances in this description are ground distances. Multiply by 0.9999295 to obtain grid distances.

A plat showing the above description is attached herein and made a part hereof as Exhibit "B".

This description was prepared by me or under my direction in conformance with the requirements of the Land Surveyor's Act.

Approved By:

Mike Mahoney

Mike Mahoney, P.L.S. 5577
Expires: 12/31/2001

Dated: 5/18/00

K \MAIN\1998\980221\LEGALS\EHOUSE050300 DOC

# Exhibit 1

## Attachment A
*(Tab 2 of 2)*




**Brian Kangas Foulk**
Engineers • Surveyors • Planners

540 Price Avenue
Redwood City, CA 94063
650/482-6300
650/482-6399 (FAX)

Subject EXHIBIT "B"
EAST HOUSING
Job No. 980221-10
By SPM Date 5-11-00 Chkd. MP
SHEET 1 OF 1

TH: J:\Sur98\980221\DWG\Plots\
G NAME: ehouse
DATE: 5/11/2000
TIME: 1:58 p.m.

# Exhibit 1

# Attachment B-1