# Exhibit 1

# Attachment B-1

*(Tab 1 of 2)*

**RECORDING REQUESTED BY**

**And when recorded, mail this deed and, unless otherwise shown below, mail tax statements to:**

James M. Flint, Executive Director
Alameda Reuse and Redevelopment Authority
Alameda City Hall
2263 Santa Clara Avenue
Alameda, CA 94501-4456

# QUITCLAIM DEED AND ENVIRONMENTAL RESTRICTIONS PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1471 FOR EAST HOUSING PORTION OF NAS ALAMEDA

**This Deed** is made this ___ day of _________, 2000, by and between the **United States of America**, acting by and through the Department of the Navy, hereinafter called the **GRANTOR**, and the **Alameda Reuse and Redevelopment Authority**, a Joint Powers Authority established by the City of Alameda and County of Alameda under the California Joint Exercise of Powers Act as set forth in Title 1, Division 7, Chapter 5, Article 1 of the Government Code of the State of California (Government Code Section 6500 et seq.), hereinafter called the **GRANTEE**.

**WITNESSETH:**

**WHEREAS**, the GRANTEE has requested conveyance from the GRANTOR of a portion of the former Naval Air Station Alameda, ("NAS Alameda") which was closed pursuant to and in accordance with the Defense Base Closure and Realignment Act of 1990, as amended (Pub. L. No. 101-510) and which is no longer required for military purposes; and

**WHEREAS**, the GRANTOR is authorized to convey property at NAS Alameda to the GRANTEE pursuant to Section 2905(b)(4) of the Defense Base Closure and Realignment Act of 1990 (Public Law 101-510, 10 U.S.C. Section 2687 note); as amended by Section 2821 of the National Defense Authorization Act for Fiscal Year 2000 (Public Law 106-65); and

**WHEREAS**, the GRANTOR has completed remedial actions on the property at NAS Alameda to be conveyed to GRANTEE that are necessary to provide the covenants required by the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") 42 U.S.C. Section 9620 (h)(3)(A)(ii)(I); and

**WHEREAS**, the GRANTOR has found and determined that the property at NAS Alameda to be conveyed to GRANTEE is suitable for transfer pursuant to a Finding of Suitability for Transfer, (FOST) dated April 19, 2000; and

**WHEREAS, GRANTOR** has determined pursuant to applicable Federal statutes and regulations and California Civil Code Section 1471(c) that it is reasonably necessary to impose certain restrictions on the use of the Property to protect present and future human health or safety or the environment as a result of the presence of hazardous materials on portions of the Property described hereinafter with particularity.

**NOW THEREFORE**, the GRANTOR, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby remise, release and forever quitclaim to the GRANTEE, all of GRANTOR'S right, title and interest in and to that certain real property, comprising approximately 73 acres, more or less (hereinafter "Property"), as more particularly described in Exhibit "A."

**I. TOGETHER WITH** all buildings and improvements located thereon, and all rights, tenements, hereditaments, and appurtenances belonging, or in any wise appertaining, including fixtures, structures, mineral rights, water rights, the banks, beds and waters of any streams, rivers or lakes upon said Property, appurtenant easements, rail lines and utility lines, alleys, roads, streets ways, strips, gores or railroad rights of way upon said Property, and any means of ingress and egress appurtenant thereto.

**II. SUBJECT TO THE FOLLOWING NOTICES, COVENANTS, RESTRICTIONS, AND CONDITIONS**, which shall be binding upon and enforceable against the GRANTEE, its successors and assigns, in perpetuity:

**A.** The GRANTEE agrees to accept conveyance of the Property subject to all covenants, conditions, restrictions, easements, rights-of-way, reservations, rights, agreements, and encumbrances of record.

**B.** Except as otherwise provided herein, or as otherwise provided by law, the GRANTEE acknowledges that it has inspected, is aware of, and accepts the condition and state of repair of the Property, and that the Property is conveyed "as is" and "where is" without any representation, promise, agreement, or warranty on the part of the GRANTOR regarding such condition and state of repair, or regarding the making of any alterations, improvements, repairs or additions. Except for the environmental remediation required to be undertaken by GRANTOR, the GRANTEE further acknowledges that the GRANTOR shall not be liable for any latent or patent defects in the Property except to the extent required by applicable law.

C. To the extent that any portion of the Property lies within a floodplain as defined in Section 6(c) of Executive Order No. 11988, dated May 24, 1977, the use of that portion of the Property may be subject to the National Flood Insurance Program.

**D. LEAD BASED PAINT (LBP).**

1. The Property may include improvements that are presumed to contain LBP because they are thought to have been constructed prior to 1978. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Pursuant to 40 CFR Section 745.113 the following notice is provided; "Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

2. The GRANTEE hereby acknowledges the required disclosure of the presence of any known LBP and/or LBP hazards in target housing constructed prior to 1978 in accordance with the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. Section 4852d (Title X). The GRANTEE acknowledges the receipt of available records and reports pertaining to LBP and/or LBP hazards and receipt of the Environmental Protection Agency (EPA) approved pamphlet "Protect Your Family from Lead in Your Home" (EPA 747-K-94-001). Furthermore, the GRANTEE acknowledges that it has read and understood the EPA pamphlet.

3. The GRANTEE covenants and agrees that, in any improvements on the Property defined as target housing by Title X and constructed prior to 1978, LBP hazards will be disclosed to potential occupants in accordance with Title X before use of such improvements as a residential dwelling (as defined in Title X). Further, the GRANTEE covenants and agrees that LBP hazards in target housing will be abated in accordance with Title X before use and occupancy as a residential dwelling. "Target housing" means any housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than six [6] years of age resides, or is expected to reside, in such housing) or any zero-bedroom dwelling.

4. The GRANTEE covenants and agrees that in its use and occupancy of the Real Estate, it will comply with Title X and all applicable Federal, State, and local laws relating to LBP. The GRANTEE acknowledges that the GRANTOR assumes no liability for damages for personal injury, illness, disability, or death to the GRANTEE, or to any other person, including members of the general public, arising from or incident to the purchase, transportation, removal, handling, use, disposition, or other activity causing or leading to contact

of any kind whatsoever with LBP on the Property, arising after the conveyance of the Property from the GRANTOR to the GRANTEE, whether the GRANTEE has properly warned, or failed to properly warn, the persons injured.

5. The GRANTOR shall provide a Notice of Release, in recordable form, to the GRANTEE at such time as demolition of the buildings on the Property containing LBP has been completed and the appropriate Federal or State regulatory agency(s) have concurred in writing that LBP has been removed from the buildings and any necessary soil remediation has been conducted in accordance with all applicable Federal, State, and local laws and regulations. This Notice of Release shall be deemed to remove all notices and restrictions relating to LBP from the Property.

## E. ASBESTOS CONTAINING MATERIALS.

1. The GRANTEE is hereby informed and does acknowledge that asbestos or asbestos containing materials ("ACM") have been found and are otherwise presumed to exist in buildings and structures on the Property. The GRANTEE acknowledges receipt of documentation disclosing the presence of any known ACM in the buildings and structures on the Property. The GRANTEE covenants that it will prohibit occupancy of buildings and structures, or portions thereof, containing known ACM prior to abatement of the ACM or demolition of the building or structure.

2. The GRANTEE covenants and agrees that in its use and occupancy of the Property, including but not limited to demolition of buildings containing ACM, it will comply with all applicable Federal, State and local laws relating to ACM. The GRANTEE acknowledges that the GRANTOR assumes no liability for damages for personal injury, illness, disability, or death to the GRANTEE, or to any other person, including members of the general public, arising from or incident to the purchase, transportation, removal, handling, use, disposition, or activity causing or leading to contact of any kind whatsoever with ACM in the structures on the Property, arising after the conveyance of the Property from the GRANTOR to the GRANTEE, whether the GRANTEE has properly warned, or failed to properly warn the persons injured.

3. The GRANTOR shall provide a Notice of Release, in recordable form, to the GRANTEE at such time as demolition of the buildings on the Property containing ACM has been completed and the appropriate Federal or State regulatory agency(s) have certified in writing that ACM has been removed from the buildings and any necessary soil remediation has been conducted in accordance with all applicable Federal, State, and local laws and regulations. This Notice of Release shall be deemed to remove all notices and restrictions relating to ACM from the Property.

**F. NOTICES AND COVENANTS:**

**1. Notices:**

**a. Finding of Suitability to Transfer.** A Finding of Suitability to Transfer (FOST) has been completed and an Environmental Baseline Survey ("EBS") report is referenced in the FOST. The FOST and EBS reference environmental conditions on the Property and on other property not subject to this Deed. The FOST sets forth the basis for the GRANTOR's determination that the Property is suitable for transfer, The GRANTEE is hereby made aware of the notifications contained in the FOST and EBS.

**b. Hazardous Substance Notification.** Pursuant to CERCLA 42 U.S.C. Section 9620(h), notice is hereby provided that the information set out in Exhibit "B", attached hereto and made a part hereof, identifies hazardous substances that were stored for one year or more, known to have been released, or disposed of on this Property. The GRANTOR has made a complete search of its files and records concerning the Property and found that the FOST provides: (1) a notice of the type and quantity of such hazardous substances, (2) notice of the time the storage, release, or disposal took place, and (3) a description of the remedial action taken, if any.

**2. Grant of Covenant [CERCLA 42 U.S.C. Section 9620 (h)(3)(A)(ii)(I)].** The GRANTOR covenants that all remedial action necessary to protect human health and the environment with respect to any hazardous substance remaining on the Property has been taken before the date of transfer.

**3. Additional Remediation Obligation [CERCLA 42 U.S.C. Section 9620 (h)(3)(A)(ii)(II)].** The GRANTOR covenants and warrants that GRANTOR shall conduct any additional remedial action necessary after the date of transfer for any hazardous substance existing on the Property prior to the date of this Deed. This covenant shall not apply to the extent that the GRANTEE caused or contributed to any release or threatened release of any hazardous substance, pollutant, contaminant, petroleum or petroleum derivative.

**4. Access [CERCLA 42 U.S.C. Section 9620 (h)(3)(A)(iii)].** In accordance with **CERCLA 42 U.S.C. Section 9620** (h)(3)(A)(iii), GRANTOR reserves the right of access to and use of the Property in any case in which a remedial or corrective action is found to be necessary after the date of the conveyance of the Property. In exercising these rights of access, except in the case of imminent and substantial endangerment to human health or the environment, the GRANTOR (a) shall give the GRANTEE reasonable prior written notice of actions to be taken related to such remedial or corrective actions on the Property, and (b) make reasonable efforts to minimize interference with the ongoing use of the Property. Furthermore, the GRANTOR and GRANTEE agree to cooperate in good faith to minimize any conflict between necessary environmental investigation and remediation activities and the GRANTEE's use of the Property. Any inspection, survey, investigation, or other response, corrective or remedial action undertaken by the GRANTOR will, to the maximum extent practicable, be coordinated with representatives designated by the GRANTEE.

**5. Environmental Restriction.**

The following environmental covenants, conditions, and restrictions (hereinafter "environmental restrictions") regarding the use of the Property have been determined by the GRANTOR in this Covenant to be reasonably necessary to protect present or future human health or safety or the environment as provided by CERCLA and California Civil Code Section 1471. The environmental restrictions made and accepted herein by GRANTEE shall be for the benefit of and enforceable by the GRANTOR herein as provided under Civil Code Section 1471 and applicable Federal statutes and regulations, shall run with the land, and shall be binding on the GRANTEE, its successors and assigns.

These environmental restrictions may be released at such time as the GRANTOR has obtained written confirmation from California Department of Toxic Substances Control ("DTSC") that the appropriate regulatory agency has determined that the restricted Property is protective of present or future human health or safety of the environment for the use that was formerly prohibited. Upon receipt of such written confirmation, the GRANTOR shall deliver to the GRANTEE in recordable form, a release (the "Release") relating specifically to the environmental use restrictions set forth in this deed. The execution of the Release by the GRANTOR shall remove all notices and restrictions relating to the remedy addressed by the restrictions from the title to the Property.

**a. MARSH CRUST/SUBTIDAL ZONE SOIL MANAGEMENT REQUIREMENTS.** "Marsh Crust" is defined as the underground layer that is the remnant of the tidal marsh that existed along the shoreline of Alameda Island before filling to create additional dry land. "Subtidal Zone" is defined as the underground layer that is the pre-filling San Francisco Bay floor extension of the historic marsh. These layers form a single continuous underground layer that extends Bayward of the original mean high tide line of Alameda Island before filling and contains hazardous materials and hazardous substances, pollutants, and contaminants that were retained in the historic marsh and Subtidal Zone before filling. The GRANTEE covenants and agrees that it shall comply with City of Alameda Ordinance No. 2824 regarding Excavation Into the Marsh Crust/Subtidal Zone at the Former Naval Air Station Alameda and Fleet and Industrial Supply Center, Alameda Annex and Facility. In the event that DTSC has notified the City that the Ordinance does not protect human health or safety or the environment, then GRANTEE covenants and agrees that it shall not excavate below the "threshold depth" as defined in the Excavation Ordinance, without prior written approval of DTSC. GRANTEE will record that certain Covenant to Restrict Use of Property (Environmental Restrictions) (the "State Covenant"), in substantially the same form as Exhibit "C" attached hereto, by and between the City of Alameda, as Covenantor, and the California Environmental Protection Agency - Department of Toxic Substances Control (DTSC), as Covenantee, which sets forth restrictions applicable to the Marsh Crust/Subtidal Zone covered by this paragraph, prior to conveying the Property. GRANTOR and GRANTEE intend that the restrictions set out in this paragraph, which are enforceable by the GRANTOR, shall be interpreted in a manner that is consistent and not in conflict with the restrictions set forth in the State Covenant which is enforceable by DTSC. A failure to enforce the State Covenant by DTSC shall not preclude the GRANTOR from enforcing this restriction.

**G. INDEMNIFICATION REGARDING TRANSFEREES**

The GRANTOR hereby recognizes its obligations under Section 330 of the National Defense Authorization Act of 1993 (Pub. L. 102-484), as amended, regarding indemnification of transferees of closing Department of Defense property.

**H. NON-DISCRIMINATION.** GRANTEE covenants not to discriminate upon the basis of race, color, religion, disability, sex, age or national origin in the use, occupancy, sale, or lease of the Property, or in its employment practices conducted thereon. This covenant shall not apply however, to the lease or rental of a room or rooms within a family dwelling unit, nor shall it apply with respect to religion if the Property is on premises used primarily for religious purposes. The GRANTOR shall be deemed a beneficiary of this covenant without regard to whether it remains the owner of any land or interest therein in the locality of the Property hereby conveyed and shall have the sole right to enforce this covenant in any court of competent jurisdiction.

**III. THE CONDITIONS, RESTRICTIONS, RESERVATIONS, AND COVENANTS** set forth in this deed, unless subsequently released, are a binding servitude on the Property; shall inure to the benefit of the GRANTOR and GRANTEE, their successors and assigns, and will be deemed to run with the land in perpetuity.

**IV. LIST OF EXHIBITS**: The following exhibits are attached hereto and made a part of this Quitclaim Deed:

- **A.** Exhibit "A" - Legal Descriptions and Plats of the Property.
- **B.** Exhibit "B" - CERCLA Notice pertaining to Property.
- C. Exhibit "C" - Draft State Covenant

**[SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF,** the GRANTOR has caused its name to be signed to these presents by an authorized Real Estate Contracting Officer on the day first above written.

**UNITED STATES OF AMERICA,**
acting by and through the Department of the Navy,

**BY:**______________________________
**WILLIAM R. CARSILLO**
**Real Estate Contracting Officer**

**ACCEPTANCE:**

The **GRANTEE** hereby accepts this Deed and agrees to be bound by all the agreements, covenants, conditions, restrictions and reservations contained therein.

**ALAMEDA REUSE & REDEVELOPMENT AUTHORITY**

**BY:** __________________________
**JAMES M. FLINT**
**Executive Director**

**Date:** ________________

**Notice of Hazardous Substance Stored, Released, or Disposed of at Parcels 170 and 171**
**(Page 1 of 1)**

Notice is hereby given that the information provided below contains a notice of hazardous substances that are known to have been stored for more than 1 year or known to have been released or disposed of on certain portions of the FOST area and the dates that such storage, release, or disposal took place. 40 CFR Section 373.3(b) requires that the afore-mentioned statement be prominently displayed in this notice. The information contained in this notice is required und the authority of regulations promulgated under section 120(h) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA, also known as "Superfund") 42 USC section 9620(h). Chemicals specifically excluded from consideration were incidental quantities of household-type cleaning chemicals and consumer office products. It should be noted that only minimal information regarding hazardous materials was available, therefore, the periods that these materials were stored is uncertain, unless specifically stated.

| Parcel Number | Building or Lot Number | Facility Name | Hazardous Substance(s) | CAS Number | Regulatory Synonym | RCRA Waste Number | Quantity | Date(s) of Storage, Release, or Disposal (if known) | Stored (S), Released (R), or Disposed of (D) | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|
| 170 | N/A | Family Housing | Durban 2E | None | None | - | 2 gallons | 10/92-10/93 | S | Weekly application |
| | | | Ficam W | 22781-23-3 | Bendiocarb; Fuam; FICAM D; Ficam Plus | - | 3 boxes | 10/92-10/93 | S | |
| | | | Drione | None | None | - | 1 pound | 10/92-10/93 | S | |
| | | | Talon G | None | None | - | 30 pounds | 10/92-10/93 | S | |
| | | | PT 515 | None | None | - | 24 cans | 10/92-10/93 | S | |
| | No release or disposal identified. | | | | | | | | | |
| 171 | | Family Housing | Durban 2E | None | None | - | 2 gallons | 10/92-10/93 | S | Weekly application |
| | | | Ficam W | 22781-23-3 | Bendiocarb; Fuam; FICAM D; Ficam Plus | - | 3 boxes | 10/92-10/93 | S | |
| | | | Drione | None | None | - | 1 pound | 10/92-10/93 | S | |
| | | | Talon G | None | None | - | 30 pounds | 10/92-10/93 | S | |
| | | | PT 515 | None | None | - | 24 cans | 10/92-10/93 | S | |
| | No release or disposal identified. | | | | | | | | | |

Notes:

- - = The substance is not a waste, therefore the RCRA waste number does not apply
- CAS = Chemical abstract service
- NA = Not applicable. The substance given is either a class of compounds, a mixture of substances, or not a chemical. Therefore, regulatory synonyms and CAS numbers are not available.
- None = No RCRA Waste number found, or no regulatory synonyms identified for this substance
- RCRA = Resource Conservation and Recovery Act

Exhibit B
East Housing Quit Claim Deed

# Exhibit 1

## Attachment B-1

*(Tab 2 of 2)*

Recording Requested by:

City of Alameda
Economic Development Division
950 West Mall Square, #215
Alameda, CA 94501
Attn: Jeffrey T. Bond

When Recorded, Mail to:

Department of Toxic Substances Control
10151 Croydon Way, Suite 3
Sacramento, CA 95827-2106
Attention: A. J. Landis, P.E., Chief
Office of Military Facilities

# COVENANT

# TO RESTRICT USE OF PROPERTY

# (ENVIRONMENTAL RESTRICTIONS)

Fleet and Industrial Supply Center, Oakland
Alameda Facility and Alameda Annex
and
Alameda Naval Air Station East Housing
Alameda, California

This Covenant To Restrict Use of Property ("Covenant") is made on the ____ day of ____________, 2000 by the City of Alameda ("City" or "Covenantor"), which is the current owner of the property restricted by this Covenant, and the California Environmental Protection Agency - Department of Toxic Substances Control (the "Department" or "Covenantee").

## RECITALS/STATEMENT OF FACTS

A. Covenantor is the owner of record of that certain real property consisting of approximately _____ acres (the "Property") situated in the City of Alameda, County of Alameda, State of California. The Property formerly was part of the United States Navy installation commonly known as the Fleet and Industrial Supply Center, Oakland, Alameda Facility and

Alameda Annex and the adjacent part of the former Alameda Naval Air Station commonly known as East Housing. A legal description of the Property is set forth in Exhibit A and is incorporated herein by this reference. A figure depicting the location of the Property is set forth in Exhibit B and is incorporated herein by this reference.

B. The Property was formerly owned by the United States Navy.

C. The Navy has caused to be completed environmental response actions on and in connection with the Property. Such actions include, but are not limited to, preparation of a **[insert date and name of final remedial action document]** ("RAP/ROD") that has been approved by the Department, and the implementation of response actions pursuant to the RAP/ROD that allow the Property to be used without significant risk to human health and without significant potential for future environmental damage.

D. Pursuant to California Civil Code section 1471(c), the Department has determine that this Covenant is reasonably necessary to protect present or future human health and safety c the environment as a result of the potential presence of hazardous materials, as defined in California Health and Safety Code section 25260, in the marsh crust and the shallowest groundwater zone, as defined below, under the surface of land at the Property. The Department has also determined that such protection is part of the remedy contemplated in the RAP/ROD. The Covenantor and the Department therefore intend that the use of the Property be restricted as set forth in this Covenant to protect human health, safety and the environment.

E. The Property is planned for mixed uses including residential use. Before 1920, the Property and surrounding areas were undeveloped tidal marsh along Alameda Island's San Francisco Bay shoreline. Between approximately 1900 and 1940, the Property and surrounding areas were filled with sand and clay material from unknown sources.

F. "Marsh crust" means the underground layer that is the remnant of the tidal marsh that existed along the shoreline of Alameda Island before filling to create additional dry land. I many places, this layer contains hazardous materials from former industrial discharges that wer retained in the historic marsh before filling. These hazardous materials include petroleum

hydrocarbons (TPH) and polynuclear aromatic hydrocarbons (PAHs). The marsh crust is a continuous underground layer, at depths of ___ to ___ feet from the surface, that extends bayward of the original mean higher high tide line of Alameda Island, before filling, throughout the area that was filled.

G. The "shallowest groundwater zone" is in the fill at the Property, is first encountered at depths from 4 to 8 feet below ground surface (bgs) and extends to a maximum depth of approximately 20 feet bgs. The shallowest groundwater zone does not include any deeper groundwater zone that is hydraulically separated from the fill. In particular, the shallowest groundwater zone does not include the "Merritt Sand" zone, which is first encountered at approximately 10 to 105 feet bgs and is hydraulically separated from the fill by Bay Mud, the thickness of which ranges from 5 to 95 feet at the Property. The shallowest groundwater zone is currently not usable for drinking water because of the presence of naturally occurring inorganic constituents (total dissolved solids and some metals). Because of this intrinsic use limitation of the groundwater, the contamination of organic constituents (volatile organic compounds, TPH, and PAHs) related to former activities at or in the vicinity the Property, may, at this time, remain in place provided there are sufficient controls and restrictions to protect the public health, safety, and the environment.

## ARTICLE I.
## ADDITIONAL DEFINITIONS

1.1 Occupant(s). "Occupant(s)" means any person or entity entitled by ownership, leasehold, or other legal relationship to occupy any portion of the Property.

1.2 Owner(s). "Owner(s)" means the Covenantor, its successors in interest and their successors in interest, including heirs and assigns, who at any time hold fee title to all or any portion of the Property.

1.3 Excavation ordinance. "Excavation ordinance" means City of Alameda Ordinance No. ______, a copy of the current version of which is attached as Exhibit C and incorporated herein by this reference.

1.4 Threshold depth. "Threshold depth"is the elevation above which there is little likelihood that hazardous materials from the marsh crust would have mixed during filling. The threshold depth for any location at the Property is shown on Exhibit __ to the RAP/ROD.

1.5 Permitted excavation. "Permitted excavation" means (i) excavation performed in accordance with a City permit approved and issued pursuant to the excavation ordinance when such permit is required under the terms of the excavation ordinance; or (ii) if the excavation ordinance has been repealed or the Department has made a written determination pursuant to subsection 3.2 that the excavation ordinance does not comport with the intent of this Covenant, excavation performed in accordance with a written approval issued by the Department.

1.6 Department. "Department" means the California Environmental Protection Agency, Department of Toxic Substances Control and its successor agencies, if any.

## ARTICLE II.
## GENERAL PROVISIONS

2.1 Restrictions to Run with the Land. This Covenant sets forth protective provisions, covenants, restrictions, and conditions (collectively referred to as "Restrictions"), subject to which the Property and every portion of the Property shall be improved, held, used, occupied, leased, sold, hypothecated, encumbered and/or conveyed. Each and every Restriction: (a) runs with the land pursuant to California Health & Safety Code section 25355.5(a)(1)(C) and California Civil Code section 1471; (b) inures to the benefit of and passes with each and every portion of the Property; (c) is for the benefit of, and is enforceable by the Department; and (d) is imposed upon the entire Property unless expressly stated as applicable only to a specific portion of the Property.

2.2 Binding Upon Owners/Occupants. Pursuant to California Health & Safety Code section 25355.5(a)(1)(C), this Covenant binds all Owners and Occupants of the Property, and their heirs, successors and assignees, and their agents, employees, and lessees. Pursuant to California Civil Code section 1471(b), all Owners of the Property are expressly bound by this Covenant for the benefit of Covenantee.

2.3 Incorporation into Deeds and Leases. The Restrictions set forth in this Covenant shall be incorporated by reference in each and all deeds, leases and subleases of any portion of the Property.

2.4 Conveyance of Property. The Owner(s) shall provide a notice to the Department not later than thirty (30) days after any sale, lease or other conveyance of the Property or a real property estate in the Property (excluding mortgages, liens, and other non-possessory encumbrances). The Department shall not, by these provisions, have authority to approve, disapprove, or otherwise affect any such sale, lease or other conveyance of the Property or estate except as otherwise provided by law, by administrative order, or by a specific provision of this Covenant.

2.5 Written Notification. Upon a determination that a hazardous substance is present upon or beneath nonresidential real property, a notification must be made pursuant to California Health & Safety Code section 25359.7. Specifically, prior to the sale or lease of nonresidential real property, the owner or lessor shall give the buyer or lessee notice that a hazardous substance is located on or beneath the Property.

## ARTICLE III.
## RESTRICTIONS/ENFORCEMENT

3.1 Applicability. The provisions of this Article shall apply to the Property described in Exhibit A and shown on Exhibit B.

3.2 Prohibited Activities. The following activities are prohibited on the Property:

a. Construction of any water well screened for the extraction of water from the shallowest groundwater zone (as defined above) except as provided in this Covenant;

b. Extraction (except for necessary construction site dewatering), utilization or consumption of water from the shallowest groundwater zone for use other than irrigation or emergency use , e.g. firefighting;

c. Disposal of extracted groundwater from construction site dewatering into the

waters of the state except in compliance with the requirements of the Regional Water Quality Control Board, San Francisco Bay Region; and

d. Engaging in any excavation below the threshold depth without a City excavation permit. If the excavation ordinance has been repealed, or if the Department has made a written determination with thirty (30) days prior written notice to the City that the excavation ordinance does not comport with the intent of this Covenant, then a permitted excavation may be conducted only in accordance with a written approval issued by the Department. Covenantor's application for such an approval shall be submitted to the Department and shall otherwise comply with the permit application requirements of the last version of the excavation ordinance or such other requirements as the Department may specify.

3.3 Access For Department. The Department shall have a reasonable right of entry and access to the outdoor areas of the property for inspection, monitoring, and other activities consistent with the purposes of this Covenant as deemed necessary by the Department to protect the public health or safety, or the environment.

3.4 Enforcement. Failure of the Covenantor, or Owner(s)/Occupant(s) to comply with any of the Restrictions specifically applicable to it shall be grounds for the Department to require that the Covenantor or Owner(s)/Occupant(s) remove any wells constructed or to close or otherwise remedy any excavation conducted in violation of the prohibited activities stated in subsection 3.2 of this Covenant. Violations of this Covenant shall be grounds for the Department to file civil or criminal actions as provided by law.

## ARTICLE IV.
## VARIANCE AND TERMINATION

4.1 Variance. Covenantor or any other aggrieved person may apply to the Department for a written variance from the provisions of this Covenant. Such application shall be made in accordance with California Health & Safety Code section 25233.

4.2 Termination. Covenantor or any other aggrieved person may apply to the

Department for a termination of some or all of the Restrictions as they apply to all or any portion of the Property. Such application shall be made in accordance with California Health & Safety Code section 25234.

4.3 Term. Unless terminated in accordance with subsection 4.2 above, by law or by the Department in the exercise of its discretion, this Covenant shall continue in effect in perpetuity.

## ARTICLE V.
## MISCELLANEOUS

5.1 No Dedication Intended. Nothing set forth in this Covenant shall be construed to be a gift or dedication, or offer of a gift or dedication, of the Property or any portion of the Property to the general public or anyone else for any purpose whatsoever.

5.2 Department References. All references to the Department include successor agencies/departments or other successor entity.

5.2 Notices. Whenever any person gives or serves any notice, demand, or other communication with respect to this Covenant, each such notice, demand, or other communication shall be in writing and shall be deemed effective (i) when delivered, if personally delivered to the person being served or to an officer of a corporate party being served or official of a government agency being served, or, (ii) three (3) business days after deposit in the mail if mailed by United States mail, postage paid and certified, return receipt requested:

To: "Covenantor":
City of Alameda
Economic Development Division
950 West Mall Square, #215
Alameda, CA 94501
Attention: Jeffrey T. Bond

To: "Department":
Department of Toxic Substances Control
10151 Croydon Way, Suite 3
Sacramento, CA 95827-2106
Attention: A. J. Landis, P.E., Chief
Office of Military Facilities

Exhibit 1 page 48

Any party may change its address or the individual to whose attention a notice is to be sent by

giving notice in compliance with this paragraph.

5.3 Partial Invalidity. If any portion of the Restrictions or terms set forth in this Covenant is determined by a court of competent jurisdiction to be invalid for any reason, the remaining portion shall remain in full force and effect as if such portion found invalid had n been included in this Covenant.

5.4 Article Headings. Headings at the beginning of each numbered article of this Covenant are solely for the convenience of the parties and are not a part of the Covenant.

5.5 Recordation. This instrument shall be executed by the Covenantor and by the Northern California Coastal Cleanup Operations Branch Chief, California Department of To Substances Control. This instrument, with all referenced Exhibits, shall be recorded by the Covenantor in the County of Alameda within fifteen (15) days of the date of execution by bo parties.

5.6 Statutory References. All statutory references include successor provisions.

5.7 Representative Authority. The undersigned representative of each party to th Covenant certifies that he or she is fully authorized to enter into this Covenant and to execut and legally bind that party to this Covenant.

IN WITNESS WHEREOF, the parties execute this Covenant as of the date se forth above.

OWNER: City of Alameda

By: ______________________________

Title:

Date: ______________________________

DEPARTMENT OF TOXIC SUBSTANCES CONTROL

By: ______________________________
Anthony J. Landis, P.E.

Title: Chief, Office of Military Facilities

Date: ______________________________

STATE OF CALIFORNIA )
)
COUNTY OF )

On ________, 1999 before me, a Notary Public in and for State of California, persona appeared _________________, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she/he executed the same in his authorized capacity, and that by her signature on the instrument the person, or the entity upon behalf of which the person acted, executed the instrument.

WITNESS my hand and official seal.

_______________________________

Notary's Signature

Exhibit 1 page 51

STATE OF CALIFORNIA )
)
COUNTY OF ________________ )

On ________, 1999 before me, a Notary Public in and for State of California, personally appeared Anthony J. Landis, personally known to me or proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument, the Department of Toxic Substances Control executed the instrument.

WITNESS my hand and official seal.

________________________________

Notary's Signature

Exhibit 1 page 52

# Exhibit 1

# Attachment B-2

NAVY DRAFT
5/1/00

**EXHIBIT B-2 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOSET**

**RECORDING REQUESTED BY:**

**And when recorded, mail this deed and, unless otherwise shown below, mail tax statements to:**

James M. Flint, Executive Director
Alameda Reuse & Redevelopment Authority
Alameda City Hall
2263 Santa Clara Avenue
Alameda, CA 94501-4456

**QUITCLAIM DEED AND ENVIRONMENTAL RESTRICTIONS PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1471**

**This Deed is** made this ___ day of ___________, 2000, by and between the United States of America, acting by and through the Department of the Navy, hereinafter called the Grantor, and the Alameda Reuse and Redevelopment Authority, a Joint Powers Authority established by the City of Alameda and County of Alameda under the California Joint Exercise of Powers Act as set forth in Title 1, Division 7, Chapter 5, Article 1 of the Government Code of the State of California (Government Code Section 6500 et seq.), hereinafter called the Grantee.

**WITNESSETH:**

**WHEREAS,** the Grantee has requested conveyance from the Grantor of the approximately ____________________ (____) acres of property comprising a portion of the former Naval Air Station Alameda (NAS Alameda), hereinafter referred to as the "Property," which was closed pursuant to and in accordance with the Defense Base Closure and Realignment Act of 1991, as amended (Pub. L. No. 101-510) and which is no longer required for military purposes; and

03-52403.01

## EXHIBIT B-2 TO ALAMEDA EDC MOA
## FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOSET

**WHEREAS**, the GRANTOR is authorized to convey property at NAS Alameda to the GRANTEE pursuant to Section 2905(b)(4) of the Defense Base Closure and Realignment Act of 1990 (Public Law 101-510, 10 U.S.C. Section 2687 note): as amended by Section 2821 of the National Defense Authorization Act for Fiscal Year 2000 (Public Law 106-65); and

**WHEREAS**, the Grantor has not completed remedial actions on the Property that are necessary to provide the CERCLA covenant required by 42 U.S.C. § 9620 (h)(3)(A)(ii)(I) of the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA")

**WHEREAS**, the Grantor has found and determined that the Property is suitable for transfer under a Finding of Suitability for Early Transfer and Environmental Response Obligation Addendum ("FOSET/EROA"), dated ______________.

**WHEREAS**, the Grantor and Grantee have provided the assurances required by said 42 U.S.C. § 9620 (h)(3)(C) of CERCLA, and complied with other statutory conditions precedent to early transfer of the FOSET Areas; and

**WHEREAS**, GRANTOR has determined pursuant to applicable Federal statutes and regulations and California Civil Code Section 1471(c) that it is reasonably necessary to impose certain restrictions on the use of the Property to protect present and future human health or safety or the environment as a result of the presence of hazardous materials on portions of the Property described hereinafter with particularity. **(NOTE: THIS PARAGRAPH WILL BE DELETED IF USE RESTRICTIONS ARE NOT REQUIRED.)**

**NOW THEREFORE**, the GRANTOR, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, does hereby remise, release and forever quitclaim to the GRANTEE, all of GRANTOR'S right, title and interest in and to that certain real property, comprising the Property, as more particularly described in Exhibit "A."

**I. TOGETHER WITH** all buildings, improvements, and related personal property located thereon, and all rights, tenements, hereditaments, and appurtenances belonging, or in any wise appertaining, including fixtures, structures, mineral rights, water rights, the banks, beds and waters of any streams, rivers or lakes upon said Property, appurtenant easements, rail lines and utility lines, alleys, roads, streets ways, strips, gores or railroad rights of way upon said Property and any means of ingress and egress appurtenant thereto.

**EXHIBIT B-2 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOSET**

**II. SUBJECT TO THE FOLLOWING NOTICES, COVENANTS, RESTRICTIONS, AND CONDITIONS,** which shall be binding upon and enforceable against the Grantee, its successors and assigns, in perpetuity:

A. The Grantee agrees to accept conveyance of the Property subject to all covenants, conditions, restrictions, easements, rights-of-way, reservations, rights, agreements, and encumbrances of record.

B. Except as otherwise provided herein, or as otherwise provided by law, the GRANTEE acknowledges that it has inspected, is aware of, and accepts the condition and state of repair of the Property, and that the Property is conveyed "as is" and "where is" without any representation, promise, agreement, or warranty on the part of the GRANTOR regarding such condition and state of repair, or regarding the making of any alterations, improvements, repairs or additions. Except for the environmental remediation required to be undertaken by GRANTOR, the GRANTEE further acknowledges that the GRANTOR shall not be liable for any latent or patent defects in the Property except to the extent required by applicable law.

C. To the extent that any portion of the Property lies within a floodplain as defined in Section 6(c) of Executive Order No. 11988, dated May 24, 1977, the use of that portion of the Property may be subject to the National Flood Insurance Program of the Federal Emergency Management Agency and the Environmental Hazards,

D. **LEAD BASED PAINT (LBP).**

1. The GRANTEE is hereby informed and does acknowledge that the Property includes buildings and structures that, due to their age, are presumed to contain LBP. Lead from paint, paint chips, and dust can pose health hazards if not managed properly.

2. The GRANTEE covenants and agrees that in its use and occupancy of the Real Estate, it will comply with Title X and all applicable Federal, State, and local laws relating to LBP. The GRANTEE acknowledges that the GRANTOR assumes no liability for damages for personal injury, illness, disability, or death to the GRANTEE, or to any other person, including members of the general public, arising from or incident to the purchase, transportation, removal, handling, use, disposition, or other activity causing or leading to contact

**EXHIBIT B-2 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOSET**

of any kind whatsoever with LBP on the Property, arising after the conveyance of the Property from the GRANTOR to the GRANTEE, whether the GRANTEE has properly warned, or failed to properly warn, the persons injured.

3. The GRANTOR shall provide a Notice of Release, in recordable form, to the GRANTEE at such time as demolition of the buildings on the Property containing LBP has been completed and the appropriate Federal or State regulatory agency(s) have concurred in writing that LBP has been removed from the buildings and any necessary soil remediation has been conducted in accordance with all applicable Federal, State, and local laws and regulations. This Notice of Release shall be deemed to remove all notices and restrictions relating to LBP from the Property.

**(NOTE: IF THE PROPERTY BEING CONVEYED CONTAINS RESIDENTIAL IMPROVEMENTS, THE FOLLOWING LANGUAGE RELATING TO LBP SHOULD BE SUBSTITUED FOR THE ABOVE THREE PARAGRAPHS.)**

1. The Property may include improvements that are presumed to contain Lead Based Paint (LBP) because they are thought to have been constructed prior to 1978. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Pursuant to 40 CFR Section 745.113 the following notice is provided; "Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

2. The GRANTEE hereby acknowledges the required disclosure of the presence of any known LBP and/or LBP hazards in target housing constructed prior to 1978 in accordance with the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. Section 4852d (Title X). The GRANTEE acknowledges the receipt of available records and reports pertaining to LBP and/or LBP hazards on the Property and receipt of the Environmental

Protection Agency (EPA) approved pamphlet "Protect Your Family from Lead in Your Home" (EPA 747-K-94-001). Furthermore, the GRANTEE acknowledges that it has read and understood the EPA pamphlet.

3. The GRANTEE covenants and agrees that, in any improvements on the Property defined as target housing by Title X and constructed prior to 1978, LBP hazards will be disclosed to potential occupants in accordance with Title X before use of such improvements as a residential dwelling (as defined in Title X). Further, the GRANTEE covenants and agrees that LBP hazards in target housing will be abated in accordance with Title X before use and occupancy as a residential dwelling. "Target housing" means any housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than six [6] years of age resides, or is expected to reside, in such housing) or any zero-bedroom dwelling.

4. The GRANTEE covenants and agrees that in its use and occupancy of the Real Estate, it will comply with Title X and all applicable Federal, State, and local laws relating to LBP. The GRANTEE acknowledges that the GRANTOR assumes no liability for damages for personal injury, illness, disability, or death to the GRANTEE, or to any other person, including members of the general public, arising from or incident to the purchase, transportation, removal, handling, use, disposition, or other activity causing or leading to contact of any kind whatsoever with LBP on the Property, whether the GRANTEE has properly warned, or failed to properly warn, the persons injured.

5. The GRANTOR shall provide a Notice of Release, in recordable form, to the GRANTEE at such time as demolition of the buildings on the Property containing LBP has been completed and the appropriate Federal or State regulatory agency(s) have concurred in writing that LBP has been removed from the buildings and any necessary soil remediation has been conducted in accordance with all applicable Federal, State, and local laws and regulations. This Notice of Release shall be deemed to remove all notices and restrictions relating to LBP from the Property.

E. **ASBESTOS CONTAINING MATERIALS.**

1. The GRANTEE is hereby informed and does acknowledge that asbestos or asbestos containing materials ("ACM") have been found and are otherwise presumed

**EXHIBIT B-2 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOSET**

to exist in buildings and structures on the Property. The GRANTEE acknowledges receipt of documentation disclosing the presence of any known ACM in the buildings and structures on the Property. The GRANTEE covenants that it will prohibit occupancy of buildings and structures, or portions thereof, containing known ACM prior to abatement of the ACM or demolition of the building or structure.

2. The GRANTEE covenants and agrees that in its use and occupancy of the Property, including but not limited to demolition of buildings containing ACM, it will comply with all applicable Federal, State and local laws relating to ACM. The GRANTEE acknowledges that the GRANTOR assumes no liability for damages for personal injury, illness, disability, or death to the GRANTEE, or to any other person, including members of the general public, arising from or incident to the purchase, transportation, removal, handling, use, disposition, or activity causing or leading to contact of any kind whatsoever with ACM in the structures on the Property, arising after the conveyance of the Property from the GRANTOR to the GRANTEE, whether the GRANTEE has properly warned, or failed to property warn the persons injured.

3. The GRANTOR shall provide a Notice of Release, in recordable form, to the GRANTEE at such time as demolition of the buildings on the Property containing ACM has been completed and the appropriate Federal or State regulatory agency(s) have certified in writing that ACM has been removed from the buildings and any necessary soil remediation has been conducted in accordance with all applicable Federal, State, and local laws and regulations. This Notice of Release shall be deemed to remove all notices and restrictions relating to ACM from the Property.

F. **NOTICE OF COVENANT DEFERRAL**: Pursuant to the requirements for "covenant deferral" of 42 U.S.C. Section 120 (h)(3)(C) of the Comprehensive Environmental Response, Compensation and Liability Act of 1980 (CERCLA), as amended by Section 334 of the National Defense Authorization Act for Fiscal Year 1997 [Pub. L. No. 104-201; 42 U.S.C. 9620(h)(3)(C)], the following notices, assurances, covenants and declarations apply to the Property.

1. **Hazardous Substance Notification**. Notice is hereby provided that the information set out in Exhibit "B", attached hereto and made a part hereof, identifies hazardous substances that were stored for one year or more, known to have been released, or

**EXHIBIT B-2 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOSET**

disposed of on this Property. The GRANTOR has made a complete search of its files and records concerning the Property and found that Exhibit "B" provides: (1) notice of the type and quantity of such hazardous substances, (2) notice of the time the storage, release, or disposal took place, and (3) a description of the remedial action taken, if any.

2. **Access [CERCLA 42 U.S.C. Section 120(h)(3)(A)(iii)].** GRANTOR reserves access to and the right to use of the Property in any case in which a remedial or corrective action is found to be necessary after the date of the conveyance of the Property. In exercising this right of access, except in the case of imminent and substantial endangerment to human health or the environment, the GRANTOR: (a) shall give the GRANTEE reasonable prior written notice of actions to be taken related to such remedial or corrective actions on the Property, and (b) make reasonable efforts to minimize interference with the ongoing use of the Property. Furthermore, the GRANTOR and GRANTEE agree to cooperate in good faith to minimize any conflict between necessary environmental investigation and remediation activities and the GRANTEE's use of the Property. Any inspection, survey, investigation, or other response, corrective or remedial action undertaken by the GRANTOR will, to the maximum extent practicable, be coordinated with representatives designated by the GRANTEE.

3. **Additional Remediation Obligation [CERCLA 42 U.S.C. Section 120(h)(3)(A)(ii)(II)].** The GRANTOR covenants and warrants that GRANTOR shall conduct any additional remedial action necessary after the effective date of the warranty granted under Paragraph F.5. below for any hazardous substance existing on the Property prior to the date of this Deed. This covenant shall not apply to the extent that the GRANTEE caused or contributed to any release or threatened release of any hazardous substance, pollutant, contaminant, petroleum or petroleum derivative.

4. **Response Action Assurances [CERCLA 42 U.S.C. Section 120(h)(3)(C)(ii)]:**

a. **Necessary Restrictions to Protect Human Health and the Environment [CERCLA 42 U.S.C. Section 120(h)(3)(C)(ii)(I)].** The following environmental covenants, conditions, and restrictions (hereinafter "environmental restrictions") regarding the use of the Property have been determined by the GRANTOR in this Covenant to be reasonably necessary to protect present or future human health or safety or the environment as