**EXHIBIT B-2 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOSET**

provided by CERCLA and California Civil Code Section 1471. The environmental restrictions made and accepted herein by GRANTEE shall be for the benefit of and enforceable by the GRANTOR herein as provided under Civil Code Section 1471, shall run with the land, and shall be binding on the GRANTEE, its successors and assigns. These environmental restrictions shall be released at such time as the GRANTOR has obtained written confirmation from California Department of Toxic Substances Control ("DTSC") that the appropriate regulatory agency has determined that the restricted Property is protective of present or future human health or safety or the environment for the use that was formerly prohibited. Upon receipt of such written confirmation, the GRANTOR shall deliver to the GRANTEE in recordable form, a release (the "Release") relating specifically to the environmental use restrictions set forth in this deed. The execution of the Release by the GRANTOR shall remove all notices and restrictions relating to the remedy addressed by the restrictions from the title to the Property.

**(Note: The above paragraph would be added along with specific use restrictions if required by the FOSET/EROA.)**

b. **Disruption of Remedies [CERCLA 42 U.S.C. Section 120(h)(3)(C)(ii)(II)].** The GRANTEE covenants not to engage in activities that will disrupt required remedial investigation, remedial actions, or oversight activities, should any be required of the GRANTOR on the Property. The GRANTOR and GRANTEE agree to cooperate in good faith to minimize any conflict between necessary environmental investigation and remediation activities at the Property, and the operations and construction activities of the GRANTEE, and successors, lessees, and contractors of the GRANTEE.

c. **Response Action Assurance and Schedules for Investigation and Completion of all Necessary Response Action [CERCLA 42 U.S.C. Section 120(h)(3)(C)(ii)(III)].** The Grantor hereby provides assurance that it will take all necessary response action at the Property as provided by Section 120(h)(3)(C)(ii)(II) of CERCLA. Schedules for investigation and completion of all necessary response action are identified and included as an Exhibit of the transfer agreement (Memorandum of Agreement).

d. **Budget Requests [CERCLA 42 U.S.C. Section 120(h)(3)(C)(ii)(IV)].** The GRANTOR hereby provides assurances that it will submit a budget request to the Director of the Office of management and Budget that adequately addresses schedules for investigation and completion of all necessary response actions subject to Congressional authorization and appropriations.

## EXHIBIT B-2 TO ALAMEDA EDC MOA
## FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOSET

5. **Grant of Covenant [CERCLA 42 U.S.C. Section 120(h)(3)(C)(iii) ].** When all response action necessary to protect human health and the environment with respect to any substance remaining on the property on the date of transfer has been taken, the GRANTOR shall execute land deliver to the GRANTEE an appropriate document containing a warranty that all such response action has been taken and that the requirements of CERC LA 42 U.S.C. Section 120(h)(3)(a)(ii)(I) have been satisfied.

**G. INDEMNIFICATION**

The GRANTOR hereby recognizes its obligations under Section 330 of the National Defense Authorization Act of 1993, as amended (Pub. L. 102-484).

**H. NON-DISCRIMINATION.** GRANTEE covenants not to discriminate upon the basis of race, color, religion, disability, sex, age or national origin in the use, occupancy, sale, or lease of the Property, or in its employment practices conducted thereon. This covenant shall not apply however, to the lease or rental of a room or rooms within a family dwelling unit, nor shall it apply with respect to religion if the Property is on premises used primarily for religious purposes. The GRANTOR shall be deemed a beneficiary of this covenant without regard to whether it remains the owner of any land or interest therein in the locality of the Property hereby conveyed and shall have the sole right to enforce this covenant in any court of competent jurisdiction.

**IV. THE CONDITIONS, RESTRICTIONS, RESERVATIONS, AND COVENANTS** set forth in this deed are a binding servitude on the Property; shall inure to the benefit of the Grantor and Grantee, their successors and assigns, and will be deemed to run with the land in perpetuity.

**V. LIST OF EXHIBITS**: The following exhibits are attached hereto and made a part of this deed:

A. Exhibit "A" - Legal Descriptions and Plats of the Property
B. Exhibit "B" - CERCLA Notice pertaining to Property.

**EXHIBIT B-2 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOSET**

1 **[SIGNATURE PAGE FOLLOWS]**

**EXHIBIT B-2 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOSET**

**IN WITNESS WHEREOF,** the Grantor has caused its name to be signed to these presents by an authorized Real Estate Contracting Officer on the day first above written.

**UNITED STATES OF AMERICA,**
acting by and through the Department of the Navy,

BY:_______________________________
**WILLIAM R. CARSILLO**
**Real Estate Contracting Officer**

**ACCEPTANCE**

The Grantee hereby accepts this Deed and agrees to be bound by all the agreements, covenants, conditions, restrictions and reservations contained therein.

**ALAMEDA REUSE AND REDEVELOPMENT AUTHORITY**

By: ___________________________
**JAMES M. FLINT**
**Executive Director**

Date: _________________.

# Exhibit 1

# Attachment B-3

NAVY DRAFT
5/1/00

**EXHIBIT B-3 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOST**

**RECORDING REQUESTED BY**

**And when recorded, mail this deed and, unless otherwise shown below, mail tax statements to:**

James M. Flint, Executive Director
Alameda Reuse and Redevelopment Authority
Alameda City Hall
2263 Santa Clara Avenue
Alameda, CA 94501-4456

**QUITCLAIM DEED AND ENVIRONMENTAL RESTRICTIONS PURSUANT TO CALIFORNIA CIVIL CODE SECTION 1471**

**This Deed** is made this ___ day of _________, 2000, by and between the **United States of America,** acting by and through the Department of the Navy, hereinafter called the **GRANTOR**, and the **Alameda Reuse and Redevelopment Authority**, a Joint Powers Authority established by the City of Alameda and County of Alameda under the California Joint Exercise of Powers Act as set forth in Title 1, Division 7, Chapter 5, Article 1 of the Government Code of the State of California (Government Code Section 6500 et seq.), hereinafter called the **GRANTEE.**

**WITNESSETH:**

**WHEREAS,** the GRANTEE has requested conveyance from the GRANTOR of a portion of the former Naval Air Station Alameda, ("NAS Alameda") which was closed pursuant to and in accordance with the Defense Base Closure and Realignment Act of 1991, as amended (Pub. L. No. 101-510) and which is no longer required for military purposes; and

**WHEREAS,** the GRANTOR is authorized to convey property at NAS Alameda to the GRANTEE pursuant to Section 2905(b)(4) of the Defense Base Closure and Realignment Act of 1990 (Public Law 101-510, 10 U.S.C. Section 2687 note):, as amended by Section 2821 of the National Defense Authorization Act for Fiscal Year 2000 (Public Law 106-65); and

# EXIHIBIT B-3 TO ALAMEDA EDC MOA
# FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOST

**WHEREAS,** the GRANTOR has completed remedial actions on the property at NA! Alameda to be conveyed to GRANTEE that are necessary to provide the CERCLA covenant required by Section 120 (h)(3)(A)(ii)(I) of the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"); and

**WHEREAS**, the GRANTOR has found and determined that the property at NA! Alameda to be conveyed to GRANTEE is suitable for transfer pursuant to a Finding o Suitability for Transfer, (FOST) dated ______________; and

**WHEREAS, GRANTOR** has determined pursuant to applicable Federal statutes an regulations and California Civil Code Section 1471(c) that it is reasonably necessary to impos certain restrictions on the use of the Property to protect present and future human health or safet or the environment as a result of the presence of hazardous materials on portions of the Propert described hereinafter with particularity. **(NOTE: This paragraph will be deleted if us restrictions are not required.)**

**NOW THEREFORE**, the GRANTOR, for good and valuable consideration, the receip and sufficiency of which is hereby acknowledged, does hereby remise, release and foreve quitclaim to the GRANTEE, all of GRANTOR'S right, title and interest in and to that certai real property, comprising approximately _____acres, more or less (hereinafter "Property"), a more particularly described in Exhibit "A."

**I. TOGETHER WITH** all buildings and improvements located thereon, and al rights, tenements, hereditaments, and appurtenances belonging, or in any wise appertaining including fixtures, structures, mineral rights, water rights, the banks, beds and waters of an streams, rivers or lakes upon said Property, appurtenant easements, rail lines and utility lines alleys, roads, streets ways, strips, gores or railroad rights of way upon said Property, and an means of ingress and egress appurtenant thereto.

**II. SUBJECT TO THE FOLLOWING NOTICES, COVENANTS RESTRICTIONS, AND CONDITIONS,** which shall be binding upon and enforceable agains the GRANTEE, its successors and assigns, in perpetuity:

**A.** The GRANTEE agrees to accept conveyance of the Property subject to al covenants, conditions, restrictions, easements, rights-of-way, reservations, rights, agreements and encumbrances of record.

**B.** Except as otherwise provided herein, or as otherwise provided by law, the GRANTEE acknowledges that it has inspected, is aware of, and accepts the condition and state of repair of the Property, and that the Property is conveyed "as is" and "where is" without any representation, promise, agreement, or warranty on the part of the GRANTOR regarding such

**EXHIBIT B-3 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOST**

condition and state of repair, or regarding the making of any alterations, improvements, repairs or additions. Except for the environmental remediation required to be undertaken by GRANTOR, the GRANTEE further acknowledges that the GRANTOR shall not be liable for any latent or patent defects in the Property except to the extent required by applicable law.

C. To the extent that any portion of the Property lies within a floodplain as defined in Section 6(c) of Executive Order No. 11988, dated May 24, 1977, the use of that portion of the Property may be subject to the National Flood Insurance Program.

**D. LEAD BASED PAINT (LBP).**

1. The GRANTEE is hereby informed and does acknowledge that the Property includes buildings and structures that, due to their age, are presumed to contain LBP. Lead from paint, paint chips, and dust can pose health hazards if not managed properly.

2. The GRANTEE covenants and agrees that in its use and occupancy of the Real Estate, it will comply with Title X and all applicable Federal, State, and local laws relating to LBP. The GRANTEE acknowledges that the GRANTOR assumes no liability for damages for personal injury, illness, disability, or death to the GRANTEE, or to any other person, including members of the general public, arising from or incident to the purchase, transportation, removal, handling, use, disposition, or other activity causing or leading to contact of any kind whatsoever with LBP on the Property, arising after the conveyance of the Property from the GRANTOR to the GRANTEE, whether the GRANTEE has properly warned, or failed to properly warn, the persons injured.

3. The GRANTOR shall provide a Notice of Release, in recordable form, to the GRANTEE at such time as demolition of the buildings on the Property containing LBP has been completed and the appropriate Federal or State regulatory agency(s) have concurred in writing that LBP has been removed from the buildings and any necessary soil remediation has been conducted in accordance with all applicable Federal, State, and local laws and regulations. This Notice of Release shall be deemed to remove all notices and restrictions relating to LBP from the Property.

**(NOTE: IF THE PROPERTY BEING CONVEYED CONTAINS RESIDENTIAL IMPROVEMENTS, THE FOLLOWING LANGUAGE RELATING TO LBP SHOULD BE SUBSTITUED FOR THE ABOVE THREE PARAGRAPHS.)**

1. The Property may include improvements that are presumed to contain Lead Based Paint (LBP) because they are thought to have been constructed prior to 1978. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Pursuant to 40 CFR Section 745.113 the following notice is provided; "Every purchaser of any interest in

**EXHIBIT B-3 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOST**

residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase."

2. The GRANTEE hereby acknowledges the required disclosure of the presence of any known LBP and/or LBP hazards in target housing constructed prior to 1978 in accordance with the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. Section 4852d (Title X). The GRANTEE acknowledges the receipt of available records and reports pertaining to LBP and/or LBP hazards on the Property and receipt of the Environmental Protection Agency (EPA) approved pamphlet "Protect Your Family from Lead in Your Home" (EPA 747-K-94-001). Furthermore, the GRANTEE acknowledges that it has read and understood the EPA pamphlet.

3. The GRANTEE covenants and agrees that, in any improvements on the Property defined as target housing by Title X and constructed prior to 1978, LBP hazards will be disclosed to potential occupants in accordance with Title X before use of such improvements as a residential dwelling (as defined in Title X). Further, the GRANTEE covenants and agrees that LBP hazards in target housing will be abated in accordance with Title X before use and occupancy as a residential dwelling. "Target housing" means any housing constructed prior to 1978, except housing for the elderly or persons with disabilities (unless any child who is less than six [6] years of age resides, or is expected to reside, in such housing) or any zero-bedroom dwelling.

4. The GRANTEE covenants and agrees that in its use and occupancy of the Real Estate, it will comply with Title X and all applicable Federal, State, and local laws relating to LBP. The GRANTEE acknowledges that the GRANTOR assumes no liability for damages for personal injury, illness, disability, or death to the GRANTEE, or to any other person, including members of the general public, arising from or incident to the purchase, transportation, removal, handling, use, disposition, or other activity causing or leading to contact of any kind whatsoever with LBP on the Property, whether the GRANTEE has properly warned, or failed to properly warn, the persons injured.

5. The GRANTOR shall provide a Notice of Release, in recordable form, to the GRANTEE at such time as demolition of the buildings on the Property containing LBP has been completed and the appropriate Federal or State regulatory agency(s) have concurred in

writing that LBP has been removed from the buildings and any necessary soil remediation has been conducted in accordance with all applicable Federal, State, and local laws and regulations. This Notice of Release shall be deemed to remove all notices and restrictions relating to LBP from the Property.

**E. ASBESTOS CONTAINING MATERIALS.**

1. The GRANTEE is hereby informed and does acknowledge that asbestos or asbestos containing materials ("ACM") have been found and are otherwise presumed to exist in buildings and structures on the Property. The GRANTEE acknowledges receipt of documentation disclosing the presence of any known ACM in the buildings and structures on the Property. The GRANTEE covenants that it will prohibit occupancy of buildings and structures, or portions thereof, containing known ACM prior to abatement of the ACM or demolition of the building or structure.

2. The GRANTEE covenants and agrees that in its use and occupancy of the Property, including but not limited to demolition of buildings containing ACM, it will comply with all applicable Federal, State and local laws relating to ACM. The GRANTEE acknowledges that the GRANTOR assumes no liability for damages for personal injury, illness, disability, or death to the GRANTEE, or to any other person, including members of the general public, arising from or incident to the purchase, transportation, removal, handling, use, disposition, or activity causing or leading to contact of any kind whatsoever with ACM in the structures on the Property, arising after the conveyance of the Property from the GRANTOR to the GRANTEE, whether the GRANTEE has properly warned, or failed to property warn the persons injured.

3. The GRANTOR shall provide a Notice of Release, in recordable form, to the GRANTEE at such time as demolition of the buildings on the Property containing ACM has been completed and the appropriate Federal or State regulatory agency(s) have certified in writing that ACM has been removed from the buildings and any necessary soil remediation has been conducted in accordance with all applicable Federal, State, and local laws and regulations. This Notice of Release shall be deemed to remove all notices and restrictions relating to ACM from the Property.

**F. NOTICES AND COVENANTS:**

**1. Notices:**

**a. Finding of Suitability to Transfer.** A Finding of Suitability to Transfer (FOST) has been completed and an Environmental Baseline Survey ("EBS") report is referenced in the FOST. The FOST and EBS reference environmental

**EXHIBIT B-3 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOST**

conditions on the Property and on other property not subject to this Deed. The FOST sets fortl the basis for the GRANTOR's determination that the Property is suitable for transfer. Th GRANTEE is hereby made aware of the notifications contained in the FOST and EBS.

b. **Hazardous Substance Notification.** Pursuant to Sectio 120(h) of CERCLA codified as 42 U.S.C. Section 9620(h), notice is hereby provided that th information set out in Exhibit "B", attached hereto and made a part hereof, identifies hazardou substances that were stored for one year or more, known to have been released, or disposed of o this Property. The GRANTOR has made a complete search of its files and records concernin the Property and found that the FOST provides: (1) a notice of the type and quantity of such hazardous substances, (2) notice of the time the storage, release, or disposal took place, and (3) a description of the remedial action taken, if any.

2. **Grant of Covenant [CERCLA 42 U.S.C. Sectio 120(h)(3)(A)(ii)(I)].** The GRANTOR covenants that all remedial action necessary to protec human health and the environment with respect to any hazardous substance remaining on th Property has been taken before the date of transfer.

3. **Additional Remediation Obligation [CERCLA 42 U.S.C Section 120(h)(3)(A)(ii)(II)].** The GRANTOR covenants and warrants that GRANTOR shal conduct any additional remedial action necessary after the effective date of this Deed. Thi covenant shall not apply to the extent that the GRANTEE caused or contributed to any release o threatened release of any hazardous substance, pollutant, contaminant, petroleum or petroleur derivative.

4. **Access [CERCLA 42 U.S.C. Section 120(h)(3)(A)(iii)].** I accordance with CERCLA 42 U.S.C. Section 120 (h)(3)(A)(iii), GRANTOR reserves the right o access to and use of the Property in any case in which a remedial or corrective action is found t be necessary after the date of the conveyance of the Property. In exercising these rights o access, except in the case of imminent and substantial endangerment to human health or th environment, the GRANTOR (a) shall give the GRANTEE reasonable prior written notice o actions to be taken related to such remedial or corrective actions on the Property, and (b) mak reasonable efforts to minimize interference with the ongoing use of the Property. Furthermore the GRANTOR and GRANTEE agree to cooperate in good faith to minimize any conflic between necessary environmental investigation and remediation activities and the GRANTEE's use of the Property. Any inspection, survey, investigation, or other response, corrective o remedial action undertaken by the GRANTOR will, to the maximum extent practicable, b coordinated with representatives designated by the GRANTEE.

5. **Environmental Restrictions.**

**EXHIBIT B-3 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOST**

The following environmental covenants, conditions, and restrictions (hereinafter "environmental restrictions") regarding the use of the Property have been determined by the GRANTOR in this Covenant to be reasonably necessary to protect present or future human health or safety or the environment as provided by CERCLA and California Civil Code Section 1471. The environmental restrictions made and accepted herein by GRANTEE shall be for the benefit of and enforceable by the GRANTOR herein as provided under Civil Code Section 1471, shall run with the land, and shall be binding on the GRANTEE, its successors and assigns.

These environmental restrictions may be released at such time as the GRANTOR has obtained written confirmation from California Department of Toxic Substances Control that the appropriate regulatory agency has determined that the restricted Property is protective of present or future human health or safety of the environment for the use that was formerly prohibited. Upon receipt of such written confirmation, the GRANTOR shall deliver to the GRANTEE in recordable form, a release (the "Release") relating specifically to the environmental use restrictions set forth in this deed. The execution of the Release by the GRANTOR shall remove all notices and restrictions relating to the remedy addressed by the restrictions from the title to the Property. .

**(Note: The above two paragraphs would be added along with specific use restrictions if required by the FOST.)**

**G. INDEMNIFICATION REGARDING TRANSFEREES**

The GRANTOR hereby recognizes its obligations under Section 330 of the National Defense Authorization Act of 1993 (Pub. L. 102-484), as amended, regarding indemnification of transferees of closing Department of Defense property.

**H. NON-DISCRIMINATION.** GRANTEE covenants not to discriminate upon the basis of race, color, religion, disability, sex, age or national origin in the use, occupancy, sale, or lease of the Property, or in its employment practices conducted thereon. This covenant shall not apply however, to the lease or rental of a room or rooms within a family dwelling unit, nor shall it apply with respect to religion if the Property is on premises used primarily for religious purposes. The GRANTOR shall be deemed a beneficiary of this covenant without regard to whether it remains the owner of any land or interest therein in the locality of the Property hereby conveyed and shall have the sole right to enforce this covenant in any court of competent jurisdiction.

**III. THE CONDITIONS, RESTRICTIONS, RESERVATIONS, AND COVENANTS** set forth in this deed are a binding servitude on the Property; shall inure to the benefit of the GRANTOR and GRANTEE, their successors and assigns, and will be deemed to run with the land in perpetuity.

**EXHIBIT B-3 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOST**

**IV. LIST OF EXHIBITS**: The following exhibits are attached hereto and made a part of this Quitclaim Deed:

**A.** Exhibit "A" - Legal Descriptions and Plats of the Property.
**B.** Exhibit "B" - CERCLA Notice pertaining to Property.

**[SIGNATURE PAGE FOLLOWS]**

**EXHIBIT B-3 TO ALAMEDA EDC MOA**
**FORM OF DEED FOR CONVEYANCE OF PROPERTY FOLLOWING EXECUTION OF FOST**

**IN WITNESS WHEREOF,** the GRANTOR has caused its name to be signed to these presents by an authorized Real Estate Contracting Officer on the day first above written.

**UNITED STATES OF AMERICA,**
acting by and through the Department of the Navy,

BY:______________________________
**WILLIAM R. CARSILLO**
**Real Estate Contracting Officer**

**ACCEPTANCE**

The GRANTEE hereby accepts this Deed and agrees to be bound by all the agreements, covenants, conditions, restrictions and reservations contained therein.

**ALAMEDA REUSE & REDEVELOPMENT AUTHORITY**

BY: ______________________________
**JAMES M. FLINT**
**Executive Director**

Date: ________________.

# Exhibit 1

# Attachment C

DEPARTMENT OF THE NAVY
ENGINEERING FIELD ACTIVITY, WEST
NAVAL FACILITIES ENGINEERING COMMAND
900 COMMODORE DRIVE
SAN BRUNO, CALIFORNIA 94066-5006

IN REPLY REFER TO:

5090
Ser 612.5/0064
27 Apr 2000

Ms. Mary Rose Cassa
California Environmental Protection Agency
Department of Toxic Substances Control
700 Heinz Avenue, Bldg. F, Suite 200
Berkeley, CA 94710-2737

Subj.: FINAL FINDING OF SUITABILITY TO TRANSFER (FOST) EAST HOUSING FOR ALAMEDA POINT

Encl: (1) Final Finding of Suitability to Transfer (FOST) East Housing for Alameda Point, Alameda, California

Dear Ms. Cassa:

Please find enclosed the Final Finding of Suitability to Transfer (FOST) East Housing for Alameda Point. The Final Finding of Suitability to Transfer (FOST) East Housing for Alameda Point document is for your information, use and record.

Thank you for your input and involvement in this project. For further information regarding this issue, please contact Ms. Ann Klimek (619) 532-0987 or myself at (650) 244-2627.

Sincerely,

WARREN J. YIP
Remedial Project Manager

Copy to:
Ms. Anna Marie Cook, U.S. EPA Region IX
Mr. Ron Plaseied, Southwest Division
Ms. Ann Klimek, Southwest Division (3 copies)
Mr. Mike McClelland, Southwest Division
Ms. Wendy Thornton, Southwest Division
Mr. Steve Edde, Alameda Point
Ms. Elizabeth Johnson, ARRA (3 copies)
Ms. Jo-Lynne Lee, RAB Co-Chair

**EFA, WEST INTERNAL TRANSMITTAL/REVIEW ROUTING SLIP**

DOCUMENT ATTACHED: FINDING OF SUITABILITY TO TRANSFER FOR NAVAL AIR STATION, ALAMEDA, EAST HOUSING

Activity: NAS, ALAMEDA

**FOST PROPONENT ENDORSEMENT:**

The attached Finding of Suitability to Transfer (FOST) has been prepared in accordance with the Deputy of the Secretary of Defense Memorandum Dated 01 June 1994 "Finding of Suitability to Transfer for BRAC Property".

WARREN YIP, (EBS/FOST) RPM/EIC Code 612 — Date

****************************************

**REVIEWER CERTIFICATION: (PLEASE SIGN, PRINT NAME AND DATE)**

The attached report has been reviewed and based upon the information provided, this office is satisfied that the report is adequate and has no further comments.

WARREN YIP, (EBS/FOST) MANAGER, Code 612 — Date

****************************************

The attached report has been reviewed and based upon the information provided, this office is satisfied that the report is adequate and has no further comments.

4/18/00

GARY MUNEKAWA, NEPA PROJECT MANAGER, Code 7032GM — Date

****************************************

The attached report has been reviewed and based upon the information provided, this office is satisfied that the report is adequate and has no further comments.

REX CALLAWAY, ENVIRONMENTAL COUNSEL, EFDSW — Date

****************************************

The attached report has been reviewed and based upon the information provided, this office is satisfied that the report is adequate and has no further comments.

4/18/00

BILL CARSILLO, REAL ESTATE LEADER, EFDSW — Date

****************************************

The attached report has been reviewed and based upon the information provided, this office is satisfied that the report is adequate and has no further comments.

4/18/00

MICHAEL McCLELLAND, BRAC ENVIRONMENTAL COORDINATOR — Date

****************************************

The attached report has been reviewed and based upon the information provided, this office is satisfied that the report is adequate and has no further comments.

4/18/00

RON PLASEIED, BASE CONVERSION MANAGER, EFDSW — Date

**COMPREHENSIVE LONG-TERM ENVIRONMENTAL ACTION NAVY (CLEAN II)**
**Northern and Central California, Nevada, and Utah**
**Contract No. N62474-94-D-7609**
**Contract Task Order No. 190, Modification 02**

**Prepared For**

**DEPARTMENT OF THE NAVY**
**Warren J. Yip, Remedial Project Manager**
**Engineering Field Activity West**
**Naval Facilities Engineering Command**
**San Bruno, California**

# FINAL
# FINDING OF SUITABILITY TO TRANSFER
# EAST HOUSING AREA
# ALAMEDA POINT, CALIFORNIA

**April 7, 2000**

**Prepared by**

**Tetra Tech EM Inc.**
**10670 White Rock Road, Suite 100**
**Sacramento, California 95670**

Roberta Tassey

Roberta Tassey, Tetra Tech EM Inc. Project Manager

**GAIA Consulting, Inc.**
**520 Third Street, Suite 106**
**Oakland, California 94607**

S.M. von Rosenberg

Susanne von Rosenberg, GAIA Consulting, Inc. Project Manager

# CONTENTS


**Section** **Page**

ABBREVIATIONS AND ACRONYMS ..... iii

1.0 PURPOSE ..... 1
2.0 PROPERTY DESCRIPTION ..... 2
3.0 REGULATORY COORDINATION ..... 2
4.0 NATIONAL ENVIRONMENTAL POLICY ACT COMPLIANCE ..... 3
5.0 ENVIRONMENTAL CONDITION OF PROPERTY ..... 3

5.1 MARSH CRUST ISSUE ..... 5
5.2 BENEFICIAL USE OF GROUNDWATER ..... 6

6.0 SUMMARY OF ENVIRONMENTAL FINDINGS ..... 6

6.1 HAZARDOUS SUBSTANCE NOTIFICATION ..... 7
6.2 MARSH CRUST NOTIFICATION ..... 7
6.3 INSTALLATION RESTORATION SITES ..... 8
6.4 ASBESTOS-CONTAINING MATERIAL ..... 8
6.5 LEAD-BASED PAINT ..... 9
6.6 POLYCHLORINATED BIPHENYLS ..... 11
6.7 RADON ..... 12
6.8 PESTICIDES ..... 12

7.0 RECOMMENDED DEED NOTIFICATIONS AND RESTRICTIONS ..... 13
8.0 REQUIRED ENVIRONMENTAL COVENANTS ..... 15
9.0 FINDING OF SUITABILITY TO TRANSFER ..... 16
REFERENCES ..... 17


**APPENDICES**


A LEGAL DESCRIPTION OF THE PROPERTY
B PUBLIC NOTICES
C EXCAVATION ORDINANCE FOR THE MARSH CRUST AREA
D SAMPLE FORM FOR TRANSFER OF RESIDENTIAL DWELLING
E RESPONSE TO COMMENTS ON THE EAST HOUSING FOST


**TABLES**


**Table**

1 ENVIRONMENTAL CONDITION OF PROPERTY AREA TYPES

2 ENVIRONMENTAL FACTORS AND RESOURCES CONSIDERED EAST HOUSING AREA FINDING OF SUITABILITY TO TRANSFER PARCELS

3 NOTICE OF HAZARDOUS SUBSTANCE STORED, RELEASED, OR DISPOSED OF AT PARCELS 170 AND 171

# FIGURES

**Figures**

1-1 REGIONAL LOCATION MAP
1-2 PARCEL AND ZONE BOUNDARIES FOR ALAMEDA POINT
1-3 EAST HOUSING AREA ALAMEDA POINT

## ABBREVIATIONS AND ACRONYMS

| | |
|---|---|
| ACM | Asbestos-containing materials |
| AST | Aboveground storage tank |
| ARRA | Alameda Reuse and Redevelopment Authority |
| BCP | BRAC Cleanup Plan |
| BRAC | Base Realignment and Closure |
| CAS | Chemical Abstract Service |
| CERCLA | Comprehensive Environmental Response, Compensation, and Liability Act |
| CFR | Code of Federal Regulations |
| DBCRA | Defense Base Closure and Realignment Act of 1990 |
| DoD | Department of Defense |
| DTSC | Department of Toxic Substance Control |
| ECP | Environmental Condition of Property |
| EIS | Environmental Impact Statement |
| EPA | U.S. Environmental Protection Agency |
| FISCO | Fleet and Industrial Supply Center, Oakland |
| FOSET | Finding of Suitability for Early Transfer |
| FOST | Finding of Suitability to Transfer |
| IR | Installation Restoration |
| IT | International Technology Corporation |
| LBP | Lead-based paint |
| mg/kg | Milligrams per kilogram |
| NA | Not applicable |
| NAS | Naval Air Station |
| Navy | Department of the Navy |
| NEPA | National Environmental Policy Act |
| PAH | Polynuclear aromatic hydrocarbons |
| PCB | Polychlorinated biphenyl |
| ppm | Parts per million |
| PWC | Public Works Center |
| RCRA | Resource Conservation and Recovery Act |
| ROD | Record of Decision |
| TPH | Total petroleum hydrocarbons |
| TSCA | Toxic Substances Control Act |
| TtEMI | Tetra Tech EM Inc. |
| USFWS | U.S. Fish and Wildlife Service |
| USC | U. S. Code |
| UST | Underground storage tank |

## 1.0 PURPOSE

The purpose of this Finding of Suitability to Transfer (FOST) for the East Housing Area at former Naval Air Station (NAS) Alameda (located in Alameda, California), now known as Alameda Point (see Figure 1-1), is to document environmental findings regarding the real property made available through the Base Realignment and Closure process. The East Housing Area consists of Parcels 170 and 171, located east of Main Street (see Figure 1-2). The subject property consists of approximately 72.5 acres of onshore Alameda Point property and is environmentally suitable for transfer by deed under Section 120(h) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) (42 U.S. Code [USC] Section 9620[h]) to the Alameda Reuse and Redevelopment Authority (ARRA). The legal description of the property is provided in Appendix A.

This FOST addresses the suitability for transfer of property for the intended residential reuse, as described in the Alameda Point Community Reuse Plan (ARRA 1996). The reuse plan incorporates the use of existing facilities and housing areas and defines seven main planning areas, including the Civic Core, Main Street Neighborhoods, Inner Harbor, North Waterfront, Marina District, Northwest Territories, and the U.S. Fish and Wildlife Service Wildlife Refuge. The East Housing Area is part of the Main Street Neighborhoods planning area.

The Environmental Baseline Survey (EBS) (Tetra Tech EM Inc. 1997a, 1997b) process divided the former NAS Alameda into 208 individual parcels (see Figure 1-2). These parcels were additionally grouped into 23 zones based on geographic location and land use. This FOST addresses Parcels 170 and 171 in Zone 16 (see Figure 1-3). A site specific EBS performed for these parcels (IT, 2000) confirmed suitability for transfer. FOST(s) or Findings of Suitability for Early Transfer (FOSET) for remaining parcels will be developed at a later date. Public notices for the availability of this FOST were posted in the legal notice sections of the Alameda Times-Star (December 30, 1999), Alameda Journal (December 31, 1999), and the Oakland Tribune (December 30, 1999) and on the Internet. Copies of these public notices are provided in Appendix B. This FOST was prepared in accordance with the Department of Defense (DoD) Guidance Finding of Suitability to Transfer for Base Realignment and Closure (BRAC) Property (1994). References are provided at the end of the document.

## 2.0 PROPERTY DESCRIPTION

Alameda Point consists of about 2,675 acres of onshore and offshore property, including 1,115 acres of offshore property. The FOST area consists of approximately 72.5 acres of onshore Alameda Point property. The property comprising the FOST is currently owned by the Department of the Navy (Navy).

Currently 110 buildings, consisting of multi-family residences, are located in the FOST area. All buildings are vacant. Utilities, including storm water, sanitary sewer, drinking water, electrical, natural gas, and telecommunications lines, are present on Parcels 170 and 171. No fuel lines, aboveground storage tanks, underground storage tanks, oil-water separators, Resource Conservation and Recovery Act sites, or Installation Restoration (IR) sites are present in the East Housing area. Detailed descriptions of the parcels and buildings on the property are provided in the Zone Analysis Data for NAS Alameda (International Technology Corporation 1998a).

The Reuse Environmental Impact Report (Brady/LSA 1999) indicates that the existing buildings on the property will be demolished. The area will be redeveloped as a residential area. It will also include a 5-acre park, as well as neighborhood mini-parks.

## 3.0 REGULATORY COORDINATION

The State of California Environmental Protection Agency's Department of Toxic Substances Control (DTSC), the San Francisco Bay Regional Water Quality Control Board, and the U.S. Environmental Protection Agency (EPA), Region 9 were notified at the initiation of the FOST and were provided with workable draft documents as they became available during the FOST process to facilitate their consulting role in document development.

Regulatory comments received during FOST development were reviewed and incorporated, as appropriate. Unresolved regulatory agency comments are provided in Appendix E, along with the Navy's responses to these comments.

## 4.0 NATIONAL ENVIRONMENTAL POLICY ACT COMPLIANCE

The environmental impact statement (EIS) for transfer of former NAS Alameda, dated February 29, 2000 (Navy 2000a), evaluated potential impacts to the environment that may result from Navy disposal of former NAS Alameda and the Fleet and Industrial Supply Center Oakland (FISCO) Alameda Annex/Alameda Facility in Alameda, California. Former NAS Alameda (closed in April 1997) and the FISCO Alameda Annex/Alameda Facility (closed in September 1998) were closed pursuant to the 1990 Defense Base Closure and Realignment Act (DBCRA), Part A of Title XXIX of Public Law 101-510, codified, as amended, at 10 USC §2687 (commonly referred to as "DBCRA 1990").

The EIS was prepared in accordance with the National Environmental Policy Act (NEPA) of 1969, as amended, 42 USC §4321, and the following sections: the Council on Environmental Quality implementing regulations, 40 Code of Federal Regulations (CFR) Part 1500 and subsequent sections, and Navy guidelines (Chief of Naval Operations Instruction 5090.1B CH-1 1998; DBCRA 1990).

The NEPA federal action evaluated in the EIS is the disposal of federal property. The EIS addresses environmental effects of disposal of both the former NAS Alameda and FISCO Alameda Annex/Alameda facilities, because these adjacent Navy facilities closed within the same general timeframe, both are located in the City of Alameda, and both were covered in the ARRA community planning effort.

The Navy issued a NEPA Record of Decision on February 29, 2000 (Navy 2000b), stating its decision regarding disposal of federal property at Alameda Point and FISCO Alameda Annex and Facility, which completed the NEPA process.

## 5.0 ENVIRONMENTAL CONDITION OF PROPERTY

Each Alameda Point parcel was classified into an area type, in accordance with the 1993 DoD document entitled, Standard Classification of Environmental Condition of Property Area Types and the 1996 DoD document containing the revised Environmental Condition of Property (ECP) area types (Addendum to the Base Realignment and Closure Cleanup Plan Guidebook). Classification of parcels into ECP area types is an iterative process that continues until sufficient information is developed to transfer all parcels to the local reuse authority. Parcels in ECP Area Types 1 through 4 are suitable to transfer. In addition, parcels classified as ECP Area Type 5 or 6 may be transferred pursuant to a FOSET. Definitions of ECP area types are provided in Table 1.

Parcels 170 and 171 are considered to be ECP Area Type 4. Both parcels are located in an area where the Marsh Crust is known to be present (see discussion of Marsh Crust in Section 5.1). The presence of the Marsh Crust requires permanent institutional controls. The required institutional controls are described in the Action Memorandum (AM) for the Marsh Crust area developed by the Navy (Navy 2000c). The public comment period for the AM started on February 18, 2000 and ended March 20, 2000. The AM was signed and finalized on April 07, 2000. The AM serves as the decision document under CERCLA.

The selected removal action is to protect the public health and environment with institutional controls preventing contact by the public with the buried marsh crust. The AM selected a layering strategy for imposing institutional controls on the Marsh Crust. The City of Alameda has enacted a new Section 13-56 to amend Article XVII of Chapter X-III of the Alameda Municipal Code to provide for the regulation of "Marsh Crust/Subtidal Zone at the former Naval Air Station Alameda and Fleet Industrial Supply Center, Alameda Annex, and Facility" (City of Alameda Ordinance No. 2824, New Series) hereinafter referred to as the "Marsh Crust Ordinance." The Ordinance prohibits excavation below a threshold depth above the marsh crust/subtidal zone within the area of the former Naval Air Station Alameda and Fleet Industrial Supply Center, Alameda Annex, and Facility without obtaining a permit in writing from the Chief Building Official. It further provides that all excavation below the threshold depth in the subject area shall be performed solely in accordance with the permit, as approved and issued by the City.

The Marsh Crust is also addressed in a Covenant to Restrict Use of Property (Environmental Restrictions) under the authority of Civil Code 1471 between the City and DTSC. This covenant prohibits certain activities relating to the excavation into the Marsh Crust. Excavation below the threshold depth without a City permit is prohibited, and DTSC is authorized to review and approve or prohibit excavation if it determines that the ordinance is not protective. The covenant creates an enforceable obligation that runs with the land and binds the City and future transferees to abide by the ordinance.

A third tier to institutional control layering is the inclusion of a deed restriction in the Quitclaim Deed between the Navy and City. This deed restriction requires that the City (Grantee) covenant that it comply with the Marsh Crust Ordinance and that it will not excavate below the threshold depth without DTSC approval. This restriction creates an enforceable obligation that runs with the land and binds the City and future transferees to abide by the ordinance in a similar manner to the DTSC/City agreement.

The three-layer institutional controls shall ensure that the public health and environment are adequately protected from exposure to the contaminants found within the Marsh Crust. There is, therefore, no need