ORIGINAL

# The Oakland Tribune

c/o ANG Newspapers
Tribune Tower, 401 13th Street, Oakland, CA 94612
Legal Advertising
(510) 208-6340

Legal No. 1728950

PUBLIC NOTICE PUBLIC NOTICE

PUBLIC NOTICE

NAVY DRAFT ACTION MEMORANDUM FOR FINDING OF SUITABILITY FOR TRANSFER
THE ALAMEDA POINT EAST HOUSING AREA
ALAMEDA POINT
ALAMEDA, CALIFORNIA

The Department of the Navy (Navy) has prepared a draft action memorandum (AM) as the decision document addressing the marsh crust issue prior to the transfer of the Alameda Point East Housing Area (East Housing Area) to the City of Alameda. The draft AM has been made available for public review and comment at Alameda Public Library, 2200 Central Avenue, Alameda, California, (510) 748-4660; and Alameda Point Information Repository, 950 W. Mall Square, Main Office Building (Building 1), Alameda Point, Alameda, California.

The marsh crust is a petroleum-contaminated soil horizon between former marsh deposits and the overlying fill material used to construct the former naval air station. The East Housing Area consists of Parcels 170 and 171 (72.5 acres of onshore property) located in the eastern portion of Alameda Point, California. The East Housing Area is currently owned by the Navy and will be transferred to the City of Alameda for residential land use. One hundred-thirteen buildings, consisting of multi-family residences, are currently located in the East Housing Area. In accordance with Department of Defense guidance on the process to reach a Finding of Suitability to Transfer (FOST), notice is hereby given that a draft AM has been prepared by the Navy, in connection with the transfer of the Housing Area.

The purpose of this draft AM is to document, for the Administrative Record, the Navy's and Department of Toxic Substances Control's (DTSC) decision to undertake a Time-Critical Removal Action for the marsh crust at the East Housing Area, which is located on the eastern edge of Alameda Point in the city of Alameda, Alameda County, California. The Department of Defense, including the Navy, has the authority to undertake Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) response actions, including removal actions, under 42 U.S.C Section 9604, 10 U.S.C. Section 2705, and federal Executive Order 12580. Further, this removal action is consistent, to the maximum extent possible, with Chapter 6.8 of the California Health and Safety Code.

This draft AM has been prepared in accordance with the applicable requirements of the California Health and Safety Code, CERCLA, 42 U.S.C. Section 9601 and following sections, and the National Oil and Hazardous Substances Pollution Contingency Plan (40 CFR Part 300).

This draft AM addresses removal action alternatives that were evaluated in support of the removal action selection determination. The document is consistent with the Navy's *Draft Removal Action Feasibility Study for the Marsh Crust and Groundwater at Fleet Industrial Supply Center Oakland, Alameda Facility/Alameda Annex and Feasibility Study for the Marsh Crust and Former Subtidal Area at Alameda Point* (Draft Final FS) (Tetra Tech EM Inc., 6 January 2000), which is currently in the process of being finalized.

This draft AM was developed to present and evaluate the following:

- East Housing Area conditions and results of historical soil and groundwater investigation activities
- Remedial action objectives developed for media and area-specific protection of human health and the environment
- Removal action alternatives for the East Housing Area
- Recommendations for removal actions and associated monitoring and reporting that are consistent with the terms of the Draft Final FS in ensuring protection of human health and the environment.

The decision to transfer the East Housing Area property was made after a comprehensive review of the environmental conditions of the property and in consultation with the DTSC and the U.S. Environmental Protection Agency, Region IX. The East Housing Area will be transferred after the determination that: (1) the property is suitable for future residential use; (2) the intended use is consistent with the protection of human health and the environment; and (3) the public has had at least 30 days to comment on the suitability of the property for transfer.

Alameda Point, formerly Naval Air Station Alameda, was primarily used as a defense facility since the U.S. Army acquired the western tip of Alameda Island from the City of Alameda in 1930. The Navy acquired title to the land from the Army in 1936. The Navy Public Works Center and Naval Aviation Depot Alameda were the two largest tenants at the facility. Industrial activities at the facility included the use of solvents, acids, paint strippers, degreasers, caustic cleaners, and metal plating chemicals. However, industrial activities have never occurred at the East Housing Area. The property has only been used as residential housing and is located outside of the industrial zone of the former naval air station. The East Housing Area is discussed in more detail in the Draft FOST.

The public is invited to review the draft AM and comment on this proposed decision document beginning on **February 18, 2000**. The Navy will consider written comment received by March 20, 2000. The Navy will issue the AM in final form after the close of the public comments period on March 20, 2000. The public is also invited to review the administrative record for Alameda Point during this comment period. For more information, or to send written comments, please contact Ms. Ann Klimek at the address and phone number below:

**For additional information contact:**

Ms. Ann Klimek
Alameda and Treasure Island Business Line Team Leader
Naval Facilities Engineering Command
Engineering Field Division Southwest
1230 Columbia Street, Suite 1100
San Diego, CA 92132
Phone: 619-532-0987
Fax: 619-532-0983

E-mail: KlimekA@efdsw.navfac.navy.mil

**Copies of the AM and supporting documents may be read at the following locations:**

Alameda Public Library
2200 Central Avenue
Alameda, California
(510) 748-4660

Alameda Point Information Repository
950 W. Mall Square
Main Office Building (Building 1)
Alameda Point
Alameda, California

The Oakland Tribune, #1728950
February 18, 2000

# PROOF OF PUBLICATION

Alameda Point

In the matter of:

**The Alameda Point East Housing Area, Alameda Point, Alameda, CA**

The undersigned below, deposes and says that he/she was the public Notice Advertising Clerk of the OAKLAND TRIBUNE a newspaper of general circulation as defined by Government Code Section 6000 adjucated as such by the Superior Court of the State of California, County of Alameda (Order Nos. 237798, December 4, 1951) which is published and circulated in Oakland Township in said county and state seven days a week.

That the

**Public Notice**

of which the annexed is a printed copy, was published in every issue of the OAKLAND TRIBUNE, on the following dates:

**February 18, 2000**

I certify (or declare) under the penalty of perjury that the foregoing is true and correct.

Samantha Allen-Wise
Public Notice Advertising Clerk
February 18, 2000

**Alameda Times-Star**

c/o ANG Newspapers
Tribune Tower, 401 13th Street, Oakland, CA 94612
Legal Advertising
(510) 208-6340

Legal No. **1729028**

PUBLIC NOTICE PUBLIC NOTICE

**PUBLIC NOTICE**

**NAVY DRAFT ACTION MEMORANDUM FOR FINDING OF SUITABILITY FOR TRANSFER
THE ALAMEDA POINT EAST HOUSING AREA
ALAMEDA POINT
ALAMEDA, CALIFORNIA**

The Department of the Navy (Navy) has prepared a draft action memorandum (AM) as the decision document addressing the marsh crust issue prior to the transfer of the Alameda Point East Housing Area (East Housing Area) to the City of Alameda. The draft AM has been made available for public review and comment at Alameda Public Library, 2200 Central Avenue, Alameda, California, (510) 748-4660; and Alameda Point Information Repository, 950 W. Mall Square, Main Office Building (Building 1), Alameda Point, Alameda, California.

The marsh crust is a petroleum-contaminated soil horizon between former marsh deposits and the overlying fill material used to construct the former naval air station. The East Housing Area consists of Parcels 170 and 171 (72.5 acres of onshore property) located in the eastern portion of Alameda Point, California. The East Housing Area is currently owned by the Navy and will be transferred to the City of Alameda for residential land use. One hundred-thirteen buildings, consisting of multi-family residences, are currently located in the East Housing Area. In accordance with Department of Defense guidance on the process to reach a Finding of Suitability to Transfer (FOST), notice is hereby given that a draft AM has been prepared by the Navy, in connection with the transfer of the Housing Area.

The purpose of this draft AM is to document, for the Administrative Record, the Navy's and Department of Toxic Substances Control's (DTSC) decision to undertake a Time-Critical Removal Action for the marsh crust at the East Housing Area, which is located on the eastern edge of Alameda Point in the city of Alameda, Alameda County, California. The Department of Defense, including the Navy, has the authority to undertake Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) response actions, including removal actions, under 42 U.S.C Section 9604, 10 U.S.C. Section 2705, and federal Executive Order 12580. Further, this removal action is consistent, to the maximum extent possible, with Chapter 6.8 of the California Health and Safety Code.

This draft AM has been prepared in accordance with the applicable requirements of the California Health and Safety Code, CERCLA, 42 U.S.C. Section 9601 and following sections, and the National Oil and Hazardous Substances Pollution Contingency Plan (40 CFR Part 300).

·is draft AM addresses removal action alternatives that were evaluated in support of the ·oval action selection determination. The document is consistent with the *Navy's Draft ·al Feasibility Study for the Marsh Crust and Groundwater at Fleet Industrial Supply ·enter Oakland, Alameda Facility/Alameda Annex and Feasibility Study for the Marsh Crust and Former Subtidal Area at Alameda Point* (Draft Final FS) (Tetra Tech EM Inc., 6 January 2000), which is currently in the process of being finalized.

This draft AM was developed to present and evaluate the following:

- East Housing Area conditions and results of historical soil and groundwater investigatio· activities
- Remedial action objectives developed for media and area-specific protection of huma· health and the environment
- Removal action alternatives for the East Housing Area
- Recommendations for removal actions and associated monitoring and reporting that ar· consistent with the terms of the Draft Final FS in ensuring protection of human health an· the environment.

The decision to transfer the East Housing Area property was made after a comprehensive review of the environmental conditions of the property and in consultation with the DTSC and the U.S. Environmental Protection Agency, Region IX. The East Housing Area will be transferred after the determination that: (1) the property is suitable for future residential use; (2) the intended use is consistent with the protection of human health and the environment; and (3) the public has had at least 30 days to comment on the suitability of the property for transfer.

Alameda Point, formerly Naval Air Station Alameda, was primarily used as a defense facility since the U.S. Army acquired the western tip of Alameda Island from the City of Alameda in 1930. The Navy acquired title to the land from the Army in 1936. The Navy Public Works Center and Naval Aviation Depot Alameda were the two largest tenants at the facility. Industrial activities at the facility included the use of solvents, acids, paint strippers, degreasers, caustic cleaners, and metal plating chemicals. However, industrial activities have never occurred at the East Housing Area. The property has only been used as residential housing and is located outside of the industrial zone of the former naval air station. The East Housing Area is discussed in more detail in the Draft FOST.

The public is invited to review the draft AM and comment on this proposed decision document beginning on February 18, 2000. The Navy will consider written comments received by March 20, 2000. The Navy will issue the AM in final form after the close of the public comment period on March 20, 2000. The public is also invited to review the administrative record for Alameda Point during this comment period. For more information, or to send written comments, please contact Ms. Ann Klimek at the address and phone number below:

**For additional information contact:**

Ms. Ann Klimek
Alameda and Treasure Island Business Line Team Leader
Naval Facilities Engineering Command
Engineering Field Division Southwest
1230 Columbia Street, Suite 1100
San Diego, CA 92132
Phone: 619-532-0987
Fax: 619-532-0983
·-mail: KlimekA@efdsw.navfac.navy.mil

**Copies of the AM and supporting documents may be read at the following locations:**

Alameda Public Library
2200 Central Avenue
Alameda, California
(510) 748-4660

Alameda Point Information Repository
950 W. Mall Square
Main Office Building (Building 1)
Alameda Point
Alameda, California

Alameda Times-Star, #1729028
February 18, 2000

# PROOF OF PUBLICATION

Alameda Point

In the matter of

**The Alameda Point East Housing Area, Alameda Point, Alameda, CA**

The undersigned below, deposes and says that he/she was the pub Notice Advertising Clerk of the ALAMEDA TIMES-STAR a newspa general circulation as defined by Government Code Section 6000 adjudicated as such by the Superior Court of the State of Califo County of Alameda (Case No. 236092 September 17, 1951) which i published and circulated in said county and state seven days a wee That the

**Public Notice**

of which the annexed is a printed copy, was published in every issu the ALAMEDA TIMES-STAR, on the following dates:

**February 18, 2000**

I certify (or declare) under the penalty of perjury that the foregoing is and correct.

Samantha Allen-Wise
Public Notice Advertising Clerk
February 18, 2000

# Exhibit 1

# Attachment C

*Appendix C*

# APPENDIX C

## EXCAVATION ORDINANCE FOR THE MARSH CRUST AREA

(Eleven Pages)

CITY OF ALAMEDA ORDINANCE NO.2824
New Series

AMENDING THE ALAMEDA MUNICIPAL CODE BY AMENDING CHAPTER XIII (BUILDING AND HOUSING) BY ADDING A NEW SECTION 13-56 (EXCAVATION INTO THE MARSH CRUST/SUBTIDAL ZONE AT THE FORMER NAVAL AIR STATION ALAMEDA AND FLEET INDUSTRIAL SUPPLY CENTER, ALAMEDA ANNEX AND FACILITY) TO ARTICLE XVII (PITS, WELLS AND EXCAVATIONS)

WHEREAS, the marshlands and near shore areas once located adjacent to the island of Alameda were filled with dredge material between approximately 1900 and 1940; and

WHEREAS, the marsh crust, and the subtidal zone extending from it, is a horizon that is identifiable in the subsurface (the interface at the bottom of the fill material) which contains remnants of grasses and other intertidal and subtidal features; and

WHEREAS, the marsh crust/subtidal zone also contains, at least locally, elevated levels of petroleum-related substances, such as semi-volatile organic compounds, which substances may pose an unacceptable risk to human health and the environment if excavated in marsh crust/subtidal zone materials, brought to the ground surface and handled in an uncontrolled manner; and

WHEREAS, proper handling, storage and disposal of materials excavated from the marsh crust/subtidal zone, pursuant to state and federal hazardous materials laws, will help eliminate unacceptable exposures and risks to human health and the environment; and

CITY ATTORNEY

WHEREAS, the Draft Base-wide Focused Feasibility Study for the Former Subtidal Area and Marsh Crust and Ground Water (U.S. Navy, February 20, 1999) recommends implementation by the City of an institutional control, such as an excavation ordinance, as a remedial action related to the cleanup by the United States Navy of Naval Air Station Alameda and the Fleet Industrial Supply Center, Alameda Annex and Facility, which closed military installations are anticipated to be transferred to the City; and

WHEREAS, it can be seen with a certainty that adoption of a permitting program by the City that requires proper handling, storage and disposal, pursuant to existing state and federal hazardous materials laws, of materials excavated from the marsh crust/subtidal zone will not involve or require any physical activities other than optional testing of excavated materials and, therefore, is exempt from the California Environmental Quality Act pursuant to California Code of Regulations, title 14, section 15061(b)(3) because there is no possibility that the enactment of the ordinance may have a significant effect on the environment.

NOW, THEREFORE, BE IT ORDAINED by the Council of the City of Alameda that:

Section 1. The Alameda Municipal Code is hereby amended by adding a new Section 13-56 (Excavation Into the Marsh Crust/Subtidal Zone at the Former Naval Air Station Alameda and Fleet Industrial Supply Center) to Article XVII (Pits, Wells and Excavations) of Chapter XIII (Building and Housing) thereof to read:

**13-56 EXCAVATION INTO THE MARSH CRUST/SUBTIDAL ZONE AT THE FORMER NAVAL AIR STATION ALAMEDA AND FLEET INDUSTRIAL SUPPLY CENTER, ALAMEDA ANNEX AND FACILITY.**

**13-56.1 DEFINITIONS.**

For purposes of this Section 13-56 the following definitions shall apply:

*Bay* shall mean San Francisco Bay, including the Oakland Estuary and the Oakland Inner Harbor.

*DTSC* shall mean the California Environmental Protection Agency, Department of Toxic Substances Control.

*Earth material* shall mean any rock, natural soil or fill or any combination thereof.

*Excavation* shall mean the mechanical removal of earth material.

*Hazardous materials*, as defined in California Health and Safety Code sections 25260(d) and 25501(k), shall mean any material that, because of its quantity, concentration, or physical or chemical characteristics, poses a significant or potential hazard to human health and safety, or to the environment. Hazardous materials include, but are not limited to, hazardous substances, hazardous waste and any material which a handler or the administering agency has reasonable basis for believing would be injurious to the health and safety of persons or harmful to the environment if released into the workplace or the environment.

*Marsh crust* shall mean the underground layer that is the remnant of the tidal marsh that existed along the shoreline of Alameda Island before filling to create additional dry land. In many places, this layer contains substances from former industrial discharges that were retained in the historic marsh before filling.

*Subtidal zone* shall mean the underground layer that is the pre-filling Bay floor extension of the historic marsh. Together, the marsh crust and the subtidal zone constitute a single, continuous, underground layer that extends Bayward of the original mean higher high tide line of Alameda Island, before filling, throughout the area that was filled.

*Threshold depth* shall mean the depth below which a permit is required by this Section 13-56. The threshold depth is conservatively identified with the elevation above which there is little likelihood that substances from the historic marsh or Bay floor would have mixed during filling, including a margin of safety above the elevation of the historic marsh surface or subtidal zone. In no event will the threshold depth be above mean higher high water.

**13-56.2 Permit Required.**

a. It shall be unlawful for any person, including utility companies and their employees and contractors, to excavate below a threshold depth above the marsh crust/subtidal zone within the area of the former Naval Air Station Alameda and Fleet and Industrial Supply Center, Alameda Annex and Facility, as depicted in Exhibit A, hereto, without first obtaining a permit in writing from the Chief Building Official.

b. All excavation below the threshold depth in the area subject to this Section 13-56 shall be performed solely in accordance with the permit as approved and issued by the City.

**13-56.3 Depth of Excavation Subject to Permit Requirement.**

The Chief Building Official shall establish a threshold depth, consistent with DTSC's remedial decision documents pertaining to the marsh crust/subtidal zone, below which a permit shall be required for excavation pursuant to this Section 13-56. The threshold depth may vary by location. The Chief Building Official shall publish a map depicting the parcels and threshold depths for which a permit is required under this Section 13-56. The Chief Building Official may update the map, consistent with DTSC's remedial decision documents pertaining to the marsh crust/subtidal zone, as necessary to incorporate any new information concerning the depth of the marsh crust/subtidal zone received by the City since the preparation of the initial map or last update.

**13-56.4 Exception to Permit Requirement.**

a. No permit shall be required under this Section 13-56 for pile driving or other penetration of the marsh crust/subtidal zone that involves neither (i) bringing materials from below the threshold depth to above the threshold depth; nor (ii) exposure of construction workers to soil excavated from below the threshold depth.

b. No permit shall be required under this Section 13-56 for excavation associated with emergency repair of public infrastructure facilities; provided, however, that soil excavated from below the threshold depth in the area of the marsh crust/subtidal zone, as depicted on Exhibit A, must be managed as though it were hazardous in accordance with Subsection 13-56.8b.

**13-56.5 Permit Application.**

Application for a permit shall be made in writing on forms available in or from the Building Services Office and shall be filed in the Building Services Office. Subsection 13-1.2 of Article I of Chapter XXIII regarding Appeals (Section 105.1), Appeal Fee (Section 105.2), Expiration (Section 106.4.4), Permit Fees (Section 107.2) and Plan Review Fees (Section 107.3) shall apply to all permits issued pursuant to this Section 13-56. The information required to be provided on the application shall be determined by the Chief Building Official and shall include at a minimum:

a. A description and map of the property that is to be excavated sufficient to locate the area of proposed excavation on Exhibit A.

b Detailed plans, prepared by a registered civil engineer licensed in the State of California, of the excavation work to be done, including a drawing with dimensions to scale of all proposed excavation activity.

c. A statement of the maximum depth of excavation.

d. All elevations in plans and application materials submitted to the City shall be referenced to City Datum and shall show depth below ground surface.

e. A cost estimate for purposes of determining the amount of the bond required to be obtained pursuant to Subsection 13-56.11.

**13-56.6 Certifications and Acknowledgments.**

a. The following certifications shall be required as part of the permit application:

1. The applicant shall sign a certification prepared by the Chief Building Official acknowledging receipt of notice that the property to be excavated may be in the area of the marsh crust/subtidal zone, and that hazardous materials may be encountered during excavation.

2. The applicant shall sign a certification prepared by the Chief Building Official acknowledging that federal and state hazardous materials laws and regulations will apply to storage, transportation and disposal of any materials excavated from the marsh crust/subtidal zone that are hazardous materials.

3. The applicant shall sign a certification prepared by the Chief Building Official acknowledging liability for disturbing and removing all materials from the marsh crust/subtidal zone in accordance with this Section 13-56 and the permit.

b. All building and excavation permits issued for construction or excavation within the area subject to this SubSection 13-56 shall contain the following written warning:

"Pursuant to Section 13-56 of Article XVII of Chapter XIII of the Alameda Municipal Code, excavation work in the area of the marsh crust/subtidal zone within the area of the former Naval Air Station Alameda and Fleet and Industrial Supply Center, Alameda Annex and Facility, as depicted in Exhibit A to Section 13-56 of Article XVII of Chapter XIII of the Alameda Municipal Code, may be subject to special materials handling requirements. The permittee acknowledges that he or she has been informed of the special materials handling requirements of Section 13-56 of Article XVII of Chapter XIII of the Alameda Municipal Code and that hazardous materials may be encountered during excavation."

**13-56.7 Notification Prior to Start of Excavation.**

a. After receipt of a permit and no less than two (2) business days (forty-eight (48) hours minimum) before commencement of any excavation activity in the area subject to this Section 13-56, the permittee shall notify the Chief Building Official of the planned start of excavation. Said notification shall include a schedule for any excavation work that will last for more than one day.

b. The permittee shall give adequate notice to Underground Service Alert prior to commencing any excavation activity subject to this Section 13-56.

**13-56.8 Materials Handling.**

The permittee shall elect to follow one or more of the courses of action set forth below before beginning any excavation activities in the area subject to this Section 13-56. Unless otherwise demonstrated by the permittee by means of reconnaissance investigation pursuant to Subsection 13-56.8a, or unless the permittee prepares site management plans pursuant to Subsection 13-56.8c, soil below the threshold depth in the area of the marsh crust/subtidal zone, as depicted on Exhibit A, must be managed as though it were hazardous pursuant to Subsection 13-56.8b. The permittee may elect to follow Subsection 13-56.8a, but must comply with Subsection 13-56.8b or 13-56.8c if testing demonstrates that the materials below the threshold depth are hazardous materials. Copies of all reconnaissance testing results and/or existing information used to satisfy the reconnaissance investigation requirements of Subsection 13-56.8a shall be reported to and filed with the City. All observations or encounters with the marsh crust/subtidal zone during excavation shall be reported to the City.

**a. Reconnaissance Investigation to Rule Out the Presence of Hazardous Materials Below the Threshold Depth.**

The permittee may elect to use reconnaissance borings, pursuant to a plan prepared by a qualified registered engineer or registered geologist, licensed in the State of California, to rule out, to the satisfaction of the Chief Building Official, the presence of hazardous materials below the threshold depth in the area to be excavated. As part or all of the reconnaissance plan, the permittee may make use of existing information, where appropriate, if the existing information is directly relevant to the location and depth to be excavated and contains observations or results of analyses that assist in concluding whether hazardous materials are present. The reconnaissance report shall include a description of all observations from below the threshold depth evidencing the presence or absence of the marsh crust/subtidal zone.

1. If hazardous materials are found below the threshold depth within the area to be excavated at any time (during reconnaissance or during excavation), the permittee shall comply with either Subsection 13-56.8b or Subsection 13-56.8c, at his or her election.

2. If hazardous materials are not found below the threshold depth within the area to be excavated, no additional materials controls, except as otherwise may be required under applicable federal, state or local law, are required under this Section 13-56.

b. **Handling Materials Excavated From Below the Threshold Depth as Hazardous Materials.**

If the permittee has not ruled out the presence of hazardous materials pursuant to Subsection 13-56.8a, or elects not to prepare a site management plan and materials testing program pursuant to Subsection 13-56.8c, the permittee shall presume that materials excavated from below the threshold depth must be disposed at an appropriately permitted disposal facility. In addition, no excavated materials from below the threshold depth may be stockpiled prior to disposal or returned to the excavation.

c. **Preparation of Construction Site Management Plan for Handling Materials Excavated From Below the Threshold Depth.**

1. In lieu of handling materials excavated from below the threshold depth pursuant to the restrictions in Subsection 13-56.8b, the permittee may elect to hire a qualified registered engineer or registered geologist, licensed in the State of California, to develop a site-specific construction site management plan, including a materials testing program, to the satisfaction of the Chief Building Official. The construction site management plan shall include, at a minimum, provisions governing control of precipitation run on and run off from stockpiled soils, soil segregation, securing of stockpiled soils, duration of stockpiling, and contingency plans for handling materials excavated from below the threshold depth that prove to be hazardous materials.

2. The permittee shall hire a qualified registered engineer or registered geologist, licensed in the State of California, to oversee compliance with the approved construction site management plan, and shall transmit to the Chief Building Official upon completion of the project written certification of compliance with the construction site management plan. The certification report shall include a description of all observations from below the threshold depth evidencing the presence or absence of the marsh crust/subtidal zone.

**13-56.9 Health and Safety Plan.**

The applicant shall cause to be prepared by a certified industrial hygienist, and keep on the construction site at all times, a health and safety plan to protect workers at the excavation site and the general public to the satisfaction of the Chief Building Official. The Chief Building Official may prepare and provide to applicants a model health and safety plan which, if used by the applicant, shall be modified by the applicant's certified industrial hygienist to suit the specific requirements of the applicant's project.

**13-56.10 Excavation Site Best Management Practices.**

All excavation and materials handling activities permitted under this Section 13-56 shall be conducted in accordance with applicable Alameda Countywide Clean Water Program Best Management Practices and City of Alameda Storm Water Management and Discharge Control Program Ordinance requirements.

**13-56.11 Bonds.**

Upon a finding by the Chief Building Official that a permit should issue for excavation pursuant to this Section 13-56, a surety or performance bond conditioned upon the faithful performance and completion of the permitted excavation activity shall be filed with the City. Such bond shall be executed in favor of the City and shall be maintained in such form and amounts prescribed by the Risk Manager sufficient to ensure that the work, if not completed in accordance with the approved plans and specifications, will be corrected to eliminate hazardous conditions.

**13-56.12 Nonassumption of Liability.**

In undertaking to require applicants for certain excavation permits to comply with the requirements of this Section 13-56, the City of Alameda is assuming an undertaking only to promote the general welfare. The City is not assuming, nor is it imposing on itself or on its officers and employees, an obligation for breach of which it is liable in money damages to any person who claims that such breach proximately caused injury.

**13-56.13 Construction on City Property.**

a. The Chief Building Official shall prepare standard work procedures that comply with all the requirements of this Section 13-56 for all City

construction or improvement activities involving excavation below the threshold depth in the area subject to this Section 13-56. All departments, boards, commissions, bureaus and agencies of the City of Alameda that conduct construction or improvements on land under their jurisdiction involving excavation below the threshold depth in the area subject to this Section 13-56 shall follow such standard work procedures.

b. The City shall include in all contracts involving excavation below the threshold depth in the area subject to this Section 13-56 a provision requiring City contractors to comply with all the requirements of this Section 13-56. All contracts entered into by departments, boards, commissions, bureaus and agencies of the City of Alameda that authorize construction or improvements on land under their jurisdiction involving excavation below the threshold depth in the area subject to this Section 13-56 also shall contain such standard contract provision.

**13-56.14 Severability.**

If any section, subsection, subdivision, paragraph, sentence, clause or phrase of this Section 13-56 or any part thereof is for any reason held to be unconstitutional or invalid or ineffective by any court of competent jurisdiction, such decision shall not affect the validity or effectiveness of the remaining portions of this Section 13-56 or any part thereof. The City Council hereby declares that it would have passed each section, subsection, subdivision, paragraph, sentence, clause or phrase of this Section 13-56 irrespective of the fact that one or more sections, subsections, subdivisions, paragraphs, sentences, clauses or phrases be declared unconstitutional or invalid or effective.

**13-56.15 Permit Fee.**

No permits for excavation in the marsh crust/subtidal zone shall be issued unless a fee has been paid. The fee shall be set by City Council resolution.

**13-56.16 Penalties.**

a. Any person, including utility companies and their employees and contractors, violating any of the provisions of this Section 13-56 shall be deemed guilty of a misdemeanor, and each person shall be deemed guilty of a separate offense for each and every day or portion thereof during which any violation of any of the provisions of this Section 13-56 is committed, continued or permitted, and such violation may be prosecuted and punished as an infraction or misdemeanor pursuant to the provisions of Section 1-5.1 of the Alameda Municipal Code .

b. Any person, including utility companies and their employees and contractors, that commences any excavation without first obtaining the necessary permits therefor shall, if subsequently allowed to obtain a permit, pay an amount, in

addition to the ordinary permit fee required, quadruple the permit fee otherwise required.

**13-56.17 Retention and Availability of Permit Files**

The City shall maintain files pertaining to all permits issued under this Section 13-56, and shall make such files available to DTSC for inspection upon request during normal business hours.

**13-56.18 Amendment of Section 13-56**

This Section 13-56 shall not be repealed or amended without thirty (30) days prior written notice to the DTSC Deputy Director for Site Mitigation.

Section 2. This Ordinance shall be in full force and effect from and after the expiration of thirty (30) days from the date of its final passage.

Presiding Officer of the City Council

Attest:

City Clerk

* * * * * *


Oakland Inner Harbor
Marsh Crust / Subtidal Area
LEGEND:
Marsh Crust / Subtidal Area

I, the undersigned, hereby certify that the foregoing Ordinance was duly and regularly adopted and passed by the Council of the City of Alameda in regular meeting assembled on the 15th day of February, 2000, by the following vote to wit:

| | |
|---|---|
| AYES: | Councilmembers Daysog, DeWitt, Johnson, Kerr and Mayor Appezzato - 5. |
| NOES: | None. |
| ABSENT: | None. |
| ABSTENTIONS: | None. |

IN WITNESS, WHEREOF, I have hereunto set my hand and affixed the official seal of said City this 16th day of February, 2000.

Diane Felsch, City Clerk
City of Alameda

# Exhibit 1

# Attachment C

*Appendix D*

# APPENDIX D

## SAMPLE FORM FOR TRANSFER OF RESIDENTIAL DWELLING

**(One Page)**

# SAMPLE FORM FOR TRANSFER OF RESIDENTIAL DWELLINGS

## Disclosure of Information on Lead-based Paint and Lead-based Paint Hazards

**Lead Warning Statement**

*Every purchaser of any interest in residential real property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The seller of any interest in residential real property is required to provide the buyer with any information on lead-based paint hazards from risk assessments or inspections in the seller's possession and notify the buyer of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommend prior to purchase.*

**Navy Disclosure**

(a) Presence of lead-based paint or lead-based paint hazards (check one below):

(i)______ Known lead-based paint or lead-based paint hazards are present in the housing (explain).
______________________________________________________________

(ii)______ The Navy has no knowledge of lead-based paint or lead-based paint hazards in the housing.

(b) Records and reports available to the purchaser (check one below):

(i)______ The Navy has provided the purchaser with all available records and reports pertaining to lead-based paint or lead-based paint hazards in the housing (list all documents below).
(1) ______________________________________________________________
(2) ______________________________________________________________

(ii)______ Navy has no reports or records pertaining to lead-based paint or lead-based paint hazards in the housing.

**Purchaser's Acknowledgment** (initial)

(c)______ Purchaser has received copies of all information listed above.
(d)______ Purchaser has received the pamphlet *Protect Your Family from Lead in Your Home.*
(e)______ Purchaser has (check [I] or [ii] below):
(i)______ received a 10-day opportunity (or mutually agreed-upon period) to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards or
(ii)______ waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint or lead-based paint hazards.

**Certification of Accuracy**
The following parties have reviewed the information above and certify, to the best of their knowledge, that the information they have provided is true and accurate.

______________________________ ______________________________
Navy Representative Date Purchaser Date

# Exhibit 1

# Attachment C

*Appendix E*

# APPENDIX E

## RESPONSE TO COMMENTS ON THE EAST HOUSING FOST

(One Page)

# RESPONSE TO COMMENTS FOR THE EAST HOUSING FOST
# ALAMEDA POINT, ALAMEDA, CALIFORNIA

| REF | COMMENT | RESPONSE |
|---|---|---|
| **DTSC, MARY ROSE CASSA, R.G., ENGINEERING GEOLIGIST** | | |
| 1 | The required institutional controls are also described in a Draft Removal Action Workplan prepared by DTSC which will begin public comment on March 21, 2000. This decision document should be referenced in the Final FOST. DTSC views the land use covenant to restrict excavation into the Marsh Crust as the primary institutional control. The covenant will prohibit engaging in excavation below a threshold depth that is not performed in accordance with a permit approved and issued pursuant to the City of Alameda excavation ordinance. If the excavation ordinance is repealed, DTSC approval will be required for all excavation. The covenant will be executed by the City of Alameda and DTSC and shall be recorded by the City of Alameda. | The Navy has completed an Action Memorandum as the decision document. This document cites the land use covenant that was adopted to restrict excavation into the Marsh Crust as the primary institutional control. We agree that the covenant will prohibit engaging in excavation below a threshold depth that is not performed in accordance with a permit approved and issued pursuant to the City of Alameda excavation ordinance. |
| 2 | DTSC has advised the Navy that an elevated concentration of benzo(a)pyrene was reported in a confirmation surface soil sample from East Housing. This issue must be resolved before property transfer. | Apparently, only one sample result exceeded the benzo(a)pyrene acceptable risk range presented in the DTSC Draft RAW. Catellus Development Corporation asked the laboratory to re-analyze the sample and the new results were within the acceptable risk range, and according to the DTSC Draft RAW, do not warrant a remedy. |

# Exhibit 1

# Attachment C

*Table 1*

## TABLE 1

## ENVIRONMENTAL CONDITION OF PROPERTY AREA TYPES

**(1 of 1)**

| Category | Definition |
|---|---|
| 1 | Areas where no storage, release, or disposal of hazardous substances or petroleum products has occurred (including no migration of these substances from adjacent areas) |
| 2 | Areas where only release or disposal of petroleum products has occurred |
| 2-3* | Areas where petroleum hydrocarbons have been detected, but are below action levels |
| 2-4* | Areas where petroleum hydrocarbon contamination has been detected and remediation activities have been completed |
| 2-5* | Areas where petroleum hydrocarbon contamination has been detected and remediation activities are underway |
| 2-6* | Areas where petroleum hydrocarbon contamination has been detected and remediation activities have not yet been initiated |
| 3 | Areas where release, disposal, or migration of hazardous substances has occurred, but at concentrations that do not require a removal or remedial action |
| 4 | Areas where release, disposal, or migration of hazardous substances has occurred, and all remedial actions necessary to protect human health and the environment have been taken |
| 5 | Areas where release, disposal, or migration of hazardous substances has occurred and removal or remedial actions are underway, but all required remedial actions have not yet been completed |
| 6 | Areas where release, disposal, or migration of hazardous substances has occurred, but required response actions have not yet been implemented |
| 7 | Areas that are unevaluated or require further evaluation |

Note:

* These Environmental Condition of Property definitions were further defined with the authority of the 1997 Defense Authorization Act.

# Exhibit 1

# Attachment C

*Table 2*

# TABLE 2

## ENVIRONMENTAL FACTORS AND RESOURCES CONSIDERED
## EAST HOUSING AREA FINDING OF SUITABILITY TO TRANSFER PARCELS

**(Page 1 of 1)**

| ENVIRONMENTAL FACTOR OR RESOURCE | PARCEL 170 | PARCEL 171 |
|---|---|---|
| Hazardous Substances Notification | Yes | Yes |
| IR Program Site | - | - |
| RCRA Site | - | - |
| Medical-biohazardous Waste | - | - |
| Oil-water Separators | - | - |
| Unexploded Ordnance | - | - |
| Petroleum Products and Derivatives (including fuel lines) | - | - |
| Radioactive and Mixed Wastes | - | - |
| Storage Tanks (USTs/ASTs) | - | - |
| Asbestos | Yes | Yes |
| LBP (high-priority) | Yes | Yes |
| LBP (low-priority) | - | - |
| PCBs | Yes | - |
| Radon | - | - |
| Indoor or Outdoor Air Quality | - | - |
| Prime or Unique Farmlands | - | - |
| Sanitary Sewer Systems (wastewater) | - | - |
| Sensitive Habitat | - | - |
| Septic Tanks (wastewater) | - | - |
| Solid Wastes | - | - |
| Threatened or Endangered Species | - | - |
| Transportation | - | - |
| Wetlands | - | - |

**Notes:**

AST Above ground storage tank
IR Installation Restoration
LBP Lead-based paint
PCB Polychlorinated biphenyls
RCRA Resource Concervation and Recovery Act
UST Underground storage tank

"Yes" indicates that the environmental factor affects the parcel or is present at the parcel.
"-" indicates that the item is not of concern for the environmental factor considered.

# Exhibit 1

## Attachment C

*Table 3*

LE 3

**Notice of Hazardous Substance Stored, Released, or Disposed of at Parcels 170 and 171**

**(Page 1 of 1)**

Notice is hereby given that the information provided below contains a notice of hazardous substances that are known to have been stored for more than 1 year or known to have been released or disposed of on certain portions of the FOST area and the dates that such storage, release, or disposal took place. 40 CFR Section 373.3(b) requires that the afore-mentioned statement be prominently displayed in this notice. The information contained in this notice is required und the authority of regulations promulgated under section 120(h) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA, also known as "Superfund") 42 USC section 9620(h). Chemicals specifically excluded from consideration were incidental quantities of household-type cleaning chemicals and consumer office products. It should be noted that only minimal information regarding hazardous materials was available, therefore, the periods that these materials were stored is uncertain, unless specifically stated.

| Parcel Number | Building or Lot Number | Facility Name | Hazardous Substance(s) | CAS Number | Regulatory Synonym | RCRA Waste Number | Quantity | Date(s) of Storage, Release, or Disposal (if known) | Stored (S), Released (R), or Disposed of (D) | Remarks |
|---|---|---|---|---|---|---|---|---|---|---|
| 170 | N/A | Family Housing | Durban 2E | None | None | - | 2 gallons | 10/92-10/93 | S | Weekly application |
| | | | Ficam W | 22781-23-3 | Bendiocarb; Fuam; FICAM D; Ficam Plus | - | 3 boxes | 10/92-10/93 | S | |
| | | | Drione | None | None | - | 1 pound | 10/92-10/93 | S | |
| | | | Talon G | None | None | - | 30 pounds | 10/92-10/93 | S | |
| | | | PT 515 | None | None | - | 24 cans | 10/92-10/93 | S | |
| | No release or disposal identified. | | | | | | | | | |
| 171 | | Family Housing | Durban 2E | None | None | - | 2 gallons | 10/92-10/93 | S | Weekly application |
| | | | Ficam W | 22781-23-3 | Bendiocarb; Fuam; FICAM D; Ficam Plus | - | 3 boxes | 10/92-10/93 | S | |
| | | | Drione | None | None | - | 1 pound | 10/92-10/93 | S | |
| | | | Talon G | None | None | - | 30 pounds | 10/92-10/93 | S | |
| | | | PT 515 | None | None | - | 24 cans | 10/92-10/93 | S | |
| | No release or disposal identified. | | | | | | | | | |

Notes:

- - = The substance is not a waste, therefore the RCRA waste number does not apply
- CAS = Chemical abstract service
- NA = Not applicable. The substance given is either a class of compounds, a mixture of substances, or not a chemical. Therefore, regulatory synonyms and CAS numbers are not available.
- None = No RCRA Waste number found, or no regulatory synonyms identified for this substance
- RCRA = Resource Conservation and Recovery Act

# Exhibit 1

# Attachment C

*Figure1-1*


FAIRFIELD
80
101
San Pablo Bay
780
CONCORD
BERKELEY
OAKLAND
ALAMEDA POINT
SAN FRANCISCO
San Francisco Bay
580
680
880
FREMONT
PACIFIC OCEAN
101
PALO ALTO
SAN JOSE
N
VICINITY MAP
CALIFORNIA
LEGEND
CITY
SHORELINE
0 5 10
APPROXIMATE SCALE IN MILES
ALAMEDA POINT
ALAMEDA CALIFORNIA
FIGURE 1
ALAMEDA POINT
REGIONAL LOCATION MAP
Tetra Tech EM Inc.

# Exhibit 1

# Attachment C

*Figure 1-2*