No. 05-1020C
Judge Margaret M. Sweeney

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

# PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

T. Michael Guiffré
J. Gordon Arbuckle
Daniel R. Addison (pending admission *pro hac vice*)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Plaintiff American International Specialty Lines Insurance Company*

January 27, 2006

## TABLE OF CONTENTS


I. Introduction....1

II. Argument....3

A. Defendant's Motion to Dismiss is Now Moot Based on Plaintiff's Filing of an Amended Complaint....3

B. The Government Fails to Meet the Standard on a Motion to Dismiss....4

C. Defendant's Ripeness Argument Is Moot....5

D. Plaintiff Has Cured Any Defects in its Pleading Relating to the Subject Property....7

E. Plaintiff Has Sufficiently Alleged Breach of Contract Claims....8

F. Plaintiff Has Alleged a Claim for Indemnification....10

G. Plaintiff's Claim for Declaratory Judgment....17

III. Conclusion....18

# TABLE OF AUTHORITIES

## CASES

*Adams v. United States*, 391 F.3d 1212 (Fed. Cir. 2004) .......... 4

*Aetna Cas. & Surety Co. v. Pintlar Corp.*, 948 F.2d 1507 (9th Cir. 1991) .......... 14

*AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 799 P.2d 1253 (Cal. 1990) .......... 14

*American Airlines v. United States*, 68 Fed. Cl. 723 (2005) .......... 4, 10

*American Int'l Specialty Lines Ins. Co. v. United States*, No. C 04-01591 (CRB), slip. op. (N.D. Cal. Mar. 24, 2005) .......... 6

*Avondale Indus., Inc. v. Travelers Indem. Co.*, 697 F. Supp. 1314 (S.D.N.Y. 1988) .......... 12-13

*Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200 (2d Cir. 1989) .......... 14

*Balboa Ins. Co. v. United States*, 3 Ct. Cl. 543 (1983) .......... 4

*Baltierra v. West Virginia Bd. of Med.*, 253 F. Supp. 2d 9 (D.D.C. 2003) .......... 3

*Barnes v. Indep. Auto. Dealers Ass'n of California Health & Welfare Benefit Plan*, 64 F.3d 1389 (9th Cir. 1995) .......... 6

*Bell v. Hood*, 327 U.S. 678 (1946) .......... 6

*Bernard v. United States*, 59 Fed. Cl. 497 (2004) .......... 4

*Christian v. United States*, 46 Fed. Cl. 793 (2000) .......... 8

*Curley v. Perry*, 246 F.3d 1278 (10th Cir. 2001) .......... 8

*Demarco Durzo Dev. Co. v. United States*, 60 Fed. Cl. 632 (2004) .......... 9

*Devon Energy Corp. v. United States*, 45 Fed. Cl. 519 (1999) .......... 3

*Foster-Gardner, Inc. v. Nat'l Union Fire Ins.*, 959 P.2d 265 (Cal. 1998) .......... 12

*Gerrish Corp. v. Universal Underwriters Ins. Co.*, 947 F.2d 1023 (2d Cir. 1991) .......... 14

*Godwin v. United States*, 338 F.3d 1374 (Fed. Cir. 2003) .......... 4

*Hazen Paper Co. v. United States Fid. & Guar. Co.*, 555 N.E.2d 576 (Mass. 1990) .......... 13

*Henke v. United States*, 60 F.3d 795 (Fed. Cir. 1995) .......... 4

*Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 944 F.2d 940 (D.C. Cir. 1991) .......... 14

*Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551 (9th Cir. 1991)..............................14

*Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853 (D. Ky. 2005).....................................3

*Mobile Pipeline Co. v. United States*, 1 Cl. Ct. 784 (1983) ..............................................................3, 4

*Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807 (D.C. Cir. 2001) ..................................................8

*Morrisville Water & Light Dep't v. United States Fid. & Guar. Co.*, 775 F. Supp. 718 (D.Vt. 1991)........................................................................................................................12

*New London Dev. Corp.*, 2005 WL 1634772 (ASBCA), 05-2 BCA ¶ 33018, ASBCA No. 54535 (July 5, 2005)..........................................................................11, 12, 13, 14

*Peterson v. United States*, 68 Fed. Cl. 773 (2005) ........................................................................4-5, 9

*R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818 (8th Cir. 1983) ..................................14

*Scheuer v. Rhodes*, 416 U.S. 232 (1974)...........................................................................................5

*Trans States Airlines v. Pratt & Whitney Canada*, 130 F.3d 290 (7th Cir. 1997) ..........................14

*United States Fid. & Guar. v. United States*, 475 F.2d 1377 (Ct. Cl. 1973).....................................7

*Vanalco, Inc. v. United States*, 48 Fed. Cl. 68 (2000) ..................................................................6, 17

*Wheeler v. United States*, 11 F.3d 156 (Fed. Cir. 1993) ...................................................................17

**STATUTES**

10 U.S.C. § 2687 note ........................................................................................1, 2, 11, 13

28 U.S.C. § 1491 ........................................................................................................................17

42 U.S.C. § 9601 ........................................................................................................................15

42 U.S.C. § 9607 ........................................................................................................................15

42 U.S.C. § 9620 ....................................................................................................................1, 16

**RULES**

RCFC 3.1(a)(2).............................................................................................................................3

RCFC 8(a) and 8(e)(1)..................................................................................................................7

RCFC 12(b) ...............................................................................................................................4, 7

RCFC 15(a)................................................................................................................................3, 8

RCFC 59 .......... 6

RCFC 60 .......... 6

**OTHER**

6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed. 1990) .......... 4

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-1020C<br>Judge Margaret M. Sweeney |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff American International Specialty Lines Insurance Company ("Plaintiff" or "AISLIC"), by and through its undersigned attorneys, respectfully submits Plaintiff's Opposition to Defendant's Motion to Dismiss (the "Motion").

## I. Introduction

The Government closed the Naval Air Station Alameda and transferred the East Housing Area and other property at the former military base to the City of Alameda and the Alameda Reuse and Redevelopment Authority (collectively, the "City") on July 17, 2002, to develop a mixed-use, residential community. Before this conveyance, Congress acted to ensure that whenever the Government transferred a former military base, including the Naval Air Station Alameda, it would undertake all remedial action necessary to protect human health and the environment with respect to hazardous substances on the base. Congress enacted the National Defense Authorization Act, 10 U.S.C. § 2687 note, and section 120(h) of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9620, to facilitate the transfer of closed military bases to persons and entities, such as the City, while at the same time ensuring that the Government is, and continues to be, responsible for all environmental contamination that occurred

prior to the date of transfer. Accordingly, the indemnification provisions of the National Defense Authorization Act of 1993, Pub. L. No. 102-484, 106 Stat. 2371, 10 U.S.C. § 2687 note, and the requirements of section 120(h) of CERCLA, governing property transferred by federal agencies, provide assurances that the Government is responsible for remediating environmental contamination at former military bases and will not thrust the cost of such remediation upon municipalities that agree to develop the sites for other beneficial purposes.

Unfortunately, in this case, the Government has breached its statutory and contractual responsibilities to remediate environmental contamination caused by its own activities and to indemnify the City for accomplishing the remediation. In 2000, the Department of the Navy formally announced its decision to close the Naval Air Station Alameda, which included the East Housing Area – the contaminated property at issue in this case. Later that year, the Government, through the Navy, transferred the East Housing Area, as well as other land, to the City for development in accordance with a Community Reuse Plan approved and recommended by the Navy. Shortly after the transfer, the City discovered that hazardous organochlorine pesticides ("OCPs"), namely chlordane, were present on the property as a result of the Government's activities prior to the transfer and was ordered by the Department of Toxic Substance Control ("DTSC"), the State of California's cognizant agency, to remediate that contamination prior to implementation of the Community Reuse Plan. Despite the fact that the Government was required to remediate these hazardous substances before transferring the property to the City, the Government has failed to accept responsibility for its failure to do so.

By contract, the Government covenanted and warranted that it (1) had remediated all hazardous substances at the East Housing Area; and (2) would remediate any such substances found to be present after the date of transfer. Also by contract, the Government represented what hazardous substances had been released or remained on the East Housing Area, but failed to

disclose the release or presence of chlordane on the property. Despite its contractual and statutory obligations, the Government failed to remediate the chlordane or to indemnify the City for incurred remediation costs. Consequently, AISLIC, as subrogee for the City, is now seeking to recover costs incurred to remediate the organochlorine pesticides, and to rightly hold the Government accountable for its contractual and statutory obligations. In setting forth its case, AISLIC has sufficiently alleged facts supporting numerous causes of action for breach of contract and violation of express statutory indemnification obligations.

## II. Argument

### A. Defendant's Motion to Dismiss is Now Moot Based on Plaintiff's Filing of an Amended Complaint

As a threshold matter, Defendant's Motion to Dismiss is now moot as Plaintiff AISLIC has filed a First Amended Complaint pursuant to Rule 15(a) of the Rules of the Court of Federal Claims ("RCFC") on January 27, 2006.[1] *See Mobile Pipeline Co. v. United States*, 1 Cl. Ct. 784, 785 (1983) (denying defendant's motion to dismiss as moot in light of subsequent filing of amended complaint); *see also Kentucky Press Ass'n, Inc. v. Kentucky*, 355 F. Supp. 2d 853, 857 (D. Ky. 2005) (denying motion to dismiss as moot because Plaintiff filed an amended complaint, even though defendants argued that amended complaint did not cure all defects); *Baltierra v. West Virginia Bd. of Med.*, 253 F. Supp. 2d 9, 14 (D.D.C. 2003) (denying motion to dismiss as moot because the plaintiff filed an amended complaint expanding on allegations after the defendants filed their motion to dismiss). A pleading that has been amended supersedes the pleading it modifies and the original pleading no longer performs any function in the case. *See Kentucky Press Ass'n, Inc.*, 355 F. Supp. 2d at 857 ("Plaintiff's

[1] Plaintiff's First Amended Complaint is the first amendment to its complaint in this Court. Plaintiff's initial complaint (the "Complaint"), filed on September 30, 2005, was titled as an amended complaint pursuant to RCFC 3.1(a)(2). AISLIC filed its First Amended Complaint as of right and was not required to seek leave of the Court, as Defendant's Motion to Dismiss is not a responsive pleading within the meaning of RCFC 15(a). *See Devon Energy Corp. v. United States*, 45 Fed. Cl. 519 (1999).

amended complaint supercedes the original complaint, thus making the motion to dismiss the original complaint moot."); 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1476 (2d ed. 1990). Consequently, because AISLIC has filed a First Amended Complaint, Defendant's Motion to Dismiss is now moot and must be denied.[2]

**B. <u>The Government Fails to Meet the Standard on a Motion to Dismiss</u>**

"As a general rule, a motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted." *Balboa Ins. Co. v. United States*, 3 Ct. Cl. 543, 545 (1983). To the extent that this Court considers Defendant's Motion to Dismiss despite the filing of an amended complaint, for arguments based on failure to state a claim under RCFC 12(b)(6),[3] the Court "must accept as true all of Plaintiffs' well-pleaded facts alleged in the complaint and draw all reasonable inferences in the Plaintiffs' favor." *Peterson v. United States*, 68 Fed. Cl. 773, 775 (2005) (citing *Godwin v. United States*, 338 F.3d 1374, 1377 (Fed. Cir. 2003)); *American Airlines v. United States*, 68 Fed. Cl. 723, 728 (2005) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)) ("In ruling on a motion to dismiss, the court 'is obligated to assume all factual allegations to be true and to draw all reasonable inferences in plaintiff's favor.'").

A complaint merely must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *See Bernard v. United States*, 59 Fed. Cl. 497, 500 (2004). Moreover, "[d]ismissal for failure to state a claim under Rule 12(b)(6) is proper only when a plaintiff can 'prove no set of facts in support of his claim which would entitle him to relief.'" *American Airlines,* 68 Fed. Cl. at 728 (quoting *Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004); *Peterson v. United*

2 If the Government believes its grounds for dismissal apply equally to Plaintiff's First Amended Complaint, it should file an appropriate motion to dismiss the First Amended Complaint. *Mobile Pipeline Co. v. United States*, 1 Cl. Ct. 784, 785 (1983).

3 As Plaintiff's First Amended Complaint no longer includes a claim for declaratory relief, the Government's motion to dismiss Count III of the Complaint for lack of jurisdiction is moot. Therefore, standards for review under RCFC 12(b)(1) no longer apply.

*States*, 68 Fed. Cl. 773, 775 (2005) ("The Court should not dismiss a complaint for failure to state a claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'") (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236-37 (1974)).

Throughout Defendant's Motion to Dismiss, the Government seeks to exceed these well-settled standards for deciding a motion to dismiss. As demonstrated below, the Government repeatedly introduces factual matters which are in dispute and are not the proper subject of a motion to dismiss. In accordance with the standards for a motion to dismiss, the well-pleaded facts in the First Amended Complaint are more than sufficient to support AISLIC's claims. Therefore, the Government's Motion to Dismiss should be denied.

### C. <u>Defendant's Ripeness Argument Is Moot</u>

The Government's argument that AISLIC's claims are unripe because the Complaint does not allege AISLIC has fully compensated the City is flawed for several reasons. First, AISLIC has fully compensated its insureds, the City of Alameda and the Alameda Reuse and Redevelopment Authority, and has so alleged in its First Amended Complaint. *See* First Amended Complaint, ¶¶ 2, 51-52. Specifically, as of November 10, 2005, AISLIC paid the City's insurance claim in its entirety, totaling $3,763,328. *See* First Amended Complaint, ¶ 52. Accordingly, the Government's argument is moot.

Second, the Government relies entirely on the March 2005 ruling of the United States District Court for the Northern District of California that dismissed AISLIC's CERCLA claims as unripe. The Government has failed to identify any precedent that this Court must accept the district court's ripeness ruling concerning CERCLA claims that are not before the Court, and apply such

ruling to AISLIC's separate claims based on breach of contract and violation of the National Defense Authorization Act.[4]

Third, pursuant to contract, AISLIC was not obligated to fully compensate its insureds to make its claims ripe. Federal common law holds that, unless there is an agreement to the contrary, an insurance company cannot enforce the rights of the insured until the insured is fully compensated. *See Am. Int'l Specialty Lines Ins. Co. v. United States*, No. C 04-01591 (CRB), slip. op., at 6 (N.D. Cal. Mar. 24, 2005); *Barnes v. Indep. Auto. Dealers Ass'n of California Health & Welfare Benefit Plan*, 64 F.3d 1389, 1395 (9th Cir. 1995) ("in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its rights to subrogation") (emphasis added). Here, AISLIC and its insureds agreed that AISLIC did not have to fully compensate them to enforce its rights to subrogation. Pursuant to the AISLIC Pollution Legal Liability Select Policy, No. PLS 195 0046, which applies to the East Housing Area, AISLIC has subrogation rights in the event of any payment under the Policy. *See* First Amended Complaint ¶ 50. AISLIC affirmatively alleged in its original Complaint that it had made payments to its insureds. *See* Complaint, ¶¶ 2, 30. Therefore, by the plain meaning of the contract, AISLIC did not have to fully compensate the City before initiating a suit to enforce its subrogation rights. Even absent an agreement to the contrary, AISLIC's subrogration rights are now ripe as AISLIC has fully compensated its insureds. The California district court's ruling, which was based on the status of AISLIC's payments to the insureds as of March 2005, if not earlier, is no longer applicable.

---

[4] Defendant suggests that Plaintiff should file a motion under RCFC 59 or 60 regarding the district court's ruling. *See* Motion at 12. These procedural rules are inapplicable. The district court's dismissal of CERCLA claims without prejudice does not constitute a final judgment or order which would require relief. *See Vanalco, Inc. v. United States*, 48 Fed. Cl. 68, 78 (2000) ("Moreover, it is axiomatic that a decision concerning failure to establish subject matter jurisdiction is not a decision on the merits, whereas a decision on failure to state a claim is considered as such.") (*quoting Bell v. Hood*, 327 U.S. 678, 682 (1946)).

Finally, the Government's ripeness argument is inappropriate on a RCFC 12(b)(6) motion. The Government has not cited any authority for the proposition that a subrogee must affirmatively allege in the complaint that its insured has been made whole or otherwise face dismissal of the case. In fact, this Court has previously expressed a willingness to reconsider judgment upon a surety's subsequent proof of full payment. *See United States Fid. & Guar. v. United States*, 475 F.2d 1377, 1385 (Ct. Cl. 1973) (the court stated that it would entertain a motion for rehearing and new trial and relief from the judgment if within 60 days from entry of the judgment the surety could show the court that it had paid the subcontractors in full). The Government's faulty arguments regarding ripeness are nothing more than an attempt to avoid the merits of Plaintiff's claims.

**D. Plaintiff Has Cured Any Defects in its Pleading Relating to the Subject Property**

Plaintiff's Complaint met the Court's requirements to set forth a short and plain statement of its claim. *See* RCFC 8(a) and 8(e)(1). The Government argues that all of the attachments to the Complaint relate to incurred costs at the East Housing Area, but that the Complaint itself alleges that the costs were incurred at the Fleet and Industrial Supply Center ("FISC") Annex. Motion at 13-15. The Government acknowledges that both the East Housing Area and the FISC Annex were transferred to the Alameda Reuse and Redevelopment Authority and concludes that AISLIC has confused the two parcels. *Id.* The Government even attaches to its motion the East Housing Area deed associated with the costs documented in the attachments to the Complaint. *Id.* Accordingly, Plaintiff's Complaint was sufficient to inform the Government of the nature and basis of the claims against it.

Even if there was some technical defect in the manner by which Plaintiff identified the property at issue, Plaintiff has cured any defects in its pleading by filing its First Amended Complaint. AISLIC has now filed its First Amended Complaint clarifying that the contaminated property at issue is the East Housing Area. The First Amended Complaint attaches the East

Housing Area deed, which the Government agrees is the correct contract associated with the incurred costs documented in the attachments to the complaint. Motion at 14. As the First Amended Complaint is now before the Court, the Government's arguments are moot. In any case, dismissal is inappropriate where Plaintiff's former counsel inadvertently referred to and attached the deed for the adjacent property, particularly where the Government only seeks dismissal without prejudice. The more appropriate remedy for any technical failure to identify the property at issue is to permit amendment of the complaint. *See Christian v. United States*, 46 Fed. Cl. 793, 801-802 (2000) (recognizing that leave to amend under RCFC 15(a) should be granted liberally because it contributes to the rationality and efficiency of the litigation)*; see also Monmouth Med. Ctr. v. Thompson*, 257 F.3d 807, 815 (D.C. Cir. 2001) (where defendant government identified a procedural failing that would easily have been remedied by a request to amend the complaint and where the plaintiffs alleged sufficient facts to support their claim for mandamus, the court still had the authority to consider the claim); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("the district court should allow a plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim").

### E. Plaintiff Has Sufficiently Alleged Breach of Contract Claims

The Government's Motion to Dismiss nearly overlooks AISLIC's claim for relief based on breach of contract, as alleged in its original Complaint. Complaint, ¶¶ 40-44. The subsequently filed First Amended Complaint properly alleges numerous breaches of contract by the Government, including multiple breaches of both the East Housing Deed and a separate Memorandum of Agreement to convey portions of the Naval Air Station Alameda to the City. The Government's motion to dismiss does not directly address any of these claims, and therefore, the motion is moot and inapplicable.

To the extent that the Court considers the Government's arguments, Plaintiff has sufficiently alleged breach of contract, and the standards governing motions to dismiss require that the Government's motion be denied. Accepting the well-pleaded allegations as true and drawing all reasonable inferences in Plaintiff's favor, AISLIC properly asserted that: (1) a valid contract existed between the Government and the City, (2) the Government was obligated to take remedial action and indemnify the City under the provisions of the contract; (3) the Government breached its contractual duties by failing to remediate and indemnify the City; and (4) the City (and Plaintiff, as subrogee) suffered damages resulting from the Government's breach. *See Demarco Durzo Dev. Co. v. United States*, 60 Fed. Cl. 632, 636 (2004) (providing the elements required to allege and establish a breach of contract claim and finding that plaintiff set forth sufficient allegations for breach of contract claim to withstand a motion to dismiss).

The Government's motion disputes Plaintiff's factual allegations and injects factual claims that are not the proper subject of a motion to dismiss. For example, the Government argues that it did not breach the East Housing Area deed because "there is no basis upon which to question the findings of the California DTSC … or to credit AISLIC's conclusory speculation that the chlordane-based pesticide found in the soil at the East Housing area was leaked, spilled, or improperly applied." Motion at 27. The Government also argues that it is not liable because the "termiticide found in the soil at the East Housing area had been 'properly applied' and was serving its function 'in the manner intended.'" Motion at 29. The Government asserts that the cleanup was required due to the demolition activities of AISLIC's insureds, not the prior activities of the Government. Motion at 29.

The Government's attempt to refute the factual basis for Plaintiff's claims is fatal to its motion. The Government's factual assertions contradict the allegations in the Complaint, which must be accepted as true and from which all reasonable inferences must be drawn. *Peterson*, 68 Fed.

Cl. at 775; *American Airlines*, 68 Fed. Cl. at 728. Moreover, the Government cannot rely on its own interpretation of inconclusive information contained in exhibits to the Complaint to dispute Plaintiff's factual allegations.[5] For example, the Government's assertion that the DTSC found that the pesticide was properly applied overstates the DTSC's review of the remediation workplan, and, as demonstrated below, whether or not the pesticide was properly applied is irrelevant to AISLIC's claims. The Government also implies that some exhibit to the Complaint establishes that the City caused or contributed to the hazardous condition, but the Government cites only to the terms in the deed, which make no such finding. See Motion at 29. The Government's factual arguments are more properly addressed, if at all, on a motion for summary judgment, and the Government's attempt to engage Plaintiff on the factual issues is telling. It demonstrates that Plaintiff has stated a claim.

### F. Plaintiff Has Alleged a Claim for Indemnification

AISLIC's indemnification claims in its First Amended Complaint are substantively modified and expanded, rendering the Government's motion moot. However, to the extent that this Court considers Defendant's Motion to Dismiss, AISLIC has sufficiently alleged claims for both express indemnification and contractual indemnification in accordance with Section 330 of the National Defense Authorization Act. Complaint, ¶¶ 31-44.

To establish a claim for indemnification under Section 330 (or a contract incorporating Section 330), "three conditions must be met. First, the indemnification claim must be for costs 'arising out of any claim for personal injury or property damage (including death, illness, loss or

[5] That a plaintiff may attach an exhibit to a complaint for one purpose does not require the plaintiff to adopt as true all information reflected in the exhibit. For example, the fact that the Government represented in the East Housing deed that chlordane was not present on the property does not obligate Plaintiff to accept the Government's representation as true. It is the Government's misrepresentation in the deed that forms the very basis for one of AISLIC's breach claims.

damage to property or economic loss).' Second, the claim for personal injury or property damage must result from or be predicated upon the release or threatened release of a hazardous substance, [pollutant or contaminant] from or on the [property]. Third, the release or threatened release must be 'as a result of Department of Defense activities on the [property].'" *New London Dev. Corp.*, 2005 WL 1634772 (ASBCA), 05-2 BCA ¶ 33018, ASBCA No. 54535 (July 5, 2005); National Defense Authorization Act of 1993, 10 U.S.C. § 2687 note. Plaintiff's claim alleges these elements.

**1. <u>AISLIC Has Alleged a "Claim" for Purposes of Section 330</u>**

AISLIC has sufficiently alleged that its indemnification claim is for costs arising out of a claim for property damage. As alleged in both the Complaint and the First Amended Complaint, the City of Alameda, the Alameda Reuse and Redevelopment Authority, and AISLIC jointly submitted a claim for reimbursement pursuant to Section 330 for costs incurred in monitoring, removal and disposal of the previously undisclosed chlordane. Complaint, ¶ 29, First Amended Complaint, ¶ 47. The Government misreads the statute by asserting that a "claim" is one that must be asserted against the City, rather than by the City, and that the "claim" must be in the form of a lawsuit. The statute contains no such restrictions.

Citing no precedent for its position, the Government's primary argument is that Section 330(d)'s reference to a "plaintiff" must refer to someone other than the transferee/indemnitee, and that such language means the indemnitee must be facing a lawsuit brought by a third party. Motion, 18-19. To the contrary, the plain language of the statute reflects that Section 330(d) defines the date on which an <u>indemnitee's claim</u> for indemnification accrues "for purposes of subsection (b)(1)." Subsection (b)(1) sets forth conditions under which an <u>indemnitee</u> may sue the Government for indemnification. Section 330(d) does not define the term "claim," and it does not pertain to the general provisions establishing a right to indemnification under subsection (a).

Contrary to the Government's unsupported misreading of Section 330, no suit need be brought against the City to establish a right to indemnification. In fact, Section 330(a) explicitly provides for indemnification from and against "any suit, claim, demand or action, liability, judgment, cost or other fee" (emphasis added). In *New London Development Corporation*, the ASBCA denied a motion to dismiss for failure to state a Section 330 claim for indemnification. *New London Dev. Corp.*, 2005 WL 1634772 (ASBCA). In that case, the appellant had submitted a claim for reimbursement pursuant to Section 330 for its costs incurred in monitoring, removal and disposal of previously undisclosed asbestos contaminated material ("ACM") and Polychlorinated Biphenyl ("PCBs"). *Id.* No claim, by lawsuit or otherwise, had been asserted against the appellant, but rather the appellant filed its own claim (as Plaintiff does here) to recover incurred costs. *Id.*

Even if Section 330 did require that a claim be made against the indemnitee, Plaintiff has sufficiently alleged such facts. As stated in both the Complaint and the First Amended Complaint, the DTSC required the City to monitor, remove and dispose of the chlordane contamination at the East Housing Area in order to carry out the development plan that the Government had selected as the preferred alternative. Complaint, ¶ 26; First Amended Complaint, ¶ 45. While the Government argues that the DTSC's requirement to remediate the chlordane on the East Housing Area did not constitute a "claim," Section 330 does not define the term "claim," and the Government cites no precedent for its interpretation of what should constitute a "claim" under the statute. However, by analogy, many cases dealing with recovery under insurance policies hold that a requirement by a state or federal agency to engage in cleanup can constitute a "claim" or "suit." *See, e.g., Foster-Gardner, Inc. v. Nat'l Union Fire Ins.*, 959 P.2d 265, 279-282 (Cal. 1998) (state EPA order to remediate pollution constitutes a claim); *Morrisville Water & Light Dep't v. United States Fid. & Guar. Co.*, 775 F. Supp. 718, 731-33 (D.Vt. 1991) (EPA letter to insured constituted a suit within the meaning of the liability policy); *Avondale Indus., Inc. v. Travelers Indem. Co.*, 697 F. Supp. 1314, 1320-23 (S.D.N.Y.

1988) (Louisiana Department of Environmental Quality demand to clean up a site constituted a suit that required insurer to defend); *Hazen Paper Co. v. United States Fid. & Guar. Co.*, 555 N.E.2d 576, 579-82 (Mass. 1990) (letter from EPA providing notice of liability for cleanup costs was analogous to commencement of a suit). Similarly, DTSC's requirement to cleanup the East Housing Area constitutes a claim triggering the Government's obligation to indemnify the City of Alameda and Alameda Reuse and Redevelopment Authority under Section 330.

The Government attempts to contradict the factual allegations of the Complaint by reinterpreting the DTSC's requirements and creating a factual dispute over whether the DTSC ever found that a hazardous substance was present at the East Housing Area. *See* Motion at 19-20. The Government mischaracterizes DTSC's findings and fails to accept the fact that the DTSC required the City to remediate the chlordane to use the property in the manner the Government approved of and recommended in the Community Reuse Plan. The Government's failure to accept AISLIC's allegations as true requires that the motion be dismissed.

**2. <u>AISLIC Has Alleged "Property Damage" for Purposes of Section 330</u>**

Rather than looking to the language of Section 330, the Government attempts to define the term "property damage" by relying on the legislative history of a separate statute, CERCLA, which does not define the term, and by arguing that "cleanup costs" do not constitute a "claim for damage." Motion at 20-23. Instead of attempting to draw analogies based on the legislative history of another statute that does not define the term "property damage," the Court should look to the language of the applicable statute, Section 330.

The term "property damage" is parenthetically defined in subsection (a) of Section 330 as including "loss of or damage to property or economic loss." National Defense Authorization Act of 1993, 10 U.S.C. § 2687 note; *see also New London Dev. Corp.*, 2005 WL 1634772 (ASBCA). In *New London Development Corp.*, the ASBCA held that the term "'economic loss' is defined in tort law as

including among other things 'costs of repair and replacement' of the defective product or defective property." *Id.* (citing *Trans States Airlines v. Pratt & Whitney Canada*, 130 F.3d 290, 291 (7th Cir. 1997); *R.W. Murray Co. v. Shatterproof Glass Corp.*, 697 F.2d 818, 829 n.11 (8th Cir. 1983)). The ASBCA denied the Government's motion to dismiss because the appellant's costs incurred in monitoring, removal and disposal of previously undisclosed ACM and PCBs could constitute property damage claims that were indemnifiable under the deed provision citing to Section 330. As in *New London Development Corp.*, the City incurred costs to monitor, remove and dispose of previously undisclosed chlordane. Thus, the City's indemnification claim is for property damage, as the City suffered an economic loss.

The Government cites to cases where courts interpret insurance policies and whether the term "property damage" covers cleanup costs. The Government's citation to cases that do not directly interpret Section 330 cannot override the explicit language of the statute, as numerous courts examining such issues hold that cleanup costs <u>are</u> property damage, including the Second, Ninth and District of Columbia Circuits and many state courts, including the highest courts of California, Washington, Massachusetts, Minnesota, North Carolina, and Iowa. *See, e.g., AIU Ins. Co. v. Superior Court*, 51 Cal. 3d 807, 819, 842, 799 P.2d 1253, 1262, 1279 (Cal. 1990) ("reimbursement of response costs … under CERCLA and related statutes are incurred because of property damage"); *Avondale Indus., Inc. v. Travelers Indem. Co.*, 887 F.2d 1200 (2d Cir. 1989); *Gerrish Corp. v. Universal Underwriters Ins. Co.*, 947 F.2d 1023 (2d Cir. 1991); *Aetna Cas. & Sur. Co. v. Pintlar Corp.*, 948 F.2d 1507 (9th Cir. 1991); *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551 (9th Cir. 1991); *Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 944 F.2d 940 (D.C. Cir. 1991). Based on the plain language of Section 330, the holding of *New London Development Corp.,* and these cases indirectly addressing analogous issues, AISLIC has suffered property damage, and on a motion to dismiss, all reasonable inferences are to be drawn in its favor.

### 3. **<u>AISLIC Has Alleged that its Claim is Predicated on a Release and/or Threatened Release of a Hazardous Substance as a Result of Department of Defense Activities</u>**

AISLIC has sufficiently alleged that its indemnification claim for property damage results from and is predicated upon the release or threatened release of a hazardous substance, pollutant or contaminant (chlordane) as a result of Department of Defense activities on the property. Complaint, ¶ 24-25; *see*, e.g., First Amended Complaint, ¶ 44. Section 330(f)(1) defines the term "release" as having the meaning given to it under CERCLA, 42 U.S.C. § 9601(22). Under that section, the term "release" means "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the abandonment or discarding of barrels, containers, and other closed receptacles containing any hazardous substance or pollutant or contaminant)…." 42 U.S.C. § 9601(22). The Government acknowledges that it applied the chlordane on the property, but argues that its "proper application of a pesticide … does not create liability." Motion at 24. In making this argument, the Government again improperly injects factual disputes in its motion to dismiss when the Court is required to accept all well-pleaded facts as true and draw all reasonable inferences in Plaintiff's favor.

Even if the Government were not improperly contesting Plaintiff's factual allegations on a 12(b)(6) motion, the definition of "release" in both Section 330 and CERCLA Section 9601(22) make no distinction between the proper and improper application of a pesticide. Whether or not the application was proper, it constituted a release. The Court should reject the Government's attempt to incorporate a separate statutory provision under CERCLA, 42 U.S.C. § 9607(i), to claim that the "proper" application of chlordane excuses it from indemnification liability under the applicable contracts and the National Defense Authorization Act. Section 330's definition of "release" is restricted to having the meaning given to it under 42 U.S.C. § 9601(22), which makes no distinction between the proper and improper application of chlordane. Moreover, Section 120(h) of

CERCLA (42 U.S.C. § 9620(h)) requires that before the Government enters into any contract for the transfer of real property, it must take remedial action necessary to protect human health and the environment with respect to any hazardous substances known to have been released on any property. Section 120(h) also makes no distinction whether or not such substances were properly applied or used for their intended purpose. Even if the manner of application were relevant, the Government's claims that the chlordane was properly applied and used for its intended purpose are questions of fact requiring further discovery. Such issues should not be resolved on a motion to dismiss.

**4. <u>The City's Alleged Contribution to the Release is Not Proper for Resolution on a Motion to Dismiss</u>**

Finally, the Government argues that it is not responsible for any release or threatened release because the City "contributed to any such release or threatened release" as a result of its demolition activities at the East Housing Area after the date of transfer. Motion at 25-26, citing Section 330(a). The City did not "release" the chlordane as such term is defined under Section 330, as addressed above. Further, whether the City contributed to any release is an issue of fact not appropriately decided at this stage of the litigation. As alleged in the Complaint and the First Amended Complaint, the Government is solely responsible for the release of OCPs, namely chlordane, because it applied the hazardous substances on the East Housing Area prior to the date of transfer. Complaint, ¶ 25; First Amended Complaint, ¶ 44. As Plaintiff's allegations must be accepted as true and all reasonable inferences drawn in Plaintiff's favor, the Government's Motion to Dismiss must be denied.

Even if the Court were to make a factual finding that the City contributed to the release of chlordane, the Government is relieved of indemnification liability only to the extent the City contributed to the release. Section 330(a)(3). Therefore, the Complaint still would state a claim to the extent that the City did not contribute to any such release.

### G. Plaintiff's Claim for Declaratory Judgment

The Government moved to dismiss Count III, a claim for declaratory relief, as beyond COFC's jurisdiction. AISLIC is no longer asserting a claim for declaratory relief in the First Amended Complaint, and therefore, the Government's motion is moot.

Even if the motion were not moot, the Government misstates the law by asserting the Court cannot grant declaratory relief. Unlike the cases relied upon by the Government, in its original Complaint, AISLIC was seeking money damages in addition to declaratory relief. This Court may grant injunctive relief when such relief is merely incidental to a plaintiff's claim for money damages. 28 U.S.C. § 1491(a)(2) (conferring limited equitable powers on the Court if they are necessary for complete relief and if they are "incidental of and collateral to" the judgment); *Wheeler v. United States*, 11 F.3d 156, 159 (Fed. Cir. 1993) ("The Court of Federal Claims lacks jurisdiction to grant such equitable relief absent a concurrent colorable claim for monetary recovery." (emphasis added)); *Vanalco, Inc. v. United States*, 48 Fed. Cl. 68, 74 (2000). AISLIC's claim for declaratory relief was merely incidental to its claim for money damages, and therefore, the Court had jurisdiction to hear the claim.

That said, AISLIC's suit is intended to recover the money damages it has wrongfully incurred as a result of the Government's failure to live up to its contractual and statutory obligations. AISLIC's First Amended Complaint does not include a claim for declaratory relief to streamline the issues before the Court.

## III. Conclusion

Based on the foregoing, Defendant's Motion to Dismiss should be denied.

Respectfully submitted,

s/T. Michael Guiffré

T. Michael Guiffré
J. Gordon Arbuckle
Daniel R. Addison (pending admission *pro hac vice*)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Plaintiff American International Specialty Lines Insurance Company

January 27, 2006

**CERTIFICATE OF FILING**

I certify that on January 27, 2006, the foregoing Plaintiff's Opposition to Defendant's Motion to Dismiss was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/T. Michael Guiffré
T. Michael Guiffré