No. 05-1020C
Judge Sweeney

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE TRANSFER COMPLAINT, AND OPPOSITION TO PLAINTIFF'S ATTEMPT TO AMEND ITS COMPLAINT "AS OF RIGHT" FOR A SECOND TIME

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Telephone: (202)305-7562
Facsimile: (202)305-7644

Attorneys for Defendant

OF COUNSEL:

MARY RAIVEL
Senior Trial Attorney
Naval Litigation Office
Office of the General Counsel

February 24, 2006

TABLE OF CONTENTS

ARGUMENT . . . . . 2

I. The Government's Motion to Dismiss The September 2005 Transfer Complaint Is Not Moot And Should Be Granted . . . . . 2

A. AISLIC Cannot Amend Its Transfer Complaint As Of Right . . . . . 2

B. The Initial Absence Of Ripeness (Or Standing) Cannot Be Cured By Amendment Under RCFC 15 . . . . . 3

C. Assuming Jurisdiction Is Found, Count 1 Of The Transfer Complaint Fails To State A Claim For Statutory Indemnification . . . . . 6

1. Our Motion Is Procedurally Proper . . . . . 6

2. There Was No "Claim" Against The City For Purposes Of Section 330 . . . . . 7

3. Assuming The DTSC Filed A "Claim," It Was Not For "Property Damage" . . . . . 10

4. Assuming There Was a Qualifying "Claim," It Did Not Result From A "Release Or Threatened Release" Caused By Military Activities . . . . . 12

D. Assuming Jurisdiction Is Found, Count 2 Fails To State A Claim For Breach Of Deed Covenants . . . . . 14

II. The Court Should Reject AISLIC's Proposed Amended Complaint As Futile . . . . . 15

CONCLUSION . . . . . 19

APPENDIX . . . . . . Amended Complaint, American Intl. Spec. Lines Ins. Co. v. United States, No. 3-04-cv-01591 CRB (N.D. Cal.) (filed December 22, 2004) (excerpts)

# TABLE OF AUTHORITIES

## CASES

American Intl. Spec. Lines Inc. Co v. United States,
No. C 04-1591 CRB (N.D. Cal. March 24, 2005) .......... 3

Barnes v. Independent Auto. Dealers Assoc. of Cal. Health & Welfare Ben. Plan,
64 F.3d 1389 (9th Cir. 1995) .......... 4

Black v. United States,
24 Cl. Ct. 471 (1991) .......... 15

Briscoe v. LaHue,
663 F.2d 713 (7th Cir. 1981) .......... 6

California-Pacific Utils. Co. v. United States,
194 Ct. Cl. 703 (1971) .......... 18

C.B.C. Enterps., Inc. v. United States,
24 Cl. Ct. 1 (1991) .......... 16

Continental Ins. Co. v. Northeastern Pharm. & Chem. Co.,
842 F.2d 977 (8th Cir. 1988) .......... 12

D.V. Gonzalez Elec. & Gen. Contrs. v. United States,
55 Fed. Cl. 447 (2003) .......... 16

Foman v. Davis,
371 U.S. 178 (1962) .......... 15

Gerrish Corp. v. Universal Underwriters Insurance Co.,
947 F.2d 1023 (2d Cir. 1991) .......... 11

Glick v. Koenig,
766 F.2d 265 (7th Cir. 1985) .......... 15

Gussack Realty Co. v. Xerox Corp.,
224 F.3d 85 (2d Cir. 2000) .......... 12

Hanson v. United States,
13 Cl. Ct. 519 (1987) .......... 6, 8, 17

Hercules Inc. v. United States,
516 U.S. 417 (1996) .......... 18

Herndon v. United States,
36 Fed. Cl. 198 (1996), aff'd, 121 F.3d 727 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . 15

Hugo Boss Fashions, Inc. v. Federal Ins. Co.,
252 F.3d 608 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Independent Petrochemical Corp. v. Aetna Casualty & Surety Co.,
944 F.2d 940 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Kitty Hawk Aircargo, Inc. v. Chao,
418 F.3d 453 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Lamie v. United States Trustee,
540 U.S. 520 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

Mason v. American Tobacco Co.,
346 F.3d 36 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Morris v. United States,
33 Fed. Cl. 733 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

National Sur. Corp. v. United States,
118 F.3d 1542 (Fed. Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 5

New London Development Corp.,,
ASBCA No. 54535, 05-2 BCA ¶ 33,018 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12

Newman-Green, Inc. v. Alfonzo-Larrain,
490 U.S. 826 (1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 4

Pension Benefit Guar. Corp. v. White Consolid. Indus., Inc.,
998 F.2d 1192 (3d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Perry v. Village of Arlington Hgts.,
186 F.3d 826 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Prairie Nat. Bank v. United States,
164 U.S. 227 (1896) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Steckman v. Hart Brewing, Inc.,
143 F.3d 1293 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

United States Fidelity & Guarantee Co. v. United States,
201 Ct. Cl. 475 F.2d 1377 (1973) . . . . . . . . . . 5

Venture Assocs. Corp. v. Zenith Data Sys. Corp.,
987 F.2d 429 (7th Cir. 1993) . . . . . . . . . . 13

Young v. United States,
394 F.3d 858 (10th Cir. 2005) . . . . . . . . . . 12

## STATUTES

10 U.S.C. § 2687 .......... 7

28 U.S.C. § 1631 .......... 2

31 U.S.C. § 1341(a)(1)(B) .......... 18

42 U.S.C. § 9601(14) .......... 14

42 U.S.C. § 9601(22) .......... 14

## MISCELLANEOUS

15 Moore's Federal Practice (2005) .......... 4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | No. 05-1020C (Judge Sweeney) |
| v. | ) | |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS THE TRANSFER COMPLAINT, AND OPPOSITION TO PLAINTIFF'S ATTEMPT TO AMEND ITS COMPLAINT "AS OF RIGHT" FOR A SECOND TIME

Pursuant to Rules 12 and 15 of the Court's Rules ("RCFC"), defendant, the United States, respectfully (i) replies in support of its motion to dismiss this lawsuit and (ii) opposes the acceptance of the "First Amended Complaint" filed by plaintiff, American International Specialty Lines Insurance Company ("AISLIC"), with its opposition on January 27, 2006.

Despite its title, AISLIC's latest proposed amended complaint is either the second or third amended complaint it has filed in this transferred action, given that AISLIC filed an amended complaint in the United States District Court for the Northern District of California in December 2004 (and the transfer complaint filed in this Court in September 2005 could arguably be considered another amendment). Because AISLIC has amended its complaint at least once, it must obtain leave of the Court before amending again. But because, as demonstrated below, AISLIC's proposed amendments to its complaint would be futile, the Court should not permit the filing of the latest amended complaint under RCFC 15(a) and it should dismiss this lawsuit.[1]

[1] Alternatively, should the Court grant AISLIC leave to amend its complaint further under RCFC 15, we respectfully request the Court to grant us 30 days from the date of that ruling to respond to the amended pleading pursuant to RCFC 12.

## ARGUMENT

### I. The Government's Motion To Dismiss The September 2005 Transfer Complaint Is Not Moot And Should Be Granted

#### A. AISLIC Cannot Amend Its Transfer Complaint As Of Right

AISLIC argues that the Government's motion to dismiss its September 2005 transfer complaint (which was the first complaint filed by AISLIC in this Court, but the third complaint filed in this case) is "moot" in light of the proposed amended complaint filed by AISLIC on January 27, 2006. Pl. Br.3. Our pending motion is not moot, however, for at least two reasons.

First, AISLIC's most recent proposed amended complaint cannot be filed without leave of the Court. Pursuant to RCFC 15(a), a party may amend a pleading once as of right, before a responsive pleading is filed, but it may amend thereafter "only by leave of court or by written consent of the adverse party . . . ." AISLIC, however, filed a "First Amended Complaint" (excerpts of which we attach) on December 22, 2004, before the district court transferred the case to this Court for continued proceedings. See 28 U.S.C. § 1631 ("[T]he action . . . shall proceed as if it had been filed in . . . [this Court] on the date upon which it was actually filed in . . . the court from which it is transferred."); RCFC 3.1(a)(1) (no additional filing fee for transferred case); see also Pl. Br. 6 n.4 (arguing transfer order was not "final"). Accordingly, unless and until leave to amend is requested by AISLIC and granted by this Court, the September 2005 complaint remains the operative complaint in this case.

Second, as we demonstrate below, AISLIC's proposed amended complaint cannot cure certain fatal defects in the September 2005 transfer complaint. We begin, therefore, by reviewing the deficiencies of counts 1 and 2 of the transfer complaint. (We need not revisit count 3, which

seeks purely declaratory relief and which AISLIC has properly abandoned. Pl. Br. 4 n.3, 17.) In section II of this brief, we will demonstrate that similar deficiencies invalidate each count in AISLIC's January 2006 proposed amended complaint, which should, therefore, not be accepted.

B. The Initial Absence Of Ripeness (Or Standing) Cannot Be Cured By Amendment Under RCFC 15

The threshold defect of AISLIC's claims is the absence of jurisdiction. AISLIC alleges it is equitably subrogated, as an insurer, to the City of Alameda and the Alameda Reuse and Development Authority (collectively, "the City"). Transf. Compl. ¶ 2.[2] However, the district court, noting that AISLIC never alleged in that court that it had fully compensated its insureds, dismissed AISLIC's claims under the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA") as "unripe." American Intl. Spec. Lines Ins. Co. v. United States, No. C 04-01591 CRB, slip. op. at 7 (N.D. Cal. March 24, 2005). Our moving brief demonstrated that the district court's rationale also requires dismissal of the claims in the transfer complaint as unripe. Def. Mot. 11-12.

Ripeness is an aspect of subject matter jurisdiction and thus is "determined as of the date of the filing of the complaint," disregarding "events that unfolded after the filing of the complaint . . . ." Kitty Hawk Aircargo, Inc. v. Chao, 418 F.3d 453, 460 (5th Cir. 2005); see Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 830 (1989); 15 Moore's Federal Practice

---

[2] In an effort to avoid compounding confusion, we cite the "Amended Complaint" filed in this Court in September 2005 after the transfer as the "Transfer Complaint" ("Transf. Compl."). We cite the complaint filed by AISLIC on January 27, 2006, which is titled the "First Amended Complaint," as "1st Am. Compl." – although, as noted, it certainly does not represent AISLIC's "first" amendment of its pleading in this lawsuit.

¶ 101.73[1] (2005). (The authorities upon which AISLIC relies either predate Newman-Green or stand only for the undisputed proposition that plaintiff may amend its complaint, including jurisdictional allegations, once as of right. See Pl. Br. 3-4.) AISLIC cannot, therefore, rely upon events that allegedly occurred after this lawsuit was filed as a basis for jurisdiction. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 570 n.4 (1992) ("It cannot be that [Federal agencies] retroactively created a redressability (and hence a jurisdiction) that did not exist at the outset.").

It follows that AISLIC is mistaken to argue it has cured the lack of ripeness found by the district court (i.e., AISLIC's lack of standing to sue as an equitable subrogee) by compensating its insureds under their policy or policies. Pl. Br. 5. AISLIC allegedly paid its insureds during the pendency of this case, sometime in November 2005. See id.; 1st Am. Compl. ¶¶ 51-52. (AISLIC's brief and pleading allege different dates.) This alleged fact cannot retroactively create jurisdiction. E.g., Lujan, 504 U.S. at 570-71 & n.4. Because AISLIC was not subrogated to the City when this lawsuit was filed (or even when the transfer complaint was filed in this Court), the Court should dismiss AISLIC's remaining claims as unripe. "It is not enough for [plaintiff] to attempt to satisfy the requirements of standing as the case progresses." Perry v. Village of Arlington Hgts., 186 F.3d 826, 830 (7th Cir. 1999).

AISLIC argues, in the alternative, that the district court erred in finding it not equitably subrogated to the City. AISLIC argues that, pursuant to "Federal common law," it was not obliged to make its policyholders whole before asserting equitable subrogation claims, because the insureds had so agreed. Pl. Br. 6 (citing Barnes v. Independent Auto. Dealers Assoc. of Cal. Health & Welfare Ben. Plan, 64 F.3d 1389, 1394 (9th Cir. 1995)). To the extent this argument relies upon Ninth Circuit law, it would have been better addressed to the district court in a

motion for reconsideration under Rule 60. (Contrary to AISLIC's assertion, id. n.4, Rule 60 governs relief from interlocutory orders.) In any event, as noted in our moving brief, AISLIC's argument is contrary to the law of this Circuit, under which a surety may proceed as an equitable subrogee of an insured only after it has "fulfilled the obligation" of its insured and extinguished the insured's liabilities. See National Sur. Corp. v. United States, 118 F.3d 1542, 1545 (Fed. Cir. 1997) (quoting Prairie Nat. Bank v. United States, 164 U.S. 227, 232-33 (1896)). This sensible rule of this Circuit ensures that only one party – either a contractor or an insurer – can sue the Government upon a given claim for damages.

As AISLIC notes, in United States Fidelity & Guarantee Co. v. United States, 201 Ct. Cl. 1, 475 F.2d 1377 (1973), the Court of Claims ruled that, "in consideration . . . of the general equitable obligation that the Government owes, under proper circumstances, to the subcontractors who are . . . laborers and materialmen," it would consider reopening its judgment of dismissal "if within 60 days . . . the surety shows to the court that it has paid the subcontractors in full." 475 F.2d at 1385 (emphasis added), cited in Pl. Br. 7. However, U.S. Fidelity, decided in 1973, did not apply the more recent case law, cited above, clarifying that ripeness cannot be created after a complaint is filed. E.g., Lujan, 504 U.S. at 570-71 & n.4.

Assuming, further, that the equitable factors that underlay the U.S. Fidelity court's willingness to reopen its judgment, see 475 F.2d at 1381 ("Clearly, [the unpaid subcontractors] are entitled to this fund on the equities . . . ."), were relevant to jurisdiction (which they are not), AISLIC does not argue that similar equitable concerns exist here. The Court should, therefore, dismiss this equitable subrogation lawsuit entirely, as unripe, in accordance with the analysis and ruling of the district court earlier in this case.

C. Assuming Jurisdiction Is Found, Count 1 Of The Transfer Complaint Fails To State A Claim For Statutory Indemnification

AISLIC's assertion that our motion to dismiss its transfer complaint upon ripeness grounds reflects "no more than an attempt to avoid the merits" makes little sense, inasmuch as a dismissal upon that basis should be without prejudice. See Pl. Br. 7. In any event, should the Court conclude it possesses jurisdiction, we demonstrated that it should dismiss counts 1 and 2 of the transfer complaint for failure to state claims upon which the Court could grant relief. Def. Br. 15-30. (As noted, AISLIC has abandoned count 3.)

1. Our Motion Is Procedurally Proper

AISLIC cites no support for its criticism of our reliance upon exhibits to its transfer complaint. Pl. Br. 4-5. Exhibits constitute part of a complaint "for all purposes." RCFC 10(c) (emphasis added); see Morris v. United States, 33 Fed. Cl. 733, 745 n.11 (1995). Moreover, documents cited in a complaint may be consulted under RCFC 12(b)(6), whether or not they are attached to it. E.g., Pension Benefit Guar. Corp. v. White Consolid. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). AISLIC ignores, as well, the authorities we cited establishing that, in resolving our motion to dismiss, the Court should not presume the truth of "conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998), "legal conclusions proffered as factual allegations," or "conclusory allegations without any supporting facts . . . ." Hanson v. United States, 13 Cl. Ct. 519, 530 (1987) (citing Briscoe v. LaHue, 663 F.2d 713 (7th Cir. 1981)). All three types of faulty allegations pervade AISLIC's pleadings, as discussed below.

2. There Was No "Claim" Against The City For Purposes Of Section 330

AISLIC confirms in its brief that it misconstrues the legal requirements for indemnification under section 330 of the National Defense Authorization Act of 1993, as amended, 10 U.S.C. § 2687 note ("Section 330"), which forms the basis for count 1 of the transfer complaint. Section 330, by its terms, indemnifies a transferee of closed military property against claims by third parties for personal injury or property damage suffered by those third parties. The statute does not apply here, as AISLIC does not allege that the DTSC, or any other third party, sought to recover from the City for damage suffered by the third party.

Section 330(a) provides that a party seeking indemnification must establish that it has encountered a

> suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for personal injury or property damage (including death, illness, or loss of or damage to property or economic loss) that results from, or is in any manner predicated upon, the release or threatened release of any hazardous substance or pollutant or contaminant as a result of Department of Defense activities at any military installation (or portion thereof) that is closed pursuant to a base closure law.

(Emphasis added.) Our moving brief demonstrated that the 2002 letter to the City from the California Department of Toxic Substances Control ("DTSC"), explaining how the City could avoid environmental liability when demolishing structures located at the East Housing area of the former Naval Air Station Alameda (Transf. Compl. Exh. 2, Tab 7), was not a "claim for personal injury or property damage" within the meaning of Section 330(a). Def. Br. 18-23.

AISLIC argues that "Section 330(a) explicitly provides for indemnification from and against any suit, claim, demand or action, liability, judgment, cost or other fee." Pl. Br. 12

(emphasis in original). AISLIC is misreading the act. Section 330(a) covers, instead, only liabilities "arising out of any claim for personal injury or property damage" relating to military activities at a covered base (emphasis added). The latter, "arising out of," clause imposes a limitation upon the general categories quoted by AISLIC ("any suit, claim, demand or action, liability, judgment, cost or other fee"). This limitation obligates AISLIC to point to a "claim for personal injury or property damage" from which the damages it seeks "aris[e]." Suits, claims, demands, liabilities, costs, etc. that do not "aris[e]" from a "claim for personal injury or property damage" are excluded from the scope of the Section 330 indemnity.

We demonstrated that the City faced no "claim" that could provide a basis for indemnification under Section 330. Def. Br. 18-20. AISLIC's bare allegation that the California DTSC filed a qualifying "claim" against the City, by allegedly "requir[ing] the City to monitor, remove and dispose of" pesticide-treated soil at the East Housing area, Pl. Br. 12-13, is only a mistaken legal conclusion "proffered as" an allegation of fact. See Hanson, 13 Cl. Ct. at 530. Indeed, AISLIC confirms that this is a legal, not a factual issue, by arguing that "many cases dealing with recovery under insurance policies hold that a requirement by a state or federal agency to engage in a cleanup can constitute a 'claim' or 'suit.'" Pl. Br. 12 (emphasis added); see also id. at 14 (citing insurance decisions interpreting "property damage").[3]

We agree that those insurance decisions exist. As we noted, however, authorities construing private insurance contracts simply do not bear upon the interpretation of Section 330

---

[3] As discussed below, the DTSC did not actually "require" a cleanup, but only advised the City how to avoid liability, assuming it chose to demolish the structures at the site. AISLIC briefly mentions a "Community Reuse Plan" for the site, but does not argue that this constituted a "claim" or a "requirement," either. See Pl. Br. 2, 13 (simply noting the plan was "approved and recommended" by the Navy). The Community Reuse Plan is immaterial to our motion.

– which is legislation, not a contract, and which does not, in any event, provide insurance. Def. Br. 21-22. Among other crucial distinctions, insurance policies are construed liberally, pursuant to the canon of contra proferentem, in favor of finding complete insurance coverage. See Hugo Boss Fashions, Inc. v. Federal Ins. Co., 252 F.3d 608, 615 (2d Cir. 2001). Absolutely no such presumption of liberality applies when construing Section 330. To the contrary, the legislation should be read as a whole and in accordance with ordinary principles of statutory interpretation. E.g., Lamie v. United States Trustee, 540 U.S. 520, 530 (2004).

AISLIC reads the term "claim" to encompass virtually "any" circumstance that causes a party seeking indemnification to incur a "cost." See Pl. Br. 12. That reading is unreasonable. In addition to conflicting with the ordinary meaning, outside the private insurance context, of a "claim for . . . property damage," AISLIC's expansive reading clashes, as we have noted, with other language of Section 330. For example, Section 330(c)(1) provides that if the Secretary of Defense determines that indemnification may be available, the Secretary may "settle or defend, on behalf of [the indemnitee], the claim for personal injury or property damage." This provision makes no sense if the term "claim" is not understood to mean an actual or potential legal or administrative proceeding. The use of the term "plaintiff," in Section 330(d), to describe a party asserting a "claim for personal injury or property damage" against the alleged indemnitee, further confirms that the drafters intended to refer to a lawsuit or similar action.

Congress' use of these commonly understood legal terms – "plaintiff," "damage," and "settle or defend" – establishes that the term "claim" in Section 330(a) refers to an actual legal claim by a third party against the party seeking indemnification. By AISLIC's own description, the California DTSC did not pursue a "claim" against the City. The DTSC was not a "plaintiff"

claiming compensation for "damage." AISLIC wrongly asserts that New London Development Corp., ASBCA No. 54535, 05-2 BCA ¶ 33,018, supports its interpretation. See Pl. Br. 12. In fact, the board in New London, which was construing a contract, nowhere considered whether there was a "claim" against the contractor within the meaning of that agreement. Instead, the board mistakenly skipped directly to construing the contractual term "property damage."

We know of no court or board decisions construing Section 330(a), in fact. The absence of precedent does not render the word "claim" in Section 330(a) ambiguous or difficult to apply here, however. Nor does this issue involve matters outside the pleadings: We accept, for purposes of this motion, AISLIC's allegation that the DTSC sent the May 2002 letter to the City. We have rebutted AISLIC's legal argument that the DTSC pursued a "claim" within the meaning of the statute.

3. Assuming The DTSC Filed A "Claim," It Was Not For "Property Damage"

Not only does AISLIC allege no facts indicating that the DTSC pursued a "claim"; AISLIC wholly fails to allege that the DTSC asserted any "property damage" within the meaning of Section 330(a). AISLIC attempts to avoid the issue by arguing that the City's "cleanup costs are property damage." See Pl. Br. 13-14. That argument is irrelevant: As noted above, the question under Section 330(a) is whether a third party (the DTSC) filed a claim against the City for property damage. AISLIC does not even allege that this occurred. Additionally, AISLIC's argument that the City's cleanup costs could be "property damage" would render Section 330(a) incoherent : Under AISLIC's reading, the act would indemnify the City against itself, i.e., against a "suit, claim, demand or action, liability, judgment, cost or other fee arising out of any claim for [the City's own cleanup costs]," which makes no sense. The absence of a colorable allegation

that the DTSC's supposed "claim" against the City was founded upon statutory "property damage" constitutes an independent basis to dismiss AISLIC's Section 330 count.

Assuming the Court addresses this issue further, AISLIC's argument that the term "property damage" in Section 330(a) encompasses the City's remediation "costs" raises a question of statutory interpretation that, contrary to AISLIC's argument, would not require the Court to draw any factual "inferences" id. at 14, and is, therefore, well-suited to resolution on a motion to dismiss. See, e.g., Mason v. American Tobacco Co., 346 F.3d 36, 38 (2d Cir. 2003) ("Because the defendants' motion to dismiss rests upon a narrow issue of statutory construction, an extensive discussion of the facts is not required."). As in its arguments concerning the term "claim," AISLIC relies upon judicial decisions construing the terms "damages" and "property damage" in insurance policies. See Pl. Br. 14. This is not an insurance case, however, and the presumption in favor of finding coverage does not apply. Even so, some insurance decisions cited by AISLIC support our position, despite the legal presumption in favor of policy holders.

The Second and D.C. Circuits held in Gerrish Corp. v. Universal Underwriters Insurance Co., 947 F.2d 1023 (2d Cir. 1991), and Independent Petrochemical Corp. v. Aetna Casualty & Surety Co., 944 F.2d 940 (D.C. Cir. 1991), that insurance policies covering amounts paid as "damages" obligated the insurers "to pay all sums [an insured was] ordered by a court to pay" to a third party. Gerrish, 947 F.2d at 1030 (emphasis added) ; see Independent Petro., 944 F.2d at 947 ("costs the insured is legally obligated to pay to the United States and Missouri as reimbursement for . . . remedying environmental harm") (emphasis added). Because no court or other tribunal "ordered" the City to pay the DTSC any money, AISLIC would fail to state a claim under the Gerrish and Independent Petrochemical interpretations of "damages" even if those

decisions were relevant. And, although New London, 05-2 BCA ¶ 33,018, was not an insurance case, the board's interpretation of the contract term "property damage" turned upon language in that contract that is conspicuously absent from Section 330: Unlike Section 330, that contract defined "property damage" as including costs "similar" to CERCLA response costs.

By contrast, as demonstrated in our motion, Section 330 adopts language and concepts directly from CERCLA and should be read in harmony with the latter statute. Def. Br. 20-21.[4] It is settled law that, regardless of how insurance policies may be construed, "[u]nder CERCLA, cleanup costs are not substantially equivalent to compensatory damages for injury to or destruction of the environment," Continental Ins. Co. v. Northeastern Pharm. & Chem. Co., 842 F.2d 977, 986 (8th Cir. 1988) (en banc); accord Gussack Realty Co. v. Xerox Corp., 224 F.3d 85, 91 (2d Cir. 2000), and, further, "CERCLA is not a general vehicle for toxic tort claims." Young v. United States, 394 F.3d 858, 862 (10th Cir. 2005). Against the backdrop of CERCLA, Congress' use of the limiting term "property damage" in Section 330(a) – as well as its complete omission of any reference to "cleanup costs" – plainly reflects a legislative intent not to include a transferee's own cleanup costs within the types of "claims" from which costs reimbursable by the Government under Section 330 may "arise."

Again, however, the precise meaning of "property damage" is immaterial, given that AISLIC does not allege that the DTSC sought to recover from the City for "damage" of any kind.

---

[4] Equitable actions to recover cleanup costs were already available under CERCLA sections 107 and 113, 42 U.S.C. §§ 9607 and 9613, when Section 330 was enacted.

4. Assuming There Was A Qualifying "Claim," It Did Not Result From A "Release Or Threatened Release" Caused By Military Activities

We further demonstrated that AISLIC fails to state a claim for Section 330 indemnification because, even assuming the California regulators asserted a claim, it was not a claim based upon a "release or threatened release" of a CERCLA-regulated substance attributable to the Department of Defense, as required by Section 330(a). Def. Br. 23-27. In its response, AISLIC again overlooks the fact that its Section 330 claim must be based upon the supposed "claim" that was actually asserted by the regulators against the City. Pl. Br. 15-16. AISLIC alleges that the military caused a "release" within the meaning of CERCLA by applying pesticide at the East Housing area, and that the City did not contribute to the need for a cleanup. Id. The fatal flaw in both arguments is that they conflict with the May 2002 advisory from the DTSC, which, under AISLIC's theory, constitutes the underlying "claim." Transf. Compl. Exh. 2, Tab 7.

The DTSC unambiguously advised the City in May 2002 that, if the City chose to leave the military structures in place at the East Housing site, no actionable "release" of the "properly applied" termiticide would occur. Id. Because the DTSC's May 2002 letter is the supposed "claim" against the City for purposes of Section 330, it simply does not matter what AISLIC now alleges with respect to the military's pesticide use: The supposed "claim" indicates upon its face that it was not founded upon any "release or threatened release" caused by the military.

AISLIC cannot run from the DTSC letter, which forms the very foundation of its Section 330 count. See Venture Assocs. Corp. v. Zenith Data Sys. Corp., 987 F.2d 429, 431 (7th Cir. 1993) (noting "defendant may introduce [with a motion to dismiss] certain pertinent documents if the plaintiff failed to do so"). The DTSC merely advised the City how to avoid liability by

removing soil from around the structures at the East Housing site, if the City chose to demolish those structures, rather than leaving them in place. The DTSC's letter did not even recommend demolition. Thus, even assuming the DTSC asserted a "claim," it was not a "claim" based upon an environmental condition described by Section 330(a), and Section 330 is not triggered.

D. Assuming Jurisdiction Is Found, Count 2 Fails To State A Claim For Breach Of Deed Covenants

Our motion also established that, even assuming this lawsuit is ripe, AISLIC cannot establish that the Federal Government breached the covenants contained in the deed conveying the East Housing property to the City, in that those covenants provided only that the Navy would conduct any further remedial action "necessary" for hazardous substances at the site. Def. 27-29; see Def. App. 5.[5] AISLIC now attempts to revise and extend its breach allegations. See Pl. Br. 9. However, the documentary record accompanying the transfer complaint, which it is entirely appropriate to consider on a motion to dismiss, establishes that there was no actionable breach, since the only soil that AISLIC asserts the City was "required" by the California regulators to remediate was soil that the regulators had found was not hazardous to human health in its "existing" state. See Transf. Compl. Exh. 2, Tab 7.

The City was not even "required" to remove the treated soil, provided it did not demolish the structures. Id. The pleadings thus demonstrate that the soil remediation performed by the City was neither "necessary," nor "required" by the DTSC, nor based upon a "threatened release"

[5] Our paraphrase of the deed covenants in the summary of our argument was inadvertently overbroad. See Def. Br. 8-9. The covenants, quoted at pages 27-28 of our moving brief, provide only for "necessary" remediation of a "hazardous substance existing on the Property" on the date of transfer. Also, "hazardous substance" is defined in 42 U.S.C. § 9601(14), not section 9601(22), as we stated. We regret these errors.

attributable to the Federal Government. Since this litigation is, and has always been, founded upon the DTSC's May 2002 letter regarding the pesticide-treated soil – and since the DTSC did not "require" any remediation of any soil left at the property by the United States – AISLIC's count 2 fails to state a claim for contractual relief.

## II. The Court Should Reject AISLIC's Proposed Amended Complaint As Futile

It is unclear whether the Government is obligated to address AISLIC's proposed amended complaint, given that AISLIC has not filed a motion for leave to amend as required by RCFC 15(a). The Court should deny AISLIC leave to amend, however, as the proposed amendments cannot remedy the core defects of the transfer complaint and would, therefore, be futile.

Futility is an established basis for denying leave to amend. See Foman v. Davis, 371 U.S. 178, 182 (1962); Herndon v. United States, 36 Fed. Cl. 198, 202-03 (1996), aff'd, 121 F.3d 727 (Fed. Cir. 1997). The Court "is justified in denying an amendment if the proposed amendment could not withstand a motion to dismiss," Glick v. Koenig, 766 F.2d 265, 268 (7th Cir. 1985), especially where the Court would lack jurisdiction to entertain the new claims. See Herndon, 36 Fed. Cl. at 202; Black v. United States, 24 Cl. Ct. 471 (1991).

We demonstrated above that AISLIC's proposed amendments cannot cure the fact that this lawsuit was unripe when filed. The January 2006 proposed "First Amended Complaint" should be rejected as futile upon that jurisdictional basis alone. E.g., Black, 24 Cl. Ct. at 476.

Should it be necessary to address AISLIC's proposed amended claims upon their merits, the points we have demonstrated above with respect to AISLIC's September 2005 transfer complaint also support denying AISLIC leave to file the new pleading.

The January 2006 "First Amended Complaint" contains eight counts. Four of these – the first, second, fifth, and sixth – are identical in substance to counts 1 and 2 of the September 2005 transfer complaint. (The first and second counts of the January 2006 complaint separately allege breaches of the two deed covenants that were addressed together in count 2 of the September 2005 complaint. 1st Am. Compl. ¶¶ 53-72. The fifth count of the January 2006 complaint is the Section 330 count, equivalent to count 1 of the transfer complaint. Id. ¶¶ 106-119. The sixth count of the January 2006 complaint alleges that Section 330 is incorporated into the deed of transfer but adds no legal substance.) These four counts fail for the reasons given above.

Counts three, four, seven, and eight of the January 2006 "First Amended Complaint" are new. Their defects, however, are readily identified in light of our discussion above. Count three alleges contractual misrepresentation. Id. ¶¶ 73-88. It rests upon the allegation that the Government stated in section II.F.1.a of the East Housing deed that a separate document, the Finding of Suitability for Transfer ("FOST"), "listed the pesticides that may have been used on the Property." Id. ¶ 75. Simple inspection of the cited provision is enough to establish that this count fails to state a claim: The deed contains no such representation. Section II.F.1.a of the deed states generally that a FOST was prepared. It says nothing specific about what the FOST contains, and certainly nothing about pesticides.

AISLIC, however, "must allege a connection between the government's [supposed] misrepresentation and an express contract term." D.V. Gonzalez Elec. & Gen. Contrs. v. United States, 55 Fed. Cl. 447, 459 (2003) (emphasis added); accord C.B.C. Enterps., Inc. v. United States, 24 Cl. Ct. 1, 5 (1991) ("[T]here is simply no nexus alleged between the Government's allegedly tortious breach of these implicit conduct obligations and any express term of the

contract."). AISLIC's criticisms of the FOST, see 1st Am. Compl. ¶¶ 76-80, regardless of their validity, simply have no nexus with express obligations created by the East Housing deed.

Count four of the proposed complaint alleges in conclusory fashion that the Government failed to disclose in Exhibit B of the East Housing deed that chlordane and/or other pesticides, which allegedly are hazardous substances, "were stored for one year or more, released and/or disposed of on the Property." Id. ¶ 94. As noted above, the Court should not presume the truth of such "conclusory allegations without any supporting facts . . . ." Hanson, 13 Cl. Ct. at 530.[6] AISLIC has never alleged any factual basis, other than the May 2002 finding by the California DTSC, to conclude that pesticides existed in the soil at this site – and the DTSC's letter confirms that this pesticide was "properly applied" and posed no actionable hazard as long as the nearby structures remained intact. Transf. Compl. Exh. 2, Tab 7. Stated differently, even assuming there was a misrepresentation by the Navy, it did not cause the costs AISLIC seeks to recover. Because we know, from AISLIC's own exhibits, that the DTSC required the City to remove the soil only because the City chose to demolish the structures, and the DTSC would not have required remediation otherwise, count four transparently fails to state a claim for damages.

Count seven of AISLIC's January 2006 proposed complaint advances substantially the same allegations as count four, concerning a supposed failure by the United States to disclose pesticide use, except that count seven couches the alleged injury as a breach of a memorandum of agreement ("MOA") allegedly executed by the Federal Government and the City in connection with the transfer of the East Housing property. 1st Am. Compl. ¶¶ 137-153. AISLIC can obtain

---

[6] We would demonstrate, if necessary, that the Navy's pesticide use was discussed and fully disclosed in the preparation of the environmental impact statement supporting the transfer.

no more contractual relief under count seven than under count four, which is to say, no relief, since AISLIC alleges no factual basis for its conclusory allegation that the supposed misrepresentation caused the City any actual injury. Again, the only costs the City has ever been alleged to have incurred for pesticide remediation at this site arose in connection with the City's demolition and thus have no connection with any of the conclusory allegations of pesticide use and non-disclosure that AISLIC now seeks to raise in an attempt to salvage a claim for relief.

Finally, count eight of AISLIC's latest proposed amended complaint alleges that the Government breached a promise allegedly made in the memorandum of agreement to indemnify the City against claims and costs "solely arising out of the use or release of any toxic or hazardous wastes, substances, or materials" by the United States at the East Housing property. 1st Am. Compl. ¶ 157 (quoting MOA) (emphasis added). As a threshold matter, assuming it is any broader than Section 330, this alleged, open-ended indemnity would be void ab initio under the Anti-Deficiency Act, which bars Federal officials from entering into "a contract or obligation for the payment of money before an appropriation is made [to satisfy the obligation] unless authorized by [another] law," 31 U.S.C. § 1341(a)(1)(B), and thus renders uncapped indemnities not expressly authorized by Congress unenforceable. See Hercules Inc. v. United States, 516 U.S. 417, 426-27 (1996); California-Pacific Utils. Co. v. United States, 194 Ct. Cl. 703, 715 (1971) (per curiam). The Navy lacks statutory authority to promise transferees indemnification broader than the coverage that Congress has provided in CERCLA and Section 330.

Even if the alleged indemnity were not void, however, it is impossible, as we have repeatedly noted, for AISLIC to allege meaningfully at this point in the lawsuit that the costs the City incurred as a result of the DTSC's May 2002 advisory letter, and the City's decision to

demolish the buildings at the site, arose "solely," or even partly, from the Government's use of a "hazardous" substance. AISLIC's pleadings establish, to the contrary, that (i) the termiticide properly applied by the Navy at the site was not, and would not have been, deemed "hazardous" by the responsible regulators as long as the buildings remained standing, and (ii) the removal of the treated soil resulted from the City's own decisions after the transfer of ownership. Thus, there could be no breach of any alleged promise to indemnify the City against costs attributable "solely" to activities of the United States.

It would be futile, in sum, to permit any of the counts of the January 2006 proposed complaint to proceed.

## CONCLUSION

For the reasons given above, we respectfully request the Court to dismiss the September 2005 transfer complaint, deny AISLIC leave to file the proposed "First Amended Complaint," and dismiss this lawsuit. Alternatively, if a response to the "First Amended Complaint" is required, we respectfully request the Court to allow the Government to file its response 30 days after the date the Court so rules.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/
DAVID M. COHEN
Director

OF COUNSEL:

MARY RAIVEL
Senior Trial Attorney
Naval Litigation Office
Office of the General Counsel

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

February 24, 2006

CERTIFICATE OF FILING

I certify that on February 24, 2006, the attached brief was filed electronically. Service is complete upon filing and parties may access this filing through the Court's system.

s/Kyle Chadwick