No. 05-1020C
Judge Margaret M. Sweeney

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY

Plaintiff,

v.

UNITED STATES OF AMERICA,

Defendant.

# PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO FIRST AMENDED COMPLAINT

T. Michael Guiffré
J. Gordon Arbuckle
Daniel R. Addison (pending admission *pro hac vice*)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

*Attorneys for Plaintiff American International Specialty Lines Insurance Company*

March 10, 2006

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................... ii

SUMMARY .................... 1

ARGUMENT .................... 2

I. AISLIC Properly Filed Its First Amended Complaint As A Matter of Right .................... 2

II. Alternatively, AISLIC Respectfully Requests That The Court Treat Its First Amended Complaint As Seeking Leave To Amend, And Grant Its Request .................... 5

III. AISLIC Has Properly Exercised Its Subrogation Rights Pursuant To Its Contract With The City, And Has Fully Paid All Claims On Behalf Of The Insured .................... 7

IV. AISLIC's First Amended Complaint States A Claim .................... 12

V. The Government Should Not Be Able To File A Second Motion To Dismiss Because It Has Already Contested Whether AISLIC's First Amended Complaint States A Claim .................... 17

CONCLUSION .................... 18

PROPOSED ORDER .................... Tab 1

## TABLE OF AUTHORITIES

### CASES

*American Airlines v. United States*,
68 Fed. Cl. 723 (2005) .......... 13

*American Int'l Specialty Lines, Ins. Co. v. United States*,
No. C 04-01 591, slip op. (N.D. Cal. March 24, 2005) .......... 11

*Badgely v. United States*,
31 Fed. Cl. 508 (1994) .......... 14

*Balboa Ins. Co. v. United States*,
3 Ct. Cl. 543, 545 (1983) .......... 13

*Barnes v. Indep. Auto. Dealers Ass'n of Calif. Health & Welfare Benefit Plan*,
64 F.3d 1389 (9th Cir. 1995) .......... 8, 9

*Bernard v. United States*,
59 Fed. Cl. 497 (2004) .......... 13

*Best v. United States*,
14 Cl. Ct. 720 (1988) .......... 3

*Black v. United States*,
24 Cl. Ct. 471 (1991) .......... 5, 6, 7, 8

*CTA Inc. v. United States*,
44 Fed. Cl. 684 (1999) .......... 14

*DFK Enter., Inc. v. United States*,
45 Fed. Cl. 280 (1999) .......... 14

*Demarco Durzo Dev. Co. v. United States*,
60 Fed. Cl. 632 (2004) .......... 16

*Devon Energy Corp. v. United States*,
45 Fed. Cl. 519 (1999) .......... 3

*Effingham County Bd. of Educ. v. United States*,
9 Cl. Ct. 177, 180 (1985) .......... 5

*Foman v. Davis*,
371 U.S. 178 (1962) .......... 5

*Frederick Fell Publishers, Inc. v. Lorayne*,
422 F. Supp. 808 (D.C. N.Y. 1976) .......... 6

*Glick v. Koenig*,
766 F.2d 265 (7th Cir. 1985) .......... 7, 8

*Herndon v. United States*,
36 Fed. Cl. 198 (1996) .......... 5, 7, 8

*Jaynes v. United States*,
68 Fed. Cl. 747 (2005) .......... 4

*Kitty Hawk Aircargo, Inc. v. Chao*,
418 F.3d 453 (5th Cir. 2005) .......... 12

*Liberty Mut. Ins. Co. v. United States*,
No. 04-254 C, 2006 WL 465845, 18 (Fed. Cl. Feb. 27, 2006) .......... 10, 11

*Mullaney v. Anderson*,
342 U.S. 415 (1952) .......... 7, 12

*National Sur. Corp. v. United States*,
118 F.3d 1542 (Fed. Cir. 1997) .......... 12

*Newman-Green, Inc. v. Alfonzo-Larrain*,
490 U.S. 826 (1989) .......... 11

*Northern. Buckeye Educ. Council Group Health Benefits Plan v. Lawson,*
814 N.E.2d 1210 (Ohio 2004) .......... 9

*Perry v. Village of Arlington Heights*,
186 F.3d 826 (7th Cir. 1999) .......... 7, 8

*Peterson v. United States*,
68 Fed. Cl. 773 (2005) .......... 13

*State of Alaska v. United States*,
15 Cl. Ct. 276, 280 (1988) .......... 6

*St. Paul Fire & Marine Ins. Co. v. United States*,
31 Fed. Cl. 151 (1994) .......... 5

*United States v. Hougham*,
364 U.S. 310 (1960) .......... 6

*United States v. Baroid*,
346 F. Supp.2d 138 (D.D.C. 2004) .......... 17

*Womack v. United States*,
389 F.2d 793 (Ct. Cl. 1968) .......... 14

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
401 U.S. 321 (1970) .......... 6

**STATUTES**

28 U.S.C. § 1631 .......... 3

Anti-Deficiency Act, 31 U.S.C. § 1341 .......... 16

National Defense Authorization Act of 1993, 10 U.S.C. § 2687 .......... 17

**RULES**

Fed. R. Civ. P. 12(b)(6) .......... 13, 14, 16

Fed. R. Civ. P. 21 .......... 12

RCFC 3.1 .......... 3, 4

RCFC 7 .......... 1

RCFC 7.2 .......... 1

RCFC 8 .......... 2, 13

RCFC 12 .......... 2, 13, 17, 18

RCFC 15(a) .......... *passim*

RCFC 26(a) .......... 4

RCFC App. A ¶ 3 .......... 4

**MISCELLANEOUS**

83 C.J.S. *Subrogation* § 4 .......... 9, 12

46A C.J.S. *Insurance* § 1465 .......... 9

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | No. 05-1020C |
| v. | ) | Judge Margaret M. Sweeney |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY TO DEFENDANT'S**
**OPPOSITION TO FIRST AMENDED COMPLAINT**

Plaintiff American International Specialty Lines Insurance Company ("Plaintiff" or "AISLIC") respectfully submits, pursuant to Rules 7 and 7.2 of the Rules of the United States Court of Federal Claims ("RCFC"), this Reply to Defendant's Opposition to Plaintiff's First Amended Complaint (the "Opposition" or "Def.'s Opp'n").

SUMMARY

AISLIC properly filed, as a matter of right, its First Amended Complaint with this Court, pursuant to RCFC 15(a). The Government erroneously claims that AISLIC was required to seek leave to file its amended complaint because AISLIC previously filed an amended complaint in the Northern District of California. The Court Rules do not contain any restriction on amendments for cases transferred to this Court from another court. AISLIC has filed only one amended complaint with this Court, and the Government has not yet filed a responsive pleading. Therefore, AISLIC complied with Rule 15(a) by filing its amended complaint as a matter of course, and a motion for leave to file is unnecessary.

Alternatively, Plaintiff respectfully requests that the Court treat its First Amended Complaint as a request for leave to file an amended complaint. The Court has routinely permitted amendments

to pleadings, which are "freely given" pursuant to Rule 15(a). Particularly at this early stage of the proceedings, before the Government has filed an answer and discovery has commenced, AISLIC should be permitted to proceed on an amended complaint that provides more detailed information concerning the nature of its claims.

Contrary to the Government's allegations, AISLIC's amended complaint is not "futile." AISLIC properly brought suit to enforce its subrogation rights, as set forth in its contract with the City of Alameda and the Alameda Reuse and Redevelopment Authority (collectively, the "City" or the "insured"). The City contracted that upon making <u>any</u> claim payment, AISLIC would be subrogated to all of the City's rights against the Government. Even if the City had not contracted to provide AISLIC full subrogation rights upon making any payment, this claim is ripe because AISLIC <u>has</u> paid the City's claim in full, and the City has executed a subrogation receipt, acknowledging payment in full and subrogating its claims.

The Court should not grant the Government additional time to file a second motion to dismiss the First Amended Complaint. The Government uses its Opposition to contest whether Plaintiff's First Amended Complaint states a claim, and asks the Court to dismiss Plaintiff's lawsuit. Defendant cannot have a second bite at the apple. Therefore, Plaintiff respectfully requests that the Court issue an Order denying Defendant's Motion to Dismiss and granting Defendant 30 days to file an answer to the First Amended Complaint pursuant to RCFC 12(a).

## <u>ARGUMENT</u>

### I. <u>AISLIC Properly Filed Its First Amended Complaint As A Matter Of Right.</u>

By opposing AISLIC's right to file an amended complaint, the Government erroneously attempts to invoke a procedural rule to avoid the merits of AISLIC's claims. The Court should reject the Government's Opposition because Plaintiff filed its First Amended Complaint as a matter of right. Rule 15(a) provides that, "[A] party may amend the party's pleading once *as a matter of course*

at any time before a response is served." RCFC 15(a) (emphasis added). A party is only required to seek leave of the Court to amend its pleading if a responsive pleading has been filed. RCFC 15(a). In its First Amended Complaint, AISLIC noted that it was filing the amended pleading as a matter of right because the Government's Motion to Dismiss is not a responsive pleading within the meaning of Rule 15(a). First Amended Complaint ("First Am. Compl.") at 1, n.1 (citing *Devon Energy Corp. v. United States*, 45 Fed. Cl. 519, 525 (1999) ("Courts addressing this question in the Federal Rules context have held that a motion to dismiss is not a responsive pleading within the meaning of Fed.R.Civ.P. 15(a), and that a plaintiff is therefore entitled to amend its complaint notwithstanding that a motion to dismiss previously had been filed.")).[1] Therefore, Plaintiff did not need to seek leave to file its First Amended Complaint because the Government has not yet filed a responsive pleading.

The Government's Opposition does not contest Plaintiff's statement of the law or the fact that it has not yet filed a responsive pleading. Instead, Defendant argues that Plaintiff has filed two or three amended complaints. Def. Reply at 1. In doing so, the Government attempts to count pleadings filed in the Northern District of California as pleadings filed in this Court, without citing any case law supporting its position. The Government cites 28 U.S.C. § 1631, which provides that a transfer case is considered to have been filed on the date it was filed in the court from which it was transferred. Def.'s Opp'n at 2. This statute ensures that any statute of limitations does not continue to run if the case is filed in an improper court; it does not regulate any procedural rules concerning amended pleadings. *See Best v. United States*, 14 Cl. Ct. 720 (1988) (where transfer was effected from district court to Claims Court to cure want of jurisdiction, filing date of original district court action applied in Claims Court for limitations period). Similarly, the Government's reliance on RCFC

[1] "This court often looks to precedent under the Federal Rules of Civil Procedure where a gap exists in the case law governing its own rules." *Devon Energy Corp. v. United States*, 45 Fed. Cl. 519, 525-26 (1999).

3.1(a)(1), concerning filing fees, is inappropriate because it does not make any provision for amending pleadings. *See* Def.'s Opp'n at 2. If one were to accept the Government's logic that pleadings and events that occurred in the court from which the case has been transferred constitute pleadings and events in this Court, then the parties do not need to file initial disclosures or conduct a case management conference in this matter. *See* RCFC 26(a) and RCFC App. A ¶ 3. Under its view, if the Government had filed an answer in the Northern District of California, it would never file an answer in this Court.[2]

The Court should both reject the Government's strained attempts to find support for its position and avoid the adverse consequences of ruling that pleadings filed in another court constitute pleadings filed in this Court. Instead, the Court should simply apply the plain language of RCFC 15(a) permitting Plaintiff to file an amended complaint as a matter of course. AISLIC's First Amended Complaint is the first amendment to its complaint in this Court. AISLIC filed its Original Complaint in this Court on September 30, 2005. The Original Complaint was titled an amended complaint pursuant to RCFC 3.1(a)(2). AISLIC filed its First Amended Complaint on January 27, 2006. The Government does not contest that Plaintiff has filed only one amendment in this Court, and the Government does not contest that it has not yet filed a responsive pleading. Therefore, applying the plain language of RCFC 15(a), AISLIC did not need to seek leave of the Court to file its amended complaint, but rather properly filed its First Amended Complaint as a matter of course.

---

[2] At least one case discussing Rule 3.1(a)(2) indicates that this Court considers a transferred complaint the original complaint filed in the Court of Federal Claims. *See Jaynes v. United States*, 68 Fed. Cl. 747, 751 n.7 (2005) ("Although the district court transferred the case on May 18, 2004, plaintiffs did not file their original complaint in this court until June 15, 2004 because Rule 3.1(a)(2) of the Rules of the Court of Federal Clams ("RCFC") allows plaintiffs 28 days after the filing in this court of the district court record and the district court's order granting transfer within which to file a complaint in this court.") (emphasis added).

II. Alternatively, AISLIC Respectfully Requests That The Court Treat Its First Amended Complaint As Seeking Leave To Amend, And Grant Its Request.

Although Plaintiff complied with the Court's Rules when it filed its First Amended Complaint as a matter of course, Plaintiff alternatively and respectfully requests that the Court treat its First Amended Complaint as a request for leave to file an amended complaint pursuant to RCFC 15(a). Amendments to pleadings are liberally granted, particularly at the early stages of a matter where, as here, discovery has not yet commenced and the amendment will not prejudice the Government.

Under Rule 15(a), this Court may exercise its discretion to allow a party leave to file an amendment to its original pleading, and such leave is "freely given when justice so requires." RCFC 15(a) (emphasis added). "[A]ny justification for denying a motion to amend must be 'explicitly indicated.'" *Black v. United States*, 24 Cl. Ct. 471, 475 (1991) (quoting *Effingham County Bd. of Educ. v. United States*, 9 Cl. Ct. 177, 180 (1985)). "This suggests that it is 'an abuse of discretion to deny an amendment for lesser reasons.'" *Id.*

This court has applied the *Foman* "balancing test" for determining whether to grant amendments. *See, e.g., Herndon v. United States*, 36 Fed. Cl. 198, 202 (1996); *St. Paul Fire & Marine Ins. Co. v. United States*, 31 Fed. Cl. 151, 153-55 (1994). Specifically, the Supreme Court explained in *Foman v. Davis*, 371 U.S. 178, 182 (1962), that,

> Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded…. If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be 'freely given.'

Moreover, the Supreme Court in *Foman* specifically emphasized the consideration of "prejudice" to Rule 15(a) amendments, noting, "Rule 15…was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." *United States v. Hougham*, 364 U.S. 310, 316 (1960); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321 (1970) (Court similarly emphasized the need to find prejudice to opposing party). "Therefore, it is clear that absent a firm showing of prejudice to the opposing party, as a matter of law, an amendment to a complaint must be allowed." *Black*, 24 Cl. Ct. at 475; *see also State of Alaska v. United States*, 15 Cl. Ct. 276, 280 (1988) ("a showing of undue or substantial prejudice is an imperative to warrant the denial of a motion to amend a complaint").

Defendant has failed to demonstrate to the Court how AISLIC's amended complaint would cause undue delay or prejudice. Defendant has not alleged "bad faith" or suggested in any manner (with the possible exception of its futility argument) that it will be prejudiced if the parties proceed in this matter under the First Amended Complaint. To the contrary, the First Amended Complaint provides more detailed information concerning AISLIC's claims and supporting evidence, which will promote the fair and efficient adjudication of the controversy. As the Government has not yet filed an answer and the parties have not yet commenced discovery, this Court's practice of permitting amendments under Rule 15(a) is particularly appropriate at this early stage of the proceedings. *See Frederick Fell Publishers, Inc. v. Lorayne*, 422 F. Supp. 808, 811 (D.N.Y. 1976) ("In view of the liberal construction given Rule 15(a), which states that leave to amend 'shall be freely given when justice so requires,' and the fact that no discovery has yet commenced, leave to amend will be granted.") (internal quotation omitted). Therefore, if the Court determines that leave is required to file an amended complaint, the Court should grant leave to file the First Amended Complaint.

III. AISLIC Has Properly Exercised Its Subrogation Rights Pursuant To Its Contract With The City, And Has Fully Paid All Claims On Behalf Of The Insured.

As another basis for objecting to the First Amended Complaint, the Government argues that the amended complaint is "futile" because AISLIC had not fully compensated its insureds before filing its complaint, rendering the lawsuit "unripe." Def.'s Opp'n at 4, 15. In making this argument, it is unclear what the Government is hoping to achieve, as it does not really contest that AISLIC has paid the City's claim in full, but rather focuses on the timing of such payment. In doing so, the Government does not seek dismissal with prejudice, and AISLIC can simply re-file its claims immediately following any dismissal, which "would entail needless waste and runs counter to effective judicial administration." *Mullaney v. Anderson*, 342 U.S. 415, 417 (1952). In fact, the timing of AISLIC making final payment to the City is irrelevant because the City contracted to give AISLIC complete subrogation rights upon making any payment to the City. Now that AISLIC has fully compensated the City, the Government is attempting to elevate form over substance. The Government's superficial efforts to delay resolution of this dispute underscore the strength of AISLIC's claims.

Case law from this jurisdiction does not explicitly define what constitutes "futility" for purposes of denying a party leave to file an amended complaint; however, it does suggest that futility lies where a party's claims could not possibly survive, as a matter of law, despite the amendments. *See, infra, Black,* 24 Cl. Ct. 471; *Herndon v. United States*, 36 Fed. Cl. 198 (Fed. Cl. 1996); *Perry v. Village of Arlington Heights*, 186 F.3d 826 (7th Cir. 1999); *Glick v. Koenig*, 766 F.2d 265 (7th Cir. 1985). These authorities cited by the Defendant indicate that such a situation arises where, for example, the Court has no jurisdiction to hear the claim and, therefore, the proposed amendment could not withstand a motion to dismiss. Def.'s Opp'n at 15. These cases, however, are distinct from the matter currently before this Court. Specifically, the Court in *Herndon* denied a motion to amend where the plaintiffs lacked standing to assert a takings claim because they clearly did not hold title to the property at the

time of the alleged takings. *Herndon*, 36 Fed. Cl. at 201 ("It is well established that a party cannot maintain a takings claim unless it owned the property at the time the alleged taking occurred."). Similarly, the Court in *Black* denied a motion to amend where the plaintiff sought to add two new counts which, sounding in tort, were expressly excluded from its jurisdiction, as provided by the Tucker Act. *Black*, 24 Cl. Ct. at 476 ("Because Count II of plaintiff's first amended claim clearly sounds in tort, this court does not possess jurisdiction to hear the claim . . . ."). Both cases turn on legal principles that would, as a matter of law, preclude an amended complaint's survival on a motion to dismiss.[3]

Unlike the plaintiffs in the cases cited by the Government, AISLIC has a viable claim and has alleged facts which, if true, would entitle it to relief. AISLIC properly enforced its equitable rights to subrogation, as provided under both the plain meaning of its contract with the City and general principles of federal common law, the day AISLIC filed its complaint in the Northern District of California. AISLIC certainly had standing as of the date of its First Amended Complaint, since it had paid the City's claims in full and the City had executed a subrogation receipt, by which the City subrogated all of its rights, claims and interests in this matter to Plaintiff.

As set forth in Plaintiff's Opposition to Motion to Dismiss ("Opp'n Mot. Dismiss"), at 5-6, federal common law holds that, an insurance company cannot enforce the rights of the insured until the insured is fully compensated, <u>unless</u> there is an agreement to the contrary. *See Barnes v. Independent Auto. Dealers Ass'n of California Health & Welfare Benefit Plan*, 64 F.3d 1389, 1395 (9th Cir.

---

[3] *See also Perry v. Village of Arlington Heights*, 186 F.3d 826 (7th Cir. 1999) (plaintiff could not establish standing to challenge constitutionality of state and local laws authorizing seizure and disposal of abandoned vehicles by renting apartment in municipality at issue and obtaining title to vehicle after complaint was filed); *Glick v. Koenig*, 766 F.2d 265 (7th Cir. 1985) (defendants - state trooper, district attorney, and district judge – were immune from liability for their alleged misconduct). Note that the court in *Glick* held that plaintiff's lawsuit was not merely "futile," but it was also "frivolous," and "totally without merit." *Glick*, 766 F.2d at 270 ("Plaintiff's complaint was totally without merit and appears to have been filed for the purpose of harassing and retaliating against those parties connected with the imposition of a fine for a traffic violation.").

1995). The Government summarily dismisses the holding of *Barnes* while failing to explain why it is not good law. Def.'s Opp'n at 4-5. To be sure, "[t]he right of subrogation[4]…takes place as a matter of equity," but a contract may provide for, modify, or extinguish the right of subrogation. 83 C.J.S. *Subrogation* § 4 (2005). Accordingly, "the doctrine of subrogation cannot be invoked to override and displace the real contract of the parties, or where to do so would be inconsistent with the terms thereof." *Id.* (*citing Wine v. Globe Am. Cas. Co.*, 917 S.W.2d 558 (Ky. 1996); *Bater v. Cleaver*, 176 A. 889 (N.J. Ct. Err. & App. 1935); *Ganger v. Moffett*, 83 A.2d 769 (N.J. 1951)); *see also Northern Buckeye Educ. Council Group Health Benefits Plan v. Lawson*, 814 N.E.2d 1210 (Ohio St. 2004) ("principles of equitable subrogation, including the make-whole doctrine, do not override clear and unambiguous contractual provisions") (emphasis added). Here, AISLIC and the City expressly agreed by written contract – as the parties may do under the principles of suretyship law – that AISLIC would be subrogated to all of the City's rights against the Government, even if the City's claims had not been fully paid. Specifically, Section VII.B of the insurance policy states that, "In the event of any payment under this Policy, [AISLIC] shall be subrogated to all the Insured's rights of recovery hereunder against any person or organization." First Am. Compl. ¶ 51 (emphasis added); *see also id.* ¶¶ 2, 50, 52; Opp'n Mot. Dismiss at 6. Based on the City's contract, Plaintiff had full subrogation rights, and the claim was ripe when Plaintiff filed its complaint.

Even if the City had not contracted to provide AISLIC full subrogation rights upon making any payment, this claim is ripe because AISLIC has paid the City's claim in full, and the City has executed a subrogation receipt, acknowledging payment in full and subrogating its claims. First Am.

[4] "A right of subrogation is a contractual right between the insurance company and insured…. It gives the insurance company the right to prosecute whatever rights insured possesses against the responsible third parties. The right of subrogation is given not to enable the insurance company to avoid its undertaking to indemnify, but so that it may not be enlarged beyond that of indemnity." 46A C.J.S. *Insurance* § 1465 (*citing TVSM, Inc. v. Alexander & Alexander, Inc.*, 583 F. Supp. 1089 (D.C. Pa. 1984); *United States Fire Ins. Co. v. Royal Ins. Co.*, 759 F.2d 306 (3rd Cir. 1985); *Chapman v. Hoage*, 296 U.S. 526 (1936)).

Compl. ¶¶ 2, 51-52, Ex. 7. Most recently, this Court has decided a similar issue regarding subrogation rights in *Liberty Mut. Ins. Co. v. United States*, No. 04-254C, 2006 WL 465845, *18 (Fed. Cl. Feb. 27, 2006), where the plaintiff, at the time of filing its complaint, had <u>not</u> fully paid all of the claims of its subrogees' subcontractors.[5] Liberty sought reimbursement out of contract funds that it maintained the Government owed to it and its insured, Enron Federal Solutions, Inc. ("EFSI"). *Id.* at *2. Defendant moved to dismiss the complaint for lack of subject matter jurisdiction, or, alternatively, for summary judgment on the grounds that Liberty had not paid all of EFSI's subcontractors in full. Liberty's initial complaint sought damages of $1,390,758.47; this claim omitted a $10,000 payment that <u>had not yet been made</u> to one of the subcontractors. Nevertheless, the Court rejected defendant's "tepid" argument, and treated its claim as including the final $10,000 payment.[6] *Id.* at *3, n.5, *19. It stated,

> While it is true that nowhere in the complaint does plaintiff specifically state that it has paid "all" outstanding claims, and this might be viewed as an error in the pleading, the complaint and supporting exhibits clearly indicate that plaintiff has indeed paid claims of EFSI's subcontractors.
>
> * * *
>
> Surely, if evidence arises indicating that plaintiff has not paid all outstanding claims, it would undermine plaintiff's ability to seek reimbursement. But in the absence of any such evidence at this summary stage of proceedings, it is sufficient that plaintiff has alleged payment to EFSI's subcontractors and provided affirmative evidence of those payments.
>
> * * *
>
> There can be no real dispute here that, in settling the claims of EFSI's subcontractors to the mutual satisfaction of both plaintiff and the subcontractors, and obtaining in exchange a full legal release of any rights the

[5] Plaintiff in *Liberty Mut. Ins. Co. v. United States*, No. 04-254C 2006, WL 465845 (Fed. Cl. Feb. 27, 2006), is a Miller Act surety, *i.e.*, it provided performance and payment bonds on behalf of its insured, Enron Federal Solutions, Inc., promising to pay subcontractors, suppliers, and materialmen in the case of default.

[6] By treating the plaintiff's claim as including the final $10,000 payment, this Court again demonstrated its receptiveness to permitting amendments to pleadings.

> subcontractors might otherwise have against either plaintiff or EFSI, plaintiff has succeeded in *satisfying* the debts owed to those subcontractors.

*Liberty Mutual*, 2006 WL 465845 at *19 (citations omitted) (emphasis in original). In accord with *Liberty Mutual*, AISLIC has submitted sufficient evidence to survive summary judgment, much less the Government's Motion to Dismiss. AISLIC has fully paid the City's claims. First Am. Compl. ¶¶ 2, 51-52. Even at this early stage of litigation, AISLIC has submitted a subrogation receipt from the City, acknowledging payment in full and releasing all claims.[7] First Am. Compl. ¶ 52 and Ex. 7.

Defendant overlooks traditional principles of suretyship law, and focuses, instead, on hornbook constitutional requirements of standing and ripeness. Def.'s Opp'n at 3-5 ("AISLIC cannot…rely upon events that allegedly occurred after this lawsuit was filed as a basis for jurisdiction"). Defendant's focus is misplaced, as the events giving rise to AISLIC's claims all occurred before the complaint was filed. Defendant also claims the authorities which AISLIC cites to in its Opposition to Motion to Dismiss are somehow irrelevant because they predate *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989). That statement is both factually incorrect and misleading. For example, the Supreme Court, in *Newman-Green*, addressed a split among the circuits on whether appellate courts have the power to dismiss a non-diverse party, who otherwise would spoil the court's jurisdiction to hear the claims. While the Court noted that, "[t]he existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed," this

---

[7] Note that the Northern District of California's opinion in *American Int'l Specialty Lines Ins. Co. v. United States*, No. C 04-01591, slip. op., at 6 (N.D. Cal. March 24, 2005), merely applies the general principle of subrogation requiring full payment, stating that "Plaintiff does not allege that it has an agreement to the contrary." It does not preclude the possibility of subject matter jurisdiction if either AISLIC properly alleged full payment, or there was, in fact, an agreement to the contrary. Now that Plaintiff has both alleged an agreement to the contrary, and demonstrated payment in full, the District Court's decision is inapposite.

opinion is hardly persuasive authority for the case at bar, and the Court even added, "[l]ike most principles…this one is susceptible to exceptions."[8] *Id.* at 830.

Similarly, the Fifth Circuit, in *Kitty Hawk Aircargo, Inc. v. Chao*, 418 F.3d 453 (5th Cir. 2005), reviewed claims for prevailing wages brought under the McNamara-O'Hara Service Contract Act. It concluded that Kitty Hawk did not have standing to file an appeal, as it had failed to demonstrate either that it had suffered an "injury in fact," or that it was substantially likely to suffer an injury in the future. *Id.* at 458. Again, while the court observed that, "standing is…determined as of the commencement of the suit," this opinion sheds no light on AISLIC's subrogation rights. *Id.* (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 571-72 (1992)). Finally, defendant's reliance on *National Surety Corp. v. United States*, 118 F.3d 1542 (Fed. Cir. 1997), adds little in the way of guidance, as it merely refers to the general proposition that a surety is entitled to enforce its subrogation rights "when" the surety has fulfilled its obligation to the subrogor. (*National Surety* provides no clarification whatsoever regarding the timing of payments.) AISLIC does not dispute this general proposition; rather, the parties have contractually modified AISLIC's rights to subrogation, and the "doctrine of subrogation cannot be invoked to override and displace the real contract of the parties." 83 C.J.S. *Subrogation* § 4. Moreover, as AISLIC has paid the City's claim in full, it is entitled to enforce its subrogation rights.

IV. AISLIC's First Amended Complaint States A Claim.

The Government uses its Opposition to contest whether Plaintiff's First Amended Complaint states a claim, and asks the Court to dismiss Plaintiff's lawsuit. Def.'s Opp'n at 15-19, 30.

---

[8] In discussing Rule 21 of the Federal Rules of Civil Procedure, which provides that "[p]arties [may be dropped or added] by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just," the Court pointed to its decision in *Mullaney v. Anderson*, 342 U.S. 415 (1952), in which it remarked that dismissing the petition and thereby requiring the plaintiffs to start over in the District Court "would entail needless waste and runs counter to effective judicial administration." *Id.* at 417.

Contrary to Defendant's arguments, AISLIC's First Amended Complaint has cured any alleged deficiencies in its earlier pleadings and meets this Court's liberal pleading requirements. As addressed in Plaintiff's Opposition to Defendant's Motion to Dismiss, the Government seeks to disregard the well-settled standards for deciding a Rule 12(b)(6) motion, and repeatedly introduces factual matters which are in dispute and are not the proper subject of a motion to dismiss.

A complaint merely must set forth "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" *See Bernard v. United States*, 59 Fed. Cl. 497, 500 (2004); RCFC 8. Moreover, "[a]s a general rule, a motion to dismiss for failure to state a claim is viewed with disfavor and should rarely be granted," *Balboa Ins. Co. v. United States*, 3 Ct. Cl. 543, 545 (1983), and the Court "must accept as true all of Plaintiffs' well-pleaded facts alleged in the complaint and draw all reasonable inferences in the Plaintiff's favor." *Peterson v. United States*, 68 Fed. Cl. 773, 775 (2005). "Dismissal for failure to state a claim under Rule 12(b)(6) is proper only when a plaintiff can 'prove no set of facts in support of his claim which would entitle him to relief.'" *American Airlines v. United States*, 68 Fed. Cl. 723, 728 (2005) (*quoting Adams v. United States*, 391 F.3d 1212, 1218 (Fed. Cir. 2004) (internal quotations omitted)); *accord Peterson v. United States*, 68 Fed. Cl. 773, 775 (2005). AISLIC has not only met, but exceeded the standards for stating a claim.

Defendant summarily concludes that the four counts added to AISLIC's First Amended Complaint are "readily identifi[able]" as "defect[ive]." Def.'s Opp'n at 16. Three of these counts allege breach of contract by misrepresentation because the Government failed to reveal in the Finding of Suitability for Transfer (the "FOST"), the East Housing Deed (the "Deed"), or the Memorandum of Agreement (the "MOA"), that chlordane or other organochlorine pesticides (OCPs) were stored, released, or disposed of on the property being transferred. *See*, *respectively*, Count Three (First Am. Compl. at ¶¶ 73-88), Count Four (*id.* at ¶¶ 89-105), and Count Seven (*id.* at ¶¶ 136-53). The fourth new count alleges breach of contract with respect to the MOA entered into

between the Government and the Alameda Reuse and Redevelopment Authority. *See* Count Eight (*id.* at ¶¶ 154-62).

Contrary to defendant's argument, AISLIC has adequately plead these new claims, particularly under the liberal pleading requirements of this Court and the standards of a Rule 12(b)(6) motion to dismiss. First, accepting the well-pleaded allegations as true and drawing all reasonable inferences in Plaintiff's favor, AISLIC properly asserted valid claims for breach of contract by misrepresentation, showing: (1) that there, in fact, was a misrepresentation; (2) that the misrepresentation was either fraudulent or material; (3) that it operated as an inducement to entering into the contract; and (4) that plaintiffs were justified in relying on the misrepresentation. *Badgely v. United States*, 31 Fed. Cl. 508, 514 (1994) (*citing* Restatement (Second) of Contracts § 164 (1981)). "Misrepresentation occurs when the government misleads a contractor by a negligently untrue representation of fact, or fails to disclose information it has a duty to disclose." *CTA Inc. v. United States*, 44 Fed. Cl. 684, 699 (1999) (*quoting Meyer Companies, Inc. v. United States*, 41 Fed. Cl. 303, 311 (1998)). However, there is no scienter requirement associated with a claim for breach of contract by misrepresentation, and a true, but incomplete representation also constitutes an actionable misrepresentation under this Court's legal precedents. *Womack v. United States*, 389 F.2d 793, 800 (Ct. Cl. 1968) ("Whatever the case in tort or other areas, intent to mislead is not an essential element of actionable misrepresentation in the breach of contract context."); *DFK Enter., Inc. v. United States*, 45 Fed. Cl. 280 (1999) (Army Corps of Engineers' use of weather chart in estimating the amount of time and cost required to paint water storage tanks was an affirmative representation as to past weather conditions on which the contractor could reasonably rely).

While defendant correctly notes that there must be a nexus "between the government's misrepresentation and an express contract term," it completely disregards the fact that the FOST, Deed, and MOA made affirmative representations – in fact, *mis*representations – about the

environmental conditions of the East Housing Area property. Def.'s Opp'n at 16 (*citing D.V. Gonzalez Elec. & Gen. Contrs.*, 55 Fed. Cl. at 459). Specifically, the FOST, reported no evidence "that pesticides and herbicides, other than those ordinarily and routinely applied in a manner consistent with the standards for licensed application, were even used at Alameda Point and the former NAS Alameda." *See* First Am. Compl., Ex. 3, FOST, section 6.8. The Government explicitly incorporated these misrepresentations concerning environmental conditions into the East Housing Deed. *Id.*, Ex. 2, II.F.1.a. Pursuant to the terms and conditions of the Deed, the Government also represented that Exhibit B to the Deed listed all hazardous substances that were stored for one year or more, known to have been released, or disposed of on the Property. *See* East Housing Deed, II.F.1.b and East Housing Deed, Exhibit B. Finally, the MOA, a valid and binding contract between the Government and the City, provided that the information in the agreement and the attached exhibits "do not omit any material information required to make the submission thereof fair and complete," and made assurances that "all remedial actions necessary to protect human health and the environment have been taken prior to transfer of the property to the Authority with respect to any hazardous substances remaining on the Property." Memorandum of Agreement, Art. 7(b), 9.

These statements were either fraudulent or material, as they induced the City into taking ownership of a substantial piece of contaminated land to carry out the Navy's recommended purpose of redeveloping it for residential, educational, industrial and commercial activities. The City's reliance on any one of these representations by the Government before entering into these contractual agreements was justifiable; considered together, they are overwhelming evidence that Defendant failed to fully disclose the property's condition. The very fact that the Government made so many representations should underscore their substantial importance and that they operated to induce the City to accept ownership of the property.

Second, AISLIC has adequately pled the elements of a breach of contract, demonstrating that (1) a valid contract existed between the Government and the City, (2) the Government was obligated to take remedial action and indemnify the City under the provisions of the contract; (3) the Government breached its contractual duties by failing to remediate and indemnify the City; and (4) the City (and Plaintiff, as subrogee) suffered damages resulting from the Government's breach. *See Demarco Durzo Dev. Co. v. United States*, 60 Fed. Cl. 632, 636 (2004) (providing the elements required to allege and establish a breach of contract claim and finding that plaintiff set forth sufficient allegations for breach of contract claim to withstand a motion to dismiss).

Again, the Government presents a strained argument that "it is impossible for AISLIC to allege meaningfully at this point in the lawsuit that the costs the City incurred as a result of the DTSC's May 2002 advisory letter, and the City's decision to demolish the buildings at the site, arose 'solely,' or even partly, from the Government's use of a 'hazardous' substance." Def.'s Opp'n at 18-19. As is the case with the Government's criticism of the original contract claims, not to mention the original indemnification claim, it is implausible to even suggest, let alone rely on for purposes of defeating a Rule 12(b)(6) motion, that the termiticide applied by the Navy was not hazardous, or that any potential threat to health and safety "resulted from the City's own decisions after the transfer of ownership." Def.'s Opp'n at 19. These are disputed issues of fact that are not properly decided on a motion to dismiss. The chlordane is a hazardous substance, and the Government put it there. Defendant then transferred the East Housing Area, as well as other land, to the City for redevelopment in accordance with a Community Reuse Plan that was expressly approved and recommended by the Navy before the transfer of ownership, a plan that recommended establishing a mixed-use and residential property. Defendant is simply grasping at straws;[9] the redevelopment

[9] Defendant is also reaching when it argues that, "[A]s a threshold matter…this alleged, open-ended indemnity would be void ab initio under the Anti-Deficiency Act, which bars Federal officials from

recommended by the Navy necessarily involved the demolition of buildings and removal of soil. To argue that liability was triggered "only because the City chose to demolish the structures" misses the point of the contract. Def.'s Opp'n at 17. The Government breached its contractual agreements to remediate the hazardous substances and indemnify the City. Plaintiff is entitled to its day in court.

V. The Government Should Not Be Able To File A Second Motion To Dismiss Because It Has Already Contested Whether AISLIC's First Amended Complaint States A Claim.

Despite asking the Court to dismiss Plaintiff's First Amended Complaint for failure to state a claim, the Government also requests that, if the Court were to grant leave to file the First Amended Complaint, it be given 30 days after the Court's ruling to file a response to the amended pleading pursuant to RCFC 12. Def.'s Opp'n at 1 n.1, 30. AISLIC does not oppose the extension of time for the Government to file an answer to the First Amended Complaint. However, AISLIC opposes any attempt by Defendant to file a renewed motion to dismiss AISLIC's First Amended Complaint pursuant to RCFC 12(b) or 12(c). As Defendant has already contested in its Opposition whether Plaintiff's First Amended Complaint states a claim, and has sought dismissal of the amended complaint, Defendant cannot have a second bite at the apple.[10] *See* Opp'n at 1-5, 15-19. Plaintiff respectfully requests that the Court issue an Order denying Defendant's Motion to Dismiss and granting Defendant 30 days to file an answer pursuant to RCFC 12(a).

---

entering into "a contract or obligation for the payment of money before an appropriation is made [to satisfy the obligation] unless authorized by [another] law." Def.'s Opp'n at 18 (*citing* 31 U.S.C. § 1341(a)(1)(B)). Section 330 of the National Defense Authorization Act of 1993, 10 U.S.C. § 2687 note, expressly directs the Secretary of the Defense to "hold harmless, defend, and indemnify in full" the transferee of closed military property, and therefore Defendant's claims are without merit. (Emphasis added).

[10] By analogy, courts routinely apply a similar rationale where a party moves for leave to file a surreply, noting that leave should only be granted to address new matters to which a party would otherwise be unable to respond. *See United States v. Baroid Corp.*, 346 F. Supp. 2d 138, 143 (D.D.C. 2004). Here, the Government has already had an opportunity to address the additional claims presented in AISLIC's First Amended Complaint by doing so in its reply and, therefore, the Government should not be accorded another opportunity in a second motion to dismiss.

## CONCLUSION

For the reasons stated above, AISLIC respectfully requests that the Court accept the filing of the First Amended Complaint, either as of course or, alternatively, by treating the filing as a request for leave to file an amended complaint pursuant to RCFC 15(a). AISLIC further requests that the Court issue an Order denying Defendant's Motion to Dismiss and granting Defendant 30 days to file an answer pursuant to RCFC 12(a).

Respectfully submitted,

s/T. Michael Guiffré
T. Michael Guiffré
J. Gordon Arbuckle
Daniel R. Addison (pending admission *pro hac vice*)
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Plaintiff American International Specialty Lines Insurance Company

March 10, 2006

# TAB 1

# Proposed Order

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 05-1020C<br><br>Judge Margaret M. Sweeney |

**[PROPOSED] ORDER**

On November 29, 2005, Defendant in the above-captioned case moved to dismiss the transfer complaint. On January 27, 2006, Plaintiff filed a First Amended Complaint. On February 24, 2006, Defendant filed an opposition to the First Amended Complaint and requested the Court to dismiss this case. Defendant's motion to dismiss and opposition to the First Amended Complaint are **DENIED**.

Accordingly, Defendant shall file an answer to the First Amended Complaint, pursuant to RCFC 12(a), **no later than 30 days of the date of this ORDER**.

**IT IS SO ORDERED.**

____________________________
MARGARET M. SWEENEY
Judge

**CERTIFICATE OF FILING**

I certify that on March 10, 2006, the foregoing pleading was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/T. Michael Guiffré
T. Michael Guiffré
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315