IN THE UNITED STATES
COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | No. 05-1020C<br>Judge Margaret M. Sweeney |
| v. | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the U.S. Court of Federal Claims, Plaintiff American International Specialty Lines Insurance Company ("Plaintiff" or "AISLIC"), by and through its undersigned attorneys, respectfully submits its response to the Government's proposed findings of uncontroverted facts as follows:

1. On April 19, 2000, Capt. G.J. Buchanan, Commanding Officer, Engineering Field Activity, West, Naval Facilities Engineering Command, executed a finding of suitability to transfer ("FOST") for the East Housing area the former Naval Air Station Alameda, located in Alameda, California, in a neighborhood now called Alameda Point. See 1st Am. Compl. ¶ 25. The FOST, the interpretation of which now raises issues of law, not of fact, is reproduced at exhibit 3 of the first amended complaint.

**RESPONSE:** Based on the face of the referenced document itself, and without having an opportunity to conduct any discovery into the facts represented therein, Plaintiff agrees that on April 19, 2000, Capt. G.J. Buchanan, Commanding Officer, Engineering Field Activity, West, Naval Facilities Command, executed the FOST for the East Housing area of the former Naval Air Station Alameda, located in Alameda, California, in a neighborhood now called Alameda Point. See 1st Am.

Compl., Exh. 3. Plaintiff disagrees that the FOST does not raise issues of fact on the basis that the FOST (1) failed to properly identify the presence, locations, and concentrations of chlordane; (2) wrongly deemed the property environmentally suitable for transfer for the intended residential use, as described in the Alameda Point Community Reuse Plan, despite the presence of undisclosed chlordane contamination; (3) misled the Alameda Reuse and Redevelopment Authority ("ARRA") to believe that chlordane was not present on the property; and (4) failed to address whether the chlordane was properly applied, and whether the chlordane constituted a "hazardous substance." See 1st Am. Compl., ¶¶ 10-11, 20, 31; Exh. 3, § 1.0. Consequently, Plaintiff contends that the Government falsely represented that the Memorandum of Agreement and the exhibits thereto, including the FOST, "do not omit any material information required to make the submission thereof fair and complete." 1st Am. Compl., ¶¶ 16-17. Discovery, which Plaintiff has not yet had an opportunity to conduct, is necessary to resolve these factual issues in dispute.

2. On June 6, 2000, the Secretary of the Navy and Alameda Reuse and Redevelopment Authority ("ARRA") entered into a "Memorandum of Agreement for the Conveyance of Portions of the Naval Air Station Alameda from the United States to the Alameda Reuse and Redevelopment Authority" ("MOA"). 1st Am. Compl. ¶ 12. The MOA, the interpretation of which raises issues of law, not of fact, is reproduced at exhibit 1 of the first amended complaint.

**RESPONSE:** Based on the face of the referenced document itself, and without having an opportunity to conduct any discovery into the facts represented therein, Plaintiff agrees that on June 6, 2000, the Secretary of the Navy and the ARRA entered into the MOA. 1st Am. Compl. ¶ 12. Plaintiff disagrees that the MOA does not raise an issue of fact on the grounds that Plaintiff contends that: (1) the Government falsely represented that the Memorandum of Agreement "does not omit any material information required to make the submission thereof fair and complete"; (2) the MOA included exhibits that failed to properly identify the presence, locations, and

concentrations of chlordane; (3) misled the ARRA to believe that chlordane was not present on the property in locations and concentrations that would preclude implementation of the intended residential use, as described in the Alameda Point Community Reuse Plan; and (4) failed to address whether the chlordane was properly applied, and whether the chlordane constituted a "hazardous substance." See 1st Am. Compl., ¶¶ 16-19. Discovery, which Plaintiff has not yet had an opportunity to conduct, is necessary to resolve these factual issues in dispute.

3. The United States transferred the East Housing Portion of NAS Alameda to the Alameda Reuse and Redevelopment Authority, an agency of the City of Alameda, by quitclaim deed dated July 17, 2000. 1st Am. Compl. ¶ 21. The deed, the interpretation of which raises issues of law, not of fact, is reproduced at exhibit 2 of the first amended complaint.

**RESPONSE:** Based on the face of the referenced document itself, and without having an opportunity to conduct any discovery into the facts represented therein, Plaintiff agrees that the United States transferred the East Housing Portion of NAS Alameda to the ARRA, an agency of the City of Alameda, by quitclaim deed dated July 17, 2000. 1st Am. Compl. ¶ 21. Plaintiff disagrees that the quitclaim deed does not raise issues of fact on the grounds that, *inter alia*, the Government (1) failed to properly identify the presence, locations, and concentrations of chlordane; (2) wrongly deemed the property environmentally suitable for transfer for the intended residential; (3) using the FOST, incorporated as an exhibit to the deed, misled the ARRA to believe that chlordane was not present on the property; (4) misled the ARRA to believe that chlordane was not present on the property in locations and concentrations that would preclude implementation of the intended residential use, as described in the Alameda Point Community Reuse Plan; (5) failed to address whether the chlordane was properly applied, and whether the chlordane constituted a "hazardous substance;" and (6) failed to take the required remedial action either before or after the transfer because the chlordane contamination constituted a "hazardous substance" under the deed. 1st Am.

Compl. ¶¶ 20-39. Discovery, which Plaintiff has not yet had an opportunity to conduct, is necessary to resolve these factual issues in dispute.

4. The Federal Government issued a "Final Environmental Impact Statement For the Disposal and Reuse of Naval Air Station Alameda and the Fleet and Industrial Supply Center, Alameda Annex and Facility Alameda, California" ("EIS"), dated October 1999. Def. App. 11. The EIS states, inter alia, "Pesticides used on-site in the past included chlordane, lindane, and ... [DDT], which are now banned." Id. at 12.

**RESPONSE:** Based on the face of the referenced portion of the document itself -- the Government did not product the entire document -- and without having an opportunity to conduct any discovery into the facts represented therein, Plaintiff agrees that it appears that the Federal Government issued the EIS, dated October 1999 and that the portion of the EIS produced by the Government states: "Pesticides used on-site in the past included chlordane, lindane, and ... [DDT], which are now banned." Def. App. at 11-12. However, discovery is necessary to confirm the City's receipt of the EIS. Moreover, Plaintiff asserts that facts are in dispute because, *inter alia*, the EIS (1) failed to properly identify the presence, locations, and concentrations of chlordane; (2) misled the ARRA to believe that chlordane was not present on the property in locations and concentrations that would preclude implementation of the intended residential use, as described in the Alameda Point Community Reuse Plan; and (3) failed to address whether the chlordane was properly applied, and whether the chlordane constituted a "hazardous substance." Discovery, which Plaintiff has not yet had an opportunity to conduct, is necessary to resolve these factual issues in dispute.

5. The FOST, MOA, and quitclaim deed cited above all refer to the environmental baseline survey ("EBS") for the East Housing site (Parcel 170), dated April 2000. 1st Am. Compl. Exh. 1, at 6; Exh. 2, at 6; Exh. 3, at 1. The cited April 2000 EBS, formally entitled, "Parcel Evaluation Data Summary[;] Phase 2A Sampling[;] Zone 16: The Housing Zone[;] Parcel 170: Family Housing[;]

Alameda Point[;] Alameda, California," is reproduced at pages 15-56 of defendant's appendix. The EBS states, among other things, that:

- alpha-chlordane and gamma-chlordane were detected at the site, Def. App. 26;
- "Analytical results revealed detectable concentrations of ... alpha chlordane ... and gamma chlordane ... in two [soil] samples," id. at 28; and
- alpha-chlordane, gamma-chlordane, heptachlor, heptachlor epoxide, and methoxychlor were detected in samples 170-0001 and 170-0002. Id. at 38.

The EBS includes a map showing the location of samples 170-0001 and 170-0002, which contained chlordane. Id. at 36A.

**RESPONSE:** Based on the face of the referenced portion of the document itself -- the Government did not product the entire document -- and without having an opportunity to conduct any discovery into the facts represented therein, Plaintiff agrees the FOST, MOA and quitclaim deed refer to the EBS for the East Housing Area, and that the portions of the EBS produced by the Government appear to contain the cited statements and map. Plaintiff asserts that facts are in dispute because, *inter alia* and in addition to the other factual disputes cited herein, the referenced documents (1) failed to properly identify the presence, locations, and concentrations of chlordane; (2) misled the ARRA to believe that chlordane was not present on the property in locations and concentrations that would preclude implementation of the intended residential use, as described in the Alameda Point Community Reuse Plan; and (3) failed to address whether the chlordane was properly applied, and whether the chlordane constituted a "hazardous substance." Discovery, which Plaintiff has not yet had an opportunity to conduct, is necessary to resolve these factual issues in dispute.

6. On or about December 1, 1998, Warren J. Yip, Remedial Project Manager, Department of the Navy, transmitted to Mary Rose Cassa of the California Environmental Protection Agency, Department of Toxic Substances Control ("DTSC"), correspondence, excerpts of which are

reproduced at pages 1-4 of defendant's appendix. Mr. Yip forwarded the "Parcel Reclassification for Environmental Baseline Survey as of December 1998 for Alameda Point." A sampling report included with this correspondence stated that alpha-chlordane and gamma-chlordane were present at one of the East Housing parcels. Id. at 4. Among others, Elizabeth Johnson of the Alameda Reuse and Redevelopment Authority was sent two courtesy copies of this correspondence. Id. at 1.

**RESPONSE:** Based on the face of the referenced portion of the document itself -- the Government did not product the entire document -- and without having an opportunity to conduct any discovery into the facts represented therein, Plaintiff agrees that the portions of the correspondence produced by the Government appear to reflect that Mr. Yip transmitted to Ms. Cassa the DTSC correspondence and that Ms. Johnson's name appears on the copy list at the bottom of the letter. Plaintiff is unable to agree or disagree as to whether either Ms. Cassa or Ms. Johnson received the correspondence. Plaintiff also asserts that facts are in dispute because, *inter alia*, the correspondence (1) failed to properly identify the presence, locations, and concentrations of chlordane; (2) misled the ARRA to believe that chlordane was not present on the property in locations and concentrations that would preclude implementation of the intended residential use, as described in the Alameda Point Community Reuse Plan; and (3) failed to address whether the chlordane was properly applied, and whether the chlordane constituted a "hazardous substance." Discovery, which Plaintiff has not yet had an opportunity to conduct, is necessary to resolve these factual issues in dispute. Discovery, which Plaintiff has not yet had an opportunity to conduct, is necessary to resolve these factual issues in dispute.

7. On or about July 20, 1999, Michael E. Quillin, R.G., Program Director for a private firm called Environmental Resources Management, transmitted to Steven Eddy, BRAC Environmental Coordinator for the former Naval Air Station Alameda (Alameda Point), correspondence, excerpts of which are reproduced at pages 5-10 of defendant's appendix. This correspondence reported the

detection of chlordane and heptachlor epoxide in soil samples taken from the East Housing Area (denoted "EH"). Id. at 8. Among others, Jeffrey Bond, a representative of the City of Alameda, was sent a courtesy copy of this correspondence. Id. at 6.

**RESPONSE:** Based on the face of the referenced portion of the document itself -- the Government did not product the entire document -- and without having an opportunity to conduct any discovery into the facts represented therein, Plaintiff agrees that the portions of the correspondence produced by the Government appear to reflect that Mr. Quillin transmitted to Mr. Eddy correspondence and that Mr. Bond's name appears on the copy list at the bottom of the letter. Plaintiff is unable to agree or disagree as to whether either Mr. Eddy or Mr. Bond received the correspondence. Plaintiff also asserts that facts are in dispute because, *inter alia*, the correspondence (1) failed to properly identify the presence, locations, and concentrations of chlordane; (2) misled the ARRA to believe that chlordane was not present on the property in locations and concentrations that would preclude implementation of the intended residential use, as described in the Alameda Point Community Reuse Plan; and (3) failed to address whether the chlordane was properly applied, and whether the chlordane constituted a "hazardous substance." Discovery, which Plaintiff has not yet had an opportunity to conduct, is necessary to resolve these factual issues in dispute.

8. Heptachlor, heptachlor epoxide, and methoxychlor are all compounds formed from chlordane. See, e.g., Department of Energy, Risk Assessment Information System, Toxicity Summary for Heptachlor, http://risk.lsd.ornl.gov/tox/profiles/heptachlor_f_V1.shtml.

**RESPONSE:** Plaintiff is unable to either agree or disagree with this statement, which will require expert witness analysis and confirmation whether other Government publications are consistent with the cited information. Regardless, Plaintiff also asserts that facts are in dispute because, *inter alia*, the documents on which the Government relies for its motion (1) failed to properly identify the presence, locations, and concentrations of chlordane; (2) misled the ARRA to believe that chlordane

was not present on the property in locations and concentrations that would preclude implementation of the intended residential use, as described in the Alameda Point Community Reuse Plan; and (3) failed to address whether the chlordane was properly applied, and whether the chlordane constituted a "hazardous substance." Discovery, which Plaintiff has not yet had an opportunity to conduct, is necessary to resolve these factual issues in dispute.

9. On or about May 3, 2002, the California DTSC transmitted to the Alameda Reuse and Redevelopment Authority, and its environmental consultant, the letter which is reproduced at exhibit 2, tab 7 of the amended complaint filed in this matter on September 30, 2005. The DTSC advised the City that

> The building foundations at EHA [East Housing area] appear to have been properly treated with organochloride pesticides (OCP) for termite control, and as such, are currently being used in the manner intended. Upon removal [by the City] of the buildings and foundations that are treated with OCP, any OCP remaining in soils and exceeding the [State-prescribed] concentrations ... would be a hazardous substance released to the environment, and would require remedial action ...
>
> ... [E]nsuring that soils and structures impacted with OCP [are] removed concurrent with structure demolition ... would lead to DTSC concurrence that no release of OCP to the environment remains that requires action.

9/30/05 Transf. Compl. Exh. 2, Tab 7 (emphasis added).

**RESPONSE:** Based on the face of the referenced portion of the document itself and without having an opportunity to conduct any discovery into the facts represented therein, Plaintiff agrees that the DTSC transmitted a letter on or about May 3, 2002 to the ARRA and its environmental consultant. However, in addition to the issues addressed in Plaintiff's Opposition to Defendant's Motion to Dismiss concerning this document, which are incorporated herein, Plaintiff avers that factual disputes arise as to the interpretation of the DTSC's statements, and whether DTSC's statements pertain to the Government's statutory and contractual obligations addressed in Plaintiff's Complaint. Plaintiff also asserts that facts are in dispute because, *inter alia*, the letter (1) fails to properly identify the presence, locations, and concentrations of chlordane; and (2) fails to address

whether the chlordane was properly applied, and whether the chlordane constituted a "hazardous substance" within the meaning of the Government's contractual and statutory obligations addressed in Plaintiff's Complaint. Discovery, which Plaintiff has not yet had an opportunity to conduct, is necessary to resolve these factual issues in dispute.

10. Following receipt of the above letter, the City of Alameda removed soil from the East Housing area "according to the Demolition and Organochlorine Pesticide Removal Workplan, dated April 23, 2002, which DTSC had approved." 1st Am. Compl. ¶ 46. Thereafter, no release of OCP to the environment remained, which the DTSC deemed to require further action. See id.

**RESPONSE:** Plaintiff agrees that the City of Alameda removed soil from the East Housing area "according to the Demolition and Organochlorine Pesticide Removal Workplan, dated April 23, 2002, which DTSC had approved." 1st Am. Compl. ¶ 46. Plaintiff contends that, while following the cleanup no release to the environment remained, preceding Plaintiff's remediation the Government was responsible for the storage, release, or disposal of chlordane on the East Housing Area. 1st Am. Compl. ¶ 44. Discovery, which Plaintiff has not yet had an opportunity to conduct, is necessary to resolve these factual issues in dispute.

Respectfully submitted,

s/T. Michael Guiffré
T. Michael Guiffré
J. Gordon Arbuckle
Daniel R. Addison
PATTON BOGGS LLP
2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Plaintiff American International Specialty Lines Insurance Company

August 14, 2006

4821530

## CERTIFICATE OF FILING

I certify that on August 14, 2006, the foregoing Plaintiff's Response to Defendant's Proposed Findings of Unconverted Fact was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/T. Michael Guiffré
T. Michael Guiffré