No. 05-1020C
(Judge Sweeney)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Telephone: (202)305-7562
Facsimile: (202)305-7644

Attorneys for Defendant

OF COUNSEL:

MARY RAIVEL
Senior Trial Attorney
Naval Litigation Office
Washington, D.C.

August 31, 2006

TABLE OF CONTENTS

I. RCFC 12(b)(6) and 56 Standards ..... 1

II. No Factual Disputes Exist With Respect To The Navy's Lawful Use Of Chlordane-Based Termiticide, Or The Navy's Timely Disclosures Of Chlordane In The Soil ..... 3

III. AISLIC Cannot Recover Under Section 330 ..... 8

A. AISLIC Relies Upon Inapposite Legislative History ..... 8

B. The East Housing Area Was Not A CERCLA "Facility" ..... 9

C. There Was No "Claim" ..... 10

D. The Supposed Claim Was Not "For Property Damage" ..... 13

E. The Alleged Claim Was Not "Predicated Upon A Release Or Threatened Release" ..... 14

F. The Release Or Threatened Release Did Not Result From Military Activities ... 16

CONCLUSION ..... 18

## TABLE OF AUTHORITIES

### CASES

AMI, Inc. v. International Forging Equip. Co.,
982 F.2d 989 (6th Cir. 1993) ........ 4, 5

A&W Smelter and Refs., Inc. v. Clinton,
146 F.3d 1107 (9th Cir. 1998) ........ 4, 5

Amoco Oil Co. v. United States,
234 F.3d 1374 (Fed. Cir. 2000) ........ 2

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) ........ 7

Brubaker Amusement Co. v. United States,
304 F.3d 1349 (Fed. Cir. 2002) ........ 2

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) ........ 7

Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.,
906 F.2d 1059 (5th Cir.1990) ........ 10

Duncan v. Walker,
533 U.S. 167 (2001) ........ 11

Former Emp'ees of Marathon Ashland Pipe Line v. Secretary of Labor,
370 F.3d 1375 (Fed. Cir. 2004) ........ 9

Hendricks v. United States,
10 Cl. Ct. 703 (1986) ........ 15

Hugo Boss Fashions, Inc. v. Federal Ins. Co.,
252 F.3d 608 (2d Cir. 2001) ........ 14

Jordan v. Southern Wood Piedmont Co.,
805 F. Supp. 1575 (S.D. Ga. 1992) ........ 4

Keebler Co. v. Murray Bakery Prods.,
866 F.2d 1386 (Fed. Cir. 1989) ........ 2

New London Development Corp., ASBCA No. 54535,
05-2 BCA ¶ 33,018 ........ 12

Novartis Corp. v. Ben Venue Laboratories, Inc.,
271 F.3d 1043 (Fed. Cir. 2001) .......... 7, 8, 16

Redwing Carriers, Inc. v. Saraland Apartments, Ltd.,
875 F. Supp. 1545 (S.D. Ala. 1995), aff'd, 94 F.3d 1489 (11th Cir. 1996) .......... 5

Redwing Carriers, Inc. v. Saraland Apts.,
94 F.3d 1489 (11th Cir. 1996) .......... 4

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) .......... 3, 7, 15

United States v. Tropical Fruit, S.E.,
96 F. Supp. 2d 71 (D.P.R. 2000) .......... passim

STATUTES AND REGULATIONS

7 U.S.C. §§ 136-136y .......... 4

10 U.S.C. § 2687 note .......... 2, 8-18

42 U.S.C. § 9601(9) .......... 10

42 U.S.C. § 9601(22) .......... 4, 9, 10

42 U.S.C. § 9603(e) .......... 10

42 U.S.C. § 9607(a)(1)-(3) .......... 18

42 U.S.C. § 9607(a)(3) .......... 5

42 U.S.C. § 9607(i) .......... 4, 5, 18

42 U.S.C. § 9613(f) .......... 18

42 U.S.C. § 9620(h)(3) .......... 5

42 U.S.C. § 9620(h)(3)(A)(ii) .......... 4

40 C.F.R. § 302.4 .......... 4

MISCELLANEOUS

138 Cong. Rec. S11480 (Sept. 18, 1992) .......... 9

S. 3114, 102d Cong. § 317 (1992) .......... 9

H.R. Conf. Rep. No. 102-966 (1992) .......... 9

Department of Defense Appropriations Act for 1991,
Pub. L. No. 101-511, 104 Stat. 1856, 1887 (1990) .......... 11

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 05-1020C |
| | ) | (Judge Sweeney) |
| v. | ) | |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS OR FOR SUMMARY JUDGMENT**

Pursuant to the Court's Rules ("RCFC"), defendant, the United States, respectfully replies to the opposition filed on August 14, 2006 by plaintiff, American International Specialty Lines Insurance Company ("AISLIC"), to our July 21, 2006 corrected motion to dismiss the first amended complaint or, in the alternative, for summary judgment upon any count that is not dismissed. We focus below upon the decisive errors and shortcomings in AISLIC's response. Plaintiff is entitled to no relief.

I. RCFC 12(b)(6) And 56 Standards

AISLIC argues that we misapply "well-settled standards for deciding a motion to dismiss or . . . for summary judgment." Pl. Opp. 7. To the contrary, AISLIC does so. To begin, AISLIC mischaracterizes as factual issues – allegedly unsuited to resolution upon a motion to dismiss – matters which are actually issues of law. Prominent among these are the issues of (i) what the July 2000 quitclaim deed transferring ownership of the East Housing area from the United States to the City of Alameda should be construed as indicating with regard to the use or presence of chlordane at the site, id. at 13; (ii) whether the first amended complaint states a claim that the City remediated termiticide-treated soil at the site "solely" as a result of activities of the

Department of Defense, within the meaning of article 21 of the June 2000 memorandum of agreement ("MOA") between the City and the Navy, id. at 15; and (iii) whether the first amended complaint alleges a "claim for . . . property damage" within the meaning of "section 330," 10 U.S.C. § 2687 note. Pl. Opp. 18-22. The Court can, and should, resolve these and other legal issues pursuant to RCFC 12(b)(6). See, e.g., Amoco Oil Co. v. United States, 234 F.3d 1374, 1377 (Fed. Cir. 2000).

AISLIC argues, in the alternative, that summary judgment should be denied because it has not conducted discovery. Id. at 8, 9, 12, 14 & n.8, 23, 24; see generally Pl. Resp. Def. PFUF. AISLIC has forfeited that argument, however, by disregarding the requirements of RCFC 56(f). "A party may not simply assert that discovery is necessary and thereby overturn summary judgment when it failed to comply with the requirement of Rule 56(f) to set out reasons for the need for discovery in an affidavit." Keebler Co. v. Murray Bakery Prods., 866 F.2d 1386, 1389 (Fed. Cir. 1989), quoted in Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1361 (Fed. Cir. 2002). Moreover, even when a non-movant files an RCFC 56(f) motion, it is unavailing for it to argue, "'[W]e have no factual basis for opposing summary judgment, but, if you stay proceedings, we might find something.'" Keebler, 866 F.2d at 1389. Accordingly, to the extent AISLIC's claims are not dismissed, the Court should grant our summary judgment motion and simply disregard AISLIC's conclusory allusions to potential discovery.

Indeed, every one of our proposed findings of fact is uncontroverted, and should, therefore, be deemed established, pursuant to RCFC 56(d), because AISLIC cites no conflicting evidence and has filed no RCFC 56(f) affidavit explaining its inability to do so. AISLIC's responses to our proposed findings consist of argument, expressions of desire for discovery, and citations to its complaint. None of these can raise a genuine issue of fact. RCFC 56(c), (f),

(h)(2); Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1562-63 (Fed. Cir. 1987) ("The non-movant may not rest on its conclusory pleadings . . . ."). Thus, as one example, AISLIC's suggestion, in a footnote in its brief, that the environmental baseline survey ("EBS") in our appendix might not be the EBS for this property, Pl. Opp. 13-14 n.7, is waived and carries no weight, because AISLIC's response to our proposed finding number 5 cites no evidence, much less evidence raising an issue of fact as to whether the EBS in this record is the EBS referenced in the April 2000 finding of suitability for transfer ("FOST"), the MOA, and the deed. See 1st Am. Compl. Ex. 1, at 6; Ex. 2, at 6; Ex. 3, at 1. It is also uncontroverted that heptachlor, heptachlor expoxide, and methoxychlor – which the EBS reported were present in the soil at the property in 2000 – are chlordane-related chemicals. See Def. PFUF ¶¶ 5, 8 & Pl. Resp.

## II. No Factual Disputes Exist With Respect To The Navy's Lawful Use Of Chlordane-Based Termiticide, Or The Navy's Timely Disclosures Of Chlordane In The Soil

We anticipated and addressed essentially all of AISLIC's liability arguments in our motion. To begin, we established that the Court should dismiss (i) AISLIC's claims that the Government breached the MOA and/or the covenants which were included in the East Housing deed, pursuant to the Comprehensive Environmental Response, Compensation and Liability Act of 1980 ("CERCLA"), as well as (ii) AISLIC's claims that the Government made material misrepresentations of fact in the MOA and the deed. Def. Mot. 12-20. The documents attached to, and cited in, the first amended complaint, which constitute part of the pleadings, RCFC 10(c), plainly indicate that the United States took all "remedial action necessary to protect human health and the environment" before executing the deed, in accordance with the operative CERCLA covenants, 42 U.S.C. § 9620(h)(3)(A)(ii), and that the City was repeatedly notified in

writing of the detection of chlordane and related compounds in the soil at the site, before the execution of the MOA and the deed. Def. Mot. 12-20.

AISLIC emphasizes that "chlordane does constitute a 'hazardous substance.'" Pl. Opp. 9 (citing 40 C.F.R. § 302.4). We have not denied that the CERCLA regulations currently list chlordane as a hazardous substance. More relevantly, however, we pointed out that the record indicates chlordane was registered under the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y, at the time it was applied by the Navy at the East Housing area, and that the Navy's proper application of termiticide was not, therefore, a "release" of a hazardous substance for purposes of CERCLA liability, as construed in decisions addressing the section 9607(i) exclusion Def. Mot. 5, 13-14; Redwing Carriers, Inc. v. Saraland Apts., 94 F.3d 1489, 1511 n.31 (11th Cir. 1996) (holding exclusion covers chlordane applied during period of FIFRA registration); accord United States v. Tropical Fruit, S.E., 96 F. Supp. 2d 71, 90 (D.P.R. 2000); Jordan v. Southern Wood Piedmont Co., 805 F. Supp. 1575, 1581 (S.D. Ga. 1992) (noting pesticide exemption "prevent[s] the typical pesticide user from incurring CERCLA liability when he has done nothing more than purchased and applied a pesticide in the customary manner").

We further noted that, because the termiticide was lawfully "applied" by the Navy, and was not "released" within the meaning of 42 U.S.C. § 9601(22), see Redwing, 94 F.3d at 1511, the "useful product" doctrine establishes there was no "remedial action necessary" by the Navy at the site, within the meaning of the applicable deed covenants, 1st Am. Compl. Ex. 2, at 6, before or after the conveyance to the City in July 2000. See A&W Smelter and Refs., Inc. v. Clinton, 146 F.3d 1107, 1112 (9th Cir. 1998); AMI, Inc. v. International Forging Equip. Co., 982 F.2d 989, 998 (6th Cir. 1993). AISLIC argues that A&W Smelter and AMI are inapposite,

because they address "arranger" liability under CERCLA, 42 U.S.C. § 9607(a)(3). Pl. Opp. 9. To the contrary, those decisions are relevant, inasmuch as the deed covenants upon which AISLIC relies are drawn from CERCLA, 42 U.S.C. § 9620(h)(3), and the cited cases support a finding that, in this case, there was no "remedial action necessary," pursuant to CERCLA, at the property. See DTSC letter, 9/30/05 Transf. Compl. Ex. 2, Tab 7.

In AMI, for example, plaintiff had sold real estate that included intact buildings containing chemical solutions. The court determined, among other things, that "the threat [of a release of hazardous substances] arose only after defendants purchased the entire facility and allowed the buildings and its sprinkler system to deteriorate." 982 F.2d at 991-92 (emphasis added). Similarly, here, the May 2002 letter from the California Department of Toxic Substance Control ("DTSC") to the City – which is cited in the first amended complaint and was attached to the September 2005 transfer complaint – indicates the termiticide was "properly applied" by the Navy for its intended purpose and that the soil did not require remediation as a result of the Navy's proper application. 9/30/05 Transf. Compl. Ex. 2, Tab 7. Instead, the pleadings show, it was the City's plan to demolish buildings at the site – approximately two years after the transfer of title – that led the DTSC to advise the City to remediate the soil. Id.

AISLIC misconstrues Tropical Fruit, which supports our legal position. Pl. Opp. 10, 15. The court in Tropical Fruit carefully distinguished between improper pesticide application, which could fall within the definition of "release," and proper pesticide application, which is protected under 42 U.S.C. § 9607(i). 96 F. Supp. 2d at 86-90 (citing, inter alia, Redwing Carriers, Inc. v. Saraland Apartments, Ltd., 875 F. Supp. 1545 (S.D. Ala. 1995), aff'd, 94 F.3d 1489 (11th Cir. 1996)). Here, the May 2002 letter from the DTSC to the City states: "The building foundations at EHA appear to have been properly treated with organochloride pesticides

(OCP) for termite control, and as such, are currently being used in the manner intended." 9/30/05 Transf. Compl. Ex. 2, Tab 7. That letter, which is at the heart of AISLIC's case, serves to distinguish the Navy's proper application of pesticides from a "release," as that term is interpreted in Tropical Fruit.

Accordingly, this Court should dismiss the counts alleging breach based upon failure to remediate the soil, because the pleadings establish that the United States had no obligation, under the CERCLA deed covenants or the MOA, to remediate the treated soil before deeding the East Housing area to the City. See 1st Am. Compl. ¶¶ 71, 160.

AISLIC's allegations of misrepresentation similarly fail to state claims for relief under the MOA or the deed, for the reasons stated in our moving brief. Def. Mot. 16-20. The presence of OCPs in the East Housing soil was amply disclosed to the City in, among other documents, the environmental impact statement, the EBS, and in references cited in the FOST, each of which is either included or cited in the pleadings, see RCFC 10(c), as well as in correspondence with the City, the authenticity of which AISLIC has not controverted with any evidence. Def. App. 1-8. The same documents upon which AISLIC relies demonstrate that the City of Alameda could have had no reasonable basis to believe that the Navy had not used chlordane-based pesticides at the East Housing area, or that the soil at the site would not contain the organochlorine compounds that were identified in the EBS. See 1st Am. Compl. ¶¶ 101, 152.

Assuming the Court does not dismiss AISLIC's breach or misrepresentation claims, we satisfied our initial burden under RCFC 56(b) by "pointing out" that (i) no evidence supports AISLIC's allegations that the Navy unlawfully applied, stored for more than one year, or released chlordane at the property, and that (ii) the Government made no representations, upon which the City could have reasonably relied, that chlordane was not present in the soil. Def.

Mot. 19-20; Sweats Fashions, 833 F.2d at 1563. The burden shifted to AISLIC, therefore, to point to "more than a scintilla" of evidence, upon the basis of which a trier of fact could find a breach or misrepresentation. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986). As noted, however, AISLIC has proffered no evidence: It makes no effort to fill the factual gaps we identified in its contract claims. That omission is fatal to the claims.

AISLIC cannot avoid summary judgment at this juncture merely by asserting that "[t]he record contains no evidence regarding when chlordane was applied or released . . . or in what concentrations," or that evidence is missing with respect to other elements of its claims. Pl. Opp. 11; see id. at 12, 14, 15 ("AISLIC should be allowed to pursue discovery . . . ."). To the contrary, when defendant notes that the summary judgment record contains "no evidence" to support plaintiff's claims, see Def. Mot. 15, 18; and when, in response, plaintiff files no RCFC 56(f) motion and agrees the record contains "no evidence" of elements of its claims, defendant is entitled to summary judgment. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Novartis Corp. v. Ben Venue Laboratories, Inc., 271 F.3d 1043, 1046, 1054 (Fed. Cir. 2001) (noting "[s]ummary judgment is a trap for the unwary plaintiff" and defendant can meet its initial burden "either by providing evidence that would preclude a finding of [liability], or by showing that the evidence on file fails to establish a material issue of fact essential to the [plaintiff's] case").

We bear no burden, pursuant to RCFC 56(b), to point to evidence to rebut the allegation that pesticides were stored at the East Housing area for more than one year, which no evidence in the record supports. See Pl. Opp. 14. And, even assuming, for the sake of argument, that it is our burden to establish, in the nature of an affirmative defense, that the chlordane-based termiticide was registered under FIFRA at the time it was used by the Navy, and that it was properly applied, see id. at 10, we have cited evidence to that effect which satisfies Rule 56(a).

Def. PFUF ¶¶ 4, 9. AISLIC responds with no evidence. Plaintiff's insubstantial responses to our proposed findings – as well as the multiple admissions in its brief that it has "no evidence" – entitle us to summary judgment upon each contract count (one through four, seven, and eight), in the event any of those counts is not dismissed for failure to state a claim.

III. AISLIC Cannot Recover Under Section 330

AISLIC's claim for statutory indemnification suffers from essentially the same flaws as its contract claims. AISLIC accuses us of "making every conceivable argument against" relief under section 330. Pl. Opp. 16. The number of our arguments, however, simply reflects the number of deficiencies in this claim. We demonstrated that AISLIC fails to satisfy section 330's requirements, in that (i) the City did not acquire a CERCLA "facility"; (ii) no "claim" was pursued against the City; (iii) assuming there was a claim, it was not a claim "for personal injury or property damage"; (iv) assuming there was a claim for property damage, it was not "predicated upon[] the release or threatened release of any hazardous substance, pollutant or contaminant, or petroleum or petroleum derivative"; and (v) assuming the above elements are satisfied, the release or threatened release upon which the claim for property damage was predicated did not occur "as a result of Department of Defense activities." Def. Mot. 23-31; 10 U.S.C. § 2687 note.

A. AISLIC Relies Upon Inapposite Legislative History

At the outset, AISLIC erroneously relies upon legislative history from the United States Senate. Pl. Opp. 16. The Senate Bill did not contain any of the crucial terms found in section 330, as enacted, e.g., "arising out of a claim for personal injury or property damage," or "plaintiff." See S. 3114, 102d Cong. § 317 (1992). Senators McCain and Cohen were not discussing that language, therefore, in the floor statements quoted by AISLIC. See 138 Cong.

Rec. S11480 (Sept. 18, 1992) (statement of Sen. Cohen); id. at. S14009 (statement of Sen. McCain). The terms "claim for personal injury or property damage" and "plaintiff" – together with the requirement that an indemnitee tender the claim (section 330(c)) and the definition of accrual (section 330(d)) – were added in the House-Senate Conference. See H.R. Conf. Rep. No. 102-966, pt. 3, at 685 (1992) ("The House recedes with an amendment . . . ."), reprinted in 1992 U.S.C.C.A.N. 1769, 1776. Thus, floor statements from the prior Senate debate are not useful in interpreting the terms in section 330 that are relevant to our motion; and AISLIC errs by treating proposed legislation "as if it had become law, when in fact it did not." Former Emp'ees of Marathon Ashland Pipe Line v. Secretary of Labor, 370 F.3d 1375, 1383-85 (Fed. Cir. 2004).

B. The East Housing Area Was Not A CERCLA "Facility"

Section 330(a)(2) provides that a person or entity eligible for indemnification must have acquired ownership or control of "any facility at a military installation (or any portion thereof)." We demonstrated that this property did not meet the definition of "facility," which section 330(f) adopts from CERCLA, and which "does not include" a location where "any consumer product in consumer use" has come to be located. Def. Mot. 23; 42 U.S.C. § 9601(9). AISLIC again relies upon Tropical Fruit, arguing that "the court rejected an argument that a farm was not a 'facility' because pesticides were sprayed there, noting that courts have also imposed liability for the transport, storage, spilling and disposal of pesticides." Pl. Opp. 18 (citing 96 F. Supp. 2d at 84). AISLIC's paraphrase of Tropical Fruit is imprecise and unresponsive to our position.

The defendant in Tropical Fruit based its argument that its farm was not a "facility" upon 42 U.S.C. § 9603(e), which exempts registered pesticides from the notification requirements for releases of a hazardous substances. The district court rejected that argument, upon the grounds that section 9603(e) "deals exclusively with notification requirements with respect to releases of

CERCLA hazardous substances, and is irrelevant to the determination of whether the Tropical Fruit farm constitutes a facility." 96 F. Supp. 2d at 84. Significantly, the court went on to find there had, in fact, been a "release" of a hazardous substance at the farm – rather than only a proper application of pesticide – because "pesticide droplets, particles, and vapor ha[d] drifted or migrated onto adjacent properties." Id. at 85.

By contrast, we demonstrated that the East Housing Area – where the pleadings and the record indicate only proper application of pesticide occurred – is not a "facility," upon the basis of a different provision of CERCLA: viz., the "consumer product in consumer use" exclusion, which is contained in the definition of "facility" itself. 42 U.S.C. § 9601(9). The Tropical Fruit court had no occasion to discuss the latter exclusion. Cf. Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co., 906 F.2d 1059, 1065-66 (5th Cir.1990) (holding Congress did not intend to provide for recovery for releases from useful consumer products in building structures). Similarly, the reference in Tropical Fruit to potential liability for transporting, storing, or spilling pesticides, 96 F. Supp. 2d at 84, is immaterial here, since there are no colorable allegations and, in any event, no evidence, of transportation, storing, or spilling of chlordane by the Navy.

C. There Was No "Claim"

Assuming the City acquired a covered "facility," AISLIC argues that the crucial phrase in section 330(a), "arising out of any claim for . . . property damage," does not mean that a "claim" must be filed against the party seeking indemnification. Pl. Opp. 18-20. It argues that "any claim" means a transferee's "own claim." Id. at 19. AISLIC fails to explain, however, why Congress would have included the words "arising out of any claim" in section 330 as surplusage – which those words would be, had Congress intended, as AISLIC argues, to indemnify transferees broadly "from and against 'any suit, claim, demand or action, liability, judgment, cost

or other fee.'" Id. at 19 (quoting section 330). The answer is, of course, that the words "arising out of any claim" cannot be ignored and must, therefore, limit the categories of indemnified costs listed in section 330(a). Under AISLIC's reading, by contrast, the words "arising out of any claim" would not be limiting in any way: A transferee of closed base property would satisfy the requirement simply by having asserted a "claim" to the Government for indemnification. AISLIC's reading of section 330(a) should be rejected, because it would render the words "arising out of any claim" meaningless. E.g., Duncan v. Walker, 533 U.S. 167, 174 (2001).

As we noted, the importance of the requirement that costs recoverable under section 330 must "aris[e] out of [a] claim" is confirmed by comparing section 330 to a prior law, indemnifying the State of New Hampshire for costs arising at Pease Air Force Base. Def. Mot. 23-24. Section 8056 of the Department of Defense Appropriations Act for 1991, Pub. L. No. 101-511, 104 Stat. 1856, 1887 (1990), was substantially similar to section 330, except that the earlier legislation did not require that costs arise out of a claim. That legislation, instead, indemnified New Hampshire "from and against all suits, claims, demands or actions, liabilities, judgments, costs and attorney's fees arising out of, or in any manner predicated upon releases or threatened releases of hazardous substances, or pollutants or contaminants resulting from Department of Defense activities at Pease[.]" Id. Had Congress intended for section 330 to be construed in accordance with AISLIC's arguments, the drafters could simply have copied the earlier legislation. That they did not do so, cannot be ignored.

AISLIC mistakenly relies upon New London Development Corp., ASBCA No. 54535, 05-2 BCA ¶ 33,018, to support its argument that, notwithstanding the requirement in section 330 that costs "aris[e] out of [a] claim," "no suit need be brought against the City to establish a right to indemnification." Pl Opp. 19. As we noted during the briefing of our November 2005 motion

to dismiss the transfer complaint, New London fails to support AISLIC's reading of "claim," because the board in New London never considered whether there was a "claim" against the contractor within the meaning of that contract. The board, instead, mistakenly skipped directly to construing the contractual term "property damage." (The board was not, in any event, applying section 330.) The Court should dismiss counts five and six, because the first amended complaint fails to allege that anything which can properly be termed a "claim," within the meaning of section 330(a), was brought against the City. See 1st Am. Compl. ¶¶ 111, 127.

Alternatively, we observed that no evidence in the summary judgment record supports AISLIC's characterization of the May 2002 letter from the DTSC to the City as a "claim." Def. Mot. 26. AISLIC proffers no evidence in response to our RCFC 56 motion. It argues, instead, that we "attempt[] to contradict the factual allegations of the Complaint by reinterpreting the DTSC's [alleged] requirements and creating a factual dispute over whether the DTSC ever found that a hazardous substance was present at the East Housing area." Pl. Opp. 20. To the contrary, we satisfied our burden under RCFC 56(b) by relying upon the plain wording of the DTSC letter, the only document which could arguably constitute the required "claim" and which states, among other things, that no actionable contamination existed at the time of the letter. Def. PFUF ¶ 9.

The DTSC letter does not, upon its face, demand money from the City or even require the City to remediate the soil at the East Housing area. It merely advises the City how to obtain "DTSC concurrence," after demolishing structures at the site, "that no release of [organochlorines] to the environment remains that requires action." 9/30/05 Transf. Compl. Ex. 2, Tab 7. Accordingly, the DTSC letter fits no reasonable definition of a "claim" against the City. AISLIC's vague and conclusory assertion that the City demolished the buildings in furtherance of a "development plan that the [Federal] Government had selected as the preferred

alternative," Pl. Opp. 20, is irrelevant to whether there was a "claim," or to any other aspect of our summary judgment motion, since, even assuming the assertion might otherwise be relevant, AISLIC can point to no evidence in the record to support it. See RCFC 56(c), (f).

D. The Supposed Claim Was Not "For Property Damage"

As a further alternative, we demonstrated that, assuming the May 2002 letter from the DTSC to the City can be construed as a claim, it cannot be read as a claim "for property damage." Def. Mot. 26-29. AISLIC does not, in fact, argue that the DTSC alleged property damage: It argues, instead, that indemnification is available under section 330 because (i) "the City suffered an economic loss" as a result of the DTSC letter and (ii) the City's own "cleanup costs" allegedly constitute "property damage." Pl. Opp. 21-22. Neither argument can be squared with the plain language of section 330, however.

Section 330 requires a "claim for . . . property damage (including death, illness, or loss of or damage to property or economic loss)." At best, however, AISLIC is suggesting that the May 2002 letter from the DTSC to the City caused economic loss – and not that the letter was a "claim for" damage or economic loss, as section 330 expressly requires. AISLIC's related argument that the term "property damage" is synonymous with, or includes, a transferee's "cleanup costs" should fail, because it would render section 330 incoherent. Pl. Opp. 22. Under this reading of the act, a transferee would be indemnified against a "claim for" its own cleanup costs, which makes no sense. The absence of any claim "for . . . property damage" is an issue of law, as to which no "inferences" in AISLIC's favor are warranted. Cf. id. Alternatively, AISLIC has adduced no evidence, upon the basis of which it could avoid summary judgment, indicating the existence of a claim "for property damage." See RCFC 56(c), (f).

AISLIC accuses us of "undue reliance on cases interpreting insurance polices – as opposed to the plain language of [section 330]" and argues that this "reveals the weaknesses" of our interpretation of the statutory term "property damage." Pl. Opp. 22 n.11. However, the decisions cited by AISLIC as "hold[ing] that cleanup costs are property damage" are themselves insurance cases. Id. at 22. We have already noted that "[t]his is not an insurance case" and that, among other things, "there is no presumption of payment under applicable principles of statutory construction, as there would be under an insurance policy." Def. Mot. 28-29 (citing Hugo Boss Fashions, Inc. v. Federal Ins. Co., 252 F.3d 608, 615 (2d Cir. 2001)). At the same time, neither party can cite judicial decisions interpreting section 330, because, to date, there are none. We rely fundamentally upon the plain language of secrion 330.

E. The Alleged Claim Was Not "Predicated Upon A Release Or Threatened Release"

With regard to the requirement in section 330(a) that a claim for personal injury or property damage must be "predicated upon" a "release or threatened release of any hazardous substance, pollutant or contaminant, or petroleum or petroleum derivative as a result of Department of Defense activities . . .," AISLIC argues that "its indemnification claim for property damage results from and is predicated upon" such a release. Pl. Opp. 23 (emphasis added). That argument misstates the issue, however: As we have demonstrated, in order to fall within the terms of section 330, a claim against the transferee must be "predicated upon a release or threatened release" of a substance identified in the act. AISLIC does not even argue that the May 2002 letter from the City to the DTSC – the only document in the record that could possibly constitute the necessary "claim for property damage" – was "predicated upon" such a condition. AISLIC's silence upon that point is independent grounds for dismissal of its section 330 claim.

AISLIC invokes the truisms that "the Court is required to accept all well-pleaded facts as true and draw all reasonable inferences in Plaintiff's favor" when deciding a motion to dismiss. Pl. Opp. 23. However, the meaning of a document, such the DTSC letter, "is a question of law and not a question of fact." Hendricks v. United States, 10 Cl. Ct. 703, 706 (1986). Moreover, even assuming, for purposes of argument, that the first amended complaint sufficiently alleges the existence of a claim for property damage "predicated upon" a condition described in section 330(a), AISLIC cannot rely solely upon allegations, or upon its conclusory assertions of desire for discovery, in response to our RCFC 56 motion. E.g., Sweats Fashions, 833 F.2d at 1562-63.

AISLIC argues, irrelevantly, that even proper application by the Navy of termiticide constituted a "release" within the meaning of section 330(a) and CERCLA. Pl. Opp. 23. Our discussion above of Tropical Fruit explains why this is incorrect; but, even assuming AISLIC's allegation of a "release" of pesticide had merit, the supposed "claim" by the DTSC was manifestly not "predicated upon" the Navy's past use of termiticide. To the contrary, the DTSC would have permitted the City to leave the termiticide in the soil, provided the structures that were protected by the termiticide remained in place. Def. PFUF ¶ 9. Given that the DTSC advised the City there was a risk of actionable contamination only in the future, after the structures were demolished, id., the DTSC's supposed "claim" cannot have been "predicated upon" any soil condition that arose while the Navy still owned the property.

AISLIC argues, alternatively, that whether "the chlordane was properly applied and used for its intended purpose are questions of fact requiring further discovery." Pl. Opp. 23-24. Those questions are irrelevant under section 330, however, since AISLIC cannot, in any event point to a claim "predicated upon" allegations that the Navy used termiticide improperly, or for a purpose not intended by the manufacturer. The DTSC stated, to the contrary, that the termiticide

was properly applied by the Navy and was serving its intended purpose. Def. PFUF ¶ 9. Furthermore, assuming that whether chlordane was applied properly and for its intended purpose could be relevant, AISLIC has not satisfied the requirements of RCFC 56(f), and the only evidence in the summary judgment record supports a finding that the termiticide was properly applied by the Navy for its intended purpose. Def. PFUF ¶ 9; cf. Novartis, 271 F.3d at 1054.

F. The Release Or Threatened Release Did Not Result From Military Activities

Finally, we demonstrated that section 330 is inapplicable here because the need to remediate the soil at the East Housing area arose "as a result of" the City's actions, rather than "as a result of Department of Defense activities" at the former Naval Air Station. AISLIC argues that the statutory requirement that a release or threatened or release which forms the basis for a claim for personal injury or property damage must have occurred "as a result of Department of Defense activities" is satisfied here, because the Federal Government is allegedly "solely responsible for" the presence of chlordane in the soil. Pl. Opp. 24-25. Again, this argument misses the point.

Section 330(a) states that a claim against the transferee must satisfy the conditions set forth in the act. It is not enough simply to allege that the transferee incurred environmental costs and that the Government is at fault. As noted, the only document that could possibly constitute the necessary claim against the transferee, triggering section 330, is the May 2002 letter to the City from the DTSC. In that document, the DTSC did not require the City to take steps, or incur costs, "as a result of" any Navy activities. The City could, in fact, have taken no action, provided it did not demolish the structures at the East Housing area. The State agency only advised the City it should not proceed with demolition unless it had an approved plan for removing the termiticide-treated soil. 9/30/05 Transf. Compl. Ex. 2, Tab 7.

The DTSC's advice caused the City to incur costs, in turn, solely because the City chose to proceed with the demolition upon receiving the advice. See 1st Am. Compl. ¶ 46. Therefore, even drawing all reasonable "inferences" in AISLIC's favor, it follows that, as a matter of law, (i) the alleged causal chain between "Department of Defense activities" and the supposed claim by the California regulators is broken; (ii) the City alone "contributed to" the alleged release or threatened release underlying the alleged DTSC "claim," within the meaning of section 330(a)(3); and (iii) therefore, AISLIC cannot recover, even assuming the Court determines that all of the other elements of a section 330 claim are present. Again, moreover, assuming the Court concludes that issues of fact might exist with respect to the City's contribution to the alleged release or threatened release of termiticide, summary judgment is warranted, because AISLIC offers no evidence as to that issue. See RCFC 56(c), (f).

The overarching disagreement between the parties, of course, concerns the purpose of section 330. AISLIC argues that Congress intended to provide for general indemnification of transferees' "cleanup costs." Pl. Opp. 20. This presumes that section 330 was intended essentially to duplicate existing grounds for recovery of remediation costs, including the "CERCLA covenants" in Federal deeds and the cost recovery provisions of CERCLA itself. 42 U.S.C. §§ 9607(a)(1)-(3), 9613(f). By contrast, both the plain meaning of section 330 and the textual distinction between section 330 and the prior legislation indemnifying New Hampshire support our reading, i.e., that section 330 protects transferees only against specific types of claims by third parties involving personal injury or property damage. Our individual arguments concerning the inapplicability of section 330 can be summarized in the general statement that Congress did not express an intent for the indemnity to extend to the circumstances of this case.

## CONCLUSION

Accordingly, we respectfully renew our request that the Court grant our July 21, 2006 corrected motion to dismiss or for summary judgment.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/David M. Cohen
DAVID M. COHEN
Director

s/Kyle Chadwick
KYLE CHADWICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:

MARY RAIVEL
Senior Trial Attorney
Navy Litigation Office
Washington, D.C.

August 31, 2006

CERTIFICATE OF FILING

I certify that on August 31, 2006, the attached document was filed electronically. I understand that service is complete upon filing and that parties and others may access the filing through the Court's electronic system.

s/Kyle Chadwick