# Shindell AND ASSOCIATES

## INFORMATION SHEET ON EMPLOYEES

NAME

SSN Sex Born

Last address Phone

Subsequent Phone

Subsequent Phone

Major Job Category Product

Date Employed Date Terminated

Intervening Activity Years

Status as of 1 - Current 2 - Contacted 3 - Indirect

Deceased: Location D.C? 4 - Yes 5 - No Date

Major Illness/Cause of Death

Other Illness/Cause of Death

Primary Cancer Site

Other Jobs within Plant

| Category | Product | Months |
|---|---|---|
| | | |
| | | |
| | | |

NOTES:

TABLE IX

DETAIL ON OCCURRENCE OF CANCER AMONG SURVIVING EMPLOYEES: AS OF 31 DECEMBER 1979

VELSICOL CHEMICAL CORPORATION - MARSHALL, ILLINOIS PLANT

| I.D. | EMPL. STATUS | JOB/PRODUCT | MARSHALL EMPLOYMENT FROM | TO | YRS. | YEARS SINCE TERM. | AGE AS OF 31DEC79 | PRIMARY SITE | REMARKS |
|---|---|---|---|---|---|---|---|---|---|
| C.W.B. | former | Laborer | May 46 | Jan 47 | 1 | 33 | 65 | Lung | Army '47 - '61; govt. empl. to '74; also arthritis, Parkinson's disease. |
| W.E.C. | former | Mgmt/Clerical | Mar 36 | May 70 | 34 | 9+ | 74 | Skin | 27 surgical procedures (face); also arthritis. |
| P.E.G. | current | Maintenance | Mar 51 | - | 29 | - | 50 | Colon | |
| D.E.H. | current | Opr. Raw Matl. | Jul 42 | - | 37 | - | 55 | Skin | also liver ailment, alcoholism; (reports generally good health). |
| R.E.N. | former | Laborer | Dec 66 | Apr 69 | 2+ | 11 | 36 | unspec. | surgery in 1977; also arthritis (much improved since living in Texas). |
| K.E.R. | current | Maintenance | Aug 64 | - | 15 | - | 61 | Lung | lung removed 1977; currently in litigation? |
| Q.R.T. | former | Opr. Resins | May 55 | May 57 | 2 | 23 | 73 | Skin | recurrent minor skin surgeries. |
| B.L.W. | former | Opr. Resins | Nov 66 | May 72 | 5+ | 8 | 44 | Lung | lung removed 1977, metastasis to brain. |
| M.W. | former | Mgmt/Clerical | May 57 | Dec 70 | 13+ | 9 | 68 | Breast | mastectomy prior to 1976; also rheumatoid arthritis (reports "feeling pretty fair"). |

TABLE VIII

HEALTH STATUS OF CURRENT AND FORMER EMPLOYEES ALIVE AS OF 31 DECEMBER 1979

VELSICOL CHEMICAL CORPORATION - MARSHALL, ILLINOIS PLANT

| | | | | * * * * * * * HEALTH PROBLEMS REPORTED * * * * * * * * * | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LOYEE UP | Total Employees | Number Without Health Problems | Percent Without Health Problems | Hypertension | Cardio-vascular | Arthritis | Emphysema | Diabetes | Musculo-skeletal | Gastro-intestinal | Vision | Neoplastic | Hearing | Cerebro-vascular | Other | Unknown Health Status |
| . Pesticide | 50 | 40 | 80.0 | - | 2 | 1 | 1 | - | - | 1 | - | - | - | - | 2 | 5 |
| . Resins | 109 | 87 | 79.8 | 5 | 2 | 2 | 2 | - | 3 | 1 | 2 | 2 | 2 | 1 | 3 | 3 |
| . Multiple | 19 | 15 | 78.9 | 1 | - | - | 1 | - | 1 | - | - | - | - | - | - | 1 |
| . Raw Matl. | 41 | 27 | 65.9 | 1 | 1 | 3 | 2 | - | 2 | 3 | - | 1 | 1 | 1 | 6 | 1 |
| .pping | 43 | 23 | 53.5 | 3 | 3 | 1 | 4 | 2 | 4 | 1 | 2 | - | 1 | 1 | 3 | - |
| .ntenance | 89 | 56 | 62.9 | 4 | 6 | 3 | 3 | 3 | 1 | 3 | 2 | 2 | 2 | 1 | 10 | 3 |
| orer | 72 | 60 | 83.3 | 4 | - | 2 | 2 | 2 | - | - | 1 | 2 | 1 | - | 4 | 1 |
| oratory | 71 | 51 | 71.8 | 7 | 5 | 1 | 1 | 4 | 1 | 1 | 2 | - | - | - | 5 | - |
| ;ineering | 46 | 35 | 76.1 | 1 | 1 | - | - | 1 | - | 3 | - | - | 1 | - | 2 | 5 |
| ıt/Clerical | 99 | 83 | 83.8 | 2 | 1 | 4 | - | 3 | 2 | - | 1 | 2 | - | - | 2 | 4 |
| Total | 639 | 477 | 74.6 | 28 | 21 | 17 | 16 | 15 | 14 | 13 | 10 | 9 | 8 | 4 | 37 | 23 |

:e: 23 persons reported 2 health problems; 15 persons reported 3 health problems.

Health Status of Surviving Employees

In addition to the analyses of mortality, the health conditions warranting medical attention were recorded for all employees, current and former, who could be contacted and who agreed to supply the information.

Table VIII shows the types of problems reported by the employees indicating a current medical condition or illness. Consistent with earlier studies in the chemical indutry, a substantial majority of current and former employees reported no medical conditions warranting treatment. Of the 639 persons confirmed to be alive, the current health status of 616 was determined. Good health was reported by 477 of these, representing 77.4% of those reporting. Of the 139 who have health problems, 23 reported two conditions and 15 persons reported 3 health problems, producing the total of 192 conditions shown in Table VIII.

The most commonly reported problem was hypertension. Hypertension and other cardiac disease were reported by just under 8% of the surviving employee group, an incidence slightly less than observed in other studies which averaged 10% of surviving employees reporting hypertension and cardiovascular disease.

Because of the interest in the possible relationship between work environment and the occurrence of cancer, the nine subjects alive at the time of contact who reported the presence of neoplastic disease were reviewed in detail: data collected are shown in Table IX. Skin cancer was reported by 3 persons: one each laborer, operator-raw material, and operator-resins. Lung cancer was reported by 3 persons: one each laborer, operator-resins, and maintenance employee. Breast cancer was reported by one office employee. Cancer of the colon was reported by one maintenance employee. The ninth instance of neoplastic disease was reported by a male laborer who had surgery in 1977 for cancer of unspecified site.

Our review of the information contained in Tables VIII and IX revealed no pattern of disease or medical condition, by job or product exposure, inconsistent with normal expectations in the general population.

to the national mortality, or among female employees whose deaths are reviewed above. The generally consistent overall Marshall mortality of about 87% of that of the U.S. is probably more reflective of the life-style of the small town environment in which the plant is located than of any other relevant factor.

TABLE VII

STANDARD MORTALITY RATIOS IN WHITE MALE EMPLOYEES: 1 JANUARY 1946 - 31 DECEMBER 1979

VELSICOL CHEMICAL CORPORATION - MARSHALL, ILLINOIS PLANT

EMPLOYED FOR VARYING MINIMUM LENGTHS OF TIME, BY MAJOR CAUSE

| nimum ngth of ployment | Deaths from All Causes | Deaths from Cancer | Deaths from Heart Disease | Deaths from All Other Causes |
|---|---|---|---|---|
| Months | 0.84** | 0.79 | 1.02 | 0.65 |
| Year | 0.84* | 0.87 | 0.98 | 0.65 |
| Years | 0.90 | 0.97 | 1.04 | 0.68 |
| Years | 0.86 | 1.03 | 0.99 | 0.56 |
| Years | 0.87 | 1.12 | 0.92 | 0.62 |
| Years | 0.87 | 1.06 | 0.83 | 0.78 |

' Statistically significant difference ($p<0.05$)
' Statistically significant difference ($p<0.01$)

SMR = Ratio of observed to expected: i.e., $\frac{\text{Marshall observed deaths}}{\text{Calculated expected deaths}}$

TABLE VI

DEATHS IN WHITE MALE EMPLOYEES: 1 JANUARY 1946 - 31 DECEMBER 1979
VELSICOL CHEMICAL CORPORATION - MARSHALL, ILLINOIS PLANT
EMPLOYED FOR VARYING MINIMUM LENGTHS OF TIME, BY MAJOR CAUSE

| MINIMUM LENGTH OF EMPLOYMENT | ALL CAUSES (all ICDA) | | MALIGNANT NEOPLASMS (CANCERS) (140-209) | | CARDIOVASCULAR (HEART DISEASE) (390-429, 440-458) | | CEREBROVASCULAR (STROKE) (430-438) | | TRAUMA (EXTERNAL CAUSES) (E800-E999) | | OTHER & UNKNO (000-136, 210-389,460-9 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Vels. | U.S. | Vels. | U.S. | Vels. | U.S. | Vels. | U.S. | Vels. | U.S. | Vels. | U.S. |
| 3 Months | 120** | 142.6 | 22 | 27.9 | 64 | 62.7 | 5 | 9.2 | 14 | 15.5 | 15* | 27.3 |
| 1 Year | 104* | 123.8 | 21 | 24.2 | 54 | 55.1 | 4 | 8.3 | 14 | 12.7 | 11** | 23.[illegible] |
| 5 Years | 74 | 81.8 | 16 | 16.5 | 39 | 37.5 | 4 | 5.7 | 8 | 6.7 | 7* | 15.3 |
| 10 Years | 56 | 65.3 | 14 | 13.6 | 30 | 30.3 | 2 | 4.6 | 5 | 4.6 | 5* | 12.[illegible] |
| 15 Years | 39 | 44.9 | 11 | 9.8 | 19 | 20.7 | 1 | 2.9 | 4 | 3.0 | 4 | 8.[illegible] |
| 20 Years | 25 | 28.8 | 7 | 6.6 | 11 | 13.2 | 0 | 1.8 | 4 | 1.8 | 3 | 5.[illegible] |

* Statistically significant difference ($p<0.05$)
** Statistically significant difference ($p<0.01$)

Numbers shown in parentheses under specific disease headings are the ICDA, 8th Revision categories included.

Table VI shows observed and expected deaths among white males for major causes in five-year increments of employment. The only statistically significant differences shown are negative, i.e., the Velsicol deaths are significantly fewer than expected. This table confirms the general consistency between observed deaths and the expected mortality irrespective of the length of exposure at Marshall. At no point in the chronological progression is there a statistically significant excess of deaths for any of the causes of death potentially related to the occupational environment (cancer, heart disease, stroke, other & unknown). The trauma deaths which display a slight, though consistent, excess throughout the employment spectrum consist of 2 industrial accidents (one at Velsicol), 8 automobile accidental deaths, and 4 suicides which occurred 5 years, 8 years, 24 years, and 25 years after termination of Velsicol employment. The deaths from other and unknown causes and from all causes range consistently below expected values throughout the spectrum.

Table VII displays the progression of Standard Mortality Ratios for the major causes of death among white males as length of employment increases. The SMR for deaths from all causes, after a minimum employment of one year, reveals a significantly lower than expected death rate for Velsicol employees as compared to the U.S. expectancy. It will be noted that SMR's for all causes are remarkably constant regardless of length of employment. The SMR's for heart disease tend to decline for groups of individuals employed more than ten years. The SMR's for cancer show the degree of variation one would expect for the size of the study cohort. The SMR's for all other causes indicate Marshall death rates consistently and substantially lower than the U.S. expectancy.

In summary, no relationship is discernible between the Marshall occupational exposure and the mortality of Marshall employees, either among male employees whose experience conforms

The occurrence of three "other" deaths among the female employees is statistically significant. The total cohort of female employees numbered 84. Of these, 18 are classified as current employees and only a single former employee could not be traced since her move to Colorado or Utah in the early 1970's. The number of former female employees confirmed alive as of 31 December 1979 was 61. The job assignments of the female cohort were 8 in production work (4 still currently employed), 1 in maintenance (a current employee), 7 in the laboratory (2 currently employed) and 68 in the office (11 currently employed).

The three female decedents were all former office employees. Two of the decedents were sisters and died from multiple sclerosis which is categorized in accordance with the national statistics as "Other" in our Table IV. The younger sister worked at Velsicol/Marshall from August 1943 (age 17) until February 1951 (age 25) and died in 1955 at age 29. The older sister was employed at Marshall from August 1956 (age 26) until September 1964 (age 34) and died in 1973 at age 43. The third female in the "Other" classification died of Alzheimer's disease (hyaline deterioration of the blood vessels in the brain) in 1979 at the age of 62; she had worked for less than a year at Marshall 17 years earlier when she was 44 years old. The occurrence of two multiple sclerosis deaths in sisters who worked for periods of 7½ years and 8 years in the Marshall plant office cannot be attributed to the occupational environment; no other Marshall employee has died from multiple sclerosis. Nor can the other central nervous system death, occurring 17 years after a few months' office employment, be related to the Marshall occupational environment.

In an attempt to determine whether there was any relationship between length of employment at Marshall and mortality from all causes and from specific causes, Tables VI and VII were generated for the white male employees. These show the relationship between cause of death and varying lengths of Marshall employment.

TABLE V

CANCER DEATHS IN FORMER EMPLOYEES: 1 JANUARY 1946 - 31 DECEMBER 1979

VELSICOL CHEMICAL CORPORATION - MARSHALL, ILLINOIS PLANT

PRIMARY SITE OF CANCER BY JOB/PRODUCT CLASSIFICATION

| EMPLOYEE GROUP | All Sites | Brain | Colon | Kidney | Liver | Lung | Mediastinum | Mesothelioma | Pancreas | Stomach | Unspecified |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Opr. Pesticide | 1 | | | | | 1 | | | | | |
| Opr. Resins | 1 | | | | | 1 | | | | | |
| Opr. Multiple | 2 | | | | | 1 | | | | 1 | |
| Opr. Raw Matl. | 1 | | | | | | | | | 1 | |
| Shipping | 2 | | 1 | | | 1 | | | | | |
| Maintenance | 7 | 1 | 1 | | | 2 | 1 | 1 | 1 | | |
| Laborer | 3 | | | | 1 | | | | | 2 | |
| Laboratory | 2 | | | | | 1 | | | | | 1 |
| Engineering | 1 | | | | | | | | | | 1 |
| Mgmt/Clerical | 2 | | | 1 | | 1 | | | | | |
| All Employees | 22 | 1 | 2 | 1 | 1 | 8 | 1 | 1 | 1 | 4 | 2 |

TABLE IV

DEATHS AMONG FORMER EMPLOYEES: 1 JANUARY 1946 - 31 DECEMBER 1979

VELSICOL CHEMICAL CORPORATION - MARSHALL, ILLINOIS PLANT

COMPARED TO U.S. POPULATION: BY CAUSE AND JOB/PRODUCT CLASSIFICATION

| EMPLOYEE GROUP | ALL CAUSES (all ICDA) | | MALIGNANT NEOPLASMS (CANCERS) (140-209) | | CARDIOVASCULAR (HEART DISEASE) (390-429,440-458) | | CEREBROVASCULAR (STROKE) (430-438) | | TRAUMA (EXTERNAL CAUSES) (E800-E999) | | OTHER & UNKNO (000-136, 210-389,460-9 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | Vels. | U.S. | Vels. | U.S. | Vels. | U.S. | Vels. | U.S. | Vels. | U.S. | Vels. | U.S |
| WHITE MALES | | | | | | | | | | | | |
| Opr. Pesticide | 8 | 8.10 | 1 | 1.59 | 5 | 3.29 | - | 0.39 | 1 | 1.23 | 1 | 1.6 |
| Opr. Resins | 15 | 15.84 | 1 | 3.05 | 8 | 6.42 | 1 | 0.84 | 3 | 2.45 | 2 | 3.0 |
| Opr. Multiple | 5 | 5.21 | 2 | 0.98 | - | 2.32 | 1 | 0.30 | 1 | 0.51 | 1 | 1.0 |
| Opr. Raw Matl. | 5 | 9:25 | 1 | 1.76 | 3 | 4.00 | - | 0.61 | 1 | 1.11 | - | 1.7 |
| Shipping | 13 | 18.20 | 2 | 3.53 | 7 | 8.31 | 1 | 1.33 | 2 | 1.59 | 1 | 3.4 |
| Maintenance | 25 | 31.44 | 7 | 6.34 | 14 | 14.21 | 1 | 2.04 | 1 | 2.84 | 2 | 6.0 |
| Laborer | 19 | 19.68 | 3 | 3.73 | 8 | 8.88 | - | 1.45 | 4 | 1.91 | 4 | 3.7 |
| Laboratory | 11 | 15.49 | 2 | 2.99 | 8 | 6.69 | 1 | 0.98 | - | 1.84 | - | 2.9 |
| Engineering | 7 | 8.33 | 1 | 1.66 | 5 | 3.61 | - | 0.49 | 1 | 0.97 | - | 1.6 |
| Mgmt/Clerical | 12 | 11.00 | 2 | 2.19 | 6 | 4.96 | - | 0.74 | - | 1.02 | 4 | 2.0 |
| TOTAL WH. MALES | 120** | 142.54 | 22 | 27.92 | 64 | 62.69 | 5 | 9.17 | 14 | 15.47 | 15* | 27.2 |
| NON-WHITE MALES | - | 0.05 | - | 0.01 | - | 0.00 | - | 0.00 | - | 0.03 | - | 0.0 |
| FEMALES | 4 | 2.95 | - | 1.00 | - | 0.63 | 1 | 0.18 | - | 0.41 | 3* | 0.7 |
| TOTAL | 124 | 145.54 | 22 | 28.93 | 64 | 63.32 | 6 | 9.35 | 14 | 15.91 | 18* | 28.0 |

* Statistically significant difference ($p<0.05$)
** Statistically significant difference ($p<0.01$)

Numbers shown in parentheses under specific disease headings are the ICDA [illegible]

Mortality by Job and Product

Table IV shows the overall mortality experience of all Marshall employees who worked at the plant for three months or more since Velsicol began producing pesticides in that facility some thirty-four years ago. It also displays the mortality experience with respect both to the kinds of exposure by job and product and to specific causes of death. The matrix of exposure categories and specific causes of death represents an attempt to be as specific as possible in distinguishing differences in potential exposures and types of illnesses given the constraint of considering groups of sufficient size to permit statistical validity.

The comparisons of observed deaths among Marshall employees with expected deaths based on U.S. rates for like segments of the general population reveal no significantly excessive differences with the sole exception of "other" deaths among the relatively small group of female employees. With this single exception, the number of deaths observed for all causes and for each specific cause among the various employee groups are consistent with the national norms.

Among the white male employees, the number of deaths from cancer, stroke, trauma, and other and unknown causes all appear to be somewhat lower than would be expected. The heart disease deaths are distributed among the various job/product exposure groups proportionately to the calculated expectations for each sub-group. No deaths were reported among the small number of non-white male employees in the study cohort.

Table V shows the distribution of cancer deaths by site. As is seen, there is no concentration of type of cancer in any job category.

Summary of Findings

The data collected on the Marshall employees were analyzed to determine whether their mortality experience differs from that of the U.S. population at large.

Our comparisons of the observed mortality among the Marshall cohort to calculated expected values based on national statistics revealed a significantly lesser occurrence of death overall than would be expected in a group of similar size and age distribution. When viewed in greater detail for various job and product classifications and with respect to specific causes of death the results are consistent with the national experience.

The only instance of a statistically significant excess of deaths occurred among the female employees where deaths in the "Other" classification of disorders were significantly more numerous than would be expected. This circumstance will be discussed at greater length below.

Similarly, the morbidity experience among current and surviving former employees is entirely unremarkable. Although no reliable national statistics are available on the health of the U.S. population in general, we reviewed the occurrence of health problems among the Marshall employees confirmed to be alive and compared the results to similar findings of our prior studies in the chemical industry. Approximately 75% of the surviving Marshall employees reported no health conditions requiring medical attention. This "good health" index is substantially higher than we have found in previous studies where the overall absence of health problems has averaged about 66%.

In summary, we discern no relationships attributable to the Marshall occupational environment which would suggest any deleterious effect upon the life expectancy or general health of the Marshall employees. The detailed results of our analyses are presented in the following sections.

The analysis includes 6,790.3 person-years of employment at Velsicol and 16,881.6 person-years of survival since commencement of such employment.

A second type of analysis was performed in which the actual mortality experienced and the expected mortality in the comparable segment of the U.S. population as calculated above were used to derive Standard Mortality Ratio progressions for varying periods of minimum employment at the Marshall facility. The Standard Mortality Ratio is the ratio of observed deaths to the calculated expected deaths based on national age-, sex-, race- and cause-specific death rates, i.e., $\frac{\text{Marshall observed deaths}}{\text{calculated expected deaths}}$

The results of these two types of analyses are presented in the following pages.

$$Z = \frac{O - E}{S}, \quad \text{where}$$

$$E = \Sigma p_i, \quad \text{and}$$

$$S = \sqrt{\Sigma p_i (1 - p_i)}$$

This technique results in statistical significance for smaller variations than is the case if the distribution is assumed to be Poisson and $S = \sqrt{E}$.

Summarizing the above: we use the published mortality rates for the U.S. population at large to calculate how many deaths would be expected to occur for all causes and for each specific cause among a group of individuals of the same numerical size, race, sex and age composition as the Marshall plant employee group during the time period in which the Marshall cohort was "at risk" during and after Velsicol employment. The comparison of these expected values to the observed deaths among the Marshall cohort provides a determination of whether working at the Marshall plant is likely to be accompanied by a mortality experience that is similar to that of people of comparable ages not working at the Marshall plant.

By eliminating periods of adult activity of Marshall workers prior to Velsicol employment from the time at risk calculations, we reduce the overall person-years base on which the expected deaths are calculated, and thus reduce the number of expected deaths to which we compare the number of actually observed deaths. While it can be argued that it is likely that Velsicol employees hired after employment elsewhere should be considered at risk during their entire working lives for purposes of establishing the overall person-years base for calculating expected deaths, we deem it more conservative to consider only the time after the required minimum exposure to the occupational environment whose effects we are attempting to evaluate.

The second constraint concerns the rates that were used in calculating expected mortality. Race- and sex-specific U.S. mortality rates for the years 1945, 1950, 1955, 1960, 1965, 1970 and 1975 were employed. The rates for 1945 were applied in calculations for the period January 1946 - June 1947; rates for 1950 for July 1947 - June 1952; and similarly for each five-year period, using 1975 rates for the period July 1972 - December 1979 (the most recent detailed rates available).

Rates for 1960 and later are published by the National Center for Health Statistics for five-year age groups. In order to make data for 1945, 1950 and 1955 comparable, logarithmic interpolations between published rates for ten-year age groups were derived to obtain estimates for the intervening five-year intervals. Thus in calculating expected mortality, five-year age groups and five-year time periods were used for comparison purposes.

The causes of death considered in the analyses were classified according to the Eighth Revision of the International Classification of Diseases, Adapted. The categories of interest were deaths from: all causes (all ICDA), malignant neoplasms (ICDA 140-209), diseases of the heart and circulatory system except cerebrovascular (ICDA 390-429 & 440-458), cerebrovascular diseases (ICDA 430-438), and all trauma (accidents, suicide, homicide, etc. - ICDA E800-E999). For those cases in which death certificates were not obtainable, the cause of death was tabulated as "Other or Unknown" unless the source of the information was able to furnish a reliably classifiable cause.

Statistical significance was determined by comparing the observed number of deaths with that expected, and assuming that the distribution of the difference is Gaussian. This is expressed by the following formula:

Analytic Technique

In order to analyze the mortality experience of the Marshall employees, it is necessary to compare the observed mortality in the employee groups with that of the comparable segments of the United States population over the same period of time. To perform these comparisons, the probability of each employee dying from the specific causes during the period of the study was calculated using the following formula:

$p_i = 1 - (1-p_1)^{e_1}(1-p_2)^{e_2} \ldots (1-p_k)^{e_k}$ = the probability of each individual employee dying over the total period of the study, where

$p_1, p_2, \ldots p_k$ = the probability of dying in the individual years of the study, and

$e_1, e_2, \ldots e_k$ = the portion of a year in which the individual is represented in the study ("e" may be 0, 1, or a fraction of a yr.)

When calculating expected mortality, two important constraints are imposed. First, the period for calculation of risk of dying for each individual is precisely defined. Because the conditions for inclusion in the study included a minimum period of employment, the calculation of expected mortality began at the conclusion of the period of minimum employment rather than on the date on which employment began. The counting of time at risk terminates at the end of the study. However, where a person's status as of 31 December 1979 was not determined, time was counted only to the point of last known date alive rather than the cut-off date of the study.

TABLE III

INFORMATION AVAILABLE ON EMPLOYEES REPORTED DECEASED

NO DEATH CERTIFICATE OBTAINED

VELSICOL CHEMICAL CORPORATION - MARSHALL, ILLINOIS PLANT

| | | | -**-**-**-* REPORT | OF | DEATH *-**-**-**- | | |
|---|---|---|---|---|---|---|---|
| .D. | DATE HIRED BY VELSICOL | TERMINATION BY VELSICOL | SOURCE | LOCATION | DATE | CAUSE | STATES QUERIED FOR CERTIFICATES |
| ..W.B. | May 45 | May 47 | SSA | Illinois | Jan 78 | unknown | IL (not found) |
| D.C.C. | Jun 62 | Jun 64 | RFW | unknown | 1972 | Suicide | IL, IN (not found) |
| H.W.E. | Feb 47 | Jul 47 | RFW | unknown | Jan 55 | unknown | IL, IN (not found) |
| W.L.R. | Sep 48 | Sep 50 | SSA | California | May 79 | unknown | CA (not found) |
| L.C.W. | Mar 56 | Sep 56 | SSA | Florida | Feb 76 | unknown | FL (pending) |

TABLE II

DETAIL ON EMPLOYEES CLASSIFIED AS STATUS UNKNOWN

VELSICOL CHEMICAL CORPORATION - MARSHALL, ILLINOIS PLANT

| I.D. | DATE HIRED | DATE TERM. | DATE LAST CONTACT | INFORMATION AVAILABLE | AGE (IF ALIVE) |
|---|---|---|---|---|---|
| .B.C. | Aug 71 | Nov 72 | Sep 76 | Late 1976 selling insurance Fresno, CA. | 45 |
| I.H.C. | Jun 56 | Jan 57 | Jan 57 | Rose-Hulman (Rose-Poly) alumnus: recorded "lost". | 46 |
| K.C.C. | Dec 47 | Dec 50 | Dec 50 | None since termination. | 55 |
| R.L.E. | Jan 52 | Apr 53 | Apr 53 | None since termination. | 51 |
| B.J.E. | Dec 70 | Jun 71 | Jun 71 | Reported in Salt Lake City, UT or Pueblo, CO. | 36 |
| A.R.F. | Sep 64 | Sep 66 | Sep 66 | None since termination. | 37 |
| J.S.G. | Sep 50 | Sep 53 | Jan 55 | To Vels/Galena Park, TX: subsidiary sold to oil company. | 57 |
| A.W.H. | Sep 48 | Aug 49 | Aug 49 | None since termination. | 58 |
| R.A.J. | Oct 64 | Apr 66 | Apr 66 | Reported in San Jose, CA: moved, not forwardable. | 39 |
| H.L. | Jul 46 | Jan 47 | Jan 47 | None since termination. | 55 |
| J.J.L. | Jun 64 | Sep 67 | Jul 76 | Jul 1976 worked as accountant Kansas City, MO. | 49 |
| W.M. | Jan 60 | Oct 60 | Oct 60 | To Witco Chem., Gary, IN: firm presently unknown. | 59 |
| R.K.N. | Nov 63 | Jul 65 | Jul 65 | None since termination. | 39 |
| J.D.P. | Jun 57 | Dec 63 | Jun 76 | Jun 1976 in Arlington Hts., IL: moved, not forwardable. | 55 |
| C.P. | Oct 45 | Jul 46 | Jul 46 | None since termination. | 57 |
| S.S. | Jul 67 | Jan 68 | Jun 76 | Jun 1976 in Pakistan. | 37 |
| J.S. | Oct 61 | Feb 65 | Feb 65 | None since termination. | 63 |
| P.C.S. | Sep 78 | Aug 79 | Aug 79 | None since termination. | 23 |
| G.D.S. | Jul 65 | Jul 69 | Jul 69 | None since termination. | 37 |
| R.W.W. | May 57 | Jan 58 | Jan 58 | None since termination. | 46 |

TABLE I

STUDY UNIVERSE AS OF 31 DECEMBER 1979

VELSICOL CHEMICAL CORPORATION - MARSHALL, ILLINOIS PLANT

BY SEX, RACE, EMPLOYMENT AND CONTACT STATUS
AND BY JOB/PRODUCT CLASSIFICATION FOR WHITE MALES

| EMPLOYEE GROUP | TOTAL | EMPLOYEES CURRENT 31 Dec 79 (1) | FORMER EMPLOYEES CONTACTED/ALIVE Direct (2) | FORMER EMPLOYEES CONTACTED/ALIVE Indirect (3) | DECEASED EMPLOYEES With D.C. Obtained (4) | DECEASED EMPLOYEES No D.C. Obtained (5) | EMPLOYEES W/ STATUS UNKNOWN (9) | PERCENT STATUS KNOWN |
|---|---|---|---|---|---|---|---|---|
| WHITE MALES | | | | | | | | |
| Opr. Pesticide | 53 | 12 | 14 | 19 | 7 | 1 | - | 100.0 |
| Opr. Resins | 125 | 35 | 26 | 46 | 14 | 1 | 3 | 97.6 |
| Opr. Multiple | 24 | 5 | 4 | 10 | 4 | 1 | - | 100.0 |
| Opr. Raw Matl. | 46 | 18 | 7 | 16 | 5 | - | - | 100.0 |
| Shipping | 57 | 12 | 16 | 15 | 13 | - | 1 | 98.2 |
| Maintenance | 113 | 34 | 28 | 26 | 24 | 1 | - | 100.0 |
| Laborer | 86 | 9 | 17 | 39 | 18 | 1 | 2 | 97.7 |
| Laboratory | 78 | 10 | 29 | 25 | 11 | - | 3 | 96.2 |
| Engineering | 56 | 3 | 19 | 21 | 7 | - | 6 | 89.3 |
| Mgmt/Clerical | 51 | 9 | 9 | 18 | 12 | - | 3 | 94.1 |
| TOTAL WHITE MALES | 689 | 147 | 169 | 235 | 115 | 5 | 18 | 97.4 |
| NON-WHITE MALES | 10 | 2 | 3 | 4 | - | - | 1 | 90.0 |
| FEMALES | 84 | 18 | 36 | 25 | 4 | - | 1 | 98.8 |
| TOTAL | 783 | 1[illegible]7 | 20[illegible] | 2[illegible] | 119 | [illegible] | 20 | 97.4 |

who was employed for 11 months in 1978-79.

Table II displays the information available on the entire group of 20 former employees whose status could not be determined during the update study.

Of the 716 health status investigations which comprised the original study, all but the 92 individuals for whom death certificates were obtained at that time required complete reinvestigation for the current study. Thus, the present study involved retracing and/or additional data collection for 697 individuals as compared to 716 in the 1976 investigation. The death certificates on file from the original study were reviewed and classifications by specific causes confirmed. Efforts to obtain death certificates for all individuals reported to be deceased were not successful in five cases, two of which were not obtained during the 1976 study. Table III summarizes the information available on those reported to be deceased but for whom no death certificates were obtained.

current and former employees. This total included six individuals who had been identified by only a name at the time of the original study. Review of Velsicol records during the current investigation failed to disclose any additional information regarding sex, race, dates of birth, hire or termination, nor any social security numbers. Being unable to obtain valid data for analysis or identification for review by the Social Security Administration, and being unable to confirm reliably their basic qualification for inclusion in the study, these six were deleted from the current update cohort. This action reduced the total number of original cohort members to 710 by eliminating five of the 51 who were not contacted in 1976 and one of the 3 reported decedents whose deaths were not confirmed by acquisition of an actual death certificate.

Of the remaining 46 originally qualified individuals whose status was not determined during the original study, we succeeded in ascertaining the status of 31 during the current study by direct or indirect contact or confirmation of death. Only 15 of the 46 with undetermined status in 1976 remained in that category at the conclusion of the current update study.

Of the 393 individuals classified in the initial study cohort as former employees, confirmed alive, all but four were successfully contacted or otherwise confirmed to be deceased or still alive during the current update study. These four, whose status was not confirmed during the current study, were two white male office employees (one of whom worked for 15 months in 1971-72, the other for 39 months in 1964-67) who were contacted directly in 1976, and two white male engineering employees (one employed for 11½ years in 1957-68 and the other for 6 months in 1967-68) who were confirmed alive with unknown health status in 1976.

The update study added 73 qualified individuals to the original study cohort. The status of all but one of these was determined. This individual was a black male production worker

The Study Universe

The Marshall plant cohort of employees who completed three months or more employment during the study period of 1 January 1946 through 31 December 1979 totaled 783 individuals. The group is comprised of 689 white males, 10 non-white males and 84 females.

Of the 783 in all classifications, 167 were persons employed as of 31 December 1979 and 616 were former employees of whom 124 were determined to have died before 1 January 1980. Of the 492 not known to be deceased, 472 were contacted either directly or indirectly and confirmed to be alive as of 31 December 1979. An individual is classified as a direct contact whenever a) one of our staff actually spoke with him or her by telephone, confirmed all the data on the data sheet and received an answer concerning his or her current health status, or b) a mailed questionnaire affirming the above information was completed, signed and returned by the employee. An indirect contact is a) one in which the desired information was obtained from a family member or close associate, b) in which current status as alive was confirmed by a personally signed receipt for a certified letter sent to an address reported by a reliable source to be the employee's current address, or c) by SSA report. Only 20 persons could not be confirmed alive or dead and are classified as status unknown.

Table I shows the white males (grouped according to primary job/product category), the non-white males and the females classified according to status: current (1), former contacted (2 & 3), former deceased (4 & 5), and former with status unknown (9). The degree of follow-up achieved for each sub-group is also shown. Overall, 97.4% of the study cohort could be accounted for as of 31 December 1979.

The original Marshall plant study covering the period from 1 January 1946 through 30 June 1976 identified a total of 716

To maintain a conservative approach in our classification of survival status we sought corroborative evidence of death for SSA reported decedents and did not classify them as deceased in the absence of supporting information from other sources (e.g., one former employee, B. Smith, SS# 313 66 0534, is known to have been alive in 1980, more than six years subsequent to his SSA reported death in September 1973). We submitted a total of 116 identifications to SSA for review and received reports covering 112 of the individuals, identifying 9 as deceased, 27 as alive during the first three months of 1980, and 76 in unknown status. Our investigations confirmed 8 of the deaths and refuted the 9th, confirmed by direct or indirect contact 13 of the 27 reported in surviving status, and accomplished 55 direct or indirect contacts among the 76 SSA "unknowns." We did not discover any actual deaths not known to the Social Security Administration among the identifications submitted for review. Although SSA cooperation has been helpful in increasing our success in obtaining death certificates and ascertaining survivor status, the reports did not permit resolution of the status of all the individuals included in the cohort.