# EXHIBIT A

**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | ) | No. 05-1020C<br>Judge Margaret M. Sweeney |

**PLAINTIFF'S PROPOSED**
**FINDINGS OF UNCONTROVERTED FACT**

Pursuant to Rule 56(h)(2) of the Rules of the U.S. Court of Federal Claims, Plaintiff American International Specialty Lines Insurance Company ("Plaintiff" or "AISLIC"), by and through its undersigned attorneys, respectfully submits proposed findings of uncontroverted fact as follows:

1. Chlordane concentrations measured at the East Housing Area demonstrate either excessive pre-construction application or post-construction application inconsistent with manufacturer-recommended application for subterranean termite control. *See* Declaration of Petra Pless ("Pless Decl.") ¶ 4, attached hereto as Tab 1.

2. The difference in chlordane soil concentrations under and around buildings of the same age and foundation type on the East Housing Area suggests that improper post-construction application occurred. *Id.* at 5. For those buildings where very high concentrations of chlordane were measured, the concentrations followed distinct spatial patterns, indicating that chlordane was sprayed through the access panels into the crawlspaces and through the vents. *Id.* at ¶ 6. Spraying into crawlspaces in not a recommended application of chlordane. *Id.*

3. Evidence shows excessive application of pesticides, applications inconsistent with manufacturer recommendations, and improper handling of hazardous materials elsewhere on Alameda Naval Air Station or other Navy and Air Force bases. *Id.* at ¶ 7.

4. Chlordane was improperly used, spilled, stored, released or disposed of at the East Housing Area. *Id.* at ¶ 8.

5. Samples obtained from surface and sub-surface soil, as well as wood and concrete foundations, less than a year after the transfer of the East Housing Area revealed that the property was contaminated with massive levels of chlordane. *See* Tab 2, Sampling Report: Organochlorine Pesticides. Concentrations were as high as 210,000 parts per billion, or 210 parts per million, a level nearly 500 times the concentration deemed safe by DTSC.

6. Defendant misapplied chlordane over many years and knew, or should have known, there was a high probability of contamination in military family housing. *See, e.g.,* Tab 3**,** AFPMB, *Recommended Statements on Use and Disposition of Pesticides* (November 11, 1971) (noting a "use it or lose it" policy for pesticides undergoing Environmental Protection Agency ("EPA") cancellation proceedings in order to avoid the massive costs associated with disposal); Tab 4**,** AFPMB, Technical Information Bulletin, January – February 1988, Chlordane Policy Memorandum (directing that "installations should continue to use existing stocks of chlordane until the deadline, with preference given to any locally purchased products in order to minimize turn-in and disposal problems…[d]isposal, if required, will be coordinated with the servicing Defense Reutilization and Marketing Offices"); Tab 5**,** United States Navy Disease Vector Control Center, U.S. Naval Air Station Alameda, California, *A Guide for the Organization of a Pest Control Program at a Military Installation* (May 1, 1967) (acknowledging that many complaints from families living in military housing related to cockroach infestations and recommending that base pest control personnel re-treat vacant houses

prior to re-occupancy "to keep complaints to a minimum and to accomplish a more thorough cleaning").

7. Various governmental agencies including the Government Accountability Office, the National Academy of Sciences, and the Environmental Protection Agency ("EPA") investigated the problem of chlordane contamination in military family housing in the late 1970s and early 1980s. *See, e.g.,* Tab 6**,** August 5, 1980, Letter from Comptroller General to EPA Administrator Douglas M. Costle, "Need for a Formal Risk/Benefit Review of the Pesticide Chlordane (CED-80-116); Tab 7, "An Assessment of the Health Risks of Seven Pesticides Used for Termite Control," Committee on Toxicology, Board on Toxicology and Environmental Health Hazards – National Academy of Sciences (1982)**.** These investigations culminated in the Department of Defense banning any further chlordane applications in slab-type housing, known as "Capehart Housing," and in the EPA canceling chlordane for all uses in 1988.

8. In 1981, Velsicol Chemical Corporation, chlordane's manufacturer, reviewed the circumstances underlying DoD's problem with excessive chlordane contamination in military family housing and concluded that the excessive levels were caused by the Department's misapplication of the pesticide. *See* Tab 8**,** A.M. Khasawinah, *Chlordane: Air Concentrations in Treated Homes, Assessment and Significance* (March 23, 1981). As a result, DoD directed chlordane air sampling in all Capehart-type military family housing units, probably including those located in the East Housing Area. *See* Tab 9**,** Robert V. Bielarski, Ph.D., *Applied Biology Program: Naval Facilities Engineering Command, Workshop on Termiticides in Building Protection*, September 22-23, 1982.

Respectfully submitted,

s/T. Michael Guiffré
T. Michael Guiffré
J. Gordon Arbuckle
Daniel R. Addison
PATTON BOGGS LLP

2550 M Street, N.W.
Washington, D.C. 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315

Attorneys for Plaintiff American International Specialty Lines Insurance Company

January 5, 2007